## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. 16-cv-01849-PAB-KLM
(Consolidated with Civil Action No. 18-cv-01802-PAB-KLM)

In re HOMEADVISOR, INC. LITIGATION

### *AIRQUIP* PLAINTIFFS' MOTION FOR LEAVE TO FILE
### CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Plaintiffs Airquip, Inc. ("AirQuip"), Kelly DaSilva, and Nicole Gray (the *"AirQuip"* Plaintiffs") and Charles Costello, Bruce Filipiak, Josh Seldner, Anthony Baumann, Kourtney Ervine, Hans Hass, Iva Haukenes, and Brad and Linda McHenry (the *"Costello"* Plaintiffs")(collectively, "Plaintiffs"), through counsel, respectfully submit this Motion for Leave to File Consolidated Amended Class Action Complaint ("CAC") ("Motion to Amend").

### STATEMENT OF CONFERRAL

Pursuant to D.C.COLO.LCivR. 7.1 (a), Plaintiffs' Counsel conferred with counsel for defendants HomeAdvisor, Inc. ("HA"), ANGI HomeServices Inc. ("ANGI") and IAC/InterActiveCorp ("IAC") ("Defendants"). Defendants have not consented to the relief sought by the Motion to Amend.

### INTRODUCTORY STATEMENT

AirQuip filed *Airquip, Inc. et al v. Home Advisor, Inc., et al,* C.A. No. 16-cv-01849-PAB-KLM ("*AirQuip* Action") in July 2016, the Costello Plaintiffs filed *Costello v. Home Advisor, Inc., et al.,* C.A. No. 18-cv-01802-WJM-MEH ("*Costello* Action") in July 2018, and the Actions were consolidated in December 2018.  The Actions assert claims on behalf of HSPs who

were deceived into signing-up for HA memberships and paying for bogus Leads, and were subjected to abusive and coercive measures at the hands of HA and its former parent (and current largest shareholder), IAC.[1]  Due to the procedural history of the Consolidated Action, the CAC should be considered in the following context:

(1) Pursuant to Fed. R. Civ. P. 15(a)(1)(B) Plaintiffs are entitled to file, without leave of Court, an amended pleading with respect to Counts III, V-XIV, XVI-XX, XXI-XXX, XXXV-XXXIX and XLV-LVII of the CAC, which were are all part of, or relate to, the *Costello* Action.

(2) Pursuant to Fed. R. Civ. P. 15(a)(2), Plaintiffs hereby seek leave of Court with respect to (i) Counts I (violations of RICO), Counts XXXI-XXXIV (violations of Indiana common law), and Counts XL-XLIV (violations of New York statutory and common law); (ii) adding Plaintiff DaSilva as a class representative for Counts XVI-XX (violations of Florida statutory and common law); and (iii) adding Defendants to Counts I, II (nationwide fraud) and IV(nationwide unjust enrichment), which claims and allegations were alleged in *Airquip*. In addition, while Count III (aiding and abetting fraud against IAC) can be added by amendment as a matter of right by the *Costello* Plaintiffs on behalf of the proposed Class, the *AirQuip* Plaintiffs (conservatively) have determined to seek leave with respect to this Count, as well, with respect to them.  For the reasons set forth herein, the filing of the CAC, in its entirety, should be granted.

## BACKGROUND AND PROCEDURAL HISTORY

The *AirQuip* Plaintiffs filed their First Amended Complaint ("FAC") (Dkt. #32) on November 14, 2016.

Merits-related discovery did not begin in the *AirQuip* Action until the end of May 2017

---

[1] Due to page constraints, Plaintiffs refer to the CAC, attached hereto as Exhibit A, for a full recitation of the pertinent facts and allegations summarized herein, as well as capitalized terms.

and the bulk of documentary discovery from Defendants did not commence until February 20, 2018. In the meantime, the Court ruled on Defendants' Motions to Dismiss the FAC on September 21, 2017, granting HA's Partial Motion to Dismiss (Dkt. #42) and granting in part and denying in part IAC's Motion to Dismiss (Dkt. #44) ("MTD Order"). The MTD Order dismissed without prejudice Plaintiffs' RICO claim as to all Defendants and the fraud and breach of implied contract claims as to Defendant IAC.

Based principally on the review of the documents and information obtained in discovery, the continued receipt of information from hundreds of HSPs, and the spin-off transaction resulting in the merger of Angie's List and HA, Plaintiffs learned of new facts that supported: (a) the reassertion of claims that were dismissed without prejudice by the MTD Order; (b) the addition of new defendants who committed the wrongdoings alleged in the FAC; (c) the addition of the *Costello* Plaintiffs who asserted state-based fraud and contract claims and federal and state claims for misappropriation and unfair competition; and (d) the addition of new claims under state law against the original and newly added Defendants. As such, on May 18, 2018, Plaintiffs filed a motion to amend the *Airquip* FAC ("2018 Motion") (Dkt. #134).

Defendants' principal opposition to the 2018 Motion was that amendment could not be sought at all, irrespective of the merits of the proposed amendments, because a deadline for amendments had already passed ("2017 Amendment Deadline"). Due to Defendants' position, in July 2018, the *Costello* Plaintiffs filed the *Costello* Action in order to preserve and prosecute their claims without awaiting a decision on Defendants' procedurally flawed argument.

On November 20, 2018, the Court entered an Order consolidating the *AirQuip* and *Costello* Actions for all purposes. (Dkt. #177) ("Consolidation Order").

On November 28, 2018, Judge Mix issued a Minute Order setting a Status Conference for December 19, 2018 ("Status Conference") and, in light of Plaintiffs' intention to file an amended consolidated complaint covering all claims raised and parties named in the *AirQuip* and *Costello* Actions, denied the 2018 Motion without prejudice. (Dkt. #183).

During the Status Conference, Judge Mix acknowledged that the *Costello* Plaintiffs could amend the complaint filed in the *Costello* Action as of right but instructed Plaintiffs, to the extent a consolidated complaint sought to amend the claims in the FAC, to file a motion to amend addressing the amendments related to the *AirQuip* FAC. *See* 12/19/18 Transcript of ("12/19/18 Tr.") at 14:25-16:5. Judge Mix further instructed Plaintiffs to highlight in any motion to amend which claims and allegations in the CAC are being re-pled from the *AirQuip* Action, and therefore subject to the Motion to the Amend, and which are from the *Costello* Action, and are being amended as of right. *Id.*  As such, Plaintiffs provided *supra* such an outline, and confirm that every CAC allegation in the CAC support Counts for which both leave is and is not required.

A clean version of the CAC is attached hereto as **Exhibit A** and a redlined version (redlined to the FAC) is attached hereto as **Exhibit B** pursuant to D.C.COLO.LCivR. 15.1(b).

ARGUMENT

A.    <u>Legal Standard</u>

Under the Federal Rules of Civil Procedure, the Court should freely grant a motion to amend the pleadings. Fed. R. Civ. P. 15 (a)(2).  "The purpose of the Rule is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).

In determining whether to grant a motion to amend, the Tenth Circuit considers several

factors including "whether the amendment will result in undue prejudice, whether the request was unduly and inexplicably delayed, was offered in good faith, or that the party had sufficient opportunity to state a claim and failed." *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990).

**B.     The CAC Asserts Viable Claims.**

In evaluating the futility of an amended pleading, the Court applies the same standard of legal sufficiency as under Rule 12(b)(6). *Church Mut. Ins. Co. v. Coutu*, 2018 U.S. Dist. LEXIS 22569, *15 (Dist. Colo. Feb. 12, 2018). Leave to amend may be granted when plaintiffs identify additional claims or facts that cure any identified pleading deficiencies.[2] The Motion to Amend should, therefore, be granted.

**1.     The CAC Properly Reasserts A RICO Claim in Count I.**

In the MTD Order, the Court dismissed the *AirQuip* Plaintiffs' RICO claim without prejudice, finding that the FAC did not sufficiently allege any actions by the non-defendant entities in furtherance of the RICO enterprise, noting that the FAC did not sufficiently allege that the non-defendant entities involved themselves in the affairs of the enterprise or engaged in any conduct outside their normal business practices. MTD Order at 9-10. The Court further held that although the FAC sufficiently pled that IAC and HA, as separate legal entities, constituted an association-in-fact enterprise, the FAC did not include specific allegations that IAC committed wire fraud and therefore dismissed the RICO claim against IAC. *Id.* at 10-12.

The CAC cures the deficiencies by providing additional allegations which support the

---

[2] *See AW Land Co., LLC v. Anadarko E&P Co. LP,* 2011 U.S. Dist. LEXIS 79516 (Dist. Colo. July 21, 2011)(granting motion to amend where proposed amended complaint cured the deficiencies identified by the Court in its order dismissing three claims).

existence of an association-in-fact enterprise.  The enterprise consists of IAC, HA and ANGI at the helm of the enterprise acting in concert with proposed Defendants CDVM, Venture Street, and CraftJack and the RICO Non-Parties to implement a scheme to generate revenue by signing HSPs up for HA memberships under fraudulent pretenses, generating sham Leads and collecting money from the HSPs for the sham Leads.[3]  (¶¶ 459-483)

        a.      **The CAC Adequately Alleges That IAC Controlled The Enterprise Through HA**

The CAC includes detailed allegations demonstrating IAC's active direction and control over HA's[4] efforts to further the enterprise's common purpose.[5]  IAC has publicly stated in the Transaction documents that it exerts full operational control over HA's business operations.  (¶¶ 413-426).

---

[3] *See Coutu, supra*, at \*24 ("Allegations of two separate entities joining together, in addition to several other entities or persons, to conduct racketeering activity can be sufficient to establish an association-in-fact enterprise.") (citation omitted).

[4] ANGI and HA are effectively a singular entity and do not operate as separate corporations. (¶¶ 413-426) As such, any act or conduct asserted with respect to HA should be deemed to apply equally to ANGI.

[5] *Blue Cross & Blue Shield of N.J., Inc. v. Phillip Morris, Inc.* 113 F. Supp. 2d 345, 367 (E.D.N.Y. 2000)("RICO liability extends not only to the defendant that pulled the trigger, but also to the defendants that ordered and directed it.").



The CAC's allegations regarding IAC's active direction of HA's fraudulent conduct plead a RICO violation against IAC <u>and</u> satisfy the predicate act requirement of RICO because it was foreseeable that the mail and wires would be used in furtherance of the scheme.[6]

**b.**     <u>**The Third-Party Participants of the association-in-fact enterprise**</u>

The CAC cures the Court's concerns with the RICO allegations in the FAC against the RICO Non-Parties by providing additional facts demonstrating that these participants were aware of and participated in perpetrating HA's fraudulent business model, involved themselves in the affairs of the enterprise, shared the profits from the scheme and engaged in conduct outside of their normal business practices. *See* MTD Order at 10 citing *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreens Co.,* 719 F.3d 849, 854-

---

[6] *See Blue Cross,* 113 F. Supp. 2d at 368. (parent corporation's active direction of a subsidiary's fraudulent conduct was sufficient to raise a material question as to whether the parent was indirectly and knowingly involved in directing the affairs of the enterprise.); *Coutu,* supra, at *20-21, ("a perpetrator may be guilty of mail or wire fraud without personally effecting the mailing or wiring if she 'does an act with knowledge that the use of mail [or wire] will follow ...or where such use can reasonably be foreseen'"); *Martin Hilti Family Trust v. Knoedler Gallery, LLC,* 137 F. Supp. 3d 430, 479-480 (S.D.N.Y. 2015) (same)

855 (7th Cir. 2013) (noting that sharing the profits of the scheme among the participants or engaging in conduct outside the normal course of business supports the inference that an entity had a part in operating or managing the affairs of the association-in-fact enterprise.) Here, the participants in the enterprise include, Lead Generators and Debt Collection Agencies.

The CAC alleges that the Lead Generators were responsible for procuring the bogus Leads for the enterprise. (¶92).



The CAC also demonstrates that the Debt Collection Agencies engaged in conduct outside of their normal business practices and took actions in furtherance of the enterprise.[7]

---

[7] *See Wood v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 152196, *15-16 (D.Colo. Oct. 2, 2013)(finding that plaintiffs' allegations that Wells Fargo colluded with appraisers was outside of the defendant's normal business affairs and sufficiently plead an enterprise for



**2.    The CAC Properly Seeks To Add New Defendants Who Were Co-conspirators with HA and IAC.**

The CAC in Counts I, II and IV also seeks to add four new Defendants whose roles in perpetuating HA's fraudulent conduct came to light, after the filing of the FAC, through discovery, IAC's and ANGI's public filings, and outreach by HSPs to Plaintiffs' Counsel.[10] It is Plaintiffs' position that the *Costello* Plaintiffs can properly assert claims against ANGI, CDVM, VentureStreet and CraftJack without seeking leave of Court. However, to the extent the Court determines the *AirQuip* Plaintiffs need to seek leave to assert claims against these new

---

purposes of asserting a RICO claim.)

[8] *See George v. Urban Settlement Servs.*, 833 F.3d 1242, 1250 (10th Cir. 2016) (allegations that the relationship between BOA and Urban enhanced the enterprise's ability to thrive and avoid detection were sufficient to plausibly allege an association-in-fact enterprise.)

[9] *See id.* at 1253 (having a part in directing the enterprise's affairs van be accomplished by making decisions on behalf of the enterprise or by knowingly carrying them out).

[10] *See Wornicki v. Brokerpriceopinion.com, Inc.*, 2016 U.S. Dist. LEXIS 6524 (D. Colo. Jan. 20, 2016)(granting plaintiffs' motion to amend to add parties where plaintiffs identified new defendants through discovery in the action.)

Defendants, Plaintiffs address it here.

ANGI became HA's new parent company after the Transaction closed in September 2017. As a result of the Transaction and the continuing wrongs, ANGI is a proper Defendant for the *AirQuip* Claims. (¶¶ 23, 413-426).



**CDVM and Venture Street** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**CraftJack** is an IAC affiliate. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### 3. Count III of the CAC Properly Asserts A Claim for Aiding and Abetting Fraud Against IAC.

In the MTD Order, the Court found that the FAC did not identify a single false or misleading statement made by IAC and dismissed the claim for fraud against IAC without prejudice. MTD Order at 17-18. Plaintiffs do not replead a claim for fraud against IAC. Instead, Count III of the CAC asserts claims against IAC for aiding and abetting fraud/fraudulent

omission.<sup>11</sup>

The CAC alleges that IAC knew that HA:

 IAC's knowing and substantial assistance in the fraud stems from its public acknowledgements that it controls HA's day-to-day operations, its provision of over one-quarter of a billion dollars for HA's marketing and sales force.

### 4. The CAC Properly Seeks to Add New State Law Claims On Behalf of the *AirQuip* Plaintiffs

Counts XXXI-XXXIV and Counts XL-XLIV of the CAC assert claims on behalf of subclasses represented by the *AirQuip* Plaintiffs alleging violations of state common law fraud, aiding and abetting fraud, breach of implied contract, unjust enrichment and statutory claims under Indiana and New York laws. In addition, the CAC seeks to add Plaintiff DaSilva as a class representative for the claims brought under Florida statutory and common law (in Counts XVI-

---

<sup>11</sup> *See Medved v. Deatley,*, 2013 U.S. Dist. LEXIS 129792 *23  (D.Colo. Sept. 11, 2013)(a defendant will be liable for aiding and abetting fraud if he is generally aware of his role in the commission of fraud and knowingly and substantially assists in the fraud).

XX) which were brought in the *Costello* Action ("State Law Claims").  It is important to note that the HA did not move to dismiss Count III of the FAC asserting claims for Fraud (MTD Order at 16 n.6), which was grounded on the facts and allegations – now augmented in the CAC - that form the basis for the State Law Claims.[12] (*See, e.g.* ¶¶ 209-211)

The facts that support the State Law Claims include that in agreeing to sign-up for a HA Membership, the Plaintiffs relied upon HA's materially false and misleading statements including, among other things, that:

- the Leads are vetted, qualified and verified (*See e.g.* ¶¶ 9-11, 221, 223, 225);

- Leads would only be for services and from geographical areas selected by the Plaintiffs (*See e.g.* ¶ 210);

- HA would provide a refund for any bad Leads (*See e.g.* ¶ 221); and,

- Every time an HSP resets their Lead budget or places their Leads on hold, HA resets the amount spent towards their budget to $0 (*See e.g.* ¶ 201).

Plaintiffs were charged for Leads that consisted of false contact information, unanswered phone numbers, services that they did not offer, and geographical areas that they did not service.  (*See e.g.* ¶¶ 209, 210, 211).  In addition, HA refused to provide refunds or grant credit requests for bogus Leads and exceeded their monthly Lead budgets. (*See e.g.* ¶¶ 271, 272).

Plaintiffs' experiences mirror those of hundreds of HSPs whose victimization is documented in Appendix I to the CAC.  As such, the *AirQuip* Plaintiffs and the members of the Florida, Indiana and New York subclasses were similarly victimized by the fraudulent and deceptive business practices employed by Defendants.  Good cause exists to grant the Motion to Amend to allow for the addition of the *AirQuip* Plaintiffs' State Law Claims in Counts XVI-XX,

---

[12] *See e.g. Stark v. Nordyne, LLC*, 2014 U.S. Dist. LEXIS 189248, *11(S.D.F.L. Nov. 14, 2014)(a claim for deceptive or unfair trade practices is similar to a claim of fraud).

XXXI-XXXIV and Counts XL-XLIV based on the newly-acquired information.

**C.**     **Defendants Will Not Be Prejudiced By the Amendment.**

The question of prejudice focuses on whether "amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'" *Sunflower Condo. Ass'n v. Owners Ins. Co.*, 2017 U.S. Dist. LEXIS 203242, *25 (D. Colo. Dec. 11, 2017) (citation omitted).   "This occurs most often 'when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant factual issues.'"  *Id.*  No such hardship exists for Defendants and they are not "unfairly disadvantaged or deprived of the opportunity to present facts or evidence." *Bray v. Sun Life & Health Ins. Co.*, 2010 U.S. Dist. LEXIS 95106, *7 (Dist. Colo. Aug. 23, 2010) (citation omitted).

The factual allegations for which leave is sought in the CAC arise out of the same or substantially similar events asserted in the FAC and will not unfairly prejudice Defendants' ability to defend Plaintiffs' claims.   The CAC re-alleges, with more particularity, the same RICO, fraud, and unjust enrichment claims from the FAC.   The *AirQuip* Plaintiffs' new State Law Claims all arise out of the same wrongful fraudulent and deceptive business practices detailed in the FAC. The CAC, however, details with the requisite particularity the necessary facts as now secured from Defendants and third party discovery.

Importantly, discovery is still ongoing and, due to the delay in Defendants' production of discovery, on December 19, 2018, the Court reset the fact discovery deadline to August 31, 2019.   Even if Defendants required any discovery separate from what they already obtained based on the FAC, Defendants will have ample time to conduct any such additional discovery. Defendants are, therefore, not prejudiced by the timing of the amendment.

**D.**    **The 2017 Amendment Deadline Does Not Apply To The Instant Motion, and If It Did Good Cause Exists To Grant The Motion.**

The 2017 Amendment Deadline does not apply to the Motion to Amend for two reasons.

*First*, during the Status Conference Judge Mix acknowledged that all of the case management deadlines in the *AirQuip* Action were formally vacated by the Consolidation Order. Status Conference Tr. at 4:9-5:5. As such, Judge Mix, set January 18, 2018 as the new deadline for filing the CAC. Courtroom Minutes (Dkt. #210).

*Second*, the 2017 Amendment Deadline preceded: (1) Defendants' production of merits-related discovery by nearly three-months; (2) the Court's entry of the MTD Order by nine-months; and (3) Defendants' production of emails by a year.[13] Therefore, prior to the deadline, Plaintiffs did not have and could not have addressed the MTD Order, or incorporated relevant discovery in the CAC. The 2017 Amendment Deadline is inapplicable here.[14]

Assuming, *arguendo,* the Court had not vacated the 2017 Amendment Deadline, the *AirQuip* Plaintiffs have demonstrated good cause to modify the 2017 Amendment Deadline under Rule 16(b).[15] Learning of new information after the deadline to amend the pleadings generally constitutes good cause under Rule 16(b)(4). *Jenkins*, 2015 WL 6464437 at *6. Additionally, good cause for modifying the pleading amendment deadline has been found "in light of the ongoing discovery process." *Int'l Bhd. of Teamsters, Airline Div. v. Frontier*

---

[13] Pleading amendment deadlines set in scheduling orders require that parties conduct discovery efficiently and promptly. *See Granite Southlands Town Center LLC v. Alberta Town Center, LLC*, 2010 U.S. Dist. LEXIS 63954, *7 (D. Colo. June 8, 2010) ("deadlines to amend a party's pleading are set at the outset of the case to require [parties] to prioritize their discovery").

[14] *See Jenkins v. Duffy Crane and Hauling, Inc.*, 2015 WL 6464437, at *6 (D. Colo. Oct. 27, 2015) (rigid adherence to the pretrial scheduling order is not advised).

[15] "Good cause" means that scheduling deadlines cannot be met despite a Plaintiffs' diligent efforts. *See Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001) (internal citations omitted).

*Airlines*, 2012 U.S. Dist. LEXIS 70902, at *7, 11 (D. Colo. May 22, 2012) (the Court was "reluctant to refuse an extension of the amendment deadline considering the parties' ongoing discovery disputes which obviously [] delayed production, as well as the District Judge's denial of Claims [] explicitly without prejudice").

Consistent with *Int'l Bhd. of Teamsters*, Plaintiffs' diligent efforts, the parties' ongoing discovery disputes, and the Court's dismissal of claims *without* prejudice nine-months after the 2017 Amendment Deadline, warrant good cause.

### CONCLUSION

For the foregoing reasons, the *AirQuip* Plaintiffs respectfully request that the Court grant the Motion to Amend.

Respectfully submitted this 18th day of January 2019.

SHERMAN & HOWARD, L.L.C.
Gordon W. Netzorg
Mark W. Williams
Carla R. Martin
633 17th Street, Suite 3000
Denver, CO 80202
Phone: 303-299-8381
Fax: 303-298-0940
gnetzorg@shermanhoward.com
mwilliams@shermanhoward.com
cmartin@shermanhoward.com

*Attorneys for Plaintiffs*

CHIMICLES SCHWARTZ KRINER
& DONLADSON-SMITH LLP

*/s/ Nicholas E. Chimicles*
Nicholas E. Chimicles
Kimberly M. Donaldson Smith
Scott M. Tucker
Stephanie E. Saunders
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA 19041
Phone: 610-642-8500
Fax: 610-649-3633
nec@chimicles.com
kds@chimicles.com
scotttucker@chimicles.com
ses@chimicles.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2019, I electronically filed the foregoing *AIRQUIP PLAINTIFFS' MOTION FOR LEAVE TO FILE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT* with the Clerk of the Court using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Nicholas E. Chimicles*
Nicholas E. Chimicles