# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 16-cv-01849-PAB-KLM
(Consolidated with Civil Action No. 18-cv-01802-PAB-KLM)

In re HOMEADVISOR, INC. LITIGATION

---

**HOMEADVISOR, INC., IAC/INTERACTIVECORP, AND ANGI HOMESERVICES, INC.'S PARTIAL MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

---

HomeAdvisor, Inc. ("HomeAdvisor"), IAC/InterActiveCorp ("IAC"), and ANGI Homeservices Inc. ("ANGI") (collectively, "Defendants") move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss in part Plaintiffs' Consolidated Amended Class Action Complaint ("CAC") (Dkt. 279).

**CERTIFICATE OF CONFERRAL**

Pursuant to the Court's Civil Practice Standard III.F.2.a., Defendants certify that they held a telephonic meet and confer with Plaintiffs' counsel prior to filing this motion to discuss the CAC's deficiencies described below. Plaintiffs disagree with Defendants' characterization of the CAC and bases for this motion, which they intend to oppose.

**INTRODUCTION**

After years of litigation, Defendants' production of hundreds of thousands of pages of documents, and significant deposition discovery, certain key claims and liability theories of Plaintiffs' CAC remain deficient for the same reasons this Court cited in dismissing in substantial

part plaintiff Airquip's Amended Complaint over two years ago.[1] Plaintiffs' RICO allegations have increased in quantity but not quality, and continue to describe only legitimate contractual relationships among affiliated entities and/or third parties interested in growing their respective businesses. Plaintiffs also again impermissibly seek to hold liable defendant IAC, a parent company, based upon the alleged actions of its subsidiaries. And Plaintiffs' Lanham Act and unfair business practices claims premised on a supposed "website hijacking" theory fail because Plaintiffs do not, and cannot, allege any Defendant established the web domains at issue.

## ARGUMENT

### I. PLAINTIFFS STILL FAIL TO STATE A RICO CLAIM

The Court previously ruled that Plaintiffs failed to plead the threshold RICO elements of predicate "conduct" of a sufficient RICO "enterprise." *Airquip, Inc. v. HomeAdvisor, Inc.*, 2017 WL 4222618, at *4-6 (D. Colo. Sept. 21, 2017) (Brimmer, C.J.). Offering bloat over substance, the CAC's long-winded description of ordinary business relationships among supposed "co-conspirators" still fails to plausibly allege both these elements, or any "pattern" of racketeering activity. *See id.* at 4 ("A claim for civil RICO pursuant to 18 U.S.C. § 1962 must allege: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'").

#### A. Plaintiffs Fail to Allege an Actionable RICO Enterprise

The gist of Plaintiffs' case is that defendant HomeAdvisor, an online marketplace that matches "Home Service Providers" ("HSPs") like Plaintiffs with homeowners seeking such

---

[1] On July 19, 2016, Airquip, Inc. ("Airquip") filed a putative class action complaint bearing the above case number. (Dkt. 1). Airquip, Kelly DaSilva, and Nicole Gray filed an Amended Complaint on November 14, 2016 (Dkt. 32), which this Court dismissed in part on September 21, 2017 (Dkt. 104). On September 25, 2019, this Court granted Plaintiffs' motion for leave to file the CAC (Dkt. 278), and the CAC was filed on the same date (Dkt. 279).

2

services, has engaged in allegedly fraudulent conduct in connecting HSPs with homeowners and in debiting and crediting HSPs' accounts. CAC ¶¶ 1-8. HomeAdvisor is an indirect subsidiary of defendant IAC, "a media and Internet company that owns more than 20 operating businesses comprising over 150 brands and products." *Id.* ¶¶ 21-22. ANGI is an IAC subsidiary, and the holding company for HomeAdvisor and non-party Angie's List. *Id*. ¶ 23. Defendant CraftJack is an indirect IAC subsidiary that offers a "third-party lead generation service" for HSPs. *Id.* ¶ 26.

As before, Plaintiffs attempt to allege an "association-in-fact" RICO enterprise, *id.* ¶ 465, comprised of various entities with an allegedly "common purpose: to generate revenue through HomeAdvisor by signing up HSPs, and generating sham Leads and collecting money from HSPs for sham Leads," *id.* ¶ 470.[2] Plaintiffs allege that the enterprise consists of Defendants "IAC, ANGI, HomeAdvisor, CDVM, VentureStreet and CraftJack," *id.* ¶ 465, along with a raft of other entities and "John Does," including:

- "the businesses and persons who sold leads to HomeAdvisor, including CDVM, VentureStreet, CraftJack, One Planet, Triares, Modernize, Meredith, Reed Badra and John Does";

- "the businesses and persons utilized by HomeAdvisor to collect monies from HSPs for the bogus Leads, including CMI, GGR, Phoenix Financial Services, LLC, MBW, and John Does"; and

- "the businesses and persons, that utilize the HSPs' business names and identities to divert business away from the Lanham Act Class Members."

*Id.* ¶¶ 466-68.

---

[2] This characterization of a supposedly improper "purpose" is substantively indistinguishable from the one that undergirded the *Airquip* Plaintiffs' previously-dismissed RICO claim. *See Airquip*, 2017 WL 4222618, at *4 (noting the common purpose alleged in the Airquip pleading as: "generat[ing] revenue through HomeAdvisor by signing up Home Service Professionals and collecting money from Home Service Professionals for sham Leads").

3

Where, as here, "an alleged enterprise is really nothing more than a defendant corporation and its affiliates and associates conducting normal business affairs, RICO liability does not attach." *Marlow v. Allianz Life Ins. Co. of N. Am.*, 2009 WL 1328636, at *5 (D. Colo. May 12, 2009). RICO "liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis in original).

The Court previously found the *Airquip* complaint "devoid of any reference to actions in furtherance of the alleged enterprise by any non-defendant entity." *Airquip*, 2017 WL 4222618, at *5. So too is the CAC. Plaintiffs simply describe the expected workings of diverse corporate entities engaged in legitimate, ordinary-course business with each other. *See* CAC ¶¶ 86-87, 92 (lead generators "are in the business of generating consumer contact information for a variety of industries" ; ¶ 88 ; ¶¶ 35-38, 320-21 (debt collection agencies "collect monies from HSPs" and .[3] Indeed, as to the unnamed "businesses and persons"

---

[3] Plaintiffs' wholly conclusory allegation that sufficient to tie collection agencies into a RICO scheme, collection agencies would be RICO defendants as a matter of course. Although Plaintiffs contend three other debt collection agencies—GGR, Phoenix Financial Services, LLC, and MBW, *id.* ¶ 467—participated in the alleged RICO scheme, the CAC lacks even a single substantive allegation as against Phoenix.

4

that allegedly "divert business away from the Lanham Act Class Members," Plaintiffs refer to entities so far removed from each other that Plaintiffs cannot even identify them. *Id.* ¶¶ 8, 468 (defining the Lanham Act Defendants as "HomeAdvisor[ ] and John Does").

The only reasonable inference to be drawn from the CAC's allegations is, again, that "the non-[D]efendant entities are independent and merely engage in commercial transactions with [HomeAdvisor]." *Airquip*, 2017 WL 4222618, at *5. At most, Plaintiffs' descriptions of the relationships "show different subsets of the group pursuing their own ends separately." *Nelson v. Nelson*, 833 F.3d 965, 968 (8th Cir. 2016) (affirming dismissal of RICO claim where allegations against individuals and entities comprising alleged enterprise did not establish that they functioned as a continuing unit). Such allegations remain un-actionable. *See Airquip*, 2017 WL 4222618, at *5; *see also Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1354-55 (11th Cir. 2016) (dismissing RICO claim because similar allegations suggested only that non-defendant entities "were engaged in no more than a series of legitimate commercial transactions").

Similarly, Plaintiffs' allegations of a RICO enterprise among the Defendants "demonstrate nothing more than an enterprise, *i.e.,* the [IAC] 'corporate family,' acting in the normal course of business." *Marlow*, 2009 WL 1328636, at *6. *See* CAC ¶¶ 86, 88, 109 (CraftJack is "a competitor of HomeAdvisor" ███████████████████ "over ██ lead generator companies"); ¶¶ 389-427 (IAC and ANGI have profited from their affiliation with HomeAdvisor); ¶¶ 391-97 (IAC helped make HomeAdvisor a profitable business); ¶ 401 ████████████████

---

████████████████████████████████—could not have alerted GGR to any fraudulent activity. Finally, the only substantive allegation against MBW is that it sent a collection notice to plaintiff DaSilva containing two allegedly inaccurate statements, which is hardly suggestive of fraud. *Id.* ¶ 323.

5

███████████████████████████; ¶¶ 403-04, 406 ████████████████████████████

████████████████████████████; ¶ 407 █████████████████████████████████, ¶¶

408-09 ███████████████████████████████████; ¶ 413 (IAC benefitted from the

transaction with ANGI). Such "allegations do nothing more than define a legitimate corporate and financial relationship between [HomeAdvisor, ANGI, and CraftJack] and [their parent] company," IAC. *Brannon v. Boatmen's First Nat. Bank of Oklahoma*, 153 F.3d 1144, 1148 (10th Cir. 1998). "Dramatically expanding RICO liability because of a business organization choice makes little sense from a policy perspective," and allowing Plaintiffs' enterprise theory to proceed in this case would lend ordinary business relationships among corporate affiliates the sinister cast of a vast criminal enterprise. *Id.* at 1147. Moreover, "[l]imiting RICO liability when a parent corporation controls an 'enterprise' that is nothing more than its corporate family makes particular sense given that such a situation is a far cry from the 'prototypical' RICO case where 'a person bent on criminal activity seizes control of a previously legitimate firm and uses the firm's resources, contacts, facilities, and appearance of legitimacy to perpetrate more, and less easily discovered, criminal acts than he could do in his own person.'" *Marlow*, 2009 WL 1328636, at *5. In short, running a business is not the same as running a racket.

Regardless, Plaintiffs have not plausibly alleged that Defendants' normal corporate operations furthered the purported RICO enterprise's "common purpose: to generate revenue through HomeAdvisor by signing up HSPs, and generating sham Leads and collecting money from HSPs for sham Leads." CAC ¶ 470. While this Court previously held that the "parent/subsidiary relationship between HomeAdvisor and IAC does not prevent a finding of distinctiveness given the allegation of an association-in-fact enterprise," *Airquip*, 2017 WL 4222618, at *5, here the

6

only factual allegations that relate to the alleged scheme to generate revenue via sham leads are those directed at *HomeAdvisor's* conduct. "[N]one of those things were done by, or attributable to, the group as a whole." *Nelson*, 833 F.3d at 968. Plaintiffs thus have not pleaded that Defendants constitute an association-in-fact enterprise, namely "a continuing unit that *functions with a common purpose*." *Boyle v. United States*, 556 U.S. 938, 948 (2009) (emphasis added).

### B.  Plaintiffs Have Not Remedied Their Insufficient Wire Fraud Allegations, and Fail to Establish Any "Pattern" of Racketeering Activity

Plaintiffs' RICO claims also must be dismissed because the CAC still fails to adequately plead wire fraud as a predicate act, and fails to allege any particularized pattern of racketeering activity. *See Airquip*, 2017 WL 4222618, at *5 ("As noted by IAC, plaintiffs' RICO allegations regarding wire fraud . . . refer generally to 'defendants' and make no specific allegations regarding IAC. Such allegations are insufficient to allege that IAC committed wire fraud."). "Where RICO claims under § 1962(c) are asserted against multiple defendants, a plaintiff must allege at least two predicate acts by *each defendant*." *Kamal v. Cty. of Los Angeles*, 2019 WL 2502433, at *10 (C.D. Cal. May 2, 2019) (emphasis added), *report and recommendation adopted*, 2019 WL 2501478 (C.D. Cal. June 17, 2019). The CAC still fails to connect wire fraud allegations to particular defendants, leaving Defendants (and the Court) to speculate as to which allegations of wire fraud are asserted against which defendant(s). *See* CAC ¶ 475 *et seq*. In fact, defendants IAC, CDVM, Venture Street, and CraftJack are not even mentioned in the section of the CAC titled "Wire Fraud" that purportedly enumerates alleged wire fraud violations. *See id.*

The CAC does not approach satisfying Plaintiffs' burden to "plead facts showing: '(i) Defendants engaged in a scheme to defraud by means of false pretenses; (ii) the Defendants acted

7

Case 1:16-cv-01849-PAB-KLM   Document 289-1   Filed 10/23/19   USDC Colorado   Page 9 of 17

with the requisite intent to defraud; and (iii) the scheme contemplated the use of . . . wire transactions.'" *Airquip*, 2017 WL 4222618, at *5. Because Plaintiffs' "RICO allegations regarding wire fraud . . . refer generally to 'defendants' and make no specific allegations regarding IAC [or ANGI]," such "allegations are insufficient to allege that IAC [or ANGI] committed wire fraud." *Id.*[4]

### C.   Plaintiffs' RICO Claim Cannot Survive Solely Against HomeAdvisor

Given Plaintiffs' inadequate allegations respecting the non-Defendant entities, and Plaintiffs' failure to plead wire fraud against Defendants, "the question [once again] becomes whether [P]laintiffs' RICO claim can survive based solely on [P]laintiffs' allegations against HomeAdvisor." *Airquip*, 2017 WL 4222618, at *6. It cannot. RICO "requires that the 'person' conducting the enterprise's affairs be distinct from the 'enterprise.'" *Id.* Absent sufficient allegations tying other entities to the alleged scheme, HomeAdvisor again stands as the lone member of the claimed RICO enterprise.[5] "As a result, the 'person' conducting the enterprise's affairs (HomeAdvisor) is not distinct from the enterprise." *Id.* Accordingly, "Plaintiffs' RICO

---

[4] Moreover, even with this deficiency highlighted in the dismissal order, the CAC does not allege such purportedly fraudulent conduct by any entity other than HomeAdvisor. *See, e.g.*, CAC ¶ 57 ███████████████████████████████████████████; ¶ 60 ("***HomeAdvisor*** has designed its business so that the only way HSPs can sign up for its service are through telephonic sales calls."); ¶ 221 ("In addition to the barrage of emails, ***HomeAdvisor*** repeatedly pressured and harassed the McHenry Plaintiffs with relentless phone calls.") (emphases added).

[5] Because the CAC "shows only that the defendants had a commercial relationship, not that they had joined together to create a distinct entity for purposes of" facilitating the illicit conduct underlying Plaintiffs' RICO claim, *United Food & Commercial Workers Union & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013), the allegations cannot fairly support the necessary further inference that HomeAdvisor "conducted" the purported enterprise's affairs as opposed to simply its own.

claim against HomeAdvisor is [still] insufficient." *Id.* There is no basis for departure from the Court's previous ruling that Plaintiffs have not stated an actionable RICO violation.

## II. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE LANHAM ACT AND STATE LAW PREMISED ON "WEBSITE HIJACKING"

The Court should dismiss Plaintiffs' Lanham Act claims against HomeAdvisor for false association, false advertising, and trademark infringement (Counts XLIX and L) and their unfair competition claims (Counts LI, LII, LIII, LIV, LV, LVI, and LVII) to the extent they are premised upon a supposed "website hijacking" theory.[6] *See* CAC ¶ 388. To state a Lanham Act claim for false association, the plaintiff must show the defendant's affirmative use of the plaintiff's mark. *See Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 230 (3d Cir. 2017). To state a Lanham Act claim for false advertising, the plaintiff must show that "the defendant caused [a] false statement to enter interstate commerce." *Logan v. Burgers Ozark Country Cured Hams, Inc.*, 263 F.3d 447, 462 (5th Cir. 2001). Plaintiffs fail to plead either element to support these claims.

Plaintiffs contend that HomeAdvisor and John Does violated the Lanham Act and state laws by "diverting business from HSPs" through "website hijacking." CAC ¶ 388. According to Plaintiffs, "website hijacking" involves the use of "browser hijacking website domains" that "use the company names of current and former HomeAdvisor HSPs to redirect legitimate internet traffic and searches away from the HSP's business to HomeAdvisor's impersonation websites." *Id.* ¶ 378. Other than the limited allegation that plaintiff Hass, upon clicking on the roofing.zone domain and completing a form, received calls from HomeAdvisor HSPs (*id.* ¶ 381), Plaintiffs make no

---

[6] Plaintiffs allege that these claims are each premised upon "deceptive conduct" that allegedly "diverts business away from the HSPs." CAC ¶ 388. "Website hijacking" is one category of such alleged "deceptive conduct." *See id*.

9

allegations regarding any misappropriation or trademark infringement of any kind by HomeAdvisor in connection with the purported "website hijacking" scheme. Nor do Plaintiffs contend HomeAdvisor owned the allegedly problematic domains or had any control over or affiliation with the owners of those domains. *See id.* ¶¶ 378-85. Thus, Plaintiffs have not alleged that HomeAdvisor took any relevant action with respect to the alleged "website hijacking" scheme, and cannot pursue a Lanham Act claim premised on that theory.[7]

### III. PLAINTIFFS FAIL TO ALLEGE FRAUD-BASED CONDUCT BY IAC SUFFICIENT TO SUPPORT CLAIMS FOR AIDING AND ABETTING FRAUD AND UNFAIR BUSINESS PRACTICES[8]

This Court previously denied Plaintiffs' attempt to shoehorn IAC into this action based solely on the acts of its subsidiary, HomeAdvisor. *Airquip*, 2017 WL 4222618, at *8. The Court held that Plaintiffs' fraud claim against IAC failed because "none of the [allegations] cited by

---

[7] Because Plaintiffs have not alleged that HomeAdvisor was actually involved in the "website hijacking" scheme, their claims under the Colorado Consumer Protection Act (Count LII), Florida Deceptive and Unfair Trade Practices Act (Count LIV), Idaho Consumer Protection Act (Count LVI), for declaratory relief respecting that theory (Count LI), and common law unfair competition claims (Counts LIII, LV, LVII), each must fail. Generally, each of these statutes requires some affirmative conduct by the defendant that harmed the plaintiff, which Plaintiffs have failed to show as to the website hijacking scheme. *See, e.g.*, *Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92, 98 (Colo. 2011) (holding that plaintiff asserting claims under the Colorado Consumer Protection Act must show: "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.").

[8] In addition to the RICO claim, IAC moves to dismiss the following claims as against it: aiding and abetting fraud/fraudulent concealment (Counts III, VIII, XIII, XVIII, XXIII, XXVIII, XXXII, XXXVII, XLII), violation of California's Unfair Competition Law (Count V), false and misleading advertising under California statute (Count VI), and violation of the Florida Deceptive and Unfair Trade Practices Act (Count XVI).

10

plaintiffs identifie[d] any fraudulent conduct undertaken by IAC" as opposed to HomeAdvisor.[9] *Id.* In rejecting Plaintiffs' argument that HomeAdvisor's acts can be attributed to IAC via corporate veil-piercing, the Court held that "[n]one of [Plaintiffs'] arguments comes close to demonstrating that HomeAdvisor [lacks the requisite] 'legal or independent significance'" from IAC to justify such disregard of each entity's corporate form. *Id.* at *9 (citation omitted).

Because Plaintiffs once again do not (and thus presumably cannot) plead specific wrongful acts by IAC (as opposed to acts by its now-indirect subsidiary HomeAdvisor), they have jettisoned the "fraud" count entirely and repackaged it as claims for "aiding and abetting" fraud and unfair business practices under California and Florida statutes. But this new gloss does not avoid the key bar to suit against IAC: Plaintiffs must plausibly allege either affirmative action or knowing inaction by IAC with respect to the underlying conduct.[10] And Plaintiffs again fail to clear that hurdle, instead continuing to rely solely on alleged misconduct by **HomeAdvisor**. *See supra,* n.4.

---

[9] The Court dismissed Plaintiffs' fraud claim against IAC but not the claim for unjust enrichment. *Id.* at *7. Accordingly, IAC is not moving to dismiss Plaintiffs' claims for unjust enrichment/restitution (Counts IV, X, XV, XX, XXV, XXX, XXXIV, XXXIX, XLIV, XLVIII).

[10] *See, e.g., Sender v. Mann*, 423 F. Supp. 2d 1155, 1176 (D. Colo. 2006) ("Establishing the substantial assistance element of aiding and abetting requires that 'the secondary party proximately caused the violation, or . . . that the encouragement or assistance be a substantial factor in causing the tort.'") (citation omitted); *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1198 (N.D. Cal. 2016) ("To bring a claim [under] California's Unfair Competition Law . . . a plaintiff must show either an (1) unlawful, unfair, or fraudulent business act or practice, or (2) unfair, deceptive, untrue or misleading advertising.") (citations and quotations omitted); *Vega v. JPMorgan Chase Bank, N.A.*, 654 F. Supp. 2d 1104, 1116 (E.D. Cal. 2009) (claim under California statute for false and misleading advertising requires a statement concerning services "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading"); *State v. Beach Blvd Auto. Inc.*, 139 So. 3d 380, 393 (Fla. Dist. Ct. App. 2014) (a claim under the FDUTPA requires a showing of "(1) a deceptive act or unfair practice, (2) causation, and (3) actual damages").

11

Case 1:16-cv-01849-PAB-KLM Document 295 Filed 10/23/19 USDC Colorado Page 13 of 17

Plaintiffs' allegations against IAC describe nothing more than a traditional parent corporation attuned to its subsidiary's business and supportive of its growth and success. *E.g.*, CAC ¶ 248 ▮▮▮; ¶¶ 391-97 (alleging "IAC made capital contributions to HomeAdvisor" and endeavored to make HomeAdvisor profitable); ¶ 401 ▮▮▮; ¶ 402 ▮▮▮; ¶ 405 ▮▮▮; ¶ 406 ▮▮▮; ¶ 407 ▮▮▮. Such allegations of a parent corporation's routine oversight and monitoring of its subsidiary's affairs cannot support claims for aiding and abetting fraud or for unfair competition. That is, these allegations fail to show how IAC in any way provided the encouragement or assistance to HomeAdvisor *with respect to the allegedly fraudulent scheme* necessary to support Plaintiffs' aiding and abetting claims, much less any direct misconduct on IAC's part necessary to support Plaintiffs' claims for unfair business practices.

Indeed, holding parent corporations liable for acts of their subsidiaries based upon such commonplace operational review would render the corporate form largely meaningless and eviscerate the "basic principle of corporate law that a parent will not be held liable for the acts of its subsidiaries." *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 975 F. Supp. 2d 392, 401 (S.D.N.Y. 2013). Plaintiffs once again fail to "come close to demonstrating that HomeAdvisor [lacks the requisite] 'legal or independent significance'" from IAC to justify such disregard of each

12

entity's corporate form. *Airquip*, 2017 WL 4222618, at *9 (citation omitted). Put another way, Plaintiffs seek to hold IAC liable for exercising precisely the type of oversight responsibility that, as a publicly traded company, it has a fiduciary duty to its shareholders to exercise.

In the absence of any direct allegations against IAC, Plaintiffs' allegations again devolve into an implicit request that the Court pierce the corporate veil between HomeAdvisor and IAC. Any "request to pierce the corporate veil is governed by the law of the defendant company's state of incorporation." *Airquip*, 2017 WL 4222618, at *8. Here, that state is Delaware, where both HomeAdvisor and IAC incorporated, CAC ¶¶ 21-22, and "Delaware courts take the corporate form and corporate formalities very seriously . . . disregard[ing] the corporate form only in the 'exceptional case.'" *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 49 (Del. Ch. 2012) (quotations omitted). As this Court explained, "[t]o prevail on an alter ego claim under Delaware law, 'a plaintiff must show (1) that the parent and the subsidiary operated as a single economic entity and (2) that an overall element of injustice or unfairness is present.'" *Airquip*, 2017 WL 4222618, at *8 (citation omitted).

Plaintiffs here still fail to allege any facts "supporting an inference that the corporation, through its alter-ego, has created a **sham entity** designed to defraud investors and creditors," as required for purposes of veil piercing. *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003) (emphasis added). And "[m]ere dominion and control of the parent over the subsidiary will not support alter ego liability." *Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 729 (Del. Super. Ct. 1996). The CAC does not include any allegations suggesting HomeAdvisor was undercapitalized or insolvent, that corporate records were not properly kept, that officers and directors did not function properly, or that any other corporate formalities were

13

not observed, such that it can be said that "the corporation simply functioned as a facade for the dominant shareholder." *Airquip*, 2017 WL 4222618, at *9. Nor does the CAC allege any facts to support the second prong of Delaware's veil-piercing test—namely, "that an overall element of injustice or unfairness is present'" as a consequence of respecting the corporate form. *Id.* at *8. Notably, as with the prior complaint, "[t]he underlying cause of action, at least by itself, does not supply the necessary fraud or injustice" required to meet this prong. *Id.* at *9. Absent some element of "fraud or injustice" beyond the conclusory labels attached to IAC's conduct, any veil-piercing claim must fail.

## IV. PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

A court may dismiss a plaintiff's claims with prejudice where amendment would be futile. *See Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997). Here, the pleading deficiencies identified in this Court's prior order—issued over two years ago—persist in the CAC, demonstrating further amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (a plaintiff's "repeated failure to cure deficiencies by amendments previously allowed" provides grounds to dismiss with prejudice). Plaintiffs have conducted years of voluminous discovery, and still fail to plausibly allege their claims. Leave to "try yet again" would be particularly unwarranted given that the case is poised to proceed substantively under the current scheduling order. (Dkt. 261.) Fact discovery is scheduled to close in January, with expert reports due shortly thereafter, triggering a 45-day deadline to move for class certification and a 30-day deadline thereafter to file summary judgment motions. (*Id.*) Accordingly, Defendants respectfully request that the Court dismiss the challenged claims **with prejudice**.

14

## CONCLUSION

For the foregoing reasons, Defendants IAC, HomeAdvisor, and ANGI, respectfully request that the Court grant their Partial Motion to Dismiss the CAC.

Respectfully submitted on this 9th day of October, 2019.

| MICHAEL BEST & FRIEDRICH LLP | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
|---|---|
| Stephen J. Horace<br>Alexander C. Clayden<br>Ben Roxborough<br>1776 Lincoln Street, Suite 1100<br>Denver, CO 80203<br>Phone: 720-240-9515<br>Fax: 877-398-5240<br>sjhorace@michaelbest.com<br>acclayden@michaelbest.com<br>broxborough@michaelbest.com | By: /s/ Shon Morgan<br>Shon Morgan<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, CA 90017<br>Phone: 213-443-3000<br>Fax: 213-443-3100<br>shonmorgan@quinnemanuel.com |
| Evan S. Strassberg<br>2750 E. Cottonwood Parkway, Suite 560<br>Cottonwood Heights, UT 84121<br>Phone: 801-833-0550<br>Fax: 801-931-2500<br>esstrassberg@michaelbest.com | Stephen R. Neuwirth<br>Jennifer Barrett<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>Phone: 212-849-7000<br>Fax: 212-849-7100<br>stephenneuwirth@quinnemanuel.com<br>jenniferbarrett@quinnemanuel.com |
| Michelle L. Dama<br>One South Pinckney Street, Suite 700<br>Madison, WI 53703<br>Phone: 608-257-3501<br>Fax: 608-283-2275<br>mldama@michaelbest.com | |

*Counsel for Defendants HomeAdvisor, Inc., IAC/InterActiveCorp, and ANGI Homeservices, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2019, I electronically filed the foregoing **PARTIAL MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Gordon W. Netzorg
Mark W. Williams
Carla Martin
Sherman & Howard, L.L.C.
633 17th Street, Suite 3000
Denver, CO 80202
gnetzorg@shermanhoward.com
mwilliams@shermanhoward.com
cmartin@shermanhoward.com

Nicholas E. Chimicles
Kimberly M. Donaldson Smith
Stephanie E. Saunders
Russell C. Heller
Chimicles & Tikellis LLP
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA 19041
nec@chimicles.com
kds@chimicles.com
ses@chimicles.com
rch@chimicles.com

Scott M. Tucker
Chimicles & Tikellis LLP
2711 Centerville Road, Suite 201
Wilmington, DE 19808
scotttucker@chimicles.com

*Counsel for Plaintiffs*

                                                          */s/ Alexander C. Clayden*