IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 16-cv-01849-PAB-KLM
(Consolidated with Civil Action No. 18-cv-01802-PAB-KLM)

In re HOMEADVISOR, INC. LITIGATION

---

### ORDER

---

This matter is before the Court on Defendants C. David Venture Management, LLC and VentureStreet, LLC's Motion for Summary Judgment [Docket No. 519]. Plaintiffs responded, Docket No. 531, and defendants C. David Venture Management ("CDVM") and VentureStreet, LLC ("VentureStreet") (collectively, the "Venture Defendants" or "defendants") replied.  Docket No. 537.

## I.  BACKGROUND[1]

The Venture Defendants are marketing companies that operate websites for homeowners to find professional help with home service projects.  Docket No. 519 at 3, ¶ 1.  Plaintiffs are home service professionals ("HSPs") who provide such help.

The Venture Defendants attract homeowners through "pay-per-click" advertising on search engines like Google and Microsoft Bing.  *Id.*, ¶ 3.  Since 2012, the Venture Defendants have sold home service requests generated through their websites to HomeAdvisor, Inc. ("HomeAdvisor") pursuant to a contract (the "Agreement").  *Id.*, ¶ 2. A homeowner can create a service request on one of the Venture Defendants' websites,

---

[1] The following facts are undisputed unless otherwise noted.  The Court assumes the parties' familiarity with this dispute and will not detail the procedural history or background facts beyond what is necessary to resolve this motion.  Additional information can be found in previous orders.  *See, e.g.*, Docket Nos. 276, 387

which the Venture Defendants then sell to HomeAdvisor as set forth in the Agreement. *Id.* at 4, ¶ 5.[2]  The Venture Defendants, however, do not interact with HomeAdvisor's HSPs, do not know what representations HomeAdvisor makes to HSPs, and have no involvement or responsibility in HomeAdvisor's dealings with HSPs.  *Id.*, ¶ 6.[3]

The Agreement initially required HomeAdvisor to pay the Venture Defendants for each service request on a fixed-fee basis, but the Agreement was amended in December 2014 to replace the fixed-fee structure to a "revenue-share" model.  *Id.*, ¶¶ 7–8.  Under the amended agreement, HomeAdvisor pays the Venture Defendants a monthly fee equal to a percentage of the fees that HomeAdvisor "invoice[s]" for leads that originated with the Venture Defendants.  *Id.*, ¶ 9.

Plaintiffs are six HSPs who assert unjust enrichment claims against the Venture Defendants.  *Id.* at 5, ¶ 11.  They are: Airquip, Inc. ("Airquip"); Hans Hass; Charles

---

[2] The parties dispute how detailed the Agreement is; however, both plaintiffs and the Venture Defendants agree that the Venture Defendants are not required to verify the authenticity of service requests or the accuracy of homeowner contact information.  *See* Docket No. 531 at 2, ¶ 5; Docket No. 537 at 1–2, ¶ 5.

[3] Plaintiffs purport to dispute this fact, arguing that the Venture Defendants are aware of HomeAdvisor's business operations because Christopher David of CDVM traveled to HomeAdvisor's Denver, Colorado office "on more than one occasion . . . to discuss [his] theories about how the HomeAdvisor business operated."  Docket No. 531 at 2, ¶ 6.  This dispute is unsupported.  The fact that Mr. David may have shared his theories about HomeAdvisor's business does not mean that the Venture Defendants interacted with HSPs, knew what HomeAdvisor told HSPs, or were involved or responsible for HomeAdvisor's dealings with HSPs.  Plaintiffs also argue that Mr. David was "provided with insight into the representations [HomeAdvisor] made to [HSPs] about [HomeAdvisor's] leads."  *Id.*  For support, plaintiffs cite three emails, without any context, that appear to concern "credits" and "invoices" to HSPs, *see* Docket Nos. 531-3 at 2, 531-4 at 3, 531-5, but plaintiffs do not show how these emails contradict the representation that the Venture Defendants had no interaction with HSPs, did not know what HomeAdvisor represented to HSPs, and were not involved in or responsible for HomeAdvisor's dealings with HSPs.  Because plaintiffs' denial is unsupported, the Court deems this fact as admitted.

Costello; Kourtney Ervine; Bruce Filipiak; and Lisa LaPlaca. *Id.* Plaintiffs' unjust enrichment claims are based solely on the Venture Defendants' receipt of these fees from HomeAdvisor under the revenue-sharing Agreement; however, plaintiffs do not allege that the Venture Defendants were not contractually entitled to the payments. *Id.* at 4, ¶ 10.

Airquip is a heating and cooling contractor that is incorporated and operates exclusively in New York. *Id.*, ¶ 12. Airquip dealt with HomeAdvisor from New York. *Id.* Airquip purchased ten leads from HomeAdvisor, which originated from the Venture Defendants, for work in New York. *Id.*, ¶ 13.[4]

Hass owns a roofing business that is incorporated and operates primarily in New York, which is where he dealt with HomeAdvisor; however, he occasionally works in Pennsylvania. *Id.*, ¶ 14. Hass purchased two leads from HomeAdvisor that originated with VentureStreet for work in New York. *Id.*, ¶ 15.[5] He purchased no leads that originated with CDVM. *Id.*

Costello runs a construction business that is incorporated and operated exclusively in New Jersey, which is where he dealt with HomeAdvisor. *Id.* at 5–6, ¶ 16.

---

[4] Although plaintiffs do not dispute that Airquip operated exclusively in New York and that the leads that Airquip purchased stated that they were for work in New York, they dispute whether the leads that Airquip purchased were all actually for work in New York because the Venture Defendants did not verify the authenticity or accuracy of any lead that they sold to HomeAdvisor. Docket No. 531 at 3, ¶ 13. There is no dispute, however, that the Venture Defendants were not required to verify that information. *Id.* at 6–7, ¶ C. Thus, the fact that the Venture Defendants did not have to verify any lead does not support plaintiffs' denial that the leads that Airquip purchased were for work in New York. The Court therefore deems this fact admitted.

[5] Plaintiffs purport to dispute whether these leads were for work in New York because the Venture Defendants do not verify leads. Docket No. 531 at 3, ¶ 15. This dispute is unsupported as discussed previously.

Costello received one lead from HomeAdvisor, via VentureStreet, for work in New Jersey. *Id.* at 6, ¶ 17.[6] Costello purchased no leads that originated with CDVM. *Id.* After HomeAdvisor charged Costello's credit card for the leads that he received, including the one lead that he purchased from VentureStreet, Costello reversed the credit card charges, and he was credited for the leads that he purchased from HomeAdvisor. *Id.*, ¶ 18.[7]

Ervine ran a window-cleaning business that was incorporated and operated exclusively in Florida, which is where she dealt with HomeAdvisor. *Id.*, ¶ 19. Ervine purchased one lead from HomeAdvisor, for work in Florida, that originated with CDVM. *Id.*, ¶¶ 19–20. She purchased no leads that originated with VentureStreet. *Id.*, ¶ 20. The lead that Ervine purchased from HomeAdvisor led to two jobs from the same homeowner, for which Ervine earned $520. *Id.*, ¶ 21. Ervine does not claim that the Venture Defendants are retaining any funds at her expense. *Id.*, ¶ 22.[8] When asked at

---

[6] As with Airquip and Hass, plaintiffs dispute whether the leads that Costello purchased were all for work in New Jersey because the Venture Defendants do not verify leads, Docket No. 531 at 3, ¶ 17, but plaintiffs do not dispute that Costello's business operated exclusively in New Jersey and that the state listed in the lead was New Jersey. *Id.* This fact is deemed admitted.

[7] Plaintiffs admit that Costello's credit card reimbursed him and "reversed all [HomeAdvisor] charges." Docket No. 531 at 3–4, ¶ 18. However, plaintiffs "dispute whether and to what extent [VentureStreet] is still in possession of the portion of the lead fee" that Costello paid to HomeAdvisor, which paid VentureStreet pursuant to the Agreement. *Id.* This denial is not responsive to the undisputed fact that Costello was credited for the leads that he purchased.

[8] Plaintiffs purport to dispute this fact. In support of this fact, the Venture Defendants rely on plaintiffs' first interrogatory response, which was sworn, Docket No. 519-5 at 7–8, and Ervine's deposition. Plaintiffs' first interrogatory response, however, does not support that Ervine does not claim that the Venture Defendants are retaining funds at her expense. That interrogatory response merely reflects that Ervine purchased a lead for $18.23. *Id.* at 51. Ervine, however, testified that it was "correct"

her deposition whether she believes that the lead was worth $18.23, Ervine responded "[s]ure."  *Id.* at 7, ¶ 23.

Filipiak owns a home renovation business that is an Illinois corporation and operates exclusively in Illinois, which is where Filipiak dealt with HomeAdvisor.  *Id.*, ¶ 24.  Filipiak purchased one lead from HomeAdvisor, which originated with CDVM, for work in Illinois.  *Id.*, ¶ 25.  Filipiak purchased no leads that originated with VentureStreet.  *Id.*  Filipiak identified no funds that either of the Venture Defendants are unjustly retaining at his expense.  *Id.*, ¶ 26.[9]  Filipiak filed for bankruptcy on June 20,

---

that she did "not identify any amounts being unjustly retained" in plaintiffs' fourth interrogatory response.  Docket No. 519-9 at 9.  In support of their denial of this fact, plaintiffs cite to new interrogatory responses, which which were provided after the Venture Defendants moved for summary judgment.  Docket No. 531-8 at 11.  Although the second set of interrogatory responses show that Ervine paid $18.23 for the lead, of which CDVM received $10.03, *id.*, there is no indication that the responses were sworn. Federal Rule of Evidence 33(b)(3) requires interrogatories be answered "under oath." Moreover, although the non-moving party may rely on interrogatories in designating "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), unsworn statements do not meet this requirement.  *See, e.g.*, *Barnes v. United States*, 173 F. App'x 695, 697–98 (10th Cir. 2006) (unpublished) (citing *Small v. Lehman*, 98 F.3d 762, 764 n.5 (3d Cir.1996) (concluding that unsworn statements do not meet the requirements of "affidavits" and thus cannot be used to support motions for summary judgment or responses thereto), *overruled on other grounds by City of Boerne v. Flores*, 521 U.S. 507 (1997); *see also Echon v. Sackett*, No. 14-cv-03420-PAB-NYW, 2017 WL 4181417, at *4 (D. Colo. Sept. 20, 2017) ("The Response and surreply do not comply with 28 U.S.C. § 1746, and thus do not constitute evidence that can create factual disputes for the purpose of precluding summary judgment."), *report and recommendation adopted*, 2017 WL 5013116 (D. Colo. Nov. 1, 2017)*, aff'd sub nom. Villanueva Echon v. Sackett*, 809 F. App'x 468 (10th Cir. 2020) (unpublished); *Hayes v. Marriott*, 70 F. 3d 1144, 1148 (10th Cir. 1995) ("Unsworn affidavits do not raise factual issues precluding summary judgment") (citation omitted); *Stearns v. McGuire*, 154 F. App'x 70, 76 (10th Cir. 2005) (unpublished) (holding that a summary judgment opponent cannot create an issue of fact by distancing himself from an earlier sworn statement).  Because plaintiffs' response is not properly supported, the Court deems this fact admitted.

[9] Plaintiffs purport to dispute this fact based on their new, unsworn interrogatories, which the Court does not consider.  Accordingly, the Court deems this

2019 and was discharged from bankruptcy on September 19, 2019.  *Id.*, ¶ 27.  Before

filing for bankruptcy, Filipiak sought leave to amend his complaint in this matter to add

claims against the Venture Defendants.  *Id.*, ¶ 28.  Although Filipiak's bankruptcy

petition required him to disclose any pending claims, he did not disclose this litigation.

*Id.*, ¶ 29.[10]

      LaPlaca owns an interior design company that is incorporated and operates

exclusively in California.  *Id.* at 8, ¶ 30.  LaPlaca purchased eleven leads from

HomeAdvisor, which originated from the Venture Defendants, for work in California.  *Id.*,

¶ 31.[11]

      Each of the plaintiffs bought membership agreements from HomeAdvisor and

only paid HomeAdvisor.  *Id.*, ¶ 32.  No plaintiff communicated or dealt with the Venture

Defendants, relied on statements that the Venture Defendants made, or were aware of

the Venture Defendants' existence before becoming HomeAdvisor members.  *Id.*, ¶ 33.

---

fact admitted.

[10] Plaintiffs argue that the issue of whether Filipiak was "required" to disclose this litigation is a legal conclusion, not a material fact, and therefore the Venture Defendants' assertion violates the Court's Practice Standards, which require the movant to set forth "each material fact which the movant believes is not in dispute."  Docket No. 531 at 5, ¶ 29 (citing Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3(b)(i)).  Plaintiffs are mistaken.  The issues of whether the bankruptcy petition required Filipiak to disclose, for instance, "[c]laims against third parties, whether or not [he has] filed a lawsuit or made a demand for payment," and whether Filipiak checked "[n]o," *see* Docket No. 519-11 at 14, are ones of fact, not law.

[11] As with Airquip, Hass, and Costello, although plaintiffs do not dispute that LaPlata operated her business only in California, they dispute whether the leads were all for work in California.  Docket No. 531 at 6, ¶ 31.  They do not support this denial with any citation to record evidence, which the practice standards require.  *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3(b)(iv).  This fact is therefore deemed admitted.

Each of the plaintiffs learned of the Venture Defendants' existence through this litigation.  *Id.*, ¶ 34.

Mr. David, who lives in Virginia, owns all of CDVM and operates it from Virginia. Docket No. 531 at 6, ¶¶ A–B.  Mr. David also owns 70% of VentureStreet.  *Id.*, ¶ B. Robert Bowles owns the remaining 30% of VentureStreet, which he operates from Florida.  *Id.*; Docket No. 537 at 3, ¶¶ A–B.  As noted previously, the VentureStreet defendants do not verify information, such as homeowner contact information or homeowner interest, in the leads that they generate for HomeAdvisor.  *Id.* at 6–7, ¶ C. The leads are also not verified to ensure that they are not duplicative of other leads or otherwise deficient.  *Id.* at 7, ¶ D.

## II.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of

evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

## III.  ANALYSIS

### A.  Choice of Law

Before the Court can consider the merits of the parties' arguments, the Court must determine the law that the Court will apply in resolving this motion.  The Venture Defendants argue that the Court should apply each plaintiff's home-state law.  Docket No. 519 at 9–11.  Plaintiffs argue that the Court should apply Colorado law and that the Venture Defendants should be estopped from arguing otherwise because the Venture Defendants previously relied on Colorado law in their motion to dismiss.  Docket No. 531 at 7–9 (citing Docket No. 387 at 34 n.16).

This Court has explained that, when exercising supplemental jurisdiction over a state-law claim, such as the Court is exercising over the unjust enrichment claim here,

"the Court applies the substantive law of Colorado, the forum state, including its choice of law rules." *Barnett v. Surefire Med., Inc.*, 342 F. Supp. 3d 1167, 1173 (D. Colo. 2018) (citing *BancOklahoma Mortg. Corp. v. Cap. Title Co., Inc.*, 194 F.3d 1089, 1103 (10th Cir. 1999)).[12]

The Court also looks to the forum state's law to determine whether the doctrine of judicial estoppel applies. *See Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 874 F.2d 1346, 1363 (10th Cir. 1989); *Barnett*, 342 F. Supp. 3d at 1173.[13] In Colorado, judicial estoppel "normally applies to inconsistent factual positions rather than legal positions." *Arko v. People*, 183 P.3d 555, 560 (Colo. 2008) (citing *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996) ("[T]he position to be estopped must be one of fact rather than law or legal theory.")). The Colorado Supreme Court explained the doctrine as follows:

> [F]irst, the two positions must be taken by the same party or parties in privity with each other; second, the positions must be taken in the same or related proceedings involving the same parties or parties in privity with each other; third, the party taking the positions must have been successful

---

[12] The rule would be the same if the unjust enrichment claim were before the Court on diversity jurisdiction. *See id.* (citing *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009) ("Because this is a diversity action, we apply the substantive law of the forum state, including its choice of law rules." (quotation omitted))); *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941). However, a court should not engage in a choice-of-law analysis unless the court is exercising the choice of law would be dispositive. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 839 n.20 (1985) ("If the laws of both states relevant to the set of facts are the same, or would produce the same decision in the lawsuit, there is no real conflict between them.").

[13] Although plaintiffs cite this Court's order in *Cuin v. Adams Cnty. Bd. of Cnty. Comm'rs*, No. 10-cv-01704-PAB-MEH, 2011 WL 3236088, at *2 (D. Colo. July 28, 2011), for the elements of judicial estoppel, *see* Docket No. 531 at 8–9, *Cuin* applied federal judicial estoppel principles because the court was exercising federal-question jurisdiction. *See Cuin*, 2011 WL 3236088, at *1–2. Regardless, Colorado and federal judicial estoppel principles are the same. *Sec. Serv. Fed. Credit Union v. First Am. Mortg. Funding, LLC*, 861 F. Supp. 2d 1256, 1263 n.1 (D. Colo. 2012).

> in maintaining the first position and must have received some benefit in the first proceeding; fourth, the inconsistency must be part of an intentional effort to mislead the court; and fifth, the two positions must be totally inconsistent – that is, the truth of one position must necessarily preclude the truth of the other.

*Id.* (quoting *Estate of Burford v. Burford*, 935 P.2d 943, 948 (Colo. 1997)).  "The doctrine prevents a party from asserting inconsistent positions in the same or related litigation." *Buford*, 935 P.3d at 947.

Here, the first two judicial estoppel elements apply because the Venture Defendants cited Colorado law in their motion to dismiss in this same proceeding.  *See* Docket No. 313 at 13–14.  As to the third element, however, plaintiffs have identified no benefit that the Venture Defendants received in relying on Colorado law.  Rather than dismissing plaintiffs' unjust enrichment claim against the Venture Defendants, the Court, applying Colorado law, denied the Venture Defendants' motion.  Docket No. 387 at 38.  Plaintiffs do not fully address the fourth element, *see* Docket No. 531 at 8–9, which is fatal to their argument.  There is also no indication that the Venture Defendants have engaged in an "intentional effort to mislead" the Court.  *See Arko*, 183 P.3d at 560.  Because plaintiffs have failed to show the applicability of the third and fourth elements, the Court need not determine whether the other states' laws on unjust enrichment are "totally inconsistent" with Colorado's.  *See id*.  Accordingly, the Venture Defendants are not estopped from arguing that each plaintiff's home-state law should apply.

The fact that the Venture Defendants are not estopped from arguing that each plaintiff's home-state law applies, however, does not mean that the Court necessarily will apply that law to the unjust enrichment claim.  Instead, Colorado's choice-of-law

rules will dictate the applicable law.  *See Barnett*, 342 F. Supp. 3d at 1173–74.[14]

Colorado has adopted the choice-of-law approach of the Restatement (Second) of

Conflict of Laws (the "Restatement"), which requires a court to apply the substantive law

of the state having the "most significant relationship" to the issue.  *See id.* (applying

Restatement to unjust enrichment claim) (citing *Chemiti v. Kaja*, No. 13-cv-00360-LTB-

KMT, 2015 WL 585594, at *2 (D. Colo. Feb. 11, 2015); *Wood Bros. Homes, Inc. v.*

*Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (1979) (noting that "the objective of

the Restatement (Second) is to locate the state having the 'most significant relationship'

to the particular issue")).  In determining which state has the most significant

relationship to an issue in an unjust enrichment claim, the Court is guided by the factors

set forth in § 221 of the Restatement.  *See id.* at 1174 (citing *Galena Street Fund, L.P.*

*v. Wells Fargo Bank, N.A.*, No. 12-cv-00587-BNB-KMT, 2013 WL 2114372, at *6 (D.

Colo. May 15, 2013) (looking to Restatement (Second) § 221 for factors relevant to

restitution claims)).  Section 221 applies to "claims . . . based neither on contract nor on

tort, to recover for unjust enrichment" and lists five "contacts" to be taken into account in

determining the law applicable to an issue:

> (a) the place where a relationship between the parties was centered,
> provided that the receipt of enrichment was substantially related to the
> relationship, (b) the place where the benefit or enrichment was received,
> (c) the place where the act conferring the benefit or enrichment was done,
> (d) the domicil, residence, nationality, place of incorporation and place of
> business of the parties, and (e) the place where a physical thing, such as
> land or chattel, which was substantially related to the enrichment, was
> situated at the time of the enrichment.

---

[14] The Court finds that choice of law is dispositive because the elements of unjust enrichment and how each state applies those elements vary significantly.  *See, e.g.*, *Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 513–14 (D. Minn. 2014) (citing cases); *Powers v. Lycoming Engines*, 245 F.R.D. 226, 230-31 (E.D. Pa. 2007), *vacated on other grounds*, 328 F. App'x 121 (3d Cir. 2009) (unpublished).

*Id.* (quoting Restatement § 221).

The Venture Defendants argue that courts applying the "most significant relationship" test to nationwide unjust enrichment class actions apply the law of each plaintiff's home state.  Docket No. 519 at 10 (citing *Carney v. Force Factor, LLC*, 2016 WL 10998440, at *5–7 (D. Mass. May 16, 2016); *Fullerton v. Corelle Brands, LLC*, 2019 WL 4750039, at *12 (N.D. Ill. Sept. 30, 2019); *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2015 WL 3623005, at *30–31 (E.D. Pa. June 10, 2015)).  The Venture Defendants argue that the same should apply here because plaintiffs operated exclusively or nearly exclusively in their home states and the leads that they purchased were for work in their home states.  *Id.* at 10–11.  The Venture Defendants also highlight that the six plaintiffs brought unjust enrichment claims under those states' laws.  *Id.* (citing Docket No. 449 at 195–207, ¶¶ 515–77 (LaPlaca on behalf of a California class); *id.* at 219–20, ¶¶ 636–82 (Ervine on behalf of a Florida class); *id.* at 238–48, ¶¶ 732–86 (Filipiak on behalf of an Illinois class); *id.* at 255–74, ¶¶ 825–926 (Costello on behalf of a New Jersey class and Airquip on behalf of a New York class)).

Plaintiffs argue that Colorado has the most significant relationship because Colorado is where HomeAdvisor is headquartered, received leads from the Venture Defendants, distributed leads to plaintiffs, charged and received payment from plaintiffs, and paid the Venture Defendants pursuant to the Agreement.  Docket No. 531 at 10–11.  Plaintiffs also note that the Agreement between HomeAdvisor and the Venture Defendants contains a Colorado choice-of-law provision.  *Id.* at 11.  Plaintiffs, however, provide no authority for a court applying the law of the home state of the intermediary or third-party through which the alleged enrichment passed.

The Venture Defendants have the better argument.  The undisputed facts show that no plaintiff had any interaction with the Venture Defendants in Colorado or anywhere else.  Thus, the first factor – the place where the relationship between the parties, namely, plaintiffs and the Venture Defendants was centered – supports neither Colorado nor plaintiffs' home-state law.  The second factor – the place where the enrichment was received – supports applying Virginia and Florida law, which is where CDVM and Venture Street are operated, but no party argues that the Court should apply Virginia or Florida law for that reason.  Thus, the Court affords the second factor little weight.  The third factor – the place where the act conferring the enrichment was done – strongly supports applying plaintiffs' home-state law because that is where plaintiffs' purchased the leads that they claim unjustly enriched the Venture Defendants.  The fourth factor – the place of business of the parties – supports applying either plaintiffs' home-state law or Virginia and Florida law.  Because no party argues for the application of Virginia or Florida law for that reason, however, the Court finds that the fourth factor supports applying plaintiffs' home-state law.  The fifth factor – the place where a physical thing related to the enrichment was situated – does not apply here.  Considering all of the factors of the most significant relationship test, it is appropriate to apply each plaintiff's home-state unjust enrichment law, as other courts have done in similar unjust enrichment cases brought by a nationwide class of plaintiffs.

### B.  Airquip and Hass

Plaintiffs Airquip and Hass operate in New York, exclusively in the case of Airquip and primarily in the case of Hass, and dealt with HomeAdvisor from New York.

Docket No. 519 at 5, ¶¶ 12, 14.  Airquip and Hass purchased leads from HomeAdvisor that originated with the Venture Defendants for jobs in New York.  *Id.*, ¶¶ 13, 15.

To state a claim for unjust enrichment under New York law, a plaintiff must plead "that [1] the defendant was enriched [2] at the plaintiff's expense and [3] that equity and good conscience require the plaintiff to recover the enrichment from the defendant." *See Moshik Nadav Typography LLC v. Banana Republic, LLC*, 2021 WL 2403724, at *2 (S.D.N.Y. June 10, 2021) (applying New York law) (quoting *Giordano v. Thomson*, 564 F.3d 163, 170 (2d Cir. 2009)).  "Unjust enrichment 'is available only in unusual situations when . . . circumstances create an equitable obligation running from the defendant to the plaintiff.'"  *Cohen v. BMW Invs. L.P.*, 668 F. App'x 373, 374 (2d Cir. 2016) (unpublished) (applying New York law and quoting *Corsello v. Verizon N.Y., Inc.*, N.E.2d 1177, 1185 (N.Y. 2012)).

The parties dispute what sort of transaction or relationship New York law requires for an unjust enrichment claim.  The Venture Defendants argue that a plaintiff must show a "direct relationship between the plaintiff and the defendant."  Docket No. 519 at 12–13 (citing *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012)).  The Venture Defendants also argue that the parties' relationship cannot be "too attenuated" and that evidence that a defendant "simply knew of the plaintiff's existence or may have profited, in one form or another," is insufficient.  *Id.* (quoting *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 448 (E.D.N.Y. 2011)).  Plaintiffs argue that New York law does not require a "direct relationship" between the parties because "it does not matter whether the benefit is directly or indirectly conveyed."  Docket No. 531 at 13–14 (quoting *Myun-Uk Choi v. Tower Research Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018)).

Both parties are partially correct.  Although the court rejected the plaintiff's theory of unjust enrichment in *Georgia Malone*, a New York Court of Appeals case that the Venture Defendants rely on, because the theory would require parties to an agreement to "probe the underlying relationships between the businesses with whom they contract and other entities tangentially involved but with whom they have no direct connection," *Georgia Malone*, 973 N.E.2d at 748, the court did not hold that a direct relationship is required for an unjust enrichment claim.  However, although neither a direct relationship nor privity is required, the relationship between the parties must be "sufficiently close" and not "too attenuated."  *Id.* at 746 (citing *Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1018 (N.Y. 2007)).  The plaintiff in *Sperry*, which *Georgia Malone* relied upon, for instance, was a purchaser of tires trying to sue manufacturers of chemicals that were used in the rubber-making process for the tires.  *Sperry*, 863 N.E.2d at 1018.  The court dismissed the unjust enrichment claim because the relationship was "too attenuated." *Id.*

Other courts applying *Sperry* have required that the plaintiff show "direct dealings or an actual, substantive relationship" between the parties.  *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 272 (S.D.N.Y. 2019) (dismissing unjust enrichment claim brought by "indirect purchaser plaintiffs" of Keurig's pods as too attenuated to Keurig); *In re Merrill, Bofa, & Morgan Stanley Spoofing Litig.*, 2021 WL 827190, at *13 (S.D.N.Y. Mar. 4, 2021) (requiring a "nexus among the parties or proof that the defendant received a specific and direct benefit from the property sought to be recovered, rather than an indirect benefit" (quotations omitted)), *aff'd sub*

*nom. Gamma Traders – I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71 (2d Cir. 2022).

The undisputed facts show that no plaintiff communicated or dealt with the Venture Defendants, relied on statements that the Venture Defendants made, or were even aware of the Venture Defendants before this litigation.  Docket No. 519 at 8, ¶¶ 33–34.  Although the relationship between the parties may not be as attenuated as the tire purchaser and a rubber chemical manufacturer in *Sperry*, it is more attenuated than in *Keurig*, where the plaintiffs who purchased Keurig pods at least knew of the company.  *See Keurig*, 383 F. Supp. 3d at 272.  Because plaintiffs had no relationship whatsoever with the Venture Defendants and did not even know of the Venture Defendants, the Court finds that the relationship between them is too attenuated for an unjust enrichment claim under New York law.  *See Moshik Nadav Typography*, 2021 WL 2403724, at *2 ("Nadav's unjust enrichment claim is fatally deficient [under New York law] because Nadav does not plead any relationship between Nadav and Banana Republic whatsoever." (quotation and alterations omitted)); *Grynberg v. ENI S.P.A.*, 503 F. App'x 42, 44 (2d Cir. 2012) (unpublished) (applying New York law in affirming dismissal of unjust enrichment claim on summary judgment "because [plaintiff] could not show any relationship, or even any communication, between himself and [the defendant]")); *Barbagallo*, 820 F. Supp. 2d at 447–48 (dismissing claim because, although the defendant received benefits from the plaintiff to which it was not entitled after hiring one of the plaintiff's former employees, the benefits were not the result of services the plaintiff performed for defendant, and the connection between the plaintiff and the defendant was too attenuated to support unjust enrichment claim); *In re Int.*

*Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 501 (S.D.N.Y. 2017) (applying New York law in dismissing unjust enrichment claim because "[t]here is no relationship, direct or indirect, between the [parties]"); *In re Commodity Exch., Inc., Gold Futures and Options Trading Litig.*, 213 F. Supp. 3d 631, 677 (S.D.N.Y. 2016) (dismissing unjust enrichment claim under New York law because the "[p]laintiffs have failed to allege that they had any relevant relationship with the [d]efendants" (citations omitted)); *Reading Int'l, Inc. v. Oaktree Cap. Mgmt., LLC*, 317 F. Supp. 2d 301, 334 (S.D.N.Y. 2003) (unjust enrichment claim under New York law "requires some type of direct dealing or actual, substantive relationship with a defendant") (quoting *Redtail Leasing, Inc. v. Bellezza*, 1997 WL 603496, at *8 (S.D.N.Y. Sept. 30, 1997)).

Moreover, even if the Venture Defendants were aware of HSPs like plaintiffs, an unjust enrichment claim under New York law "cannot be predicated on a defendant's mere knowledge of the plaintiff's actions." *See Moshik Nadav Typography*, 2021 WL 2403724, at *2 (citing *Lexon Ins. Co. v. Wells Fargo Bank, N.A.*, 2014 WL 11353148, at *6 (S.D.N.Y. Aug. 20, 2014), *aff'd*, 619 F. App'x 27 (2d Cir. 2015) (unpublished)); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (N.Y. 2011) (concluding a relationship was too attenuated where there was a complete "lack of allegations that would indicate a relationship between the parties, or at least an awareness by [the defendant] of [the plaintiff's] existence"). Accordingly, under New York law, the Court will dismiss Airquip's and Hass's unjust enrichment claims.

### C. Costello

The Court considers Costello's unjust enrichment claim under New Jersey law because, according to the undisputed facts, that is where Costello operates his

business, where he dealt with HomeAdvisor, and where the lead that he purchased was for.  Docket No. 519 at 5–6, ¶¶ 16–17.  Under New Jersey law, "'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust' and that the plaintiff 'expected remuneration' and the failure to give remuneration unjustly enriched the defendant."  *EnviroFinance Grp., LLC v. Env't Barrier Co., LLC*, 113 A.3d 775, 790 (N.J. Super. Ct. App. Div. 2015) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 554 (N.J. 1994)).  "[N]umerous courts have concluded that New Jersey requires some relationship between the parties when alleging unjust enrichment," *see Sharma v. Gupta*, 2022 WL 970544, at *7 (D.N.J. Mar. 31, 2022), in particular, "New Jersey law requires a direct relationship between the parties."  *Id.* (citing *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 506 (D.N.J. 2009) (citing cases)).  The court in *Sharma* dismissed the unjust enrichment claim, in part, because the complaint alleged no relationship, contractual or otherwise, between the parties.  *See id.* (citing *Debjo Sales, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 2015 WL 1969380, at *9 (D.N.J. Apr. 29, 2015) ("[The] [p]laintiff may be injured here, but there is no doubt that, as pled, [p]laintiff does not confer any benefit on [d]efendant")).  Although *Sharma* was before the court on a motion to dismiss, the case is instructive for how New Jersey courts treat unjust enrichment claims.

The undisputed facts show that Costello did not communicate or deal with the Venture Defendants, or rely on a statement that the Venture Defendants made, and that Costello was not even aware of the Venture Defendants before this litigation.  Docket No. 519 at 8, ¶¶ 33–34.  Plaintiffs have not shown any facts, disputed or otherwise, that Costello had a direct relationship with either of the Venture Defendants.  Costello,

therefore, cannot maintain an unjust enrichment claim under New Jersey law.  *See Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011) ("Since a plaintiff must confer a benefit on the defendant to support an unjust enrichment claim, this element has been interpreted by New Jersey courts as a requirement that the plaintiff allege a sufficiently direct relationship with the defendant to support the claim." (quotation omitted)); *Cooper v. Samsung Elecs. Am., Inc.*, 2008 WL 4513924, at *10 (D.N.J. Sept. 30, 2008) (dismissing an unjust enrichment claim under New Jersey law where consumer's purchase was through a retailer, as there was no relationship conferring any direct benefit on the manufacturer), *aff'd*, 374 F. App'x 250 (3d Cir. 2010) (unpublished); *Union Trust Co. of Md. v. Wakefern Food Corp.*, 1989 WL 120756, at *21 (D.N.J. Sept. 8, 1989) (denying unjust enrichment recovery under New Jersey law because of absence of "a relationship or course of dealings between parties"); *Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332, 334–35 (N.J. Super. Ct. App. Div. 1966) (denying recovery absent direct commercial relationship).

Moreover, the undisputed facts show that, after Costello paid for leads, he reversed the credit card charges and was credited for all of the leads that he purchased from HomeAdvisor.  Docket No. 519 at 6, ¶ 18.  Plaintiffs have identified no facts, disputed or otherwise, that Costello would have expected remuneration, that the Venture Defendants failed to give him remuneration, and that the Venture Defendants were thereby unjustly enriched.  *See EnviroFinance Grp.*, 113 A.3d at 790.  Accordingly, the Court will dismiss Costello's unjust enrichment claim under New Jersey law.

### D.  Ervine

The Court considers Ervine's claim under Florida law because Ervine's window-cleaning business operated exclusively in Florida and the lead that she purchased indicated that it was for work in Florida.  Docket No. 519 at 6, ¶¶ 19–20.  To establish a claim for unjust enrichment, a plaintiff in Florida must show that "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof."  *Carriuolo v. Gen. Motors LLC*, 72 F. Supp. 3d 1323, 1326 (S.D. Fla. 2014) (quoting *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012)); *see also Edmondson v. Caliente Resorts, LLC*, 2018 WL 1565453, at *3 (M.D. Fla. Mar. 30, 2018) (same).

The Venture Defendants argue that they are entitled to summary judgment on Ervine's unjust enrichment claim because she cannot show that it would be inequitable for the Venture Defendants to retain any benefit, as she testified "[s]ure" when asked if it was worth $18.23 for the CDVM-originated lead that led to $520 in work for her.  Docket No. 519 at 7, ¶ 23.  Moreover, she does not claim that the Venture Defendants are retaining any funds at her expense.  *Id.* at 6, ¶ 22.  In response, plaintiffs assert that it was improper for the Venture Defendants to ask Ervine if the cost of the lead was worth what the homeowner paid her for the window washing.  Docket No. 531 at 15.  Plaintiffs assert that the Venture Defendants asked Ervine, a lay witness, for a legal conclusion.  *Id.* at 15 n.19.  Plaintiffs are mistaken.  The question of whether a $520 return was worth $18.23 to Ervine does not call for a legal opinion.  Because plaintiffs have failed to show a disputed fact as to whether it would be inequitable for the Venture Defendants to

retain any part of the $18.23 fee, given that Ervine testified that the $520 she got for two window cleanings was worth the fee she paid for the lead, plaintiffs have not met their burden.  *See Bausman*, 252 F.3d at 1115 ("To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case.").  Accordingly, the Venture Defendants are entitled to summary judgment on Ervine's unjust enrichment claim under Florida law.

### E.  Filipiak

The Venture Defendants argue that they are entitled to summary judgment on Filipiak's unjust enrichment claim under Illinois law.  Docket No. 519 at 15–17.  The Venture Defendants also argue that, because Filipiak failed to disclose this lawsuit in his bankruptcy petition, he is judicially estopped from seeking recovery here.  *Id.* at 17.  The judicial estoppel factors that the Court applied in Part III.A apply here, too, even though bankruptcy is a matter of federal law because Colorado and federal judicial estoppel factors are the same.  *See Sec. Serv. Fed. Credit Union*, 861 F. Supp. 2d at 1263 n.1.  Those factors are: (1) a party taking an earlier position that is clearly inconsistent with his later position, (2) a court accepting the earlier position so that the court's accepting the later position would create an impression that either court was misled; (3) whether the party seeking to assert the inconsistent position would be unfairly advantaged.  *See Arko*, 183 P.3d at 560; *see also United States v. Villagrana-Flores*, 467 F.3d 1269, 1278–79 (10th Cir. 2006) (quoting *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) (citations and quotation omitted)); *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1209 (10th Cir. 2011).

The Tenth Circuit has noted that the "purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment and to prevent improper use of judicial machinery." *Queen v. TA Operating, LLC*, 734 F.3d 1081, 1087 (10th Cir. 2013) (quotation, ellipsis, and brackets omitted). Applying the estoppel factors here, the undisputed facts show that, on January 18, 2019, before Filipiak filed for bankruptcy on June 20, 2019, he and other plaintiffs moved to file an amended class action complaint that lists Filipiak and others as plaintiffs. Docket No. 519 at 7, ¶¶ 27–28; *see generally* Docket No. 219-1. The bankruptcy petition asked whether the petitioner had any "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment." *Id.*, ¶ 29 (citing Docket No. 519-11 at 14). Filipiak answered "[n]o" and did not disclose this litigation. *Id.* (citing Docket No. 519-11 at 14). The undisputed facts thus show that the first factor applies, as Filipiak has taken a position in this litigation that is clearly inconsistent with his bankruptcy petition. The bankruptcy court accepted Filipiak's petition, based on his representation that he had no claims against any third party, and his bankruptcy was discharged on September 19, 2019. *Id.*, ¶ 27. That satisfies the second factor. Filipiak would be unfairly advantaged by discharging his bankruptcy without disclosing his claim against the Venture Defendants and then recovering against them in this lawsuit, which satisfies the third factor. Accordingly, the Court finds that judicial estoppel is appropriate here.

As the Venture Defendants note, "[j]udicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Eastman v. Union Pac.*

*R.R. Co.*, 493 F.3d 1151, 1158 (10th Cir. 2007).  Although in response plaintiffs argue, in a footnote, that the Venture Defendants' argument is "unavailing" because "a bankruptcy debtor's failure to disclose information to a bankruptcy court is excused when the failure is 'inadvertent or mistaken,'" Docket No. 531 at 17 n.23, plaintiffs identify no facts, disputed or otherwise, that Filipiak's non-disclosure was inadvertent or a mistake.  Moreover, the Tenth Circuit has explained that inadvertence or mistake apply "only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment."  *Hermann v. Hartford Cas. Ins. Co.*, 675 F. App'x 856, 862 (10th Cir. 2017) (unpublished) (quoting *Eastman*, 493 F.3d at 1157)).  There is no dispute that Filipiak knew about his lawsuit against the Venture Defendants, given that he moved to amend his complaint to add claims against the Venture Defendants, and, as in *Hermann* and *Eastman*, Filipiak "had a motive to conceal his claim . . . so that he could obtain a discharge of his debts free and clear of his creditors." *See id.* (citing *Eastman*, 493 F.3d at 1159 ("The ever present motive to conceal legal claims and reap the financial rewards undoubtedly is why so many of the cases applying judicial estoppel involve debtors-turned-plaintiffs who have failed to disclose such claims in bankruptcy.")).  The Court will estop Filipiak from pursuing his unjust enrichment claim because he did not disclose it in his bankruptcy petition.[15]  The Court will therefore grant the Venture Defendants' motion as to Filipiak.

---

[15] Even if Filipiak were not estopped, he identified no funds that either of the Venture Defendants are unjustly retaining at his expense.  Docket No. 519 at 7, ¶ 26.

### F.  LaPlaca

The Court applies California law in resolving LaPlaca's unjust enrichment claim because LaPlaca operates her interior design company exclusively in California and purchased leads for work in California.  Docket No. 519 at 8, ¶¶ 30–31.  "Under California law, the elements of unjust enrichment are: (1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another."  *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1113 (C.D. Cal. 2012); *see also Jarrett v. Terrell*, 2021 WL 2376932, at *6 (C.D. Cal. Jan. 13, 2021) (same), *aff'd*, 2022 WL 1056645 (9th Cir. Apr. 8, 2022).

The Venture Defendants argue that LaPlaca's claim must be dismissed because California does not recognize unjust enrichment as a standalone cause of action. Docket No. 519 at 17–18.  Although courts "disagree as to whether unjust enrichment is a standalone claim under California law," *Shin v. ICON Found.*, 2021 WL 6117508, at *3 (N.D. Cal. Dec. 27, 2021) (citing *Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070 (N.D. Cal. 2021) ("California does not recognize a separate cause of action for unjust enrichment."); *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *11-12 (N.D. Cal. Aug. 16, 2021) ("Plaintiffs can raise a standalone unjust enrichment claim.")), the Ninth Circuit has allowed a claim for unjust enrichment "as an independent cause of action or as a quasi-contract claim for restitution."  *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016).  Moreover, the California Supreme Court has also allowed an independent claim for unjust enrichment to proceed.  *See Hartford Cas. Ins. Co. v. J.R. Mktg., LLC*, 353 P.3d 319, 326 (Cal. 2015) ("An individual who has been unjustly enriched at the expense of another may be required to make restitution. . .

. Where the doctrine applies, the law implies a restitutionary obligation, even if no contract between the parties itself expresses or implies such a duty. . . . Though this restitutionary obligation is often described as quasi-contractual, a privity of relationship between the parties is not necessarily required." (citations omitted)); *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (unpublished) (recognizing the "clarification" in *Hartford*). Courts have harmonized these rulings by construing unjust enrichment claims as quasi-contract claims for restitution. *See, e.g.*, *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1158–59 (N.D. Cal. 2021) ("California law does not recognize a standalone cause of action for unjust enrichment. However, when a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." (citation, quotation, and alteration omitted)).

"Quasi-contract in California is a claim for relief that seeks restitution based on the defendant's unjust enrichment." *Id.* (quoting *Jordan v. Wonderful Citrus Packing LLC*, 2018 WL 4350080, at *4 (E.D. Cal. Sept. 10, 2018)). "The doctrine applies where plaintiffs, while having no enforceable contract, nonetheless have conferred a benefit on defendant which defendant has knowingly accepted under circumstances that make it inequitable for the defendant to retain the benefit without paying for its value." *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1253 (N.D. Cal. 2017) (applying California law). To plead a quasi-contract claim, a plaintiff must allege "(1) a defendant's receipt of a benefit and (2) unjust retention of that benefit at the plaintiff's expense." *Id.*

As mentioned previously, the undisputed facts reflect that LaPlaca purchased eleven leads from HomeAdvisor that originated with the Venture Defendants. Docket No. 519 at 8, ¶ 31. LaPlaca, like the other plaintiffs, only paid HomeAdvisor for the

25

leads, did not communicate or deal with the Venture Defendants, did not rely on any statements by the Venture Defendants, and was not aware of the Venture Defendants before this litigation.  *Id.*, ¶¶ 32–34.  There are no facts, disputed or otherwise, that LaPlaca had any quasi-contractual relationship with the Venture Defendants or any other relationship.  Rather, the undisputed facts show that the Venture Defendants do not interact with HSPs like LaPlaca, do not know what representations HomeAdvisor makes to HSPs, and have no involvement or responsibility in HomeAdvisor's dealings with HSPs.  *Id.* at 4, ¶ 6.

The lack of any relationship between LaPlaca and the Venture Defendants "precludes the application of an unjust enrichment theory here."  *See Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 685 (9th Cir. 2009) ("[T]he connection between [p]laintiffs and Wal-Mart here is simply too attenuated to support an unjust enrichment claim.").[16] Moreover, plaintiffs have identified no facts, disputed or undisputed, that any money that the Venture Defendants were paid from HomeAdvisor was unjustly retained. Accordingly, under California law, the Venture Defendants are entitled to summary judgment on LaPlaca's unjust enrichment claim.

## IV.  CONCLUSION

For the foregoing reasons, it is

---

[16] Plaintiffs seek to distinguish *Doe* as outdated, but only on the basis of whether unjust enrichment is cognizable as a standalone claim under California law, *see* Docket No. 531 at 17 n.24, which the Court addressed previously.  Moreover, courts have cited *Doe* for the proposition that, under California law, an unjust enrichment claim requires that the plaintiff had a relationship with the defendant that is not too attenuated.  *See, e.g.*, *Spice Jazz LLC v. Youngevity Int'l, Inc.*, 2020 WL 1180725, at *5 (S.D. Cal. Mar. 11, 2020); *Doe v. Nestle, S.A.*, 748 F. Supp. 2d 1057, 1121 (C.D. Cal. 2010), *rev'd and vacated sub nom. on other grounds, Doe I v. Nestle USA, Inc.*, 766 F.3d 1013 (9th Cir. 2014).

**ORDERED** that Defendants C. David Venture Management, LLC and VentureStreet, LLC's Motion for Summary Judgment [Docket No. 519] is **GRANTED**.  It is further

**ORDERED** that plaintiffs' unjust enrichment claims against C. David Venture Management, LLC and VentureStreet, LLC are **DISMISSED with prejudice**.


DATED September 26, 2022.


BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge