IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Case No. 16-cv-01849-PAB-KLM
(Consolidated with Civil Action No. 18-cv-01802-PAB-KLM)

In re HOMEADVISOR, INC. LITIGATION

_____

**MASTER'S MEMORANDUM OPINION AND ORDER ON HOMEADVISOR, INC., IAC/INTERACTIVECORP,**

**ANGI HOMESERVICES, INC., AND CRAFTJACK, INC.'S MOTION FOR SANCTIONS**

_____

**ENTERED BY MASTER MAURA R. GROSSMAN**

On April 9, 2018, the Court issued an Order Appointing Master for Discovery [Dkt. 126] "for the purpose of managing and supervising discovery and resolving discovery disputes until further order of this Court." [*id*. at 3]. It would be an understatement to say that discovery was contentious and protracted in this matter; merits-related discovery—with its many accompanying disputes—began in May 2017 and continued unabated until fact discovery finally closed on June 30, 2021. The present dispute—a motion for sanctions brought by HomeAdvisor, Inc., IAC/InterActiveCorp, Angi Homeservices, Inc., and CraftJack Inc. (the "HA Defendants")—has a long and tortured history, which is detailed at length in the Master's Memorandum Opinion and Order on (i) the Parties' Joint Motion for Clarification of the Meaning of Paragraph 6 of the Protective Order [Dkt. 63] and a Determination of Whether or Not Plaintiffs Have Violated That Provision, and (ii) the HomeAdvisor Defendants' Motion to Compel Supplementation of Their Requests for Production Nos. 11, 12, 30, 31, and 32 [Dkt. 473] (the "MOO"). That history will not be repeated here, except as necessary for context. The MOO was affirmed and adopted in full in the Court's Order of June 15, 2022 (the "June 15, 2022 Court Order") [Dkt. 533].

The Master has carefully considered the sizable briefing and post-briefing supplementary correspondence submitted by the parties on January 24, 2022, February 14 and 28, 2022, April 26, 2022, May 5, 6, and 25, 2022, June 8, 2022, and January 3 and 4, 2023, along with the numerous exhibits submitted therewith (including a declaration); the *in camera* declarations submitted by Plaintiffs on May 13, 2021 [Dkt. 473-4] and June 29, 2022; the positions and arguments espoused by the parties at a videoconference held with the Master held on July 15, 2022; and the applicable case law. The Master made extensive efforts during the Summer of 2022 to negotiate an informal resolution of this dispute with the parties. With the consent of the parties and the Court, the Master held *ex parte* settlement discussions with the parties on July 15 (with Plaintiffs), July 26 (with the HA Defendants), July 27 (with Plaintiffs), and August 3, 2022 (with the HA Defendants), and accepted additional, limited *ex parte* submissions in connection with these settlement discussions on July 28 (from Plaintiffs), August 16 (from the HA Defendants), and August 18, 2022 (from Plaintiffs). All of the *ex parte* discussions and submissions were subject to Federal Rule of Evidence 408 and *none were considered in connection with or are referenced in this decision*. Unfortunately, as anticipated, the efforts to resolve this dispute

informally proved unsuccessful.  Accordingly, the Master now rules on the pending motion.  For the reasons set forth below, the Master **GRANTS IN PART** and **DENIES IN PART** the HA Defendants' Motion for Sanctions.

I.      **Brief Factual Background of the Case and Summary of the Present Discovery Dispute**

This asserted class action was initiated in July 2016 on behalf of Home Service Professionals ("HSPs") who purchased HomeAdvisor memberships and related services and products beginning on October 1, 2012.  The operative complaint is the Consolidated Third Amended Class Action Complaint ("TAC") [Dkt. 458], filed on June 23, 2021, following the Court's Order granting leave to file same [Dkt. 448].  Plaintiffs assert, among other things, that they were deceived by fraudulent misrepresentations or omissions concerning HomeAdvisor membership conditions and service requests (a/k/a "leads") [*e.g.*, TAC ¶3], and were subjected to oppressive business practices at the hands of HomeAdvisor [*e.g.*, TAC ¶ 5], as well as certain other Defendants and non-parties [*e.g.*, TAC ¶¶22-39], some of whom have since been dismissed.  [*See* September 26, 2022 Order [Dkt. 603] (dismissing Defendants C. Venture Management, LLC and VentureStreet LLC).]

In a nutshell, HomeAdvisor is an online marketplace that matches HSPs with consumers (*i.e.*, homeowners) who are actively in search of home services [*e.g.*, TAC ¶1].  Whereas the matching service is free for homeowners, HomeAdvisor generates revenue from the fees paid by HSPs for memberships and leads.  [*Id.*]  Plaintiffs claim that the leads are not properly verified, are not from "qualified," "serious," "project-ready" homeowners, and are largely "bogus" [*e.g.*, TAC ¶¶4, 55, 57, 63, 65, 67, 69, 101, 139, 183].

The HA Defendants' Motion for Sanctions was borne of the MOO, which granted the HA Defendants' Motion to Compel certain additional discovery concerning Plaintiffs' contacts with the Federal Trade Commission ("FTC")—after months and months of wrangling, and in spite of representations made by Plaintiffs that turned out to be neither justified nor accurate—contacts which the HA Defendants allege were improper and in violation of the Protective Order (the "PO") entered in this matter [Dkt. 63].  The MOO stated that "[i]f, after HA reviews the supplementary productions . . . HA believes it was prejudiced as a result of the untimely disclosure, it may file a motion seeking the appropriate relief pursuant to Fed. R. Civ. P. 37(c)(1), or otherwise, as warranted." [Dkt. 473 at 17].  The Master did not determine in the MOO "whether Plaintiffs ha[d] violated Paragraph 6(a) of the PO because she [was] unable to make a determination concerning Plaintiffs' proper or improper use of HA's Confidential or Highly Confidential Information absent further disclosure of the documents, communications, and ESI reflecting communications with the FTC, which she [was therein] ordering that Plaintiffs produce to HA.  Accordingly, a ruling on this particular issue and any relief that HA may choose to seek [was] deferred until such time as such additional documents, communications, and ESI are produced to HA, and HA [was] able to make a showing, based on the contents of the production and/or disclosures, that Plaintiffs' use of HA's Confidential or Highly Confidential Information was not 'solely for the purpose of prosecution, defense, and settlement of this [a]ction,' in violation of PO Paragraph 6(a), *and that HA was prejudiced as a result of Plaintiffs' conduct*." [*id.* at 18 (emphasis in original)].  The HA Defendants now return to the Master with what they believe to be clear evidence of Plaintiffs'

misconduct—to their detriment—including a flagrant violation of the PO, and are seeking appropriate relief.

**II.     The Parties' Arguments**

A.     <u>The HA Defendants' January 24, 2022 Opening Brief</u>

In the HA Defendants' Motion for Sanctions (the "HA Defs' Mot.") they assert that:

> Plaintiffs engaged in a secret campaign for fourteen-plus months to poison the FTC's investigation and steer the agency staff to bring claims against Defendants—all in repeated violation of the Protective Order and Plaintiffs' duty of candor to counsel, the Master, and the Court. After repeated attempts to hide responsive documents, Plaintiffs produced—belatedly and only under Court order—nearly 100 documents responsive to Defendants' RFPs about Plaintiffs' communications with the FTC.  These documents reveal that those written communications began at least as early as February 10, 2020—shortly after Plaintiffs learned of the FTC's investigation through discovery designated 'Highly Confidential' under the Protective Order (Dkt. 63)—and continued until at least April 9, 2021, the day after Defendants raised this issue with the Master.  These documents confirm that the purpose of Plaintiffs' communications with the FTC was 'to assist the FTC in its efforts to prosecute [HomeAdvisor],' which was 'an impermissible second use' of HomeAdvisor's highly confidential discovery material in violation of the Protective Order.

[HA Defs' Mot. at 1 (quoting, in part, the MOO at 14) (bracketed material added by the HA Defs)].  The HA Defendants further argue that because "Plaintiffs repeatedly violated the Protective Order to fuel a separate FTC investigation using Defendants' confidential discovery information, . . . then . . . lied about it," they should be sanctioned, "not only to account for the severe—and perhaps irreparable prejudice to Defendants but to vindicate the Court's interest in ensuring that parties and counsel faithfully discharge their duty of candor and follow court orders." [*id.* at 2].  The HA Defendants highlight that on multiple prior occasions, "Plaintiffs misrepresented the very existence of these documents," both to them and to the Master [*id.* at 3 (quoting multiple examples at 3-4 from accompanying Exhibits A, B, C, and D)] and that Plaintiffs "repeated denials [about the existence of these documents and communications] were knowingly false." [*id.* at 4].

On December 20, 2021, in response to the MOO, Plaintiffs produced to the HA Defendants "a trove of responsive communications with the FTC" that "reveal[ed] in stark terms the nature, extent, and willfulness of Plaintiffs' improper efforts, in clear violation of the Protective Order, to steer the FTC's investigation—and their equally brazen months'-long cover up." [*id.* at 4-5].

The HA Defendants next point to documents they believe demonstrate that Plaintiffs sought to assist the FTC in its efforts to prosecute Defendants, using the HA Defendants' own confidential

information, in contravention of the PO, starting with Plaintiffs' counsel's initial communication with the FTC on February 10, 2021 stating:  "We represent the Plaintiffs in a class action litigation pending in the federal district court in Colorado against various defendants, including Home Advisor and IAC.  *We believe it may be a benefit to your team to have a discussion with us*." [*id*. at 5 (quoting Ex. E) (emphasis added by HA Defs)].  Other examples provided by the HA Defendants include the following communications between Plaintiffs' counsel and the FTC:

- "As mentioned during our call, our Firm received . . . 2,850 'intakes' from [service providers] containing information that supports their belief that they have been and/or are continuing to be victimized by HA. . . .  We are willing to provide these to the FTC, *assuming your team is interested in reviewing them*. . . .  We also mentioned that *the discovery responses that HA has provided to the FTC are incomplete and misleading in certain material respects*. . . .  *We are willing to provide the FTC team with input on these issues and, if interested, we should discuss the most efficient way of conveying that information*." [*id*. (quoting Ex. F) (emphasis added by the HA Defs)].

- "[W]e wanted to ask if you, and possibly other members of your team would like to convene another conference call to discuss the HomeAdvisor case.  As we previously mentioned, Defendants recently produced to us all the documents produced to date to the FTC.  We have conducted our review of the documents and thought that it may be beneficial to have another call to follow up on some outstanding topics from our previous call, as well as revisit certain topics given that we can have a more substantive conversation now that we can reference specific documents in your possession." [*id*. (quoting Ex. G)].

- "In advance of our call *we wanted to share the attached documents with you that you may find of interest*." [*id*. (quoting Ex. H (emphasis added by the HA Defs)].

- "On June 1, 2020, Plaintiffs sent 'a sample of 40 calls produced by Defendants to the FTC *that are representative of the uniform statements and omissions made by HomeAdvisor's sales representatives*' and requested 'another call' to discuss further." [*id*. (quoting Ex. I) (emphasis added by the HA Defs)].

- "April 8, 2021, Plaintiffs wrote:  'since there are over 300 intakes that we will be producing to you, *we are attaching a random sample of about a dozen that will provide some real time perspectives of the continuing abuses that [service providers] are being subjected to.  We look forward to speaking with you soon*.'" [*id*. (quoting Ex. J) (emphasis added by the HA Defs)].

- "That Plaintiffs' written communications with the FTC apparently end on April 8, 2021 is no coincidence. . . .  After learning Defendants had discovered Plaintiffs misdeeds and

Protective Order violations, Plaintiffs ceased writing to the FTC—yet tellingly convened a call with the FTC the very next day." [*id.* (quoting Ex. K)].

The HA Defendants posit that "[n]o showing of prejudice is required on these egregious facts" [*id.* at 17; *see also* 7 n.1, 9), but assert that, nonetheless, "Plaintiffs' one-sided interference with, and improper steering of, the FTC's investigation has prejudiced Defendants substantially—and likely irreparably." [*id.* at 7]. They believe that "Plaintiffs sought to and did enflame the FTC's investigation, impugning Defendants' credibility with the FTC while keeping Defendants in the dark about these covert communications, thereby preventing them from addressing that interference or responding to Plaintiffs' allegations." [*id.*]. Finally, they argue, "[i]f Plaintiffs are not sanctioned forcefully for their misconduct, other litigants will not fear the consequences of repeatedly misleading the Court or committing their own brazen violations of their discovery obligations or the Court's orders." [*id.*].

Accordingly, the HA Defendants seek the following relief in response to Plaintiffs' alleged misconduct:  (1) pursuant to the Master's inherent authority, "a full accounting of Plaintiffs' improper communications with the FTC," including but not limited to disclosure of Plaintiffs' June 29, 2022 *In Camera* Declaration provided to the Master, so they can "review the full scope of counsel's communications with the FTC," to enable them to "address whatever issues Plaintiffs may have raised with the FTC and . . . ensure that Plaintiffs have produced all responsive information," and "[i]f that declaration does not set forth the substance of Plaintiffs' FTC communications or lacks sufficient detail, Defendants request that the Master order Plaintiffs to submit additional declarations or other information about those communications"; (2) pursuant to Fed. R. Civ. P. 16(f), Fed. R. Civ. P. 37(b)(2)(A), 28 U.S.C. § 1927, and the Master's inherent authority, "Plaintiffs' counsel (a) should be held in contempt; (b) pay a $100,000 sanction to the Clerk of Court; and (c) at a minimum pay Defendants' fees and costs in connection with this dispute . . . including all fees incurred in connection  with the motion to compel, all proceedings before the Master, and Plaintiffs' motions to stay and objections to the [MOO]"; (3) pursuant to Fed. R. Civ. P. 16(f), 37(b)(2)(A)(ii), "Plaintiffs should be precluded from citing or otherwise relying on any FTC-related discovery produced in this action—whether in their expert reports, at class certification, at trial, or otherwise—including all productions and submissions Defendants made to the FTC and any documents Defendants received from the FTC"; and (4) "Defendants submit that they should not have to bear any costs associated  with this dispute.  Plaintiffs should be ordered to pay all of the Master's fees associated with drafting the [MOO], and any related fees she incurred in connection with her analysis and evaluation of Plaintiffs' significant misconduct." [HA Defs' Mot. at 15-17].

   B.   Plaintiffs' February 14, 2022 Opposition Brief

Plaintiffs respond that the HA Defendants have "fail[ed] to demonstrate a violation of the [PO] and can only conjure up speculative harm and prejudice that [they] claim[] to have suffered as a result of Plaintiffs' conduct.  Nor have [they] submitted any evidence that Plaintiffs' counsel 'fueled' or 'steered' or 'poisoned' the scope or direction of the FTC's investigation." [Plaintiffs' Memorandum to HomeAdvisor Defendants' Motion for Sanctions ("Pls' Opp.") at 1].

Plaintiffs claim that they "did not commit any sanctionable discovery misconduct" because they "lodged proper objections . . . [and] consistently informed [the HA Defendants] they were withholding responsive documents for a variety of reasons including work product/privilege." [*Id.*]  They argue that just because "the MOO ultimately required Plaintiffs to produce the FTC communications does not mean sanctionable conduct occurred," particularly because "[t]he MOO makes clear that both parties shared blame" in the present discovery dispute [*id.* at 2].

While Plaintiffs make a number of arguments in their brief, their primary argument seems to be that they did not violate the PO because Section 6(b)(x)—the section which permits certain limited disclosures of Confidential or Highly Confidential Information—permitted Plaintiffs to discuss the HA Defendants' Confidential and Highly Confidential Information with the FTC since the FTC already was in possession of that information.  [*See id.*]  They do not agree with the HA Defendants that Section 6(a) of the PO—the section which states that the HomeAdvisor Defendants' Confidential and Highly Confidential Information could only be ***used*** for the purposes of the present action—trumps Section 6(b)(X), "in fact, the contrary is legally mandated." [*id.*]  Plaintiffs insist that because their "FTC-related communications were for the purpose of prosecuting Plaintiffs claims in this [a]ction" [*id.*], they therefore entirely permissible under a fair reading of the PO.

Plaintiffs further assert that the HA Defendants failed to meet their "evidentiary burden to show sanctionable conduct and bad faith or establish actual prejudice," and that therefore, the HA Defendants' proposed sanctions "are unwarranted, disproportionate, and untethered to the alleged misconduct." [*id.*].   Accordingly, they believe the Motion for Sanctions "must be denied with prejudice." [*id.*]

Plaintiffs cast the blame for this dispute on the HA Defendants for their overly broad and burdensome requests for production, which they failed to narrow during the parties' meet and confers, their failure to timely disclose the FTC's investigation or the FTC's notification of the HomeAdvisor Defendants in February 2020 of their [single] communication with Plaintiffs, and their failure "to lodge any timely complaint with Plaintiffs or the Master, or take any steps seeking to prevent such contacts." [*id.* at 3-4].  The crux of this argument seems to be that because the HomeAdvisor Defendants never specifically asked Plaintiffs about communications with the FTC and did not focus their requests for production on communications with the FTC—"or even disclose that [they] knew about any communications between Plaintiffs and the FTC"—that it was the HA Defendants who "dissembled," when this entire dispute could have been avoided [*id.* at 4-5].  They point out that, consistent with this view, "the MOO assigned blame to both sides observing a likely different outcome had the parties focused their discussions on what categories of documents were being withheld." [*id.* at 5-6].

Plaintiffs also highlight the fact that in 2019, the FTC filed its complaint against the HA Defendants "based on its own investigation and without *any* communication with Plaintiffs' counsel." [*id.* at 6 (emphasis added by Pls)].  They argue that Section 6(b)(x) of the PO "authorized Plaintiffs' Counsel to disclose Confidential Information to:  'Any person who created a document or was the recipient thereof,' and that the HA Defendants "do[] not dispute that Plaintiffs did not share or discuss any Confidential information with the FTC that the FTC did not already have." [*id.* at 7].  Indeed, they

point out, the MOO rejected the HA Defendants' assertion that Plaintiffs had violated Section 6(b) of the PO by virtue of having had communications concerning Confidential information with the FTC. [*See id.* at 7 (quoting MOO at 12).] Thus, they insist, "Plaintiffs' communications with the FTC were not only consistent with the provisions of the PO, but also necessary to perform their ethical obligations to vigorously represent their clients." [*id.* at 8].

Plaintiffs further underscore the fact that the MOO contained "four separate *emphasized* directives and holdings" that the HA Defendants may seek sanctions "'if [they] still believe[] that there has been a violation [of the PO] . . . because [they] can show . . that [they have] been prejudiced.'" [*id.* at 9 (emphasis added by Pls)]. They claim that the HA Defendants have ignored the Master's repeated directives, arguing instead that "a specific articulation of prejudice . . . [is] not required," that "'it is neither the movant's nor the Court's burden to show prejudice,'" and that "'they cannot 'yet assert the full extent of the prejudice to them in the FTC's investigation.'" [*id.* (quoting the HA Defs' Mot. at 7 n.1 & 9)]. Thus, Plaintiffs believe that the HA Defendants' "failure to establish any cognizable prejudice is fatal" to their Motion for Sanctions [Pls' Opp. at 18].

Plaintiffs then return to their argument that they "lodged valid objections (including overbreadth, privilege and work product)" in response to the HA Defendants' improper requests for productions, and that "merely withholding documents based on valid objections does not amount to sanctionable misconduct." [*id.* at 11-12]. They continue by stating that "even assuming *arguendo* that Plaintiffs' objections were not sustainable, sanctions are still inappropriate because Plaintiffs' withholding of their FTC communications was substantially justified." [*id.* at 12 (emphasis added by Pls)]. Plaintiffs conclude this section by arguing that "when the responding party lodges objections and withholds documents based thereon, and the propounding party never files a motion to compel, the responding party has 'no discovery obligation' to 'update its response' through supplementation." [*id.* (citing cases)].

Plaintiffs repeat their argument that "the specific provision of ¶6(b)(x)"—the *disclosure* provision of the PO—"needs to be implemented in a manner [such] that the general provision of ¶6(a"—the *use* provision of the PO—"does not constrain or impede ¶6(b)(x)," because "it is important to properly interpret the PO [*id.* at 15]. They assert that the HA Defendants did not meet their "evidentiary burden to show that Plaintiffs' counsel had . . . [a] secondary purpose [for using the HA Defendants' Confidential information] . . . [that was] material or independent from the purpose of advancing Plaintiffs' claims, defeating [the HA Defendants'] defenses, and evaluating and protecting Plaintiffs' settlement position." [*id.* at 16]. Rather, they claim, the HA Defendants "harp[] on a few vague snippets that *prove* nothing" and "fail[] to provide *any* evidence of prejudice whatsoever." [*id.* at 16-17 (emphases added by Pls)].

Next—raising a new argument—Plaintiffs assert that they "and the FTC share a common interest in proving their common claims," and that "what the [Motion for Sanctions] really seeks [to determine] is whether the PO precluded Plaintiffs' Counsel from sharing their own *work product* about Confidential Information with the FTC, who already had the same Confidential Information," arguing that "[t]he 'use' provision of ¶6(a) [of the PO] cannot reasonably be read so broadly." [*id.* at 17 (emphasis added by Pls)].

"Not only does the PO fail to clearly prohibit such communications, ¶6(b)(x) authorizes such communications in mutual support of their common claims based on evidence they both already possess[ed]." [*id.* at 18]. Accordingly, "[t]o the extent there was any non-compliance [with the PO], it was substantially justified by Plaintiffs' objections to the subject [requests for production] and good faith, reasonable belief that the PO did not prohibit them from communicating with the FTC about their shared claims and mutually held documents. . . ." [*id.* at 21].

Finally, Plaintiffs' closing salvo is that the HA Defendants "failed to comply with the stringent standards for requesting attorney's fees and costs as a sanction by not providing any specificity or support whatsoever for the amount and reasonability of fees and costs [they] seek[]. . . ." [*id.* at 22].

C. The HA Defendants' February 28, 2022 Reply Brief

In HomeAdvisor, Inc., IAC/InteractiveCorp, Angi Homeservices, Inc. and Craftjack, Inc.'s Reply in Support of Their Sanctions Motion (the "HA Defs' Reply"), the HA Defendants argue that Plaintiffs' opposition brief . . . does nothing to rebut or justify the fact that [they] repeatedly and clandestinely violated the 'use' prohibition of the Protective Order for over a year, and for just as long—and in violation of their duty of candor to counsel and the Master—denied the very existence of responsive documents. . . ." [HA Defs' Reply at 1].

They dispute "Plaintiffs' claim [that] the Protective Order allows them to use confidential information and documents in direct aid of the separate FTC proceedings," and that "the general provision of ¶ 6(a) [the use provision] does not constrain or impede ¶ 6(b)(x) [the disclosure provision]" [*id.* at 1-2], since that "circular logic . . . conflates or ignores the twin arms of the Protective Order: shielding against the unauthorized *disclosure* of confidential information while also unqualifiedly prohibiting the *use* of any confidential information outside of this litigation." [*id.* at 2 (emphasis added by the HA Defs)]. "Plaintiffs fell on the wrong side of these provisions when they willfully used [the HA] Defendants' confidential discovery material 'to assist the FTC in its efforts to prosecute HA' in 'an impermissible second use of [Defendants' confidential] information.'" [*id.* at 3 (quoting the MOO at 14)]. The HA Defendants further argue that "Plaintiffs' fallback argument that their communications had no 'secondary purpose . . . independent from the primary purpose of advancing Plaintiffs' claims,' is simply not credible" [*id.* (quoting Pls' Opp. at 19)], in light of the clear import of the communications with the FTC produced by Plaintiffs and quoted in the HA Defendants' Motion for Sanctions (and attached as exhibits thereto). "[T]he clear purpose of Plaintiffs' communications [was] to foment an FTC enforcement proceeding against HomeAdvisor." [*id.* at 4].

The HA Defendants underscore the fact that Plaintiffs made repeated misrepresentations both to them and the Master and fail to address, let alone mention, those misrepresentations. [*See id.* at 4-5.] They assert that "Plaintiffs claim that their 'withholding of their FTC communications was substantially justified'" [*id.* at 6 (quoting Pls' Opp. at 13)], is not only baseless but "not in good faith." [*id.*].

The HA Defendants reiterate that they "were seriously, if not irreparably, prejudiced" and that it is Plaintiffs' burden to establish that their conduct was harmless, not Defendants' burden to prove they

were harmed." [*id.* (citing case)].  "The record here shows that Plaintiffs deliberately and repeatedly misled Defendants and the Master—including in briefing on this very motion—about the existence, substance, and purpose of their FTC communications.  Plaintiffs' misconduct deprived Defendants of the opportunity to confer in real time with the FTC about the biased assistance volunteered by Plaintiffs' counsel." [*id.* at 6-7].  They posit that Plaintiffs' "improper conduct is inextricably entwined with and has tainted the FTC proceedings to HomeAdvisor's prejudice," that no more specific showing is required, and in any event, having to prove prejudice would put the HA Defendants in an impossible position by making them disclose more about the FTC's confidential investigation to support their motion, risking waiver of the settlement privilege [*id.* at 7].  "Defendants are now left to try to assess fully the prejudicial effect of Plaintiffs' improper substantive communications over fourteen months across voluminous emails and at least fifteen phone calls." [*id.*]  "This is precisely why relevant authority 'clearly establishes that no showing of prejudice need be made in order to justify even the most extreme discovery sanctions.'" [*id.* at 8 (citing cases)].

Defendants endeavor to justify the various sanctions they have requested from the Master, stating that they "seek sanctions for the collective misconduct described . . . which includes Plaintiffs' numerous Protective Order violations over more than a year, multiple misstatements that concealed the documents revealing those violations, continued interference with the FTC's investigation, and failure to supplement their production voluntarily with unequivocally responsive documents.  Defendants and the Master were forced to expend substantial resources to ferret out this misconduct and uncover the truth." [*id.* at 9].  They point out that "Courts have imposed far more drastic sanctions than those sought by Defendants—including dismissal and even larger fines—for similar misconduct." [*id.* (citing cases)].  Finally, they urge the Master to "look at the whole picture of Plaintiffs' counsel's egregious behavior in fashioning the appropriate sanction." [*id.*].  They close by pointing out that they had no obligation at this stage of the proceedings to present specific support for 'the amount and reasonability [sic]' of their attorneys' fees and costs" because "Courts routinely bifurcate the determination of a party's entitlement to attorneys' fees and the calculation of those fees on a later submission [*id.* at 10 n.7 (quoting Pls' Opp. at 22 and citing cases)].

D.   The Parties' Post-Briefing Supplementary Submissions

While the Master was in the process of reviewing the parties' briefing on the HA Defendants' motion, the Master received the following additional supplementary submissions from the parties (with accompanying exhibits).

1.   *Plaintiffs' April 26, 2022 Notice of Relevant Subsequent Events with Exhibits*

On April 26, 2022, Plaintiffs wrote to "bring to the Master's attention several recent developments in the FTC's investigation of HomeAdvisor that directly relate to . . . the HomeAdvisor ('HA') Defendants' Motion for Sanctions. . . ." [Plaintiffs' April 26, 2022 Notice of Relevant Subsequent Events ("Pls Apr. 26 Notice") at 1].  Plaintiffs reiterate their argument that the HA Defendants' "assertion that the FTC's investigation of HA was 'fueled' [or] 'steered' by Plaintiffs' counsel" is "unsupported" and "baseless" because "it is belied by the FTC's comprehensive and detailed July 2019

[Civil Investigative Demand], including dozens of interrogatories and requests for documents served on HA, all of which predated Plaintiffs' knowledge of the FTC's investigation or any communication between the Plaintiffs and the FTC. . . ." [*id.* at 1-2]. They advise that "recent filings by the FTC undercut the HA Defendants' false assertions in the [Motion for Sanctions] and support the positions taken by Plaintiffs in opposition [thereto]," pointing to the Administrative Complaint filed by the FTC on March 11, 2022, and a Motion for Summary Decision filed by the FTC on April 7, 2022 [*id.* at 2]. "The[se] . . . filings . . . demonstrate that the FTC's investigation and the filing of the FTC Complaint were thorough, independent, and well founded." [*id.*] For support, Plaintiffs point to the fact that "[t]he FTC clearly identifie[d] the sources of its administrative proceedings against HA" as coming from "documents produced by [the HA Defendants] in response to the Commission's Civil Investigative Demands ("CIDs") or testimony provided by [the HA Defendants] . . . in the Commission's investigative hearings," as well as the HA Defendants' "public website and statements, narrow declarations from [their] former employees and customers, and complaints filed with the [Better Business Bureau] and shared at the time with [the HA Defendants]." [*id.* at 2 n.3]. Plaintiffs argue that the FTC's Motion for Summary Decision and accompanying exhibits "demonstrat[e] the FTC's significant work and independent investigation" [*id.* at 3] and therefore, "directly undercut the HA Defendants' assertions that discussions between Plaintiffs' counsel and the FTC" and materials provided to the FTC by Plaintiffs steered the FTC's investigation [*id.*].

Plaintiffs provide quantitative comparison of the materials provided by Plaintiffs to the FTC with the materials cited by the FTC in these two public filings, ostensibly to demonstrate the limited overlap between the two:

- "Of the 12 declarations from former HA [service providers], only 2 [of them] also submitted an intake to Plaintiffs' counsel. . . .";

- "100 of the 121 audio recordings included with the [Motion for Summary Decision] were 'random[ly]' selected"; and

- *"[O]nly 3 of the 121 referenced recordings* were included from the . . . 'sample of 40 calls' discussed between the FTC and Plaintiffs' counsel."

[*id.* (emphasis added by Pls).]

Plaintiffs insist that if the FTC's Complaint and/or Motion for Summary Decision "supported or contained any evidence to support HA's claims that Plaintiffs[] 'fueled' or 'steered' the FTC investigation or [had shown] any prejudice stemming from Plaintiffs' counsel's communications with the FTC, the HA Defendants would have promptly informed the Master. . . . [and] the fact that HA has been silent about these FTC filings speaks volumes." [*id.* at 3-4]. "[T]he HA Defendants have known for more than a year, and well before they filed their [Motion for Sanctions] in January 2022, that they FTC's actions were being taken based on the FTC's investigation and the specific evidence it gathered independent of anything learned from Plaintiffs' counsel." [*id.* at 4]. Accordingly, Plaintiffs are adamant that the FTC's own filings "demonstrate[] how absolutely hollow is HA's bald assertion that Plaintiffs' counsel's conduct caused any prejudice to HA," that "Plaintiffs' counsel did not 'steer' or 'fuel' the FTC's

investigation," and therefore "eviscerate HA's [Motion for Sanctions] and demonstrate that it is HA's own conduct that has brought it in the FTC's crosshairs." [*id.* at 4-5].

Plaintiffs further accuse the HA Defendants of "flout[ing] the Master's instructions made during the February 2, 2022 teleconference with the parties." [*id.* at 4; *see also id.* at 5]. At that conference, the Master had specifically cautioned the HomeAdvisor Defendants that because neither the Master nor the Court had yet determined that there had been a violation of the PO, they "should not make any characterizations to the contrary." [*id.* at 5]. However, Plaintiffs believe that the HA Defendants' affirmative defenses 13-15—unqualifiedly referencing "affirmative misconduct" by the FTC—violate the Master's directive. "As written, HA's affirmative defenses directly and falsely imply to the Administrative Law Judge in the FTC Action that the predicate to those defenses, that the communications between the FTC and Plaintiffs' counsel were found to have violated the Protective Order, has been met. . . ." [*id.*].

### 2. The HA Defendants May 5, 2022 Response to Plaintiffs' April 26 Letter with Exhibit

On May 5, 2022, the HomeAdvisor Defendants responded to Plaintiffs' April 26, 2022 Notice of Relevant Subsequent Events (the "HA Defs' May 5 Resp."). They reach precisely the opposite conclusion as Plaintiffs concerning the FTC filings: "[T]he FTC's Complaint is still further proof that Plaintiffs' actions in fact have had a demonstrable and prejudicial effect on the FTC's investigation. The very result Plaintiffs sought to cause—a public lawsuit by the FTC against HomeAdvisor—has come to pass after Plaintiffs covertly assisted the FTC in its investigation in every way possible for over a year." [HA Defs' May 5 Resp. at 1]. The HA Defendants underscore that "Plaintiffs have now had multiple chances to express regret for their numerous violations of the Court's orders and their patently false statements. Instead, they have doubled- and tripled-down on their misconduct and did so again in their April 26 letter." [*id.*] "Plaintiffs do not—because they cannot—credibly dispute that they attempted to assist the FTC in its efforts to prosecute HomeAdvisor, [and] have no explanation for their many misstatements to the Master and Defendants." [*id.* at 2]. Instead, "to avoid sanctions, Plaintiffs argument seems to be, 'it would have happened anyway.'" [*id.*].

The HA Defendants believe that "the FTC's March 11, 2022 Complaint simply is an extension of the course of action that Plaintiffs' counsel fomented at every step of the way. Between February 10, 2020 and April 9, 2021—the day ***after*** Defendants advised Plaintiffs and the Master of their suspicions that Plaintiffs had been in improper contact with the FTC—Plaintiffs had ***at least fifteen calls*** with the FTC and repeatedly contacted the staff to steer its investigation. . . . [T]he FTC's notification to HomeAdvisor that it was prepared to move forward with an enforcement action if a settlement could not be reached came on April 19, 2021, a mere ***ten days*** after Plaintiffs' final written communications with the FTC staff." [*id.* (emphases added by HA Defs)].

The HA Defendants posit that the FTC's Complaint serves as further evidence that Plaintiffs' misconduct prejudiced them by depriving them "of the opportunity to confer in real time with the FTC about the biased assistance volunteered by Plaintiffs' counsel in violation of the protective order in this case." [*id.*]. As support for this, they point out the striking "similarity between Plaintiffs' allegations in

this case and those contained in the FTC's Complaint." [*id.* at 2-3 (comparing FTC Complaint allegations ¶¶6-7 with Plaintiffs' Operative Complaint [Dkt 455-1] ¶¶5(b), 66-67, 161, and 299, which they assert are "virtually identical")]. The HA Defendants argue that "[t]he fact that the FTC might have cited certain materials other than those provided by Plaintiffs' counsel does not alter the fact that the substance of the allegations in the two lawsuits is virtually identical . . . because Plaintiffs' counsel pressed their litigation theory with the FTC for over a year in a sustained effort to precipitate a parallel government action against HomeAdvisor." [*id.* at 3].

The HA Defendants again raise the point that Plaintiffs have never even attempted to defend their May 10, 2021 letter to the Master, which contained material misstatements, because "Plaintiffs have no justification for their false statements" and that "Plaintiffs' continued silence on those willful misrepresentations speak volumes." [*id.* at 4].

Finally, they disagree with Plaintiffs' theory that "their misconduct—no matter how egregious— is immune from sanctions unless Defendants prove some identifiable prejudice resulted." [*id.* at 4-5 (citing cases to the contrary)]. Regardless, they note that "the prejudice to Defendants is "obvious, even if not a necessary predicate to sanctioning Plaintiffs for their misconduct." [*id.* at 5]. "Defendants' opportunity to defend themselves before the FTC was irretrievably [sic] compromised by the long non-disclosure of Plaintiffs' improper[ ]actions, in direct violation of the protective order, to influence the FTC Staff's perceptions and understandings of the facts." [*id.*]. Accordingly, they urge the Master, in addressing their Motion for Sanction, to view Plaintiffs misconduct "collectively, including their efforts to foment the FTC's investigation, numerous protective order violations, and knowing misstatements to conceal it all" and to "take Plaintiffs' letter for what it is: one more play to hide the ball and shrug off any accountability for their misconduct." [*id.*]

### 3. *Plaintiffs' May 6, 2022 Response to The HA Defendants' May 5 Letter*

Without seeking leave from the Master, on May 6, 2022, Plaintiffs responded to the HA Defendants' May 5 Response to their April 26, 2022 Notice of Relevant Subsequent Events ("Pls' May 6 Ltr."). The crux of Plaintiffs' May 6 letter is to highlight the HA Defendants' failure to respond to Plaintiffs' April 24 arguments concerning the independence of the FTC's Administrative Complaint and Motion for Summary Decision. [*See* Pls' May 6 Ltr. at 1.]

Plaintiffs argue that in their May 5 response, the HA Defendants "focus on the 17-page Administrative Complaint . . . by comparing its allegations to the claims made in Plaintiffs' 300+ page operative complaint," an analysis they describe as "a bridge to nowhere." [*id.*] They assert that it is "unsurprising and quite logical" for "private litigants and a government agency to view facts and the claims in a similar way and conclude wrongdoing has occurred . . . where the facts are so compelling," suggesting that the HA Defendants' comparison proves nothing [*id.*]. They point out that the HA Defendants "wholly ignore the [FTC's Motion for Summary Decision] . . . because [it] completely undercuts their Motion for Sanctions . . . and the entire notion that *any prejudice* could be shown here even if any violation of the Protective Order is found to have occurred. . . ." [*id.* at 1-2 (emphasis added by Pls)]. Plaintiffs believe that the FTC's Motion for Summary Decision and the exhibits thereto

"unequivocally demonstrate the FTC's significant work and independent investigation . . . comprising more than 8,000 pages of exhibits, declarations and analyses prepared and gathered *by the FTC through its [civil investigative demand] process*." [*id.* at 2 (emphasis added by Pls)].  Plaintiffs indicate that the HA Defendants "had a full year (April 2021 to March 2022) to persuade the FTC that HA . . . harmed no one and violated no laws," but failed to do so [*id.*].  They insist that "it is clear that the FTC is pursuing relief against HA . . . solely because of HA's misconduct and the FTC's regulatory assessment of that misconduct," and presumably not because of any prejudicial conduct on the part of Plaintiffs' counsel [*id.*]  Accordingly, "HA has no basis on which to seek sanctions and it is impossible that it can meet its 'showing of prejudice' requirement." [*id.* at 3].

Plaintiffs note that the HA Defendants "cannot rest on bald assertions of prejudice" when they themselves previously "proffered eight cases that stood for the proposition that a movant must show actual prejudice, not merely 'conclusory assertion[s] of prejudice', as well as provide evidence of bad faith" in their opposition to an earlier motion for sanctions brought by Plaintiffs against HomeAdvisor, therefore, "they are judicially estopped from arguing that they are not required to demonstrate prejudice." [*id.*].

Finally, Plaintiffs reference the HA Defendants' failure to address Plaintiffs' point that their affirmative defenses to the FTC's Administrative Complaint "suggest it is a *fait accompli* that a PO violation has been established," when not only is that not the case, but the Master cautioned the HA Defendants on February 2, 2022 not to make that representation [*id.* at 4].  "The manner in which HA has set forth the affirmative defenses at issue is inconsistent with a good faith belief." [*id.*].

### 4. The HA Defendants' May 25, 2022 Correspondence Concerning New Evidence of Plaintiffs' Counsel's Interference with the FTC's Confidential Investigation with Exhibits

On May 25, 2022, the Master received a letter (with accompanying exhibits) from the HA Defendants concerning new evidence of Plaintiffs' counsel's alleged interference with the FTC's investigation (the "HA Defs' May 25 New Evid. Ltr."):

> Defendants write about a significant development in the FTC's investigation that further supports the need for sanctions against Plaintiffs and their counsel for their many protective order violations, their continuing misstatements to the Master and Defendants, and their interference with the FTC's investigation.
>
> The FTC recently made a document production to HomeAdvisor containing several voicemails from Plaintiffs' counsel to the FTC staff from February 2020 through mid-November 2021.  These voicemails reveal that Plaintiffs' counsel continued their improper communications with the FTC for more than six months after Defendants' raised Plaintiffs' counsel's improper communications with the FTC on April 8, 2021, and the Master ruled on May

21, 2021 that the protective order barred any use of confidential discovery
materials outside this litigation.

[HA Defs' May 25 New Evid. Ltr. at 1].

On May 7, 2021, in connection with ruling on the matters addressed in the MOO, the Master
had "instructed Plaintiffs to submit an *in camer*a declaration to the Master detailing . . . their
communications with the FTC, which Plaintiffs submitted to the Master on May 13, 2021." [*id.*]  The HA
Defendants "assume that Plaintiffs' counsel never supplemented their May 13, 2021 *in camera*
declaration to the Master to reveal these [additional] communications.  In fact, it appears that following
the Master's May 7 and 21, 2021 orders, Plaintiffs' counsel simply shifted their illicit communications
with the FTC entirely to the telephone, to avoid creating any paper trail of their actions and to
circumvent any duty to supplement them as required. . . ." [*id.* at 1-2].  In their May 25 letter, the HA
Defendants provide a table showing "***at least a dozen voicemails*** from February 21, 2020 through at
least November 15, 2021—over ***7 months*** after Defendants first raised this issue and almost ***6 months***
after the Master's May 21, 2021 rulings." [*id.* (emphases added by the HA Defs)].  The HA Defendants
believe that these voicemails "confirm[] that the [Plaintiffs'] lawyers did indeed use and rely on
confidential discovery material from this litigation in their improper lobbying efforts with the FTC." [*id.*
at 2].

The HA Defendants supply the following examples (quoted from the audio recordings that are
included with their May 25 letter as exhibits):

- <u>February 26, 2020</u>.  Associate at Plaintiffs' counsel's firm states:  "I wanted to touch
base with you about the meeting we had scheduled for this Thursday.  We just learned
that Defendants will be producing to us all the documents that they produced to the FTC
by the end of day Monday.  So, we were thinking it may be prudent and most efficient
for us to postpone our call until next week and ***once we have an opportunity to review***
***those documents we can then revise our talking points and agenda slightly and then***
***also be in a position to specifically reference documents that we know are in the FTC's***
***possession which will help streamline the conversation***." [*id.* at 3 (quoting from
FTC_HOMEADVISOR0097296 (emphasis added by the HA Defs)].

- <u>March 25, 2020</u>.  Same associate at Plaintiffs' counsel's firm states:  "We wanted to let
you know that late Monday night Defendants produced to Plaintiffs all the documents
that have been produced to the FTC to date.  And we've already begun reviewing those
documents and we'll circle back with you  and your team to discuss potentially
scheduling another call once we have an opportunity to get through those documents.
In the meantime, I did want to request for the FTC to send another secure FTP upload
link so that we can go ahead and produce to the FTC the supplemental intake
production that we made to Defendants on Friday, and we also have some additional
information that we wanted to submit through the FTP link." [*id.* (quoting from

FTC_HOMEADVISOR0097294)].

- <u>March 27, 2020</u>.  Same associate at Plaintiffs' counsel's firm states:  "I'm reaching out for a couple of reasons.  I wanted to let you know that we did conduct a review of some of the . . . quality assurance audio recordings that were produced to the FTC, and wanted to provide you with a list of the recordings that ***we thought are reflective of the representations and omissions routinely made by HomeAdvisor that may be of particular interest to the FTC, and which may help in terms of prioritizing your review of those recordings***.  And I also wanted to bring to your attention that there was a filing made yesterday in which a letter dated May 9 from Plaintiffs' counsel to Defense Counsel was made public ***that may also be of significant interest to the FTC, and I wanted to go ahead and supply you with a copy of that filing***.  So, I'd ask for an FTP link to be sent to me so that we can provide you with a list of audio recordings as well as Plaintiffs' May 9 letter.  And upon receipt and review of that information, please let us know if you'd like to schedule a call, we are generally available." [*id.* (quoting from FTC_HOMEADVISOR0097292 (emphasis added by the HA Defs)].

- <u>January 7, 2021</u>.  Same associate at Plaintiffs' counsel's firm states:  "I just wanted to follow up with you concerning ***the documents that we had referenced during our call today***, specifically the two survival guides [i.e., HomeAdvisor internal training materials].  So I can go ahead and just leave you the Bates numbers on this voicemail, but feel free to reach back out tomorrow . . . [and] maybe later in the afternoon if you want to walk through any of those documents ***I'd be happy to go through them with you***. . . .  And once again ***I'm happy to talk about those in more detail if you would like to***." [*id.* (quoting from FTC_HOMEADVISOR0097290) (emphases and bracketed material added by the HA Defs)].

- <u>January 11, 2021</u>.  Same associate at Plaintiff's counsel's firm states:  "I was reaching out because my team wanted to schedule a brief call with you and your team to just provide you an update concerning . . . the conference that we had on Friday and to discuss a couple of topics that arose during the conference.  So could you please let me know when you and your team would be available either sometime later today, or tomorrow, or Wednesday, but hopefully we can touch base sometime by mid-week." [*id.* at 4 (quoting from FTC_HOMEADVISOR0097288)].

- <u>January 19, 2021</u>.  Same associate at Plaintiffs' counsel's firm states:  "I'm reaching out with two requests.  One being, if an FTP link could be sent to me so I could go ahead and produce the intakes that we're producing this evening to Defendants. . . .  And the second ask or request is to see if you and your team would be available either tomorrow or sometime Thursday afternoon to connect for just a brief call.  ***We have a number of things that we wanted to touch base with you about, there's just been a lot going on.***

***So we figured it would benefit us all if we could just connect by phone*** for a brief call either tomorrow or Thursday afternoon." [*id.* (quoting from FTC_HOMEADVISOR0097286 (emphasis added by the HA Defs))].

The HA Defendants emphasize that the following five voicemail messages were left "***months after*** Defendants raise[d] Plaintiffs' counsel's improper communications with the FTC [with the Master] on April 8, 2021 and . . . ***months after*** the Master state[d] that such communications [if, based on the HA Defendants' Confidential Information and intended to assist the FTC] would violate the protective order on May 21, 2021." [*id.* (emphasis added by the HA Defs)]:

- August 16, 2021.  "[Name partner at Plaintiffs' counsel's firm] leaves a voicemail for the FTC staff seeking a return call. . . ." [*id.* (citing FTC_HOMEADVISOR0097284)].

- September 7, 2021.  Same name partner at Plaintiffs' counsel's firm states:  "I'm here with [another name partner at the same firm] and we were just calling to bring you up to date about the latest scheduling information for our case.  We just reached agreement with modifications with Defense Counsel and the Special Master likely to be filed as an order by the Court in the next week or so.  ***We also wanted to discuss with you some material information about relief that we'll be seeking in our case and we wanted to ascertain if it's consistent with similar relief you may be seeking.  This is new, and it's pretty important in our view***." [*id.* (quoting from FTC_HOMEADVISOR0097282 (emphasis added by the HA Defs))].

- September 15, 2021.  "[First name Partner at Plaintiffs' counsel's firm] leaves a voicemail for the FTC staff seeking a return call. . . .  'I was calling to see if we could set up a time to talk over the next couple days. . . .  There are several things we'd like to talk with you about.'" [*id.* (quoting from FTC_HOMEADVISOR0097280)].

- November 15, 2021.  "[First name partner at Plaintiffs' counsel's firm] leaves a voicemail for the FTC staff seeking a return call. . . .  'This may be a good time for us to catch up on a couple things'." [*id.* at 4-5 (quoting from FTC_HOMEADVISOR0097278)].

- November 15, 2021.  "FIrstname partner at Plaintiffs' counsel's firm] leaves the FTC staff a second voicemail the same day [as the voicemail above] seeking a return call.  Both this call and the preceding call on the same date were placed ***the Monday after Defendants served their affirmative expert report*** . . . on November 12, 2021, which Defendants marked 'Highly Confidential' under the protective order." [*id.* at 5 (citing to FTC-HOMEADVISOR0092776 (emphasis added by the HA Defs))].

The HA Defendants believe "[t]hese voicemails further reveal the extent to which Plaintiffs' counsel have worked to influence the FTC's investigation, as well as Plaintiffs' counsel's complete disregard of the Master's orders and their duty of candor," and further belie Plaintiffs' counsel's

arguments that "their communications with the FTC had no 'secondary purpose . . . independent from the primary purpose of advancing Plaintiffs' claims.'" [*id.* at 5 (quoting Pls' Opp. at 16)].  They posit that "[t]hese voicemails . . . do not even scratch the surface of the many and long substantive discussions that Plaintiffs had with the FTC staff. . . ." [*id.*].

The HA Defendants find "[m]ore troubling [that even] in the face of the Master's unequivocal oral ruling on May 21, 2021 that any communications with the FTC [using the HA Defendants' Confidential Information] that assisted the FTC in its investigation or prosecution efforts against HomeAdvisor would violate the protective order," "Plaintiffs' counsel continued assisting the FTC in secret for months, pivoting from their prior email practices to clandestine telephonic communication." [*id.*].  They conclude from this "pivot[]" that "Plaintiffs' counsel made a deliberate decision to switch to phone calls rather than email communications to avoid a paper trail from there on out to circumvent the Master's rulings and their duty to supplement" their production under Fed. R. Civ. P. 26(e) [*id.*].

As a result of Plaintiffs' counsel's continued communications with the FTC, the HA Defendants argue that "a more expansive inquiry into Plaintiffs' improper communications appears required here" because "[t]hese new materials also suggest that Plaintiffs' counsel's *in camera* declaration may contain misleading or deficient representations, and omissions." [*id.* at 6].  They ask the Master to "exercise her inherent authority to get to the bottom of these serious issues. . . ." [*id.*].

> 5.  *Plaintiffs' June 8, 2022 Response to the HA Defendants' May 25 Letter with Exhibits*

On May 25, 2022, by email, the Master granted Plaintiffs leave to respond to the HA Defendants' May 25 New Evidence Letter.  She also requested that Plaintiffs address the following two issues in their response:  "(i) why the Master should not disclose Plaintiffs' [May 13, 2021] *in camera* declaration to the HomeAdvisor Defendants, and (ii) why the Master should not request that the [May 13, 2021] *in camera* declaration be supplemented to include all communications with the FTC to date (regardless of mode) since the prior declaration."  Plaintiffs served their response both to the HA Defendants' May 25 New Evidence Letter and the Master's questions on June 8, 2022 ("Pls' June 8 Resp. to HA Defs' May 25 New Evid. Ltr.").

In their response, Plaintiffs' reject the HA Defendants' characterization of the 12 post-April 2021 FTC voicemails as "revealing" or as "a significant development" [Pls' June 8 Resp. to HA Defs' May 25 New Evid. Ltr. at 1].  They assert that many of the voicemails simply "reflect and reiterate information about the Plaintiffs' and the FTC's contacts that was already in Defendants' possession prior to the Motion for Sanctions." [*id.*]  They note that many of the voicemails reference documents that were already identified as part of Plaintiffs' December 20, 2021 supplementary production ordered by the Master.  [*See id.* at 2 (providing examples).]  Plaintiffs argue that the voicemails "do not suggest (or even hint) that any document was omitted from the 12.21.2021 document production" [*id.*], nor are they "revelations of any improper communications, and [they] provide no support for Defendants' assertion of improper communication between Plaintiffs' Counsel and the FTC." [*id.* n.2].  Plaintiffs insist that they "scrupulously gathered the responsive documents through [the date of the production], and no subsequent supplemental production was made because there were no additional documents to

produce." [*id.* at 3].  They claim that the last five calls with FTC, which occurred between August 16 and November 15, 2021, "were fully compliant with the PO, and . . . were held after the FTC investigation and the FTC's intentions to pursue claims against HA were disclosed." [*id.* at 2 n.2].

Plaintiffs' counsel deny that they discussed the parties' expert reports with the FTC on November 15:  "Plaintiffs have not provided or discussed expert reports, the identity of the experts, or the subjects of the expert reports exchanged in this Action, to or with the FTC" and request that the Master "make [an] inquiry [into] whether Defendants have (a) provided to or (b) discussed with the FTC any of the experts' reports, and if so, when and which ones." [*id.* at 3].  They believe that the voicemails at issue merely "confirm Plaintiffs' good faith efforts and candor in their productions in this Action . . . and that Defendants' [Motion for Sanctions] is still without any evidentiary basis." [*id.*].  Plaintiffs explain that a review of the entire transcript of each of the voicemails (provided as an Addendum to their June 8 letter) "confirms that Plaintiffs' Counsel communicated about non-confidential information, and information and communications were with respect to the prosecution of Plaintiffs' claims, to counter Defendants' defenses, and/or to settle this Action [all of which] are expressly authorized under the PO." [*id.*]

With respect to the post-April 2021 voicemails, Plaintiffs assert that they "were not prohibited by the Master or the PO from communicating with the FTC," and that "those [voicemails] do not evidence any communication inconsistent with the PO." [*id.*].  Moreover, "[*a*]*s of April 21,* the FTC had *already* expressly informed HA that it intended to pursue claims against HA for violation of the FTC Act" [*id.* at 4 (emphasis added by Pls)], presumably showing that Plaintiffs' post-April 2021 voicemails could therefore not have influenced the FTC's decision to bring charges against the HA Defendants.

As to the post-May communications, Plaintiffs note that "the existence of the FTC Action was public knowledge . . . on which knowledge any person could have and may have acted." [*id.*]  They point out that "Plaintiffs' Counsel, obviously, did not have [these voicemails] in their possession until 5.25.22" [*id.*], when the HomeAdvisor Defendants disclosed and produced them to the Master.  They reiterate that the voicemails "do not present any evidence of a PO violation or any prejudice to Defendants" because "the FTC's determination to pursue the investigation of HA was that of the FTC, without any knowing involvement of Plaintiffs or Plaintiffs' Counsel," based entirely on the FTC's "conduct[ing] extensive discovery of HA. . . ." [*id.*].

Plaintiffs further argue that "[i]t is undisputed that since July 2019 HA has had unfettered access to the FTC Staff, in addition to the FTC Commissioners (with whom Plaintiffs never communicated), to demonstrate why the FTC's allegations were wrong," and therefore, the HA Defendants' assertions that Plaintiffs' Counsel exerted any impact on the FTC's decision to prosecute the HA Defendants "are frivolous when juxtaposed against these FACTS." [*id.* (capitalization added by Pls)].  They claim that "[l]ike the [Motion for Sanctions], the 5.25.2022 letter contains reckless accusations against Plaintiffs' Counsel without any support in the record, evidence, or the terms of the PO." [*id.* at 5].  They believe that the HA Defendants' arguments "are so baseless and reckless that the 5.25.2022 Letter is better understood to be a transparent effort to counter the FTC's recent Administrative Complaint and Motion

for Summary Decision, and the devastating impact of those filings on [the HA Defendants' Motion for Sanctions]." [*id.*].

Plaintiffs conclude by stating that because "none of the [voicemails] demonstrate[] any omission from Plaintiffs productions or . . . from the May 2021 *in camera* Declaration. . . . Defendants are not entitled to the production of Plaintiffs [May 2021] *in camera* Declaration." [*id.*]. "Plaintiffs provided the Master with their *in camera* Declaration, with the reasonable understanding that it would remain *in camera* and provided it expressly subject to and without waiver of all privileges and protections, including attorney client and attorney work product protections." [*id.* at 6]. They assert that "there was no duty or requirement to supplement Plaintiffs' May 2021 *in camera* Declaration, and Defendants point to none." [*id.*]. Nonetheless, they add that "[i]f the Master desires Plaintiffs to supplement their May 2021 *in camera* Declaration and confirms that, consistent with prior practice in the case, it and the supplement will not be produced to Defendants, then Plaintiffs will readily provide that to the Master *in camera*." [*id.*]

6. *Communications Received From the Parties From June 8, 2022 Through December 31, 2022*

By email on June 9, 2023, the HA Defendants notified the Master and Plaintiffs that "[a]bsent any follow-up questions the Master would like Defendants to address, Defendants will consider this matter fully briefed and ripe for decision. (However, in the event the Master entertains Plaintiffs' request for additional FTC-related discovery, to which Defendants object, Defendants request the opportunity to submit a response on that issue.)."

The Master declined to pursue Plaintiffs' request for additional FTC-related discovery, but on June 25, 2022, by email, she did accept Plaintiffs' June 8 offers to update their May 13, 2021 *In Camera* Declaration, asking them "to include all contacts with the FTC from the last date referenced in the original declaration to present." On June 27, 2021, Plaintiffs responded by email stating that they would "supplement their prior *in camera declaration* by Wednesday, June 29," which they did. The June 29, 2022 *In Camera Submission* Supplemental Declaration Responding to Special Master Maura R. Grossman's June 25, 2022 Questions is filed herewith under seal (Restricted Level 2) as Ex. 1.

Other than the Master's unsuccessful attempts to resolve this dispute informally over the Summer of 2022—which were conducted subject to Federal Rule of Evidence 408 and are therefore not recounted or considered here—the only other substantive communication related to this dispute before the end of 2022 came from Plaintiffs' counsel on December 12, attaching "two documents from the FTC HomeAdvisor Matter . . .": "1. A December 1, 2022 Consent Motion to Withdraw the Matter From Adjudication For the Purpose of Considering a Proposed Consent Agreement, and 2. A December 2, 2022 Order Withdrawing Matter From Adjudication For The Purpose of Considering a Proposed Consent Agreement."

7. *The Parties' January 3 and 4, 2023 Responses to the Master's January 2, 2022 Inquiry With Exhibits*

On January 2, 2023, while the Master was in the process of drafting this Memorandum Opinion and Order, she reached out to the parties by email for clarification of certain historical details concerning (i) the timing of the service of RFPS 11, 12, 30, 31, and 32, as well as the service of the responses and objections, and amended responses and objections, thereto; and (ii) any correspondence and/or meet and confers that may have occurred in connection with these RFPs and the responses and objections or amended responses and objections to them.

On January 3, 2023, the HA Defendants responded by providing a chronology from June 30, 2017, when they served their First Set of RFPs on Plaintiffs (including RFPS 11 and 12) through April 2, 2021, when Plaintiffs served their Second Amended Responses and Objections to Defendants' First and Second Sets of RFPs.  On January 4, 2023, Plaintiffs supplemented the HA Defendants' chronology with additional details.  Both parties supplied supporting materials along with their chronologies.

The Master notes the following significant dates and events related to RFPs 11, 12, 30, 31, and 32:

- <u>June 30, 2017</u>:  Defendants serve First Set of RFPs, including RFPs 11 and 12.

- <u>August 14, 2017</u>:  Plaintiffs serve Responses and Objections ("R&Os") to Defendants' First Set of RFPs, including as to RFPs 11 and 12.

- <u>May 16, 2018</u>:  Defendants serve deficiency letter on Plaintiffs regarding Plaintiffs' R&Os, including as to RFPs 11 and 12.

- <u>May 23, 2018</u>:  Plaintiffs serve response to Defendants' May 16, 2018 deficiency letter, including as to RFPs 11 and 12.

- <u>June 29, 2018</u>:  Videoconference held with the Master to discuss, among other things, Plaintiffs' R&Os to RFPs 11 and 12.

- <u>July 5, 2018</u>:  Master enters Second Stipulation and Order Resolving Discovery Disputes [Dkt. 156], ordering Plaintiffs to supplement their R&Os, including as to RFPs 11 and 12.

- <u>July 18, 2018</u>:  Pursuant to the Second Stipulation and Order Resolving Discovery Disputes [Dkt. 156], Plaintiffs serve Amended R&Os, including as to RFPs 11 and 12.

- <u>May 22, 2019</u>:  Defendants serve Second Set of RFPs, including RFPs 30, 31, and 32.

- <u>June 21, 2019</u>:  Plaintiffs serve R&Os to Defendants' Second Set of RFPs, including as to RFPs 30, 31, and 32.

- <u>September 11, 2019</u>:  Parties hold a telephonic meet and confer regarding various discovery matters, including as to all of Plaintiffs' R&Os to Defendants' RFPs.

- <u>October 16, 2019</u>:  Defendants serve deficiency letter on Plaintiffs regarding Plaintiffs' R&Os to Defendants' RFPs, including as to RFPs 11, 12, 30, 31, and 32.

- <u>October 25, 2019</u>:  Plaintiffs serve response to Defendants October 16, 2019 deficiency letter, including as to RFPs 11, 12, 30, 31, and 32.

- <u>November 12, 2019</u>:  Plaintiffs serve First Amended R&Os to Defendants' Second Set of RFPs, including as to RFPs 30, 31, and 32.

- <u>November 14, 2019</u>:  Videoconference held with the Master to discuss among other things, Defendants concerns with Plaintiffs' First Amended R&Os.  The Summary of Discovery Issues Discussed at the November 14, 2019 Conference with Special Master Maura R. Grossman states (at 7) that:  "Defendants will further review Plaintiffs' amended [R&Os] to Defendants' second set of discovery demands, and provide Plaintiffs [with] a letter detailing what categories of documents or information are missing from Plaintiffs' productions and/or interrogatory responses.   Defendants and Plaintiffs will thereafter meet and confer with regard to any missing documents or information."

- <u>February 10, 2020</u>:  Plaintiffs' counsel's initial contact with the FTC by email.

- <u>Late February, 2020</u>:  The FTC informs Defendants' counsel of the *fact* of Plaintiffs' counsel's outreach to them, but not the substance or content of the communication.

- <u>March 23, 2020</u>:  Defendants serve a deficiency letter on Plaintiffs regarding Plaintiffs' R&Os, including as to RFPs 11, 12, 30, 31, and 32.

- <u>April 13, 2020</u>:  Plaintiffs serve response to Defendants March 23, 2020 deficiency letter, including as to RFPs 11, 12, 30, 31, and 32.

- <u>April 30, 2020</u>:  The parties hold a telephonic meet and confer regarding various discovery matters, including as to Plaintiffs' R&Os to Defendants' RFPs 11, 12, 30, 31, and 32.  With respect to RFPs 11, 30, and 31, Defendants' counsel states:  "You mention disclosing the identity and contact information of the former employees.  *But the request is broader than that.  The request includes all documents, communications, and*

*ESI reflecting communications sent to you, received, or exchanged between the Plaintiffs and counsel and these individuals.  So I don't know if that was just the language of the letter, or it there's some kind of dispute there as to the contours of the request?*"
[Recording of April 30, 2020 meet and confer; Excerpt of transcription of same, GMT20200430-173001 Lauren Bec, from minute 0:06:20 through minute 0:19:00, emailed to the Master on May 13, 2021 ("Apr. 30 Transcript Excerpt"), at 2 (emphasis added)].  Plaintiffs' counsel responds:  *"I would have to go back to look at – to be honest.  I forgot that there was that additional aspect of the request.  So I'm going to have to go back and take a look at what we've done previously, what our response was previously. . . .  But I'm going to have to go back and check.  I'm not in a position to respond to that right now."* [*id.*(emphasis added)].  It appears that Plaintiffs' counsel never got back to Defendants' counsel on this issue and that Defendants' counsel did not pursue it.  [*See* MOO at 16.]

With respect to RFPs 12 and 32, Plaintiffs' counsel states:  "So I guess part of our confusion is what third-party communications Defendants have in mind.  *Cause when we look at it, we feel like we have already produced, or Defendants have access to, any documents that would be responsive. . . .  [S]o we just don't see above and beyond what we've already produced, what sort of third party documents Defendants have in mind that they think are not covered in our responses or productions in this case.*" [*id.* at 3].
Defendants' counsel answers "I think that's sort of a hard question for me to answer, right?  Because I don't know.  *I don't know what you have that might be responsive kicking around in your files.*  So I guess if the answer is what we've produced is the complete universe of things we have, then there just isn't any dispute. . . .  *But, if there's a separate category of documents that are being withheld for some reason, on, I don't know what, any kind of objection or privilege, or something else.  I don't know that the response clearly stated that."* [*id.* (emphasis added)].  Plaintiffs' counsel responds:  "Okay, that's a fair point.  I see what you mean now.  I think our response would be that we do stand on our responses that *nothing has been withheld from production, that we have produced an abundance of documents and communications relating to third parties and we didn't say that we're withholding anything in our response, and we are not withholding anything from our response*." [*id.* (emphasis added)].  Another Plaintiffs' attorney then jumps in to clarify:  "We do assert work product over communications obviously with our experts. . . . *But at this time we've produced all the responsive documents pursuant to our objections and assorted work-product privilege*." [*id.* at 3-4 (emphasis added)].   ***Neither party references the FTC communications.***

- May 6 through 21, 2020:  The parties exchange a series of emails editing and commenting on a summary of the April 30 meet and confer initially drafted by Defendants' counsel, but the parties never reached agreement on a final version.  The last version of the summary that includes Plaintiffs' counsel's edits (sent on May 11, 2020 at 8:35 PM), repeats that *"Plaintiffs stand on their responses and have*

*communicated that nothing is being withheld from production that is not protected by the attorney work-product doctrine."* [Ex. C to the HA Defendants' May 4, 2021 submission to the Master in response to Plaintiffs' April 30, 2021 letter (emphasis added)].

- March 4, 2021:  Defendants send an email to Plaintiffs' counsel and the Master raising their concerns about Plaintiffs' counsel's potential contacts with the FTC in an effort to influence the outcome of their investigation.

- April 2, 2021:  Plaintiffs serve their Second Amended R&Os to Defendants' First and Second Sets of RFPs, including as to RFPs 11, 12, 30, 31, and 32.  These are the operative RFPs and state as follows:

  o *Plaintiffs' R&O to RFP 11*:  "Plaintiffs hereby incorporate by reference the General Objections set forth above.  Plaintiffs object to this Request as overly broad, unduly burdensome, vague, and intended to harass and annoy. Specifically, Plaintiffs object to this Request to the extent that it seeks documents and information that are neither relevant to the claims or defenses of any party, nor reasonably calculated to lead to the discovery of admissible evidence.  Moreover, the sweeping breadth and scope of this Request is self-evident in that it seeks, "*all* Documents, Communications and ESI reflecting communications between You and/or Your counsel and *any third party* or *non-party relating to any* of the claims alleged in the Amended Complaint *or otherwise relating* to this Lawsuit" (emphasis added).  The burden and expense of the discovery sought in response to this Request is not proportional to the needs of this case, and outweighs any benefits, especially given that this litigation commenced over four and a half years ago when the Complaint was filed in July 2016, and Plaintiffs' pre-complaint investigation now spans nearly six years.  *See United States ex rel. Smith*, 2011 U.S. Dist. LEXIS 79941, at *9 (D. Kan. July 22, 2011) ("The court will not permit the discovery process to be utilized as a tool to burden opposing counsel").  The information sought, including whom Plaintiffs' Counsel spoke to and when, constitutes Plaintiffs' Counsel's litigation strategies work product, and mental impressions, and are protected from disclosure to any Defendant pursuant to the attorney/client privilege, work product doctrine, joint prosecution or common interest privilege, consulting expert privilege, investigative privilege, and/or any other applicable privilege or immunity.

  Furthermore, Plaintiffs object to this Request because it seeks documents that either reflect a legal conclusion, protected expert discovery, communications and analysis, or are protected by the attorney-client privilege or which constitutes attorney work product/trial preparation materials or any other

privileged information, as well as information or documents that were compiled or prepared at the request and direction of counsel in anticipation of, or in conjunction with, litigation that are also protected by the attorney work product doctrine.  Plaintiffs' counsel withholds documents in response to this Request.

Subject to and without waiver of the foregoing General and Specific Objections, Plaintiffs have produced the intakes submitted to Plaintiffs' counsel by Service Professionals referenced in Appendix I, and will continue to produce the intakes submitted to Plaintiffs' counsel by Service Professionals.  Furthermore, Plaintiffs state that they have identified and provided the known contact information for the former HomeAdvisor employees cited in the Consolidated Second Amended Complaint (Dkt. Nos. 409, 423) as Former Employees A-G.  Additionally, Plaintiff Airquip has no responsive documents to produce, and Plaintiffs DaSilva and Gray have produced to Defendants documents responsive to this Request, to the extent that they are in their possession, custody, or control."

o  *Plaintiffs' R&O to RFP 12*:  "Plaintiffs hereby incorporate by reference the General Objections set forth above.  Plaintiffs object to this Request on the grounds that it is compound, and actually consists of at least two separate and distinct requests:  the first relating to "*any* and *all*" evidence from "*any* third party or non-party that [Plaintiffs] intend to use as evidence in this Lawsuit", and the second relating to "*any* and *all*" evidence from "*any* third party or non-party [] that relates to [Plaintiffs] claims in this Lawsuit" (emphasis added).  Moreover, this compound Request is objectionable because it is vague, overly broad, unduly burdensome, premature, and intended to harass and annoy.  Plaintiffs further object to this Request because it seeks documents that either reflect a legal conclusion, expert discovery and analysis, or are protected by the attorney-client privilege or which constitutes attorney work-product/trial preparation materials or any other privileged information, as well as information or documents that were compiled or prepared at the request and direction of counsel in anticipation of, or in conjunction with, litigation that are protected by the attorney-work-product doctrine.  Additionally, Plaintiffs assert attorney-work product privilege over communications with prospective Class Members, except as to those communications contained in the Intakes, pursuant to the Master's ruling on Defendants' Motion to Compel, as well as communications with experts and expert analysis.  Plaintiffs withhold documents based on these objections.

Subject to and without waiver of the foregoing General and Specific Objections, Plaintiffs state that they have and will continue to produce the HSP Intake forms, and the responses and documents produced by third parties in response to subpoenas duces tecum.  In addition, Plaintiffs have and will continue to

produce declarations from putative Class members and former HomeAdvisor employees, as well as other evidence, upon determination of Plaintiffs' intent to use such as evidence."

o   *Plaintiffs' R&O to RFP 30*:  "The Costello Plaintiffs hereby incorporate by reference the General Objections set forth above.  The Costello Plaintiffs object to this request as overly broad, unduly burdensome, vague, and intended to harass and annoy.  Specifically, the Costello Plaintiffs object to this Request to the extent that it seeks documents and information that are neither relevant to the claims or defenses of any party, nor reasonably calculated to lead to the discovery of admissible evidence.  Moreover, the sweeping breadth and scope of this Request seeking "*all* documents, communications and ESI reflecting communications sent to, received by or exchanged between the Costello Plaintiffs and/or Your counsel and *any third party or non-party relating to any* of the claims alleged in the Amended Complaint *or otherwise relating to* this Lawsuit" (emphasis added), calls for disclosure of Plaintiffs' counsel's investigatory efforts, consultation with non-testifying experts and other litigation-driven endeavors that are clearly beyond the reach of proper discovery.  The burden and expense of the discovery sought in response to this Request are not proportional to the needs of the case, and outweigh any benefits, especially given that this litigation commenced over four and a half years ago when the Complaint was filed in July 2016, and Plaintiffs' pre-trial investigation now spans nearly six years.  *See United States ex rel. Smith*, 2011 U.S. Dist. LEXIS 79941, at *9 (D. Kan. July 22, 2011) ("The court will not permit the discovery process to be utilized as a tool to burden opposing counsel").  The information sought, including whom Plaintiffs' Counsel spoke to and when, constitutes Plaintiffs' Counsel's litigation strategies, work product, and mental impressions, and are protected from disclosure to any Defendant pursuant to the attorney/client privilege, work product doctrine, joint prosecution or common interest privilege, consulting expert privilege, investigative privilege, and/or any other applicable privilege or immunity.

Furthermore, the Costello Plaintiffs object to this Request because it seeks documents that either reflect a legal conclusion, protected expert discovery, communications and analysis, or are protected by the attorney-client privilege or which constitutes attorney work product/trial preparation materials or any other privileged information, as well as information or documents that were compiled or prepared at the request and direction of counsel in anticipation of, or in conjunction with, litigation that are also protected by the attorney work product doctrine. Plaintiffs' counsel withholds documents in response to this Request.

-25-

Subject to and without waiver of the foregoing General and Specific Objections, Plaintiffs have produced the intakes submitted by Home Service Professional referenced in Appendix I, and will continue to produce the intakes submitted to Plaintiffs' counsel by Home Service Professionals.  Furthermore, Plaintiffs state that they have identified and provided the known contact information for the former HomeAdvisor employees cited in the Consolidated Second Amended Complaint (Dkt. Nos. 409, 423) as Former Employees A-G.  Additionally, Plaintiff Baumann has no responsive documents to produce, and Plaintiffs Ervine, Costello, Filipiak, Hass, Haukenes, LaPlaca, Seldner, and the McHenry Plaintiffs have produced to Defendants documents responsive to this Request, to the extent that they are in their possession, custody, or control."

- o  _Plaintiffs' R&O to RFP 31_:  "The Airquip Plaintiffs hereby incorporate by reference the General Objections set forth above.  The Airquip Plaintiffs object to this Request as duplicative and redundant of Request No. 11, and direct Defendants to Plaintiffs' Second Amended Objections and Responses to Defendants' First Set of Requests."

- o  _Plaintiffs' R&O to RFP 32_:  "The Costello Plaintiffs hereby incorporate by reference the General Objections set forth above.  The Costello Plaintiffs object to this Request on the grounds that it is compound, and actually consists of at least two separate and distinct requests: the first relating to "*any* and *all*" evidence from "*any* third party or non-party that [the Costello Plaintiffs] intend to use as evidence in this Lawsuit", and the second relating to "*any* and *all*" evidence from "*any* third party or non-party [] that relates to [the Costello Plaintiffs] claims in this Lawsuit" (emphasis added).

 Moreover, this compound Request is objectionable because it is vague, overly broad, unduly burdensome, premature, and intended to harass and annoy.  The Costello Plaintiffs further object to this Request because it seeks documents that either reflect a legal conclusion, expert discovery and analysis, or are protected by the attorney-client privilege or which constitutes attorney work-product/trial preparation materials or any other privileged information, as well as information or documents that were compiled or prepared at the request and direction of counsel in anticipation of, or in conjunction with litigation, that are protected by the attorney-work product doctrine.  Additionally, the Costello Plaintiffs assert attorney-work product privilege over communications with prospective Class members, except as to those Communications contained in the Intakes, pursuant to the Master's ruling on Defendants' Motion to Compel, as well as communications with experts and expert analysis.  The Costello Plaintiffs withhold documents based on these objections.

Subject to and without waiver of the foregoing  General and Specific
Objections, The Costello Plaintiffs state that they have and will continue to
produce the HSP Intake forms, and the responses and documents produced
by third parties in response to subpoenas duces tecum.  In addition, the Costello
Plaintiffs have and will continue to produce declarations from putative Class
members and former HomeAdvisor employees, as well as other evidence, upon
determination of the Costello Plaintiffs' intent to use such as evidence."

**III.    The Master's Findings of Fact and Mixed Fact and Law**

The following reflect the Master's findings of fact and mixed fact and law.

1.   Plaintiffs' Second Amended R&Os to RFPs 11, 12, 30, 31, and 32 were disingenuous, improper, and
     invalid at the time they were made, and the FTC-related communications and documents should
     have been timely produced without the need for a court order.  While Plaintiffs may initially have
     had a valid basis to object to ***all*** documents, communications, and electronically stored information
     relating to this litigation ***with anyone in the whole world*** (Plaintiffs' "whole world" argument), they
     unquestionably did not have a reasonable basis to withhold the narrow, non-burdensome, known
     set of FTC-related documents that were responsive to the HA Defendants' RFPs.  [*See* MOO at 14-15,
     17; affirmed by the June 19, 2022 Court Order at 14-18.]  Plaintiffs' intentional withholding of this
     particular and limited subset of communications and documents, and their misrepresentations
     related to them, suggest that Plaintiffs were conscious of the fact that these communications and
     documents were likely to be problematic for them and, if produced, might have alerted the HA
     Defendants to objectionable conduct on their part that potentially violated the PO.

2.   Plaintiffs have not supplied the HA Defendants or the Master with any evidence to support their
     claim that they had a common-interest understanding or agreement with the FTC.  Indeed, the FTC
     produced the voicemail messages they received from Plaintiffs' counsel, which suggests that the FTC
     did not believe it had any common-interest understanding or agreement with Plaintiffs.

3.   Plaintiffs failed to log any of the withheld responsive communications with the FTC on a privilege log
     on the basis of a common-interest privilege or otherwise (*e.g.*, as work product).  As discussed in the
     MOO and affirmed by the Court, the disclosure of work-product protected information to the FTC—
     clearly a third party to this litigation—constituted a waiver of any such protection that may have
     applied to that information [MOO at 14; affirmed by the June 15, 2022 Court Order at 24], and the
     failure to log any documents subject to an asserted common-interest privilege constitutes an
     independent basis for waiver, since the parties' Stipulated Order Regarding Discovery of
     Electronically Stored Information did not exempt such documents from logging.  [*See* Dkt. 69 at 9-
     10, ¶24; *see also*, *e.g.*, *Chimney Rock Public Power Dist.* v. *Tri-State Generation and Transmission
     Ass'n, Inc.*, Civ. Ac. No. 10-cv-02349-WJM-KMT, 2013 WL 1969264 (D. Colo. May 13, 2013) ("Failure
     to assert a privilege properly in a privilege log results in a waiver of the claim of privilege."
     (collecting cases).]  Had Plaintiffs listed the responsive, withheld documents on their privilege log,

this dispute would have come to light far sooner, and the hundreds of hours and hundreds of thousands of dollars spent on it could have been avoided.  The fact that Plaintiffs did not log the responsive, withheld documents suggests that they never believed they were subject to a common-interest privilege in the first place or that they endeavored to hide the documents and came up with that particular argument after they were caught.  But even if Plaintiffs had properly and timely asserted a common-interest privilege argument, and had some evidence to  support such a claim, their argument would not have been valid under Tenth Circuit precedent, which has "narrowly construed the common interest doctrine to apply when 'different persons or entities have an identical legal interest with respect to the subject matter of a communication . . . ,'" which clearly "Plaintiffs have not shown." [June 15, 2022 Court Order at 24-25 (quoting *Perkins* v. *Fed. Fruit & Produce Co.*, No. 11-cv-00542-REB-KLM, 2011 WL 6937195, at *4 (D. Colo. Dec. 30, 2011,) (Mix, M.J.)].  Plaintiffs' counsel should have known this.

4.   Plaintiffs' representations to the HA Defendants, both in their R&Os to RFPs 11, 12, 30, 31, and 32, and at the April 30, 2020 meet and confer with the HA Defendants regarding what they were or were not producing with respect to those RFPs, were at best confusing and at worst intentionally misleading.  Whichever way one chooses to interpret those representations, Plaintiffs made and repeated statements both orally and in writing that have since been shown to be neither complete nor correct, when they told the HA Defendants and the Master either that there were no other responsive documents or no non-work-product-protected documents that were being withheld in response to RFPs 12 and 32.  [*See* MOO at 15-17; affirmed by the June 15, 2022 Court Order at 15-16, 20-21.]

5.   Plaintiffs vehemently doubled down on their misstatement of fact in an 11-page letter to the Master dated May 10, 2021, in which they insisted (at 2) that "Plaintiffs' responses to RFPs 12 and 32—namely that Plaintiffs did not have any unproduced responsive documents to those RFPs—were correct when made and continue to be correct," and (at 6) that, again, with respect to RFPs 12 and 32, Plaintiffs' counsel had previously "stated accurately that there were no such documents withheld from production (a statement that is accurate as of today)."  Indeed, Plaintiffs concede (at 6) that "Plaintiffs responses to RFPs 12 and 32 did <u>not</u> state that any documents were being withheld based on stated objections. . . ." (emphasis added by Pls).

Plaintiffs' statements were not accurate because Plaintiffs <u>were</u> withholding multiple emails from the FTC responsive to the requests for ***"written . . . communications you have . . . received from any third party or non-party that . . . relates to [Plaintiffs'] claims in this Lawsuit."*** [*see* May 13, 2021 *In Camera* Declaration at 8-10 (emphasis added)].  To the present day, Plaintiffs have never sought to correct these misstatements nor to explain the now blatantly evident contradiction between those unequivocal assertions and the evidence suggested by their May 13, 2021 *In Camera* Declaration, and subsequently confirmed by Plaintiffs' December 20, 2021 production.  [*See* MOO at 16; June 15, 2022 Court Order at 21-22 ]

6.  During the Master's May 21, 2021 conference with the Parties, the Master expressed her concern that Plaintiffs' contacts with the FTC, discussing or otherwise using the HA Defendants' Confidential or Highly Confidential Information, potentially could have crossed the line into what would be the improper purpose of assisting the FTC in its prosecution of the HA Defendants, a finding that was reiterated in the MOO but on which there was not "a sufficiently well-developed factual record before [the Master] to determine whether or not Plaintiffs used HA's Confidential or Highly Confidential Information for purposes that went beyond the sole permitted purpose.  While [P]laintiffs have claimed . . . that their only intention was to further their own case, there are statements in [Plaintiffs' May 13, 2021 *In Camera* Declaration submitted to the Master] . . . that would seem to suggest the possibility of another potential use of the protected information:  to assist the FTC in its efforts to prosecute HA, which would be an impermissible second use of the information." [MOO at 13-14].

7.  Evidence proffered by the HA Defendants in their briefing on the Motion for Sanctions unquestionably confirms that Plaintiffs' communications had a secondary—if not *primary*—goal of assisting the FTC in developing and prosecuting its case against the HA Defendants.  Not only is that apparent from the language used by Plaintiffs' counsel in the actual communications that were produced, it is simply inconceivable that the FTC would have scheduled its first call **within one day** of first being contacted by email by Plaintiffs' counsel, conducted at least **20 more phone calls** after that, and engaged with Plaintiffs' counsel for a period of **22 months** if they did not find Plaintiffs' assistance helpful in developing and prosecuting their case against HomeAdvisor.  The fact that they may have chosen to rely on different or better evidence to prosecute their case than that provided to them by Plaintiffs' counsel does not prove otherwise.  [*See* May 13, 2021 *In Camera* Declaration, Dkt. 473-4 at 7-13; June 25, 2022 *In Camera* Declaration (Ex. 1) at 4-8.]

8.  As explained at length in the MOO [at 13] and affirmed in the June 15, 2022 Court Order [at 9], the PO unequivocally states that Confidential or Highly Confidential Information received from the HA Defendants "shall be used **solely for the purpose of prosecution, defense, and/or settlement in this Action**." (emphasis in MOO).  There is only one plausible interpretation of the plain language of the PO.  [*See* MOO at 13; affirmed by the June 15, 2022 Court Order at 9.]  Contrary to Plaintiffs' assertion [Pls' Opp. at 15], that "the general provision of ¶6(a) does not constrain ¶ 6(b)(x)," a plain reading of the PO shows otherwise.  The former provision has to do with the *use* of Confidential or Highly Confidential Information, while the latter has to do with its *disclosure*.  Plaintiffs themselves have previously insisted on a literal reading of provisions of the PO [*see* MOO at 12], but now Plaintiffs argue that the HA Defendants (and presumably the Master's) literal and "strained" interpretation of ¶6(a) would "improperly ignore and eviscerate paragraph 6(b)(x) of the PO" and "lead to absurd results. . . ." [Pls' June 8 Resp. to HA Defs' May 25 New Evid. Ltr. at 5].  *It is Plaintiffs, however, who seek to "improperly ignore and eviscerate" ¶6(a) of the PO and whose interpretation "lead[s] to absurd results."*  In any event, if Plaintiffs had had any question about the proper interpretation of these two provisions in tandem and what was permissible conduct with respect to the FTC, they could and should have raised the issue with the HA Defendants or the Master before they proceeded.  They did not do so and therefore assumed the risk of their own

-29-

patent misinterpretation of the clear and unequivocal language of the PO.

9.   Plaintiffs nowhere explain their sudden shift from written (*i.e.*, email) communications with the FTC to exclusively telephone contacts once the HA Defendants sought to obtain their unproduced communications and the documents shared with the FTC beginning in April 2021.  This unexplained shift in the mode of communication suggests an awareness on the part of Plaintiffs' counsel that the written communications with the FTC would have to be produced if the Master were to rule against them on the pending motion to compel, and that these communications with the FTC might be problematic for them, and therefore, they made a conscious decision to attempt to evade any further discovery as to *written* communications with the FTC.  Clearly, Plaintiffs did not anticipate that the FTC would retain copies of the voicemail messages Plaintiffs' counsel left for the FTC and would later produce them to the HA Defendants, which left them dead to rights.

10.  Even though Plaintiffs' counsel was advised at the May 21, 2021 Conference with the Master that if the primary or even secondary purpose of their contacts with the FTC—in which they discussed or otherwise used HA's Confidential or Highly Confidential Information—was to assist the FTC in developing or bringing claims against HA, that would be a violation of the PO in the Master's view, Plaintiffs nonetheless had at least **four more** conversations with FTC after that [*see* Plaintiffs' June 29 *In Camera* Declaration [Ex. 1] at 5-7], in apparent disregard of Master's expressed concern. Plaintiffs insist that they were never expressly told that they could not confer with the FTC— "Plaintiffs were not prohibited by the Master or the PO from communicating with the FTC" [Pls' June 8 Resp. to HA Defs' May 25 New Evid. Ltr. at 3]—but following the Master's May 21 warning, Plaintiffs' counsel never sought to inquire whether their continued contacts with the FTC were prudent or permissible.  Instead,  they chose to rely on an objectively unreasonable interpretation of PO ¶6(a), perhaps in the hopes that the Master would be reversed by the Court on appeal.

11.  It is impossible to assess the degree of impact Plaintiffs' assistance to the FTC had on the FTC's decision to prosecute the HA Defendants in an enforcement proceeding, without direct access to the FTC, which would be inappropriate—if not impossible—for the Master to undertake under the circumstances.  The inability of the Master to assess the precise quantum of injury to the HA Defendants should not be held against them.  Instead, Plaintiffs would like the Master to believe what defies credulity:  that Plaintiffs' 20 or more calls, and its other communications and submissions, over a 22-month period, had **absolutely no impact whatsoever** on the FTC's decisions or actions.

12.  Over the two-year period that this dispute has been before the Master, Plaintiffs have taken little to no responsibility for their own conduct.  Even in their Opposition to the Motion for Sanctions and subsequent submissions to the Master, they have continued to endeavor to shift the blame for this dispute onto the HA Defendants.  [*See, e.g.*, Pls' Opp. at 3-5, 6, 7 n.11, 11 n.20, 13; Pls' Apr. 26 Notice at 4.]  They make far too much of the Master's statement in the MOO (at 15), essentially *in dicta*, ascribing some of the blame for this dispute to both parties:  "That this issue remained hidden and festered over time is as much Plaintiffs' fault as it is HA's, if not more so." [Pls' Opp. at 2, 5 & n.9

(citing to MOO at 15), 13, 19; Pls' May 6 Ltr. at 2 (citing MOO at 15)].  Plaintiffs, however, omit the following sentence which states that *"Plaintiffs cannot accuse HA of withholding information when they themselves chose to withhold substantially more."* [MOO at 15 (emphasis added)].  As the Master will explain further below, statements such as these and others in the MOO [*see, e.g., id.* at 16 ("It is impossible to say on the present factual record, but . . . rather than automatically assuming a malevolent intent [on the part of Plaintiffs' counsel], an alternative explanation might be that. . ."), were simply an attempt on the Master's part to "lower the temperature" of this highly acrimonious dispute, to bend over backwards to give Plaintiffs' counsel the benefit of the doubt, and to avoid pre-judgment before the Master had a complete record before her.  [*See id.* at 15-16.]  The MOO makes abundantly clear that the "bottom line is that on the facts [then] before the Master, (i) Plaintiffs lodged invalid, boilerplate objections of vagueness and undue burden that were simply inapplicable to a specific class of information sought by RFP Nos. 11, 30, and 31; (ii) there was a lack of clarity and specificity by Plaintiffs regarding what exactly they were withholding on the basis of their objections; and (iii) there was a severe information asymmetry that interfered with HA's ability to know what they were not receiving or to pursue a Motion to Compel." [*id.* at 17].  The Master clearly left open for another day the determination of whether Plaintiffs' conduct was improper or prejudicial.  [*See id.* at 13-14, 17, 18.]

13. Plaintiffs' arguments in connection with this dispute have been a moving target and, at times, their litigation strategy has been unnecessarily caustic and belligerent.  They have shown no remorse and have made no apology for their discovery failures, their repeated violation of the PO, and/or for misleading both the HA Defendants and the Master, who was literally gob smacked by the extent of Plaintiffs' involvement with the FTC, which was first disclosed in their May 13, 2021 *In Camera* Declaration [Dkt. 473-4].

## IV.   General Overview of Applicable Sanctions Law

### A.   The Order Appointing Master for Discovery

The April 9, 2018 Order Appointing Master for Discovery states that "[t]he Master may, by order, impose upon a party any sanction other than contempt and may recommend a contempt sanction against a party. . . ." [Dkt. 126 at 3 ¶2 (emphasis added)].  The Order also states that "[a]s to any particular portion of the proceedings necessitated by the conduct of one party, the Master may assess fees and expenses of that portion of the proceedings to the responsible party.  It is in the discretion of the Master to allocate the fees and expenses between the parties." [*id.* at 4 ¶6].

The HA Defendants seek sanctions under the following rules and statutes, as well as the court's inherent authority:  Fed. R. Civ. P. 16(f), 37(b), 37(c), and 28 U.S.C. § 1927.

### B.   Federal Rule of Civil Procedure 16(f)

Fed. R. Civ. P. 16(f)(1) and (f)(1)(C)(2) provide that "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . .

fails to obey a scheduling or other pretrial order. . . .   Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."

"'In deciding whether a sanction is warranted [under Fed. R. Civ. P. 16(f)], the court need not find that the party acted in bad faith.  The fact that a pretrial order was violated is sufficient to allow some sanction.'"  *Huebner* v. *Midland Credit Mgmt., Inc.*, 897 F.3d 42, 53 (2d Cir. 2018) (quoting 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1531 (3d ed. 2010); *Tracinda Corp.* v. *DaimlerChrysler AG*, 502 F.3d 212, 242 (3d Cir. 2007) ("[N]o express requirement of intent or negligence exists in the language of Rule 16(f)"); *Sundance Svcs., Inc.* v. *Admiral Ins. Co.*, Civ. Ac. No. 21-270 WJ/GBW, 2022 WL 487009, at *5 (D.N.M. Feb. 17, 2022) (citing *Huebner* v. *Midland Credit Mgmt., Inc.*, 897 F.3d at 53)).

Rule 16(f) "grant[s] district courts substantial discretion to craft their orders to serve the interests of justice. . . . [but] require[s] the court to keep considerations of justice in mind when imposing sanctions for rule violations."  *Olcott* v. *Delaware Flood Co.*, 76 F.3d 1538, 1557 (10th Cir. 1996).  "Sanctions under Rule 16(f) . . . must be . . . proportional to the specific violation of the rules." *Id.*  "'[T]he amount and impact of a monetary sanction should depend on the seriousness of the violation and where the fault lies, i.e., with counsel or client.  However, in the absence of a finding of bad faith, there must be a sufficient nexus between noncompliance with the rules and the amount of fees and expenses awarded as a sanction.'"  *Id.* (quoting *Turnbull* v. *Wicken*, 893 F.2d 256, 259 (10th Cir. 1990) (*per curiam*)).

C.   Federal Rule of Civil Procedure 37(b)

**Fed. R. Civ. P. 37(b)(2)(A)(ii) and (vii)** hold that "[i]f a party . . . fails to obey an order . . . the court where the action is pending may issue further just orders.  They may include the following . . . prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence . . . [or] treating as contempt of court the failure to obey any order. . . ."

There are "'[s]everal factors [that] may be useful in evaluating a district court's exercise of discretion' to impose sanctions pursuant to this rule, including '(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of non-compliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance.'"  *Southern New England Tel. Co.* v. *Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (internal citations omitted).

As with sanctions under Rule 16(f) above, sanctions awarded pursuant to Rule 37(b)(2) "must be in the interests of justice and proportional to the specific violation of the rules."  *Olcott* v. *Delaware Flood Co.*, 76 F.3d at 1557.

At least one court in the Tenth Circuit has held that under Rule 37(b)(2) "[n]o particular state of mind or degree of culpability is a prerequisite to an award of sanctions, at least when the sanction awarded is not severe.  Thus, a finding of willfulness or contumacious conduct is not necessary to support sanctions that are less severe than dismissal or entry of a default judgment."; "Under Rule 37(b), a litigant which has clearly violated a discovery order is, on that basis alone, exposed to the imposition of sanctions. . . .  At least where the extreme sanctions of default or dismissal are not imposed, a showing of willfulness or bad faith need not be made."  *Markham* v. *Nat'l States Ins. Co.*, Civ. Ac. No. 02-1606-F, 2004 WL 3019308, at *11, 12 (W.D. OK Jan. 8, 2004) (internal citations omitted).

**Fed. R. Civ. P. 37(b)(2)(C)** provides that "[i]nstead of or in addition to the orders [set forth in Rule 32(b)(2)(A)(i)-(vii) for the failure to obey a court order], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

   D.   Federal Rule of Civil Procedure 37(c)

Fed. R. Civ. P. 37(c)(1) holds that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.  In addition to or instead of this sanction, the court on motion and after giving an opportunity to be heard . . . may order payment of the reasonable expenses, including attorney's fees, caused by the failure . . . [and] may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."  Unlike sanctions authorized under Rule 37(b)(2)(A), sanctions pursuant to Rule 37(c)(1) may only be awarded against a party, not its counsel.  *Sun River Energy Inc.* v. *Nelson*, 800 F.3d 1219, 1224, 1225-27 (10th Cir. 2015).

   E.   28 U.S.C. § 1927

28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct."

"An attorney becomes subject to § 1927 sanctions 'by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law. . . .  A lawyer's reckless indifference to the law may impose substantial costs on the adverse party.  Section 1927 permits a court to insist that the attorney bear the costs of his own lack of care.'"  *Brayley* v. *Campbell*, 832 F.2d 1504, 1511 (10th Cir. 1987 (*en banc*) (citation omitted)).

The Tenth Circuit has held that "the proper standard under . . . § 1927 is that excess costs, expenses, or attorney's fees are imposable against an attorney personally for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court."  *Id.* at 1512.  Section 1927 is viewed as "an essential tool to protect both litigants and the ability of the federal courts to decide cases expeditiously and fairly."  *Id.*

The imposition of sanctions under 28 U.S.C. § 1927 "does not require a finding of bad faith. . . . [Courts] are entitled to demand that an attorney exhibit some judgment.  To excuse objectively unreasonable conduct by an attorney would be to state that one who acts with 'an empty head and a pure heart' is not responsible for the consequences."  *Hamilton* v. *Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008) (quoting *Braley* v. *Campbell*, 832 F.2d at 1512)).  Therefore, "any conduct that, 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court,' is sanctionable."  *Id.  See also Obeslo* v. *Great-West Cap. Mgmt., LLC*, Civ. Ac. No. 160cv-00230-CMA-SKC (consolidated for all purposes with Civ. Ac. No. 160cv-01215-CMA-SKC, and Civ. Ac. No. 16-cv-03162-CMA-SKC), 2020 WL 6336034, at *2 (D. Colo. Sept. 28, 2020) (Arguello, J.) (same); *Lyn-Lea Travel Corp.* v. *American Airlines, Inc.*, 283 F.3d 282, 291 (5th Cir. 2002) ("All that is required to support § 1927 sanctions is a determination, supported by the record, that an attorney multiplied proceedings in a case in an unreasonable manner.") (citation omitted)).

F.   The Court's Inherent Authority

"A court's inherent power gives it the authority to impose 'a sanction for the abuse of the judicial process or in other words, for bad faith conduct in litigation.'"  *Sun River Energy Inc.* v. *Nelson*, 800 F.3d at 1127 (internal citation omitted).  While "[t]he Supreme Court has described the 'narrowly defined circumstances [in which] federal courts have inherent power to assess attorney's fees against counsel' as involving actions taken 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *id.* (quoting *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 45-46 (1991), it is nonetheless clear that a federal court may use its inherent right to manage its own proceedings to impose monetary sanctions on attorneys, including attorney's fees "to deter frivolous and abusive litigation and promote justice and judicial efficiency. . . ."  *Brayley* v. *Campbell*, 832 F.2d at 1510 (citing examples).

"The Supreme Court [has] made it clear that the district court has the inherent power, independent of any statute or rule, to impose sanctions for serious litigation abuse. . . .  The inherent power does not have only interstitial application. . . .  The power can 'be invoked even if procedural rules exist which sanction the same conduct.'"  *Markham* v. *Nat'l States Ins. Co.*, 2004 WL 3019308 at *11 (citing *Chambers* v. *NASCO, Inc.*, 501 U.S. at 46, 49).  *See also Fish* v. *Kobach*, 320 F.R.D. 566, 571 (D. Kan. 2017) (Court's inherent power "exists even when that conduct could also be sanctioned by the Federal Rules of Civil Procedure, and it further exists 'to fill in the interstices' left by those rules.'" (quoting *Chambers* v. *NASCO, Inc.*, 501 U.S. at 45) (further citation omitted)).

G.   Definitions/Tests for "Bad Faith," Willfulness, Prejudice, and Substantial Justification or Harmlessness

District Courts within the Tenth Circuit have held that "[a] party acts in **bad faith** when actions taken during the litigation are 'entirely without color and [have] been asserted wantonly, for purposes of harassment or delay or for other improper reasons.'"  *Kokot* v. *Maxim Healthcare Svc., Inc.*, Civ. Ac. No. 18-cv-00689-RM-KMT, 2019 WL 5095727, at *14 (D. Colo. Aug, 15, 2019( (quoting *Sterling Energy, Ltd.* v. *Friendly Nat. Bank*, 744 F.2d 1433, 1435 (10th Cir. 1984) (emphasis added)).  They have defined "bad faith" as "the antithesis of good faith" and/or "when a thing is done dishonestly and not merely

negligently.  Bad faith has also been defined as that which imports a dishonest purpose and implies wrongdoing or some motive of self-interest."  *RCHFU, LLC* v. *Marriott Vacations Worldwide Corp.*, Civ. Ac. No. 16-cv-1301-PAB-GPG, 2018 WL 6839800, at *10 (D. Colo. Dec. 31, 2018); *Cache La Poudre Feeds, LLC* v. *Land O'Lakes Farmland Feed, LLC*, 244 F.R.D. 614, 635 (D. Colo. 2007) (same).

The Tenth Circuit has defined "a **willful** failure as 'any intentional failure as distinguished from involuntary noncompliance.  No wrongful intent need be shown.'" *RCHFU, LLC* v. *Marriott Vacations Worldwide Corp.*, 2018 WL 6839800 at *10 (quoting both *In re Standard Metals Corp.*, 817 F.2d 625, 628-29 (10th Cir. 1987) and *Patterson* v. *C.I.T. Corp.*, 352 F.2d 333, 336 (10th Cir. 1965) (both citing cases) (emphasis added)).  "***Willfulness*** is found where a party has engaged in a 'pattern of conduct' in 'flagrant disregard' of the rules of discovery and a specific court order."  *Teleglobe USA, Inc.* v. *BCE Inc.* (*In re Teleglobe Communs., Corp.*), 392 B.R. 561, 582 (Bankr. D. Del. 2008) (citation omitted) (emphasis added).

The Tenth Circuit appears to construe the concept of ***prejudice*** liberally, for example, it has "recognized prejudice from [just] 'delay and mounting attorney's fees.'"  *Faircloth* v. *Hickenlooper*, 758 F. App'x 659, 662 (10th Cir. 2018) (citing *Jones* v. *Thompson*, 996 F.2d 261, 264 (10th Cir. 1993)). Further, it has stated that "'[t]he withholding of evidence 'substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout the litigation.'" *Freddie* v. *Marten Transport, Ltd.*, 428 F. App'x 801, 804 (10th Cir. 2011) (quoting *Garcia* v. *Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1180 (10th Cir. 2009).  Other Circuits have found prejudice when, in addition to having costs imposed on it, a party is impaired in its ability to prepare a defense (*see Tech. Recycling Corp.* v. *City of Taylor*, 186 F. App'x 624, 636 (Sixth Cir. 2006)) or is "depriv[ed] of information through non-cooperation with discovery and costs [are] expended obtaining court orders to force compliance with discovery."  *Adams* v. *Trustees, N.J. Brewery Trust Fund*, 29 F. 3d 863, 874 (3d Cir. 1994) (citation omitted).  *See also City of East Cleveland, Ohio* v. *CH2M Hill/OMI*, Civ. Ac. No. 1:08-cv-2309, 2009 WL 10688206, at *2 (N.D. Ohio Oct. 30, 2009) (quoting *Tech. Recycling Corp.* v. *City of Taylor*, 186 F. App'x at 636).

The Court in *Woodworker's Supply, Inc.* v. *Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) addressed the test for **substantial justification or harmlessness** in the context of Fed. R. Civ. P. 26(a) violation, stating that "'[t]he determination of whether [such a rule violation] is substantially justified or harmless is entrusted to the broad discretion of the district court. . . .'  A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose. . . .  Nevertheless, the following factors should guide its discretion:  (1) the prejudice to the party against whom the [information] is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such [information] would disrupt the trial; and (4) the moving party's bad faith or willfulness." (internal citations omitted).  *See also Stovall* v. *Brykan Legends, LLC*, Civ. Ac. No. 17-2412-JWL, 2019 WL 1014731, at *2 (D. Kan. Mar. 4, 2019) (applying same analysis for failure to supplement under Fed. R. Civ. P 26(e)).

H.   Federal Rule of Civil Procedure 26(g)

Not mentioned by the HA Defendants but also of potential applicability here is **Fed. R. Civ. P. 26(g)**, which provides that "every discovery request, response, or objection must be signed by at least one attorney of record. . . .  By signing, an attorney or party certifies that to the best of that person's knowledge, information, and belief formed after a reasonable inquiry . . . [that] with respect to a discovery request, response, or objection, it is . . . consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; . . . not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and . . . neither unreasonable nor unduly burdensome or expensive considering the needs of the case, the amount in controversy, and the importance of the issues at stake in the action. . . .  If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The order may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation."

"[S]anctions imposed under Rule 26(g)(3) do not require a showing of bad faith. . . .  [and w]here a violation of Rule 26(g) occurs, imposition of sanctions is mandatory.'"  *RCHFU, LLC* v. *Marriott Vacations Worldwide Corp.*, 2018 WL 6939800 at *9 (internal quotation omitted).  *See also Cache La Poudre Feeds, LLC* v. *Land O'Lakes Farmland Feed, LLC*, 244 FRD at 636 (same).

I.   Other

As a general matter, the Master, standing in the shoes of the district court, has broad discretion to fashion an appropriate sanction that will serve the dual purposes of penalizing misconduct and deterring those who might be tempted to engage in such misconduct absent a deterrent.  *See Roadway Exp. Inc.* v. *Piper*, 447 U.S. 752, 763-64 (1980) ("Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" (quoting *Nat'l Hockey League* v. *Metro. Hockey Club*, 427 U.S. 639, 643 (1976)); *Villa* v. *Donna Ana County*, 500 F. App'x. 790, 791 (10th Cir.  2012) ("'district courts enjoy very broad discretion to use sanctions where necessary to ensure that lawyers and parties fulfil their high duty to insure the expeditious and sound management of the preparation of cases for trial.'" (quoting *Lee* v. *Max Int'l, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011)); *Young* v. *Gordon*, 330 F.3d 76, 83 (1st Cir. 2003) ("Sanctions are often intended to do more than calibrate the scales between a particular plaintiff and a particular defendant.  One principal purpose is to deter others from similar misconduct.") (citing *Nat'l Hockey League* v. *Metro. Hockey Club*, 427 U.S. at 643)); *Gates Rubber Co.* v. *Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 106 (D. Colo. 1996) ("The choice of a sanction to impose in a particular matter is a matter which is within the discretion of the court." (citation omitted)).  That said, the sanction chosen should always be measured, proportionate, and in the interests of justice.  *See Sours* v. *Glanz*, 24 F. App'x 912, 915 (10th Cir. 2001) ("A discovery sanction must be measured; a court should impose the least onerous sanction that will remedy the prejudice and, where applicable, punish the past wrongdoing and deter future wrongdoing.") (citation omitted));

*Olcott* v. *Delaware Food Co.*, 76 F.3d at 1557 ("Sanctions under Rule 16(f) and Rule 37(b)(2) must be in the interests of justice and proportional to the specific violation of the rules. . . .")).

"In considering sanctions for lapses in the course of pretrial discovery, a district court should consider all the circumstances surrounding the alleged violation. . . .  The totality of the circumstances can include events which did not occur in the case proper but occurred in other cases and are, by their nature, relevant to the pending controversy." *Thibeault* v. *Square D Co.*, 960 F.2d 239, 246 (1st Cir. 1992) (internal citation omitted).  Several district courts within the Tenth Circuit have applied what are sometimes referred to as the "*Ehrenhaus* factors"[1] to consider whether to issue non-dispositive sanctions, even though by their express terms the "*Ehrenhaus* factors" apply *only to the severe sanction of dismissal*.  *See Ward* v. *Express Messenger Svc.*, Civ. Ac. No. 17-cv-2005-NYW, 2020 WL 6828103, at *3 (D. Colo. Jan. 14, 2020) (Wang, M.J.) ("*[B]efore choosing dismissal as a just sanction*, the . . . [Tenth Circuit] has identified a number of factors that a court should consider. . . ." (citing *Ehrenhaus* v. *Reynolds*, 965 F.2d 916, 921 (10th Cir 1992) (emphasis added)) but then applying the *Ehrenhaus* factors to a non-dispositive sanctions motion); *OTO Software, Inc.* v. *Highwall Techs., LLC*, Civ. Ac. No. 08-cv-01897-PAB-CBS, 2010 WL 3842434 , at *14 (D. Colo. Aug. 6, 2010) (Shaffer, M.J.) ("In a non-spoliation case, the Tenth Circuit has held that the trial court should weigh several factors in determining an appropriate sanction. . . ." (citing *Ehrenhaus*)); *Cache La Poudre Feeds, LLC* v. *Land O'Lakes, Inc.*, 244 F.R.D. at 636 (Shaffer, M.J.) ("In a non-spoliation context, the Tenth Circuit has held that the trial court should weigh several factors in determining the appropriate sanctions. . . .") (citing *Ehrenhaus*); *Markham* v. *Nat'l States Ins. Co.*, 2004 WL 3019308 at *12 (Friot, J.) ("It is clear from *Ehrenhaus* that the five-factor test which the court articulated *is applicable only where an extreme sanction—typically a dispositive sanction—is at issue*.  Where, as in the case at bar, a dispositive sanction is not at issue . . . the first three *Ehrenhaus* factors are the relevant ones.").  Many sanctions opinions within the Tenth Circuit do not reference or apply the *Ehrenhaus* factors.

**V.     The Master's Application of Sanctions Law to the Findings of Fact and Mixed Fact and Law**

The HA Defendants have sought the following sanctions:  (1) "a full accounting of Plaintiffs' improper communications with the FTC," including granting the HA Defendants "access to Plaintiffs' *in camera* declaration[s]," under the Court's inherent powers [HA Defs' Mot. at 15-16]; (2) an order (i) holding Plaintiffs' counsel in contempt, (ii) directing them to "pay a $100,000 sanction to the Clerk of Court," [*id.* at 16]; and (iii) directing them "at a minimum, [to] pay Defendants fees and costs in connection with this dispute" pursuant to Fed. R. Civ. P. 16(f) and 37(b)(2)(A), the Court's inherent authority, and 28 U.S.C. § 1927 [*id.*]; (3) preclusion of Plaintiffs "from citing or otherwise relying on any

---

[1]  *Ehrenhaus* v. *Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) counsels that "*[b]efore choosing dismissal as a just sanction*, a court should ordinarily consider a number of factors, including '(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant' . . . (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance . . . and (5) the efficacy of lesser sanctions." (internal citations omitted and emphasis added).  "These factors do not constitute a rigid test; rather, they represent criteria for the district court to consider *prior to imposing dismissal as a sanction*." *Id.* (emphasis added).

FTC-related discovery produced in this action—whether in their expert reports, at class certification, at trial, or otherwise—including all productions and submissions Defendants made to the FTC and any documents Defendants received from the FTC" pursuant to Fed. R. Civ. P. 16(f) and 37(b)(2)(A)(ii) [*id.*]; (4) "all of the Master's fees associated with drafting the [MOO], and any related fees she incurred in connection with her analysis and evaluation of Plaintiffs' significant misconduct" [*id.* at 17], presumably under the Order Appointing Master for Discovery [Dkt. 126].

The Master will address each of these requests, in turn, applying the general sanctions law set forth in Section IV above to the findings of fact and mixed fact and law set forth in Section III above.

A.   Further Discovery

The HA Defendants would like to conduct further discovery into Plaintiffs' communications with the FTC because they believe that "more information . . . exists but has not been produced." [Pls. Mot. at 15]. They also seek "access to Plaintiffs' *in camera* declaration[s] to review the full scope of counsel's communications with the FTC . . . [to] enable Defendants to (i) address whatever issues Plaintiffs may have raised with the FTC and (ii) ensure that Plaintiffs have produced all responsive information. If [those] declaration[s] do[] not set forth the substance of Plaintiffs' FTC communications or lack[] sufficient detail, Defendants request that the Master order Plaintiffs to submit additional declarations or other information about those communications." [*id.* at 16]

The Master does not see any need for additional discovery into the issues raised in the HA Defendants' Motion for Sanctions. First, fact discovery in this matter closed 18 months ago, on June 30, 2021. The additional discovery sought by the HA Defendants is neither "relevant to any party's claim or defense [nor] proportional to the needs of [this] case." Fed. R. Civ. P. 26(b)(1). In their Reply brief, the HA Defendants argue that "Courts have inherent authority to obtain further information from litigants to assess the scope of their bad-faith conduct on a sanctions motion. . . . [and that t]he Master should exercise that authority here to get to the bottom of these serious issues. . . ." [(HA Defs' Reply at 12) (citing *Kenno* v. Colo. *Governor's Off. Of Info.*, Civ. Ac. No. 19-cv-00165-MEH, 2021 WL 4748664, at *1 (D. Colo. Oct. 12, 2021)]. *But the Master has already gone as far as she needs to go for the purposes of deciding the HA Defendants' Motion for Sanctions*—and is granting it in part—so there is no need to dive deeper into this particular pit.

The Master does not wish to prolong this dispute any further—and impose additional costs on the parties—other than that which is absolutely necessary to wrap things up. The HA Defendants have already had "ample opportunity to obtain the information by discovery in [this] action" [Fed. R. Civ. P. 26(2)(C)(ii)] to demonstrate Plaintiff's counsel's misconduct and to prevail, in part, on their motion. Moreover, the proceeding with the FTC appears to have been settled, so the additional information sought would serve no useful purpose there either. [*See* email from Plaintiffs' counsel dated December 12, 2022, attaching "two documents from the FTC HomeAdvisor Matter . . .": "1. A December 1, 2022 Consent Motion to Withdraw the Matter From Adjudication For the Purpose of Considering a Proposed Consent Agreement, and 2. A December 2, 2022 Order Withdrawing Matter From Adjudication For The Purpose of Considering a Proposed Consent Agreement.".]

Finally, the Master will not give the HA Defendants access to the May 13, 2021 *In Camera* Declaration [Dkt. 473-1] or to the June 29, 2022 *In Camera* Declaration [Ex. 1 hereto].  There is nothing to be accomplished at this point by doing so, and it would be inconsistent with prior practice in this case (including with respect to *in camera* declarations submitted by the HA Defendants to the Master that Plaintiffs have previously sought and the Master has declined to disclose).  Providing access to these declarations might also deter future parties before the Master from sharing information *in camera* in order to resolve disputes for fear that the Master would not retain them in confidence.

Accordingly, for these reasons, this relief is **DENIED**.

B.   Civil Contempt / Fine Payable to Clerk of Court / HA Defendants' Attorney's Fees and Costs

*1.   Civil Contempt*

The HA Defendants urge the Master to hold Plaintiffs in contempt—under Fed. R. Civ. P. Rules 16(f), 37(b)(2)(A), and/or its inherent authority—for their repeated violations of the PO and because "they willfully breached their duty to supplement by repeatedly and falsely claiming that these responsive documents *did not exist*." [HA Defs' Mot. at 16 (emphasis added by HA Defs)].

"To prevail in a civil contempt proceeding, the [HA Defendants] ha[ve] the burden of proving by clear and convincing evidence . . . that a valid court order existed, that the [Plaintiffs] had knowledge of the order, and that the [Plaintiffs] disobeyed the order."  *Reliance Ins. Co.* v. *Mast Constr. Co.*, 159 F.3d 1311, 1319 (10th Cir. 1998) (internal citation omitted).  "A violation need not be willful to result in a finding of contempt."  *Nichols* v. *Denver Health & Hosp. Auth.*, Civ. Ac. No. 19-cv-02818-DDD-KLM, 2021 WL 3287279, at *4 (D. Colo. Aug. 2, 2021) (citing *Reno Air Racing Ass'n* v. *McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006); *Ross* v. *Univ. of Tulsa*, 225 F. Supp. 3d 1254, 1264 (N.D. Okla. 2016) (same).

"Civil-contempt sanctions may be imposed only [(1)] 'to compel or coerce obedience to a court order' or [(2)] to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance.'"  *Acosta* v. *Paragon Contractors Corp.*, 884 F.3d 1225, 1238 (10th Cir. 2018) (quoting *O'Connor* v. *Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1211 (10th Cir. 1992)).  *See also Nichols* v. *Denver Health & Hosp. Auth.*, 2021 WL 3287279, at *5 (same); *Ross.* v *Univ. of Tulsa*, 225 F. Supp. 3d at 1268 (same).

Courts in the Tenth Circuit and elsewhere have previously recommended or found civil contempt for failure to comply with protective orders.  *See, e.g., Lyn-Lea Travel Corp.* v. *Am. Airlines, Inc.*, 283 F.3d at 291, 29; *Nichols* v. *Denver Health & Hosp. Auth.*, 2021 WL 3287279 at *4, 5; *Ross.* v *Univ. of Tulsa*, 225 F. Supp. 3d at 1268-69; *Static Media LLC* v. *Leader Accessories LLC*, Civ. Ac. No. 18-cv-330-wme, 2019 WL 7281831, at *4 (W.D. Wisc. Dec. 27, 2009); *Lusk* v. *Life Time Fitness, Inc.*, Civ. Ac. No. 15-1911 (JRT/BRT), 2018 WL 5919342, at *6 (D. Minn. Nov. 7, 2018); *GQ Sand, LLC* v. *Range Mgmt. Sys., LLC*, 278 F. Supp. 3d 115, 1125, 1127-28(W.D. Wisc. Sept. 30, 2017); *Hunter Eng'g Co.* v. *Hennessy Indus., Inc.*, Civ. Ac. No. 4:08-cv-465 DDN, 2010 WL 1186454, at *6, 7 (E.D. Mo. Mar. 29, 2010).

The Master agrees with the HA Defendants that in all likelihood, they could meet their burden of proof for a finding of civil contempt here, on the basis of the Master's findings of fact and mixed fact and law.  But the Order Appointing Master for Discovery does not permit the Master to impose this particular sanction; she would have to recommend it to the Magistrate Judge [Dkt. 126 at 3 ¶2 ("The Master may, by order, impose upon a party any sanction other than contempt and may recommend a contempt sanction against a party. . . .")].  Moreover, under 28 U.S.C. § 636(e), the Magistrate Judge— who has not been authorized to conduct all proceedings in this matter by consent of the parties—also "may not enter a finding of civil contempt. . . .  Instead, [she] may only certify factual circumstances which would support a finding of contempt for a district Judge's consideration.  *See* 28. U.S.C. 636(e)(6).  The presiding District judge [would] then, if warranted, enter appropriate sanctions in the same manner and to the same extent as if the contempt occurred in his presence."  *Envtl. Dimensions, Inc.* v. *Energysolutions Gov't Grp., Inc.*, Civ. Ac. No. 16-cv-1056-KWR/JR, 2021 WL 1060341, at *2 n.2 (D.N.M. Mar. 19, 2021).  This means that *not only would Magistrate Judge Mix have to review the Master's Order on this dispute and make factual and legal findings de novo, but District Judge Brimmer would then have to hold evidentiary hearings as well.*  Given the hundreds of hours and hundreds of thousands of dollars that have already been spent on this dispute, this "remedy" would be the antithesis of "the just, speedy, and inexpensive determination" of this proceeding.  Fed. R. Civ. P. 1.  Rather, such a recommendation by the Master would serve to impose a profound burden on the Court.  The likely benefit to the HA Defendants simply does not outweigh this burden when there are other, plainly available tools in the Master's arsenal that can and will compensate the HA Defendants for Plaintiffs' Counsel's discovery violations and deter both them and others from engaging in the same conduct in the future, especially since there is no longer a need to coerce obedience with the PO given that the FTC matter has apparently settled.  [*See* email from Plaintiffs' counsel dated December 12, 2022, attaching "two documents from the FTC HomeAdvisor Matter . . .": "1. A December 1, 2022 Consent Motion to Withdraw the Matter From Adjudication For the Purpose of Considering a Proposed Consent Agreement, and 2. A December 2, 2022 Order Withdrawing Matter From Adjudication For The Purpose of Considering a Proposed Consent Agreement.".]

Accordingly, for these reasons, this relief is **DENIED**.

### 2. *Fine Payable to Clerk of Court*

The HA Defendants also ask the Master to order that Plaintiffs "pay a $100,000 sanction to the Clerk of Court," again under Fed. R. Civ. P. 16(f), 37(b)(2)(A), and/or its inherent authority.  The HA Defendants do not articulate exactly why they believe *this particular sanction* is appropriate and how it bears any nexus to Plaintiffs' misconduct.  Presumably, they seek this remedy solely for punitive purposes.

As a threshold matter, significant damage has not been inflicted on the Court—as distinguished from the Master, who has been amply compensated for her time dealing with this dispute, so is not damaged at all—at least not yet.  Thus far, the Court has only had to address Plaintiffs' motion for a stay pending appeal, and the appeal of the MOO, so the Court has not yet suffered any significant injury that requires recompense—no less one to the tune of $100,000.

While both Fed. R. Civ. P. 16(f) and 37(b)(2)(A) do permit the Master to issue "further just orders" beyond those set forth in the rules, none of the enumerated sanctions include imposing a fine. *See* Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).  This is likely because "[s]anctions imposed pursuant to civil procedures must be *compensatory* rather than *punitive . . . unless contemptuous conduct is shown.*" *Envtl. Dimensions Inc.* v. *Energysolutions Gov't Grp., Inc.*, 2021 WL 1060341 at *6 (citing *Goodyear Tire & Rubber Co.* v. *Haeger*, 137 S. Ct. 1178, 1186 (2017), *Centennial Archeology, Inc.* v. *AECOM, Inc.*, 688 F.3d 673, 682 (10th Cir. 2012), and *Law* v. *Nat'l Collegiate Athletic Ass'n*, 134 F.3d 1438 (10th Cir, 1998)) (emphasis added)).  Sanctions under both rules "must be in the interests of justice and *proportional to the specific violation of the rules.*"  *Olcott* v. *Delaware Flood Co.*, 76 F.3d at 1557 (emphasis added).  As previously stated, the Master sees no basis to compensate the Court at this time and has already declined to make a recommendation for a finding of contempt.  Moreover, while Fed. R. Civ. P. 37(b)(2)(C) permits the Master to order—in addition to or instead of another sanction—that Plaintiffs, their counsel, or both "pay the reasonable expenses, including attorney's fees, caused by [Plaintiffs'] failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust," case law makes clear that "'*the fee award may go no further than to redress the wronged party for losses sustained; it may not impose an additional amount as punishment for the sanctioned party's misbehavior.*'"  *Envtl. Dimensions Inc.* v. *Energysolutions Gov't Grp., Inc.*, 2021 WL 1060341 at *6 (citing *Goodyear Tire & Rubber Co.* v. *Haeger*, 137 S. Ct. at 1186) (emphasis added)).  Accordingly, it appears that this particular sanction may not be available to the Master under the Federal Rules.

The Master could choose to impose such a fine under her inherent authority upon a finding of bad faith; however, the Master exercises her discretion not to do so, bearing in mind (i) that "[a] discovery sanction must be measured; *a court should impose the least onerous sanction that will remedy the prejudice and where applicable, punish the past wrongdoing and deter future wrongdoing.*"  (*Sours* v. *Glanz*, 24 F. App'x at 915) (emphasis added) and (ii) as the Latin saying goes: "*Culpae poenae par esto.*"[2] The Master believes that there are other more proportionate and suitable sanctions available to her (*see infra*) and that there is no need to "pile on."

Accordingly, for these reasons, this relief is **DENIED**.

### 3.  HA Attorney's Fees and Costs

The HA Defendants seek reimbursement of their costs, including attorney's fees, for "Plaintiffs' many Protective Order violations . . . including all fees incurred in connection with the motion to compel [supplementation of responses to RFPs 11, 12, 30, 31, and 32], all proceedings before the Master, and Plaintiffs' motions to stay and objections to the [MOO]." [HA Defs' Mot. at 16].  They seek this sanction under Fed. R. Civ. P. 16(f), 37(b)(2)(A) and (C), 37(c)(1), the Master's inherent authority, and 28 U.S.C. § 1927.  [*Id.* at 13, 14, 16.]

---

[2] Translated as:  "Let the punishment equal the crime."  Aaron X. Fellmeth and Maurice Horowitz, *Guide to Latin Int'l Law (1st ed.)* (Online version 2011), *available at* https://www.oxfordreference.com/display/10.1093/acref/9780195369380.001.0001/acref-9780195369380-e-466;jsessionid=17D4EF0BBE387973C4FA0D121AEE4A1E (last visited Dec. 31, 2022).

There is ample basis to award at least a significant portion of the HA Defendants' attorney's fees and costs related to this dispute under the facts and circumstances in this case.  First, Plaintiffs' counsel indisputably violated the PO.  This was not a one-time error, but rather a willful and intentional course of conduct based on a plainly unreasonable reading of the PO over an extended period of time—including, after the HA Defendants strenuously objected and Plaintiffs were warned by the Master that they might be in violation of the PO.

Second, Plaintiffs failed to fully and accurately respond to the HA Defendants' RFPs 11, 12, 30, 31, and 32.  Several of their April 2, 2021 R&Os, and the arguments made in support of knowingly withholding a narrow subset of responsive documents, were disingenuous, invalid, and unreasonable at the time they were made, in clear violation of their discovery obligations.  The fact that the HA Defendants prevailed on their motion to compel the FTC-related communications and documents alone warrants repayment of fees in connection with that motion.  *See* Fed. R. Civ. P. 37(a)(5)(A) ("If the motion is granted . . . the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party's attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. . . . [unless] (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.").

On top of that, Plaintiffs representations to the HA Defendants at the time of the meet and confers relating to the RFPs in question were at best confusing, but as time went on, those statements, and others made to the HA Defendants and the Master, became increasingly unjustifiable and were ultimately shown to be false.  These misstatements have never been corrected to this very day.  The evidence strongly suggests that these misstatements were not minor, accidental slips made by inexperienced counsel, but rather, the product of a conscious strategic decision made by savvy attorneys that backfired when the HA Defendants dug in their heels.  Rather than concede and rectify the misstep, Plaintiffs' counsel doubled and tripled down on nearly frivolous, alternating arguments.

a.  Protective Order Violations

Several rules, statutes, and the case law support the sanction of reimbursement of fees and costs for Plaintiffs' violation of the PO.  Fed. R. Civ. P. 16(f)(1) permits the Master to issue "any just orders" (in addition to those enumerated in Fed. R. civ. P. 37(b)(2)(A)(ii)-(vii)) when a party or its attorney fails to obey a court order.  Fed. R. Civ. P. 16(f)(2) explicitly provides that "[i]nstead of or in addition to other sanction, the court **must** order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any non-compliance with this rule, unless the non-compliance was substantially justified or other circumstances make an award of expenses unjust." (emphasis added).  The Master can find no reasonable justification for counsel's defiance of the express terms of the PO and there are no other circumstances that would make this sanction unjust.  The Master is mindful of the instructions set out in *Olcott* v. *Delaware Flood Co.*, 76 F.3d at 1557:  The amount of the monetary sanction "should depend on the seriousness of the violation and where the fault lies, i.e., with counsel or client."  This was an egregious offense engaged in by ***Plaintiffs' counsel*** over a sustained period of time, even after they were confronted by the HA Defendants and cautioned by the Master.

This sanction will be imposed **on Plaintiffs' counsel only**, since there is no evidence to suggest any involvement in this decision or course of conduct on the part of Plaintiffs themselves. Because sanctions under Fed. R. Civ. P 16(f) should be proportional to the violation, the Master will decide on the appropriate proportion of the HA Defendants' fees and costs to be awarded after the latter submit their fee application.

Like Fed. R. Civ. P. 16(f)(2), Fed. R. Civ. P. 37(b)(2)(A) and (C), respectively, also permit the Master to issue "just orders" and "[i]nstead of or in addition to [such] orders . . . the court **must** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees caused by the failure [to abide by a court order] unless the failure was substantially justified or other circumstances make an award of unjust." (emphasis added). In imposing sanctions under this rule, courts are advised to look at "(1) the willfulness of the non-complaint party or the reason for the non-compliance; (2) the efficacy of lesser sanctions; (3) the duration of the . . . non-compliance; and (4) whether the non-complaint party had been warned of the consequences of non-compliance." *Southern New England Tel. Co.* v. *Global NAPS Inc.*, 624 F.3d at 144. At least one court in the Tenth Circuit has held that where the extreme sanctions of default or dismissal are not imposed, no particular state of mind or degree of culpability is a necessary to impose sanctions under this rule. *See Markham v. Nat'l States Ins. Co.*, 2004 WL 3019308 at *11, 12.

There is no doubt in the Master's mind that Plaintiffs' counsel's violation of the PO was willful; this was a conscious, intentional act on the part of Plaintiffs' counsel and not the result of involuntary non-compliance. *See RCHFU, LLC.* v. *Marriott Vacations Worldwide Corp.*, 2018 WL 683900 at *10. The imposition of fees and costs is considered "a relatively mild sanction" (*Braley* v. *Campbell*, 832 F.2d at 1512), and the Master believes that without this sanction, Plaintiffs' counsel and others will not be deterred from such misconduct in the future. As previously mentioned, the non-compliance continued for a period of eight months after Plaintiffs' counsel were first made aware of the HA Defendants' objection to their conduct and persisted for six months after the Master advised the parties of her ruling that the PO did not permit Plaintiffs' counsel to use HA's Confidential and Highly Confidential Information to assist the FTC in developing its case or in prosecuting HA. Other courts in this district and elsewhere have awarded attorney's fees and costs for similar PO violations pursuant to Fed. R. Civ. P. 37(b)(2). *See*, *e.g.*, *Kaufman* v. Am. *Family Mut. Ins. Co.*, Civ. Ac. No. 05-cv-02311-WDM-MEH, 2008 WL 1806195, at *7 (D. Colo. Apr. 21, 2008); *Mahboob* v. *Educational Credit Mgmt. Corp.*, Civ. Ac. No. 15-cv-0628-TWR-AGS, 2021 WL 818971, at *3, 4 (S.D. Cal. Mar. 2, 2021).

The HA Defendants correctly argue that the Master could also impose attorney's fees and costs under 28 U.S.C. § 1927. In the Tenth Circuit, imposition of fees on counsel under this statute does not require a finding of bad faith; "objectively unreasonable conduct" or a "reckless disregard of the attorney's duties to the court" is clearly sanctionable conduct. *See, e.g., Hamilton* v. *Boise Cascade Express*, 519 F.3d at 1202 (quoting *Braley* v. *Campbell*, 832 F.2d at 1512)). The Master has already found those things here. However, because the Master has already determined that sanctions are appropriate under Fed. R. Civ. P. 16(f) and 37(b)(2)(C), there is no need for further analysis under 28 U.S.C. § 1927. There is also no need for the Master to use her inherent authority to impose fees and costs under the present circumstances because Plaintiffs' counsel's conduct is adequately covered by

applicable rules and statutes.  "A sanctioning court should ordinarily rely on available authority conferred by statute or procedural rules, rather than its inherent powers, if the available sources of authority would be adequate to serve the court's purposes."  *In re:  Rimsat, Ltd.*, 212 F.3d 1039, 1048 (7th Cir. 2000) (citing *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 50 (1991).  *See also U.S.* v. *Kouri-Perez*, 187 F.3d 1, 8 (1st Cir. 1999) (same); *In re Prudential Ins. Co. AM. Sales Practice Litig. Agent Actions*, 278 F.3d. 175, 189 (3d Cir. 2002) (same); *F.J. Hanshaw Enters.*, Inc., v. *Emerald River Dev., Inc.*, 244 F.3d 1128, 1136-37 (9th Cir. 2001) (same).  *See also Brayley* v. *Campbell*, 832 F.2d at 1510 ("Because we have specific statutes and rules that authorize the imposition of monetary sanctions on attorneys, we need not explore the entire parameters of the courts' inherent power to impose sanctions.  We note, however, that this inherent power has provided a basis for imposition of monetary sanctions on attorneys, including attorney's fees in the past" (citations omitted)).

### b. Discovery Violations

The HA Defendants also seek fees and costs under Fed. R. Civ. P. 37(c)(1) for Plaintiffs' failure to supplement their responses to RFPs 11, 12, 30, 31, and 32.  While Plaintiffs' counsel did violate Fed. R. Civ. P. 26(e) by failing to produce the FTC-related communications and documents as they were required to do, this particular sanction is only available against ***a party***, and not it's counsel.  *See Sun River Energy Inc.* v. *Nelson*, 800 F.3d at 1224, 1225-7.  Under the present facts, the Master declines to punish Plaintiffs for the actions of their counsel when there is no evidence that they had any involvement in the decision or misconduct.

The HA Defendants did not request sanctions under Fed. R. Civ. P. 26(g) for Plaintiffs' improper certifications of their R&Os to RFPs 11, 12, 30, 31, and 32.  The Master believes that not only would they have been entitled to do so, but she is *required* under that rule to impose sanctions on Plaintiffs' counsel for their violation of Rule 26(g).  *See* Fed. R. Civ. P. 26(g)(3) ("***If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer*** . . . ." (emphasis added)).

Fed. R. Civ. P. 26(g)(1)(B)(i) requires that any response or objection to a discovery request must be "consistent with the[ Federal Rules] and warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law, or for establishing new law."  The rule also requires that such a response or objection "not [be] interposed for any improper purpose. . ." and not be "unreasonable."  *See* Fed. R. Civ. P, 26(g)(1)(B)(ii) and (iii), respectively.  The Master has already found, and the Court has already affirmed, that (1) Plaintiffs' assertions of work-product protection and common-interest privilege as to the FTC-related communications and documents were not warranted by existing law, and (2) that the April 2, 2021 certified R&Os to the production of this particular, narrow set of FTC communications and documents was unreasonable, invalid, and undertaken for an improper purpose, *i.e.*, to avoid being caught at their violation of the PO and so they could continue to assist the FTC in its prosecution of HA.  [*See* MOO at 14-17;affirmed in the June 15, 2022 Court Order at 14-18, 22-27].  Those findings are repeated in more detail above in the Masters Findings of Fact and Mixed Fact and Law (*see*, *e.g.*, Section III ¶¶1-5)].

Moreover, for the very same reasons, and in case there is any question about Plaintiffs' counsel's violation of Fed. R. Civ. P. 26(g), Plaintiffs have also violated 28 U.S.C. § 1927.  In the Tenth Circuit, the imposition of fees and costs on counsel under this statute is permissible on the basis of "objectively unreasonable conduct" (*Hamilton* v. *Boise Cascade Express*, 519 F.3d at 1202 (quoting *Braley* v. *Campbell*, 832 F.2d at 1512)), "when an attorney acts "recklessly or with indifference to the law," (*Brayley* v. *Campbell*, 832 F.2d at 1511), and/or when an attorney acts with "reckless disregard of the attorney's duties to the court." (*Hamilton* v. *Boise Cascade Express*, 519 F.3d at 1202).  All three of these conditions are met here.  Accordingly, 28 U.S.C. § 1927 permits the court to "'insist that the attorney bear the costs of his own lack of care.'"  *Brayley* v. *Campbell*, 832 F.2d at 1511 (citation omitted).  *See also Obeslo* v. *Great-West Cap. Mgmt., LLC*, Civ. Ac. No. 160cv-00230-CMA-SKC (consolidated for all purposes with Civ. Ac. No. 160cv-01215-CMA-SKC, and Civ. Ac. No. 16-cv-03162-CMA-SKC), 2020 WL 6336034, at *2 (D. Colo. Sept. 28, 2020) (Arguello, J.) (same); *Lyn-Lea Travel Corp.* v. *American Airlines, Inc.*, 283 F.3d 282, 291 (5th Cir. 2002) ("All that is required to support § 1927 sanctions is a determination, supported by the record, that an attorney multiplied proceedings in a case in an unreasonable manner.") (citation omitted)).

As with  the sanctionable conduct involving Plaintiffs' violations of the PO, there is no need for the Master to use her inherent authority to impose fees and costs on Plaintiffs' counsel for their discovery failures because their misconduct is adequately covered by applicable rules and statutes, and there is a preference that the sanctioning court "ordinarily rely on available authority conferred by statute or procedural rules, rather than its inherent powers, if the available sources of authority would be adequate to serve the court's purposes."  *In re:  Rimsat, Ltd.*, 212 F.3d at 1048 (citing *Chambers* v. *NASCO, Inc.*, 501 U.S. at 50).  *See also U.S.* v. *Kouri-Perez*, 187 F.3d at 8 (same); *In re Prudential Ins. Co. AM. Sales Practice Litig. Agent Actions*, 278 F.3d. at 189 (same); *F.J. Hanshaw Enters.*, Inc., v. *Emerald River Dev., Inc.*, 244 F.3d at 1136-37 (same).  See also ).  *See also Brayley* v. *Campbell*, 832 F.2d at 1510 ("Because we have specific statutes and rules that authorize the imposition of monetary sanctions on attorneys, we need not explore the entire parameters of the courts' inherent power to impose sanctions.  We note, however, that this inherent power has provided a basis for imposition of monetary sanctions on attorneys, including attorney's fees in the past" (citations omitted)).

      c.   <u>*Ehrenhaus* Factors</u>

As referenced above in Section IV.I & n.1, the *Ehrenhaus* factors have been applied by some courts in the Tenth Circuit—which are imposing non-dispositive sanctions—to consider (1) the degree of actual prejudice to the moving party, (2) the amount of interference with the judicial process, and the culpability of the litigant.  *See*, *e.g.*, *Ward* v. *Express Messenger Svc.*, 2020 WL 6828103 at *3;  *OTO Software, Inc.* v. *Highwall Techs., LLC*, 2010 WL 3842434  at *14; *Land O'Lakes, Inc.*, 244 F.R.D. at 636; *Markham* v. *Nat'l States Ins. Co.*, 2004 WL 3019308 at *12.

First, as to prejudice, the Master has noted that she cannot quantify with specificity the degree of prejudice or injury the HA Defendants suffered in the FTC proceeding as a result of Plaintiffs' violation of the PO.  But there can be no serious doubt that the FTC found the continued assistance provided by Plaintiffs' counsel useful or they would not have engaged with Plaintiffs' counsel so extensively over a

22-month period.  Moreover, the HA Defendants have amply demonstrated prejudice in this matter, as "prejudice" has been defined in the Tenth Circuit as including "delay and mounting attorneys' fees." *Faircloth* v. *Hickenlooper*, 758 F. App'x at 662 (citing *Jones* v. *Thompson*, 996 F.2d 261 at 264).  The delay caused by the investigation of this dispute and the attorneys' fees incurred—combined with the Master's fees—have not been insignificant here.  Plaintiffs' conduct has also prejudiced the HA Defendants by "casting doubt on the veracity of all of the [Plainitffs'] submissions throughout the litigation.'" *Freddie* v. *Marten Transport, Ltd.*, 428 F. App'x at 804 (10th Cir. 2011) (quoting *Garcia* v. *Berkshire Life Ins. Co. of Am.*, 569 F.3d at 1180).  Finally, other circuit courts have found prejudice when a party is impaired in its ability to prepare a defense (*Tech. Recycling Corp.* v. *City of Taylor*, 186 F. App'x at 636) or is deprived of information through non-cooperation with discovery and costs are imposed obtaining court orders to force compliance with discovery (*Adams* v. *Trustees, N.J. Brewery Trust Fund*, 29 F. 3d at 874) (citation omitted)).  While the former is not implicated in the present matter, the unavailability of the withheld information may well have impacted the HA Defendants' ability to fully defend themselves in the FTC proceeding.  The HA Defendants were undoubtedly deprived of important information in connection with the FTC proceeding through Plaintiffs' non-cooperation and were required to expend considerable finds to obtain the court order to produce that important information.  Under the present circumstances, the Master sees no more suitable sanction that would address the apparent prejudice the HA Defendants have suffered at the hands of Plaintiffs' counsel.

Second, the interference in this matter caused by this dispute has been significant.  The Master has devoted well over 200 hours to this dispute and that number will likely only continue to grow with a forthcoming fee application.  Had there not been a Master in this case, the burden on the Court would have been unmanageable.  Still, the Court will invariably be forced to deal with at least one level of appeal of this Memorandum and Opinion (if not two), as well as likely with respect to any ruling the Master makes on fees and costs.

Finally, while the Master has not made an explicit finding of bad faith in this Memorandum Opinion and Order, this should not serve as a cause for celebration by Plaintiffs' counsel.  The Master did not do so because such a finding was not required for the sanctions she chose to impose here, not because she could not have made such a finding with respect to the egregious conduct engaged in by Plaintiffs' counsel here.  At the very least, Pls violation of the PO was a willful and intentional failure.  It was clearly undertaken "for improper reasons," and undoubtedly with a "motive of self interest." *RCHFU, LLC* v. *Marriott Vacations Worldwide Corp.*, 2018 WL 6839800 at *10 (setting forth the definition of "bad faith").

Plaintiffs' counsel's responses to discovery were calculated to and did obfuscate and mislead, and their repeated misstatements did not meet the standard of candor, cooperation, and professionalism expected of experienced and talented counsel of this caliber.  Their conduct proved to be profoundly disappointing to the Master.

Accordingly, for the reasons set forth above, the relief of attorney's fees and costs is **GRANTED**. ***These fees and costs will be awarded against Plaintiffs' counsel only, with the precise amount to be determined at a later date.***

C.  <u>Evidence Preclusion</u>

The HA Defendants ask the Master to bar Plaintiffs "from citing or otherwise relying on any FTC-related discovery [the HA Defendants] produced in this action . . .  including all productions and submissions Defendants made to the FTC and any documents Defendants received from the FTC," pursuant to Fed. R. Civ. P. 16(f) and 37(b)(2)(A0(ii). [HA Defs' Mot. at 16].   They argue that '[t]here is nothing 'drastic' about preventing Plaintiffs from continuing to exploit the highly confidential discovery materials they serially misused in repeated violation of the Protective Order. . . .  Rather, this is precisely the circumstances in which preclusion is needed to 'reach the entirety of a litigant's bad-faith conduct." [HA Defs' Reply at 12 (quoting *Farmer* v. *Banco Popular of N. Am.*, 791 F.3d 1246, 1258 (10th Cir. 2015))].

The Master disagrees with the HA Defendants and agrees with Plaintiffs that the "exclusion of evidence 'is a drastic sanction' not warranted or proper under these circumstances." [Pls' Opp. at 20 (quoting *Bragg* v. *Southwest Health Sys.*, Civ. Ac. No. 18-cv-00763-MSK-NRN, 2019 WL 10250743, at *1 (D. Colo. July 31, 2019)].  *See also Teleglobe USA, Inc.* v. *BCE Inc. (In re Teleglobe Communs. Corp.*, 392 B.R. 561, 579 (Bankr. D. Del. 2008) ("[T]he courts agree that the sanction of preclusion of evidence is a harsh punishment which should be imposed only in the most extreme circumstances." (citing cases)). While the choice of which sanction to impose in a particular case is a matter which is within the sound discretion of the court, "a discovery sanction must be measured; *a court should impose the least onerous sanction that will remedy the prejudice and, when applicable, punish the past wrongdoing and deter future wrongdoing.*" *Sours* v. *Glanz*, 24 F. App'x at 915 (citation omitted) (emphasis added).  "A drastic remedy, like a default judgment or a dismissal 'is usually appropriate only where a lesser sanction would not serve the interests of justice.'" [*Id.* (quoting *Meade* v. *Grubbs*, 841 F.2d 1512, 1520 (10th Cir. 1988))].

"*Sanctions which preclude the admission of certain evidence . . . operate in the same fashion as a default judgment.*  They intrude into the 'truth-finding process' . . .  and represent 'grave steps' for a trial judge to take. . . .  Such sanctions should be considered only with great restraint."  *Gates Rubber Co.* v. *Bando Chem. Indus., Ltd.*, 167 F.R.D. at 106 (internal citations omitted) (emphasis added).  The Master "must be careful to tailor the remedy to the problem, and 'take pains neither to use an elephant gun to slay a mouse nor to wield a cardboard sword if a dragon looms. . . .  *The sanction to be applied needs to be one which is 'appropriate to the truth-finding process, not one that . . .  serve[s] only further to suppress evidence.'" Id.* (internal citations omitted) (emphasis added)).

In the Tenth Circuit, there is a "'strong predisposition to resolve cases on their merits.'"  *Murray* v. *Archambo*, 132 F.3d 609 (10th Cir. 1998) (quoting *Miller* v. *Dept. of Treasury*, 934 F.2d 1161, 1162 (10th Cir. 1991) (further citation omitted)).  *See also Hancock* v. *City of Oklahoma City*, 857 F.2d 1394, 1395 (10th Cir. 1988) (same).  Therefore, evidence preclusion would be an inappropriate and far too extreme a response where the negative impact of Plaintiffs' counsel's conduct *did not touch on any determination on the merits in the present matter and has not interfered with the HA Defendants' ability to prepare a full and fair defense in this case.*  Ordinarily, "[t]he focus of a preclusion inquiry is mainly upon surprise, including the opponent's ability to palliate the ill effects stemming from the late

disclosure, (*Thibeault* v. *Square D Co.*, 960 F.2d at 246), but the surprise and prejudice here occurred *in a completely different enforcement proceeding brought by the FTC*, where it is both impossible to assess the degree of injury to the HA Defendants or to remedy it.  The prejudice *in the present action* has been limited to distraction, lost time and the significant cost to litigate this dispute.  Thus, the evidence preclusion sanction sought by the HA Defendants would bear no nexus to the harm that the HA Defendants suffered in this action.

Finally, the HA Defendants nowhere address the gross unfairness that would result from punishing *Plaintiffs* for the sins of their counsel, which such evidence preclusion would inevitably cause.  The Master will not block Plaintiffs from using relevant evidence when other, less drastic sanctions are readily available to address Plaintiffs' counsel's misconduct.  The Master holds that the interests of justice will be amply served by imposing what will be a not-insubstantial amount of fees and costs on Plaintiffs' counsel; the imposition of evidence preclusion would be overkill under the circumstances.

According, for the reasons set forth above, this relief is **DENIED**.

D.   Master's Fees

The HA Defendants believe that "they should not have to bear any [of the Master's] costs associated with this dispute.  Plaintiffs should be ordered to pay all of the Master's fees associated with drafting the [MOO], and any related fees she incurred in connection with her analysis and evaluation of Plaintiffs' significant misconduct." [HA Defs' Mot. at 17].

Under the Order Appointing Master for Discovery [Dkt 126 at 4 ¶6], the Master was granted the authority and discretion to allocate her fees and expenses between the parties as she deemed warranted:  "[A]s to any particular portion of the proceedings necessitated by the conduct of one party, the Master may assess fees and expenses of that portion of the proceedings to the responsible party."

The Master warned Plaintiffs' counsel multiple times over the course of this dispute—starting on May 21, 2021—that she was likely to apportion her fees and costs related to this dispute to Plaintiffs' counsel if they continued to litigate this matter on the basis of the arguments they were making, which the Master believed lacked merit.  They chose to continue to do so long after it was clear that the Master strongly disagreed with the basis of their objections to RFPs 11, 12, 30, 31, and 32, and had serious concerns about the nature of their contacts with the FTC.  While Plaintiffs are, of course, entitled to appeal any and all of the Master's rulings, all of their arguments related to this dispute were soundly rejected by the Court's June 15, 2022 Order for the very same reasons expressed by the Master.  [*See* Dkt. 533.]

By continuing to double down on their misstatements and to aggressively press arguments that lacked merit, Plaintiffs' counsel imposed undue burden and cost on the HA Defendants by forcing the Master to spend massive amounts of time investigating and formally resolving matters that could easily have been avoided.  As a matter of fundamental fairness, the HA Defendants, who have prevailed on virtually all, if not all, of the motions related to this dispute, should not have to bear the cost of the Master's fees.  Accordingly, the Master will order ***Plaintiffs' counsel only***—not Plaintiffs—to reimburse

the HA Defendants for the portion of her fees related to this dispute that the HA Defendants have paid (and will pay) to the Master since the Master first advised the parties orally of her ruling on the Parties' Joint Motion for Clarification of the Meaning of Paragraph 6 of the Protective Order [Dkt. 63] and a Determination of Whether or Not Plaintiffs Have Violated That Provision, and the HomeAdvisor Defendants' Motion to Compel Supplementation of Their Requests for Production Nos. 11, 12, 30, 31, and 32, on May 21, 2021, and warned Plaintiffs' counsel that they were at risk of bearing the cost of further proceedings on these matters.  [*See* Summary of Discovery Issues Discussed at the May 21, 2021 Conference with Special Master Maura R. Grossman at 3 ¶5 ("The Master will write a formal opinion addressing both prongs of her rulings [*i.e.*, the joint motion for clarification / interpretation of paragraph 6 of the Protective Order and whether there was or was not a violation of that provision, and Defendants' motion to compel supplementation of RFP Nos. 11, 12, 30, 31, and 32] to allow the Plaintiffs to reflect on the Master's holdings and decide how to proceed.  The Master held that the cost incurred for writing the opinion will be divided equally between the parties for now, but that she would consider imposing cost shifting if deemed appropriate upon consideration of the case history, facts, and circumstances.")].  That warning was repeated in the MOO at 19:  "Pursuant to Fed. R. Civ. P. 37(a)(5)(C), as well as the Master's admonition at the conference held with the parties on May 21, 2021 (and reiterated at the June 6, 2021 conference), while the parties shall share equally in the cost of the drafting of this Order, for the present time, the Master has reserved the right to shift some or all of those costs at a later date, including but not limited to, after the Court's ruling on appeal. . . .").]

The Master has tracked the time devoted to this dispute separately on her time sheets and has provided that information to counsel each month along with her monthly invoice.  As of December 31, 2022, the HA Defendants' portion of the Master's fees related to this dispute, since May 21, 2021, came to one-half of 201.57 hours at $500.00 per hour = **$50,392.50.**  That number will invariably grow, as fee disputes are likely to follow this Memorandum Opinion and Order.  Accordingly, the additional fees to be repaid to the HA Defendants, incurred starting January 1, 2023, will be determined by the Master at a later date.

For the reasons set forth above, this relief is **GRANTED**.

## VI.    Conclusion and Order

The Master has worked with counsel for the parties closely over a period of five years and has come to like and respect them.  She has—at all times—tried to give the benefit of doubt when counsel for one party has accused counsel for the other of dishonesty or misconduct, a not infrequent occurrence in this litigation.  As Sigmund Freud is claimed to have once said, "sometimes a cigar is just a cigar."  With respect to some of the parties' disputes, that has been the case:  a misunderstanding or an error turned out to be just that, and nothing more.  But regrettably, this is not one of those cases.

The Master tried to resolve this dispute informally when the odds of success were low and it has taken a long time to commit this decision to writing because, frankly, it is unpleasant and painful to have to sanction counsel.  This decision has not been made lightly and without awareness of the ramifications of a sanction such as this, including on counsel's reputation.  But viewing the facts as a whole, there is

simply no plausible justification for Plaintiff's counsel's conduct with respect to their handling of information received from the HA Defendants designated as "Confidential" or "Highly Confidential," their sustained use of that information to aid the FTC in prosecuting HomeAdvisor, and their responses to discovery requests directly implicating those documents and communications with the FTC.

The Master can reach no other conclusion than that:  (1) Plaintiffs' counsel engaged in discovery misconduct in violation of Fed. Rule Civ. P. 26(e) and 26(g), respectively, by (a) failing to supplement their responses in a timely manner to RFPS 11, 12, 30, 31, and 32 when they "learn[ed] that in some material resect . . the response [was] incomplete or incorrect. . . ." and they had many opportunities to do so, and (b) by maintaining objectively unreasonable objections of vagueness and burden, and objectively unreasonable claims of work-product and common-interest privilege, pertaining to a set of known communications and documents that Plaintiffs' counsel received and shared with the FTC; (2) Plaintiffs' counsel made repeated obfuscatory misstatements to opposing counsel and to the Master— whether intentional or otherwise—which, at the very least, show a reckless disregard for their duty of candor to opposing counsel and the Court, since, again, they had more than ample opportunity to correct their misstatements and continued to try to justify them either by blaming everyone but themselves or by continuing to insist on both objectively unreasonable objections and an objectively unreasonable interpretation of the PO; and (3) Plaintiffs' counsel willfully violated a court order and Master's warning concerning the use of information received from the HA Defendants labeled "Confidential" or "Highly Confidential," over an extended period of time.

It is on this basis that the HA Defendants' Motion for Sanctions is **GRANTED in part and DENIED in part**.

*First*, pursuant to Fed. R. Civ. P. 16(f)(2) and 37(b)(2)(C), ***Plaintiffs' counsel*** will be responsible for paying a reasonable proportion of the HA Defendants' attorneys' fees and costs litigating the disputes related to the Plaintiffs' contacts with the FTC and their violations of the PO.  The precise amount to be awarded will be determined by the Master at a later date following a proper fee submission by the HA Defendants and Plaintiffs counsel's opportunity to challenge that.

*Second*, pursuant to Fed. R. Civ. P. 26(g)(3) and 28 U.S.C. § 1927, ***Plaintiff's counsel*** will be responsible for paying a reasonable proportion of the HA Defendants' attorney's fees and costs litigating the disputes related to Plaintiffs' discovery violations in relation to RFPs 11, 12, 30, 31, and 32.  The precise amount to be paid will be determined by the Master at a later date following a proper fee submission by the HA Defendants and Plaintiff counsel's opportunity to challenge that.

*Third*, pursuant to and the Order Appointing Master [Dkt. 126 at 3 ¶2 and 4 ¶6], ***Plaintiffs' counsel*** will be responsible for repaying the HA Defendants' **$50,392.50** for their portion of the Master's fees devoted to dealing with the above disputes, starting from the time the Master announced her initial findings related to the HA Defendants' motions related to the FTC communications and supplementation of RFPs 11, 12, 30, 31, and 32 on May 21, 2022—and when she first warned Plaintiffs' counsel that if they insisted on prolonging this dispute, that they could find themselves responsible for paying the Master's fees—through December 31, 2022.  The amount of the Master's fees to be reallocated beyond this amount (*i.e.,* those incurred from January 1, 2023 on) will depend, in part, on

what follows this Memorandum Opinion and Order, and will be determined by the Master at a later date.

Within **21** days of this Order, Plaintiffs shall remit payment of **$50, 392.50** to the HA Defendants, and the HA Defendants shall make a petition to the Master for fees and costs that they believe are reasonable in amount and fairly attributed to Plaintiffs' Counsel's sanctionable conduct as set forth above.  The Master is mindful of District Judge Ian D. Johnston's recent warning in *DR Distrib., LL*C v. *21 Century Smoking, Inc.*, Civ. Ac. No. 12-cv-50324, 2022 WL 5245340 (N.D. Ill. Oct. 12, 2022) that "[i]f Dante were a judge, he would have placed fee litigation as an inner circle of judicial hell," and therefore cautions the HA Defendants that while they need to properly substantiate and justify the amount of attorney's fees and costs they are seeking, and demonstrate that they are because of, and solely because of the sanctionable conduct that the Master has found, this is *not* an invitation to bury the Master in hundreds, if not thousands, of additional pages of briefing, declarations, and exhibits.  As the Supreme Court has previously stated, "the determining of fees 'should not result in a second major litigation. . . .'  [While] [t]he fee applicant . . . must, of course, submit appropriate documentation to meet 'the burden of establishing entitlement to the award' . . .  trial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Fox* v. *Vice*, 563 U.S. 826, 838 (2011) (internal citations omitted).

Within **21** days of the filing of the HA Defendants' fee submission, Plaintiffs' counsel may file an objection to the fees and costs sought.

This Order will not be stayed pending any appeal of it unless the Court grants a stay upon application by either one or both of the parties.

**SO ORDERED.**

Dated:  January 16, 2023                    BY THE MASTER:

*/s/ Maura R. Grossman*
Maura R. Grossman, J.D., Ph.D.