IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 16-cv-01849-PAB-KAS
(Consolidated with Civil Action No. 18-cv-01802-PAB-KAS)

In re HOMEADVISOR, INC. LITIGATION
_____

**ORDER**
_____

This matter is before the Court on Plaintiffs' Motion for Class Certification and Appointment of Class Counsel Pursuant to Fed. R. Civ. P. 23 [Docket No. 557]. The Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

## I.    BACKGROUND

### A.  Factual Background on Defendants' Alleged Conduct

Plaintiffs Airquip, Inc., Kelly DaSilva, Nicole Gray, Charles Costello, Bruce Filipiak, Josh Seldner, Anthony Baumann, Kourtney Ervine, Hans Hass,[1] Iva Haukenes, Brad and Linda McHenry, and Lisa LaPlaca (collectively the "plaintiffs") bring this class action suit on behalf of themselves and proposed classes of similarly situated home service professionals against defendants HomeAdvisor, Inc. ("HomeAdvisor"), IAC/InterActiveCorp ("IAC"), ANGI Homeservices, Inc. ("ANGI"), and CraftJack, Inc. ("CraftJack") (collectively the "defendants"). Docket No. 449 at 13.[2]

---

[1] In a recent filing, plaintiffs state that Mr. Hass passed away in 2023. Docket No. 617 at 1 n.1. Plaintiffs state that Mr. Hass' death has no impact on the motion for class certification because he was not the only proffered class representative. *Id.*

[2] Plaintiffs' third amended complaint also included claims against C. David Venture Management, LLC ("CDVM") and Venture Street, LLC ("Venture Street"). Docket No. 449 at 13. On September 26, 2022, the Court granted CDVM and Venture Street's motion for summary judgment, dismissed the claims against CDVM and

HomeAdvisor is an online marketplace that helps connect home service professionals with homeowners in need of home improvement services.  *Id*., ¶ 1. Plaintiffs are service professionals ("SPs") who paid for memberships with HomeAdvisor.  *Id*. at 20-26, ¶¶ 9-19.  HomeAdvisor collects information from homeowners in the form of a request for home improvement services and sells that information to SPs as a "lead."  *Id*. at 13-14, 20-26, 33, ¶¶ 1, 9-19, 54.  In addition to membership fees, HomeAdvisor charges SPs per lead.  *Id*. at 33, ¶ 54.  According to plaintiffs, HomeAdvisor also contracts with over 100 lead generator companies, including CraftJack, to obtain leads that HomeAdvisor sells to SPs.  *Id*. at 47, ¶ 86.

Plaintiffs allege that HomeAdvisor misrepresents the quality of the leads it sells to SPs.  *Id*. at 33-34, ¶¶ 55, 57.  Specifically, plaintiffs claim that HomeAdvisor advertises that its leads are from high quality, "project-ready" customers.  *Id*. at 33-35, ¶¶ 57-58. Plaintiffs allege that HomeAdvisor consistently conveyed a "brand promise" during the putative class period that the leads were "from serious, legitimate, and real homeowners, who were serious about engaging with an SP to have work performed." Docket No. 557 at 5.  Plaintiffs allege that HomeAdvisor conveyed the brand promise to SPs through advertising and marketing statements directed to SPs as well as during HomeAdvisor's enrollment calls with SPs.  *Id*.  However, plaintiffs assert that the leads are of "no value" because the leads often contained "wrong or disconnected phone numbers" and "wrong contact information" or directed the SPs to "persons who never even heard of HomeAdvisor," "persons who are not homeowners," or homeowners who

---

Venture Street, and terminated these defendants from the case.  *See* Docket No. 603 at 27.

completed the projects "months or years prior to the Lead being sent."  Docket No. 449 at 38, ¶ 66.

Plaintiffs argue that HomeAdvisor did not take the necessary steps to verify that the leads were authentic, had accurate contact information, and were from consumers serious about connecting with SPs about a particular project.  Docket No. 557 at 6. Plaintiffs allege that HomeAdvisor knew it was deceiving SPs because: (1) HomeAdvisor's own call tracking system revealed that SPs were only able to connect with the leads 14-30 percent of the time; (2) 64 percent of SPs attempted to restrict HomeAdvisor's access to their payment cards; (3) HomeAdvisor experienced an SP attrition rate of 80 percent a year; and (4) HomeAdvisor's top management admitted that many leads were "garbage."  *Id*. at 9-11.

Furthermore, plaintiffs allege that HomeAdvisor unlawfully retains the SPs' names and likeness after SPs terminate their memberships.  *Id*. at 12.  Plaintiffs also claim that HomeAdvisor retains SPs' online profile pages on its website and falsely represents that the SP is not in business or accepting new business.  *Id*.; *see also* Docket No. 449 at 149, ¶¶ 375-76.  Plaintiffs assert that HomeAdvisor believes that its Terms & Conditions ("T&Cs") grant HomeAdvisor "a perpetual, irremovable, non-exclusive, royalty-free, transferable, assignable, sub-licensable, worldwide license to use . . . [the SPs'] Content."  Docket No. 557 at 12 n.46.

### B.  Class Action Claims

Plaintiffs bring a class action on behalf of themselves and all other similarly situated SPs and seek to certify two categories of classes: (1) the Deceptive Practices Classes and (2) the Misappropriation Classes.  *Id*. at 13.

The Deceptive Practices Classes consist of a nationwide class and nine state classes for California, Colorado, Florida, Idaho, Illinois, Indiana, New Jersey, New York, and Ohio.  *Id.*  On behalf of the Nationwide Deceptive Practices Class, plaintiffs assert claims for (1) fraud/fraudulent concealment; (2) aiding and abetting fraud/fraudulent concealment;[3] and (3) unjust enrichment.  *Id.*  On behalf of the nine State Deceptive Practices Classes, plaintiffs allege claims for (1) fraud/fraudulent concealment; (2) aiding and abetting fraud/fraudulent concealment; (3) unjust enrichment; (4) breach of implied contract; and (5) violations of various state consumer protection statutes for eight of the nine states.  *Id.*

The Misappropriation Classes consist of a nationwide class and three state classes for Colorado, Florida, and Idaho.  *Id.*  The Misappropriations Classes only seek injunctive relief.  *Id.*  On behalf of the Nationwide Misappropriation Class, plaintiffs allege claims for (1) violation of the Lanham Act sections 43(a) and 1125(a)(1)(B); and (2) a claim for declaratory judgment.  *Id.*  On behalf of the three State Misappropriation Classes, plaintiffs allege claims for (1) violations of all three states' consumer protection statutes; and (2) unfair competition for the Colorado and Florida state classes.  *Id.* at 13-14.

Plaintiffs Airquip, Inc., Kelly DaSilva, Nicole Gray, Charles Costello, Bruce Filipiak, Anthony Baumann, Kourtney Ervine, Iva Haukenes, Brad and Linda McHenry, and Lisa LaPlaca seek to be named class representatives, as identified in Docket No.

---

[3] Plaintiffs state that the "nationwide aiding and abetting fraud/fraudulent concealment claim is limited to SPs residing, or maintaining their principal place of business, in 38 states and territories that recognize this cause of action."  Docket No. 557 at 13 n.47.

557-2.  *Id*. at 14.[4]  Plaintiffs seek to appoint Chimicles Schwartz Kriner and Donaldson-Smith ("CSKD") as class counsel and Sherman and Howard ("S&H") as local class counsel pursuant to Rule 23(g).  *Id*. at 29.

Defendants filed a response opposing class certification.  Docket No. 590.  Plaintiffs filed a reply.  Docket No. 598.

## C.  Special Master's Sanctions Order[5]

On January 24, 2022, defendants filed a motion for sanctions against plaintiffs' counsel, arguing that plaintiffs' counsel repeatedly violated the discovery protective order[6] in this case through their contacts with the Federal Trade Commission ("FTC").  *See* Docket No. 590-58.  On January 16, 2023, Special Master Maura Grossman (the "Special Master") granted in part and denied in part defendants' motion for sanctions.  Docket No. 608 at 2.  First, the Special Master found that CSKD[7] repeatedly violated the protective order "over an extended period of time" by using confidential information received from defendants in order to "aid the FTC in prosecuting HomeAdvisor."  *Id*. at 50.  The Special Master stated that CSKD had at least 20 calls with the FTC and numerous email communications "over a 22-month period."  *Id*. at 30, ¶ 11.  The Special

---

[4] Plaintiffs state that Mr. Seldner is "not seeking to be a class representative for any of Plaintiffs' proposed classes."  Docket No. 557-2 at 1 n.3.

[5] On April 9, 2018, the Court appointed Maura Grossman as the Special Master in this case to manage discovery and resolve discovery disputes.  Docket No. 126.

[6] The protective order states that confidential or highly confidential information received from defendants "shall be used solely for the purpose of prosecution, defense, and/or settlement in this Action."  Docket No. 608 at 29, ¶ 8 (emphasis omitted).

[7] The Special Master's sanctions order refers to "Plaintiffs' counsel" throughout the order and does not identify whether the conduct was committed by CSKD or S&H.  *See generally* Docket No. 608.  However, the Special Master later clarified that all references to "Plaintiffs' counsel" in the order do not refer to S&H or its attorneys.  Docket No. 613.

Master found that CSKD's violation of the protective order was "willful and intentional" and was "clearly undertaken 'for improper reasons' . . . with a 'motive of self-interest.'" *Id*. at 46 (citation omitted).

Second, the Special Master found that CSKD "engaged in discovery misconduct in violation of Fed. R. Civ. P. 26(e) and 26(g)" by failing to supplement plaintiffs' responses to requests for production related to the FTC communications.  *Id*. at 50. Third, the Special Master found that CSKD repeatedly made "misstatements to opposing counsel and to the Master" regarding plaintiffs' responses to requests for production.  *Id*. at 28, 50.  The Special Master found that CSKD's statements "were at best confusing and at worst intentionally misleading," *id*. at 28, ¶ 4, which "at the very least, show[s] a reckless disregard for [CSKD's] duty of candor to opposing counsel and the Court."  *Id*. at 50.

As a result, the Special Master ordered CSKD to pay defendants' attorneys' fees related to this dispute, as well as to reimburse defendants $50,392.50 for the Special Master's fees related to resolving the dispute.  *Id*. at 46, 48-49.  The Special Master denied defendants' request for the following sanctions: further discovery, civil contempt, fine payable to the Court, or evidence preclusion.  *Id*. at 37-41, 47-48.

After the Special Master entered the sanctions order, the parties jointly filed a request for additional briefing to address the impact of the sanctions order on the motion for class certification.  Docket No. 610.  The Court granted the request for supplemental briefing.  Docket No. 611.  Defendants filed a supplemental brief, arguing that CSKD would be inadequate class counsel based on the findings in the Special Master's order.

Docket No. 612.  Plaintiffs filed an opposition brief, arguing that the Special Master's order does not impact the adequacy of CSKD as class counsel.  Docket No. 614.

## II.    LEGAL STANDARD

A district court may certify a class action if the proposed class satisfies the prerequisites of Fed. R. Civ. P. 23(a) as well as the requirements of one of the three types of classes identified in Rule 23(b).  "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (internal quotation and citation omitted).  As the party seeking class certification, plaintiffs have the burden to prove that the requirements of Rule 23 are satisfied.  *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso*, 386 F.3d 963, 968 (10th Cir. 2004).  Plaintiffs must first demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a); *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1086 (10th Cir. 2014).

After meeting Rule 23(a)'s requirements, plaintiffs must demonstrate that the proposed class action fits within one of the categories described in Fed. R. Civ. P. 23(b).  *CGC Holding Co., LLC*, 773 F.3d at 1086.  Here, plaintiffs ask the Court to certify the Misappropriation Classes under Rule 23(b)(2) and the Deceptive Practices Classes under Rule 23(b)(3).  *See* Docket No. 557 at 21, 29.  Under Rule 23(b)(2), plaintiffs must show that "the party opposing the class has acted or refused to act on grounds

that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Under Rule 23(b)(3), plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### III.   ANALYSIS

#### A.  Mootness – Misappropriation Classes

"Under Article III of the Constitution [federal courts] may only adjudicate actual, ongoing controversies."  *Honig v. Doe*, 484 U.S. 305, 317 (1988); *see also Wiley v. Nat'l Collegiate Athletic Ass'n*, 612 F.2d 473, 475 (10th Cir. 1979) (noting that mootness "has its constitutional origin in the 'case or controversy' limitation of Article III").  Thus, "[m]ootness is a threshold issue" that implicates the Court's subject-matter jurisdiction. *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005).  In the mootness inquiry, the "crucial question is whether granting a present determination of the issues offered will have some effect in the real world."  *Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000) (internal quotations, citation, and alterations omitted).

Defendants argue that Kourtney Ervine, Iva Haukenes, Brad McHenry, and Linda McHenry (the "misappropriation plaintiffs") lack standing to seek equitable relief on the misappropriation claims because HomeAdvisor removed their online profiles four years ago.  Docket No. 590 at 26-27.  As a result, defendants argue that the proposed equitable relief is moot and plaintiffs cannot establish any exceptions to the mootness

doctrine.  *See id*. at 27.  Plaintiffs do not dispute that HomeAdvisor removed the online profiles of the misappropriation plaintiffs.  *See generally* Docket No. 598; *see also* Docket No. 590-52 at 22-30 (plaintiffs' interrogatory response stating that HomeAdvisor removed the profiles of Ervine, Haukenes, and the McHenrys on October 30, 2018 after plaintiffs filed a preliminary injunction motion).  However, plaintiffs seem to argue that their claims fit the voluntary cessation exception, *see* Docket No. 598 at 28-29, because defendants have not irrefutably demonstrated that defendants changed their wrongful behavior since HomeAdvisor still contends that it has a perpetual license to the SPs' likeness and content from the profile pages.  *Id*.  Specifically, plaintiffs state that HomeAdvisor maintains that the T&Cs of its agreement with these plaintiffs constitute an enforceable contract, granting HomeAdvisor a "perpetual, irremovable, non-exclusive, royalty-free . . . worldwide license to use . . . your [the SP's] Content."  *Id*. n.50.

"[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."  *Friends of the Earth, Inc. v. Laidlaw Env'l Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citation omitted). The voluntary cessation exception "exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resume the illegal conduct."  *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880-81 (10th Cir. 2019) (internal alterations and citation omitted).  The voluntary cessation exception does not apply, and a case is moot, "if the defendant carries the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  *Id*. at 881 (internal quotations and citation omitted); *see also*

*Equal Emp. Opportunity Comm'n v. CollegeAmerica Denver, Inc.*, 869 F.3d 1171, 1173-74 (10th Cir. 2017); *Vitamins Online, Inc. v. Heartwise, Inc.*, 71 F.4th 1222, 1246 (10th Cir. 2023) (noting that "voluntary cessation does not normally moot a request for injunctive relief").  Defendant has a "heavy" burden of showing that the voluntary cessation exception does not apply.  *Prison Legal News*, 944 F.3d at 881.

The Court finds that the voluntary cessation exception applies.  HomeAdvisor removed the profile pages of the misappropriation plaintiffs after this lawsuit was initiated.  *See* Docket No. 272 at 11.  Defendants have failed to show that "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  *See Prison Legal News*, 944 F.3d at 881 (citation omitted).  Defendants still believe that the T&Cs represent an enforceable contract, *see* Docket No. 557-100 at 3, granting "HomeAdvisor and its users a perpetual, irrevocable . . . worldwide license to use . . . [the SPs'] Content on the HomeAdvisor Website."  Docket No. 557-99 at 5.  Defendants make no argument disclaiming the existence of a perpetual license or their right to use the misappropriation plaintiffs' names or likeness.  To carry their burden, defendants must do more than offer "a mere informal promise or assurance . . . that the challenged practice will cease."  *See Prison Legal News*, 944 F.3d at 881.  However, in this case, defendants have failed to even offer an assurance that they will not place the misappropriation plaintiffs' profile pages on HomeAdvisor's website after this litigation ends.  Accordingly, defendants have failed to carry their heavy burden of showing that the voluntary cessation exception does not apply to this case.  The Court therefore finds that the equitable relief for the misappropriation classes is not moot.

B.  **Ascertainability**

The Court will first consider whether plaintiffs have proposed ascertainable classes.  "Although not specifically mentioned in the rule, an essential prerequisite to an action under Rule 23 is that there must be a class."  *Edwards v. Zenimax Media Inc.*, No. 12-cv-00411-WYD-KLM, 2012 WL 4378219, at *4 (D. Colo. Sept. 25, 2012) (citation omitted); *see also Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013) (noting that "[c]lass ascertainability is an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3)" (internal quotations and citation omitted)).  "An identifiable class exists if its members can be ascertained by reference to objective criteria."  *Donaca v. Dish Network, LLC*, 303 F.R.D. 390, 397 (D. Colo. 2014).  If the class members are identifiable using a defendant's records, then the class is ascertainable.  *Wornicki v. Brokerpriceopinion.com, Inc.*, No. 13-cv-03258-PAB-KMT, 2016 WL 11697044, at *8 (D. Colo. Sept. 20, 2016).

Plaintiffs propose the following definition for the Nationwide Deceptive Practices Class:

> All persons and entities who (a) received or were charged for a Lead within the 50 United States or the District of Columbia, Puerto Rico or the U.S. Virgin Islands, at any time between October 1, 2012 and present; and (b) was a Traditional SP at the time a Lead was received.

Docket No. 557-2 at 1.[8]  Plaintiffs propose the following definition for the Nationwide Misappropriation Class:

---

[8] The California, Florida, Idaho, Illinois, Indiana, New Jersey, New York, and Ohio State Deceptive Practices Classes contain the same language as the nationwide definition, with the exception of substituting the name of the state in place of "the 50 United States or the District of Columbia, Puerto Rico or the U.S. Virgin Islands."  *See* Docket No. 557-2 at 2-6.  The Colorado State Deceptive Practices Class has the following definition: "All persons and entities who (a) received or were charged for a

> All persons and entities who are/were Traditional SPs since July 13, 2015, (a) who were charged for a HomeAdvisor membership (including for HomeAdvisor's Pro ConnectTM, Total ConnectTM, and/or for the predecessor or subsequent HomeAdvisor home service professional membership programs) within the 50 United States or the District of Columbia, Puerto Rico or the U.S. Virgin Islands, (b) who terminate or terminated their home service professional membership with HomeAdvisor, (c) for whom HomeAdvisor does not have express assent to use their names, likeness, or trademark on HomeAdvisor's website or any HomeAdvisor affiliate website.

*Id*. at 7.[9]

Plaintiffs argue that ascertainability is satisfied because plaintiffs used HomeAdvisor's data to identify the members of the Deceptive Practices and Misappropriation Classes.  Docket No. 557 at 15.  Defendants argue that the classes are not ascertainable because plaintiffs have failed to establish that any class members relied on the alleged "brand promise" and "many SPs' experience is that [HomeAdvisor] provides a valuable service."  Docket No. 590 at 25.

The Court finds that the proposed classes are sufficiently ascertainable since it is "administratively feasible for the court to determine whether a particular individual is a member."  *See Wornicki,* 2016 WL 11697044, at *7 (quoting *Davoll v. Webb*, 160 F.R.D. 142, 144 (D. Colo. 1995)).  The Deceptive Practices Classes are ascertained by reference to objective criteria, namely, being a Traditional SP, receiving or being

---

Lead within the state of Colorado, at any time between July 19, 2013 and present; and (b) was a Traditional SP at the time a Lead was received."  *Id*. at 2.

[9] The Colorado State Misappropriation Class contains the same language as the Nationwide Misappropriation Class with the exception of substituting Colorado in place of "the 50 United States or the District of Columbia, Puerto Rico or the U.S. Virgin Islands."  *See* Docket No. 557-2 at 7.  The Florida State Misappropriation Class contains the same language as the Nationwide Misappropriation Class, except Florida is substituted as the location and the timeframe starts on July 13, 2014.  *Id*. at 8.  The Idaho State Misappropriation Class contains the same language as the Nationwide Misappropriation Class, except Idaho is substituted as the location and the timeframe starts on July 13, 2016.  *Id*.

charged for a lead, during a certain time frame, and within a certain geographic location.

The Misappropriation Classes are also ascertained by reference to objective criteria,

namely, being a Traditional SP during a certain time frame, who was charged for a

HomeAdvisor membership, who terminated the membership, and who did not give

HomeAdvisor express consent to use their name, likeness, or trademark.[10]  Plaintiffs

state that these members are ascertainable from HomeAdvisor's own granular data

containing details about the 128.7 million leads sent to the Traditional SPs through

December 31, 2020.  Docket No. 557 at 3 n.6, 15.  Defendants do not dispute that the

class members are ascertainable through HomeAdvisor's own records.  *See generally*

Docket No. 590.  Defendants' arguments, regarding reliance or individual plaintiffs'

experiences with HomeAdvisor, do not raise ascertainability issues.  Because the class

members are identifiable using HomeAdvisor's records, the classes are ascertainable.

*See Wornicki,* 2016 WL 11697044, at *7.

### C.  Rule 23(a) Requirements

Under Rule 23(a), a plaintiff must demonstrate that: (1) the class is so numerous

that joinder of all members is impracticable; (2) there are questions of law or fact

common to the class; (3) the claims or defenses of the representative parties are typical

of the claims or defenses of the class; and (4) the representative parties will fairly and

adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

---

[10] The Tenth Circuit has explained that a class does not have to be readily ascertainable if the class is seeking injunctive relief under Rule 23(b)(2).  *Shook*, 386 F.3d at 972 ("[M]any courts have found Rule 23(b)(2) well suited for cases where the composition of a class is not readily ascertainable.").

### 1.  Numerosity

Rule 23(a)(1) requires that plaintiffs seeking class certification "establish that the class is so numerous as to make joinder impracticable."  *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (quoting *Peterson v. Okla. City Hous. Auth.*, 545 F.2d 1270, 1273 (10th Cir. 1976)).  In the Tenth Circuit, there is no set formula for determining whether a proposed class is large enough to meet the numerosity requirement.  *See id*. Rather, the question of numerosity is a fact-specific inquiry within the broad discretion of the district court.  *Id*.

Plaintiffs argue that the Deceptive Practices Classes and the Misappropriation Classes are sufficiently numerous that joinder is impracticable because the Nationwide Classes would contain 845,722 members and the State Classes would contain between 5,539 to 81,049 members.  Docket No. 557 at 15.  Defendants do not challenge numerosity under Rule 23(a).  *See generally* Docket No. 590.  The Court agrees with plaintiffs that joinder of 845,722 members for the Nationwide Classes or 5,539 to 81,049 members for the State Classes would be impracticable.  Courts routinely find that numerosity is satisfied by classes much smaller than the classes alleged here.  *See Decoteau v. Raemisch*, 304 F.R.D. 683, 687 (D. Colo. 2014) (holding that a class of "at least 500" satisfied the numerosity requirement).  Accordingly, the Court finds that plaintiffs have satisfied Rule 23(a)(1)'s numerosity requirement.

### 2.  Commonality

Rule 23(a) requires a district court to ensure that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Factual differences in the claims of the individual class members should not result in the denial of class certification where

common questions of law exist.  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010).  Commonality requires that the plaintiff demonstrate that the class members have "suffered the same injury" such that the claims of the class are based on a common contention and that the determination of the truth or falsity of this contention "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  In other words, plaintiffs must have a common question of fact or law that will connect many individual claims to the relief sought by the class.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).  Even a single common question will satisfy commonality.  *Dukes*, 564 U.S. at 359; *see also Devaughn*, 594 F.3d at 1195 ("A finding of commonality requires only a single question of law or fact common to the entire class.").

### a)  Deceptive Practices Classes

Plaintiffs argue that commonality is satisfied for the Deceptive Practices Classes because there are many common questions of fact and law.  Docket No. 557 at 17-18.  Specifically, plaintiffs identify the following common factual and legal questions: (1) whether HomeAdvisor verified the leads before sending the leads to SPs; (2) whether HomeAdvisor omitted material information about the nature and quality of its leads and memberships; (3) whether HomeAdvisor conveyed false and misleading information about the nature and quality of its leads and memberships; (4) whether HomeAdvisor's internal processes were sufficient to ensure the leads were authentic, accurate, and from serious consumers; (5) whether HomeAdvisor charged class members for leads that were not vetted; (6) whether HomeAdvisor retained money from the SPs for

unverified leads; and (7) whether an implied contract was created when SPs provided HomeAdvisor with a payment card and HomeAdvisor charged the card. *Id*.

Defendants argue that "[c]ommonality does not exist for all the reasons that predominance does not exist." Docket No. 590 at 26. Defendants also argue that no common answers exist to plaintiffs' alleged common questions. *Id*.

The Court finds that plaintiffs have satisfied the commonality requirement for the Deceptive Practices Classes. Defendants' commonality arguments are unpersuasive. "A finding of commonality requires only a single question of law or fact common to the entire class." *Devaughn*, 594 F.3d at 1195. There are many common questions that will resolve issues central to plaintiffs' fraud and unjust enrichment claims including whether HomeAdvisor's internal processes ensured the accuracy of the leads, whether HomeAdvisor knowingly conveyed misleading information about the quality of the leads to SPs, and whether HomeAdvisor retained a benefit from the SPs for the leads. *See Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 924 (10th Cir. 2018) (finding that commonality was established for unjust enrichment class with the single common question of whether defendant received a benefit from plaintiffs' labor); *Roberts v. C.R. England, Inc*., 318 F.R.D. 457, 508-09 (D. Utah 2017) (holding that whether defendants made false representations to plaintiffs to induce them into purchasing a product constituted a common question for common law fraud claim). Accordingly, the Court finds that the proposed Deceptive Practices Classes satisfy the commonality requirement.

### b)  Misappropriation Classes

Plaintiffs argue that the common question for the Misappropriation Classes is whether HomeAdvisor secured a perpetual license to the Traditional SPs' names and likeness through HomeAdvisor's T&Cs.  Docket No. 557 at 18-19.  Defendants do not respond to plaintiffs' argument.  The Court finds that the common legal question of whether HomeAdvisor secured a perpetual license to the SPs' names and likeness through the T&Cs is sufficient to satisfy commonality.  *See Devaughn*, 594 F.3d at 1195 ("[f]actual differences between class members' claims do not defeat certification" where a common question of law exists).

### 3.  *Typicality*

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiffs such that the interests of the class will be fairly and adequately protected in their absence.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  The interests and claims of the lead plaintiffs and the class members need not be identical to satisfy typicality and, provided the claims of the lead plaintiff and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality.  *Devaughn*, 594 F.3d at 1198-99.  Nevertheless, "it is well-established that a proposed class representative is not 'typical' under Rule

23(a)(3) if 'the representative is subject to a unique defense that is likely to become to become a major focus of the litigation.'" *Marcus v. BMW of N. Am.*, *LLC*, 687 F.3d 583, 599 (3d Cir. 2012) (citation omitted).

### a)  Deceptive Practices Classes

For the Deceptive Practices Classes, plaintiffs argue that the class representatives' claims arise from the same course of events as members of the putative class because the claims are based on HomeAdvisor's failure to verify its leads, HomeAdvisor's false and misleading statements about the leads, and HomeAdvisor's deception about the nature and quality of its leads.  Docket No. 557 at 16.  Defendants argue that the named plaintiffs' claims are atypical because "their complaints about [HomeAdvisor] are not shared by other members of the class and certain named Plaintiffs received a full refund on any amounts paid to [HomeAdvisor], establishing they suffered no harm."  Docket No. 590 at 25-26.

The Court finds that Rule 23(a)(3)'s typicality requirement is satisfied for the Deceptive Practices Classes.  The named plaintiffs' claims stem from the same course of conduct as the claims of the class members, namely, HomeAdvisor's representations to SPs regarding the quality of its leads and HomeAdvisor's processes to verify its leads.  *See Roberts*, 318 F.R.D. at 511 (explaining that when "a party seeks to recover for fraud, the proposed class representative's claims are generally held to be typical of the class members' claims if the allegations can be traced to the same overall fraud, even if class members' specific claims are factually distinct" (internal quotations and citation omitted)).  Defendants make no argument that the named plaintiffs are subject to a unique defense that is likely to become a major focus of the litigation.  *See Marcus*,

687 F.3d at 599.  Accordingly, plaintiffs have satisfied their burden of demonstrating typicality.

### b)  Misappropriation Classes

For the Misappropriation Classes, plaintiffs argue that the class representatives' claims arise from the same course of events as members of the putative class because the claims are based on HomeAdvisor's use of the SPs' names and likeness after the SPs terminated their memberships, HomeAdvisor's representation that the SPs are not in business or not available to take on work, and HomeAdvisor's claim that it has a perpetual license to the SPs' names and likeness from the T&Cs.  Docket No. 557 at 16.

Defendants argue that the named plaintiffs cannot show typicality for several reasons.  Docket No. 590 at 28.  First, defendants argue that plaintiffs who lack standing necessarily fail the typicality requirement.  *Id*.  The Court rejects this argument since the Court finds that plaintiffs have standing.  Second, defendants assert that "certification of an injunctive relief class is inappropriate because a wide factual chasm separates these Plaintiffs' claims from the putative class" given that many of the misappropriation plaintiffs have closed their businesses.  *Id*.  Finally, defendants argue that the misappropriation claims are "atypical" of most SPs' experiences because only three of the thirteen named plaintiffs assert these claims and no named plaintiff experienced all of the claims.  *Id*. at 29.

The Court finds that Rule 23(a)(3)'s typicality requirement is satisfied for the Misappropriation Classes.  The misappropriation plaintiffs' claims stem from the same course of conduct as the claims of the class members, namely, HomeAdvisor's use of

the SPs' names and likeness after the SPs terminated their memberships and HomeAdvisor's claim that it has a perpetual license to use this information.  The claims are based on the same legal theory that defendants' conduct violates the Lanham Act and Colorado, Florida, and Idaho state consumer protection statutes.  *See* Docket No. 449 at 282-98.  Differing factual situations of the class members do not defeat typicality. *Devaughn*, 594 F.3d at 1198-99.  Furthermore, defendants do not argue that the misappropriation plaintiffs are subject to a unique defense that is likely to become a major focus of the litigation.  *See Marcus*, 687 F.3d at 599.  Accordingly, plaintiffs have satisfied their burden of demonstrating typicality.

### 4.  Adequacy of Representation

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  As the Supreme Court has noted, the "adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (internal quotations omitted).  As such, the "inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Id.* at 625.  To be an adequate class representative, the "representative must be part of the class and possess the same interest and suffer the same injury as the class members."  *Id*. at 625-26.

The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002) (citation omitted). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985.

Plaintiffs argue that the adequacy requirement is established because the named plaintiffs and their counsel do not have any conflicts of interests with class members and the named plaintiffs assert claims that are typical of the class members. Docket No. 557 at 17. Plaintiffs argue that they will prosecute this action vigorously because they have already devoted significant effort to this case and have retained class counsel who are experienced in complex class action litigation. *Id*. Defendants do not argue that there are any conflicts of interest. *See generally* Docket No. 590. However, defendants assert that CSKD would be inadequate class counsel because it repeatedly violated the Special Master's protective order. *Id*. at 30; Docket No. 612 at 1.

With respect to the first adequacy factor, the Court finds that the interests of the class are fairly and adequately protected by the class representatives. There is nothing in the record that raises any concerns of conflicts of interest between the class representatives or counsel and the rest of the class. With respect to the second factor, CSKD has over thirty years of experience litigating complex class actions and has represented the plaintiffs in this case for over six years. Docket No. 557-11 at 19, 25,

¶¶ 101, 123.  The plaintiffs have shown that they will prosecute the action vigorously on behalf of the class as demonstrated by their efforts to date in responding to discovery requests, testifying at depositions, and assisting the attorneys in support of various motions.  *See id.* at 22, ¶ 113.  The Court will address defendants' arguments regarding whether CSKD is adequate class counsel under the Rule 23(g) analysis.  *See In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. & Prod. Liab. Litig.*, 2018 WL 4200315, at *3 (D.N.M. Aug. 31, 2018) ("The adequacy-of-counsel analysis was traditionally conducted under rule 23(a)(4), but, since the 2003 amendments, that analysis has now been moved entirely to [R]ule 23(g)."); *Anderson Living Tr. v. WPX Energy Prod., LLC*, 306 F.R.D. 312, 383 (D.N.M. 2015) (noting that the difference between analyzing adequacy of class counsel under Rule 23(a)(4) or Rule 23(g) is not highly important, "except that now district courts should not refuse to certify a class on the basis of inadequacy of counsel alone").  Accordingly, because the named plaintiffs and proposed class counsel do not have a conflict of interest with the rest of the class and have shown that they can vigorously litigate on behalf of the class, the Court finds that plaintiffs have satisfied Rule 23(a)(4)'s requirements.

### D.   Rule 23(b)(2) Requirements – Misappropriation Classes

After satisfying Rule 23(a)'s requirements, plaintiffs must demonstrate that the proposed class action fits within one of the categories described in Rule 23(b).  *CGC Holding Co., LLC*, 773 F.3d at 1086.  Here, plaintiffs ask the Court to certify the Misappropriation Classes under Rule 23(b)(2).  *See* Docket No. 557 at 29.

To qualify for certification under Rule 23(b)(2), plaintiffs must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the

class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) certification imposes two independent but related requirements: defendant's actions or inaction must be based on grounds generally applicable to all class members, and the injunctive relief must be appropriate for the class as a whole.  *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso* ("Shook II"), 543 F.3d 597, 604 (10th Cir. 2008).  "The rule therefore authorizes an inquiry into the relationship between the class, its injuries, and the relief sought, and we have interpreted the rule to require that a class must be amenable to uniform group remedies."  *Id.* (internal quotation and citation omitted).  Rule 23(b)(2) requires that a single injunction provides relief to each member of the class.  *Dukes*, 564 U.S. at 360.  The Tenth Circuit has described two requirements of Rule 23(b)(2):

> [T]he class must be sufficiently cohesive that any classwide injunctive relief can satisfy the limitations of Federal Rule Civil Procedure 65(d) – namely, the requirement that it state its terms specifically; and describe in reasonable detail the act or acts restrained or required . . . . Second, [a] class action may not be certified under Rule 23(b)(2) if relief specifically tailored to each class member would be necessary to correct the allegedly wrongful conduct of the defendant.

*Shook II*, 543 F.3d at 604 (internal citations and quotations omitted).

Plaintiffs argue that the requested injunctive relief for the Misappropriation Classes will "enjoin Defendants from using SPs' names and likenesses in any capacity beyond that to which the SP gives written consent, and require that absent SP's express written assent when terminating, [HomeAdvisor] will promptly take down the SP's [profile]."  Docket No. 557 at 29.  Plaintiffs argue that the requested injunctive relief does not require differentiation of class members and therefore Rule 23(b)(2) certification is proper.  *Id*.  Defendants do not challenge plaintiffs' certification of the Misappropriation Classes under Rule 23(b)(2).  *See generally* Docket No. 590.

The Court finds that certification under Rule 23(b)(2) is appropriate.  Defendants' belief, that the T&Cs grant them a perpetual license to use SPs' names and likeness, applies generally to the class.  The amended complaint specifically requests that the Court issue injunctive relief "requiring that upon a request to terminate or the expiration of a one-year membership, absent express assent by the [SP] at the time of termination, the [] Defendants will promptly remove the [class members'] . . . business names and information from their websites."  Docket No. 449 at 288, ¶ 996.  The Court finds that the Misappropriation Classes are sufficiently cohesive for class wide injunctive relief and tailoring to each class member is unnecessary.  *See Shook II*, 543 F.3d at 604. Accordingly, certification under Rule 23(b)(2) is warranted.

### E.  Rule 23(b)(3) Requirements – Deceptive Practices Classes

Plaintiffs ask the Court to certify the Deceptive Practices Classes under Rule 23(b)(3).  *See* Docket No. 557 at 21-25.  To qualify for certification under Rule 23(b)(3), plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615.

Parallel with Rule 23(a)(2)'s commonality element, Rule 23(b)(3)'s predominance requirement imposes an obligation upon district courts to ensure that issues common to the class predominate over those affecting only individual class members.  *Sullivan v. DB Investments, Inc*., 667 F.3d 273, 297 (3d Cir. 2011).  However, the predominance criterion is "far more demanding" than Rule 23(a)(2)'s commonality requirement. *Amchem*, 521 U.S. at 624.  Rule 23(b)(3)'s purpose is to "ensure[ ] that the class will be

certified only when it would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007).

To demonstrate predominance, "a plaintiff must show that common questions subject to generalized, classwide proof *predominate* over individual questions." *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 838 (10th Cir. 2023) (citation omitted).  "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof."  *Id.* (quoting *Tyson Foods, Inc., v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).  The Court must: (1) "identify which elements of Plaintiffs' claims would be subject to class-wide proof;" (2) "identify which elements of Plaintiffs' claims would be subject to individualized proof;" and (3) "determine which of these issues would predominate."  *Sherman v. Trinity Teen Sols., Inc.*, 84 F.4th 1182, 1195 (10th Cir. 2023) (citing *Tyson Foods*, 577 U.S. at 453); *see also Brayman*, 83 F.4th at 838 (discussing how the court must characterize each issue as common or individual, and then "weigh the issues to determine whether the common issues predominate").  The Court must perform a "claim-specific analysis" when assessing predominance.  *Brayman*, 83 F.4th at 841.

### 1.  Choice of Law Analysis

As a preliminary matter, the parties dispute whether the Court must conduct a choice-of-law analysis at the class certification stage.  *Compare* Docket No. 557 at 19

*with* Docket No. 590 at 22.  Plaintiffs argue that no choice-of-law analysis is required at this stage because many courts have previously certified common law claims on behalf of nationwide classes without conducting a choice-of-law analysis.  Docket No. 557 at 19 n.58-59 (citing *Wornicki,* 2016 WL 11697044; *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 240 (C.D. Cal. 2003)).  Defendants argue that the Court must conduct a choice-of-law analysis because "[v]ariations in state law may 'swamp any common issues and defeat predominance.'"  Docket No. 590 at 22 (quoting *Castano v. Am. Tobacco Co*., 84 F.3d 734, 741 (5th Cir. 1996)).  Defendants contend that plaintiffs' cited cases are inapposite because no party in *Wornicki* raised the choice-of-law issue at class certification and the court in *Westways World Travel* later decertified the class due to a lack of predominance.  *Id*. at 22 n.44.

"In a multi-state class action, variations in state law may swamp any common issues and defeat predominance."  *Goode v. Nuance Commc'ns, Inc*., 2020 WL 4606848, at *4 (N.D. Okla. May 7, 2020) (quoting *Castano*, 84 F.3d at 741).  Therefore, the Court must conduct a choice-of-law analysis at the class certification stage.  *Id*.; *see also Castano*, 84 F.3d at 741 ("A requirement that a court know which law will apply before making a predominance determination is especially important when there may be differences in state law."); *Powers v. Lycoming Engines*, 328 F. App'x 121, 124 (3d Cir. 2009) (unpublished) (discussing how a court must "begin its [predominance] analysis by considering choice of law"); *Senne v. Kansas City Royals Baseball Corp*., 934 F.3d 918, 928 (9th Cir. 2019) ("Understanding which law will apply before making a predominance determination is important when there are variations in applicable state law, and potentially varying state laws may defeat predominance in certain

26

circumstances." (citations and alterations omitted)); *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 140 (2d Cir. 2015) ("Because the purported class members reside in twenty-seven different states, the district court properly recognized that, as an initial matter, a choice-of-law analysis was necessary to its determination whether common or individual issues would predominate in the litigation."); *Hale v. Emerson Elec. Co.*, 942 F.3d 401, 404 (8th Cir. 2019) (reversing and remanding certification of nationwide class action due to the district court's failure to conduct a choice-of-law analysis); 1 McLaughlin on Class Actions § 5:46 (20th ed. Oct. 2023) ("In cases where the plaintiffs seek to assert state common law or statutory claims and seek to certify a class that includes members from multiple states, the court must address choice of law issues"); *cf. Jabbari v. Farmer*, 965 F.3d 1001, 1007 (9th Cir. 2020) (holding that a district court does not commit legal error by failing to conduct a choice-of-law analysis for a "settlement class").

The Nationwide Deceptive Practices Class contains state common law claims for (1) fraud/fraudulent concealment, (2) aiding and abetting fraud/fraudulent concealment; and (3) unjust enrichment.  Docket No. 557 at 13.  Plaintiffs also assert claims for breach of implied contract for the nine State Deceptive Practices Classes.  *Id.*  Plaintiffs argue that, if the Court decides to conduct a choice-of-law analysis at this stage, Colorado law applies to the common law claims.  *Id.* at 20.[11]  Defendants argue that the

---

[11] Plaintiffs cursorily argue that defendants are "estopped" from arguing that Colorado law does not apply.  Docket No. 557 at 21.  "The court will not consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation."  *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004).

law of each class member's home state applies to the common law claims.  Docket No. 590 at 22-23.

When exercising supplemental jurisdiction over a state-law claim, "the Court applies the substantive law of Colorado, the forum state, including its choice of law rules."  *Barnett v. Surefire Med., Inc.*, 342 F. Supp. 3d 1167, 1173 (D. Colo. 2018) (citing *BancOklahoma Mortg. Corp. v. Cap. Title Co., Inc.*, 194 F.3d 1089, 1103 (10th Cir. 1999)).  Colorado has adopted the choice-of-law approach of the Restatement (Second) of Conflict of Laws (the "Restatement"), which requires a court to apply the substantive law of the state having the "most significant relationship" to the issue.  *Id.* (citing *Chemiti v. Kaja*, No. 13-cv-00360-LTB-KMT, 2015 WL 585594, at *2 (D. Colo. Feb. 11, 2015); *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979) (noting that "the objective of the Restatement (Second) is to locate the state having the 'most significant relationship' to the particular issue")).

In determining which state has the most significant relationship to an unjust enrichment claim, the Court is guided by the factors set forth in § 221 of the Restatement.  *Barnett,* 342 F. Supp. 3d at 1174.  Section 221 applies to "claims . . . based neither on contract nor on tort, to recover for unjust enrichment" and lists five "contacts" to be taken into account in determining the law applicable to an issue:

> (a) the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship, (b) the place where the benefit or enrichment was received, (c) the place where the act conferring the benefit or enrichment was done, (d) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (e) the place where a physical thing, such as land or chattel, which was substantially related to the enrichment, was situated at the time of the enrichment.

*Id*. (quoting Restatement § 221).

In determining which state has the most significant relationship to a fraud claim, the Court is guided by the factors set forth in § 148 of the Restatement. *Sec. Serv. Fed. Credit Union v. First Am. Mortg. Funding, LLC*, 906 F. Supp. 2d 1108, 1112 (D. Colo. 2012). Section 148 lists seven contacts to be taken into account, including:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Id*. at 1112-13 (quoting Restatement § 148).

In determining which state has the most significant relationship to a contract claim, the Court is guided by the factors set forth in § 188 of the Restatement. *Nicholls v. Zurich Am. Ins. Grp*., 244 F. Supp. 2d 1144, 1152 (D. Colo. 2003). Section 188 lists five contacts to be taken into account, including:

> [a] the place of contracting; [b] the place of negotiation; [c] the place of performance; [d] the location of subject matter of the contract; and [e] the domicile, residence, or place of business of the parties.

*Id*. (citing Restatement § 188).

Plaintiffs argue that Colorado has the most significant relationship to plaintiffs' common law claims because HomeAdvisor is headquartered in Colorado; the relationship between defendants and the SPs is centered in Colorado because HomeAdvisor's employees created the advertising materials containing the brand promise in Colorado; and the injury occurred in Colorado because that is the location where HomeAdvisor failed to verify the leads. Docket No. 598 at 21. Defendants argue that the class members' home states have the most significant relationship to the

common law claims.  Docket No. 590 at 23.  Defendants state that they are domiciled in different areas of the country[12] and therefore the only location tying the defendants to any putative class member is the SPs' home states.  *Id*.  Defendants further argue that the enrollment calls, that form the basis of plaintiffs' fraud claims, were conducted from sales call centers in multiple states, including Colorado, Indiana, New York, and Illinois. *Id*. at 23 n.49.[13]

The Court will first analyze which state has the most significant relationship to the unjust enrichment claims.  The first factor – the place where the relationship between the parties was centered – is neutral and supports either applying Colorado law or class members' home-state law.  At the time of the enrollment calls, the SPs were presumably located in their home states.  However, HomeAdvisor conducted the enrollment calls from sales centers in Colorado, Indiana, New York, and Chicago.  *See id*.  Plaintiffs argue that HomeAdvisor created the brand promise statements and failed to verify the leads in Colorado, *see* Docket No. 598 at 21, but plaintiffs provide no evidence to support this assertion.  Furthermore, there is no indication that plaintiffs had any interaction with IAC, ANGI, or CraftJack in Colorado or anywhere else.  The second factor – the place where the enrichment was received – supports applying the law of Colorado, Delaware, New York, and Illinois, which is where HomeAdvisor, IAC, ANGI, and CraftJack are operated.  *See* Docket No. 449 at 26-28, ¶¶ 21-23, 26.  Because no

_____

[12] The defendants are domiciled in the following states: HomeAdvisor (Delaware and Colorado), ANGI (Delaware and Colorado), IAC (Delaware and New York), and CraftJack (Illinois).  Docket No. 590 at 23 n.48.

[13] Defendants state that HomeAdvisor also has a sales call center in "Kansas City," *see* Docket No. 590 at 23 n.49; however, defendants do not clarify whether this sales call center is located in Kansas City, Kansas or Kansas City, Missouri.

party argues for the exclusive application of Delaware, New York, or Illinois law, however, the Court finds that the second factor supports applying Colorado law. The third factor – the place where the act conferring the enrichment was done – strongly supports applying class members' home-state law because that is where SPs purchased the leads that they claim unjustly enriched the defendants. The fourth factor – the place of business of the parties – is neutral and supports either applying Colorado law or class members' home-state law. The fifth factor – the place where a physical thing related to the enrichment was situated – does not apply here. Considering all of the factors of the most significant relationship test, the Court finds that it is appropriate to apply each class member's home-state unjust enrichment law, as other courts have done in similar unjust enrichment cases brought by a nationwide class of plaintiffs. *See In re HomeAdvisor, Inc. Litig.*, No. 16-cv-01849-PAB-KAS, 2022 WL 4467033, at *7 (D. Colo. Sept. 26, 2022).

The Court next analyzes which state has the most significant relationship to the fraud claims. The Court finds that the majority of contacts supports applying each class member's home-state fraud and aiding and abetting fraud laws. The SPs received the defendants' alleged misrepresentations in their home states and acted in reliance on the misrepresentations in their home states. HomeAdvisor made some of the representations from sales centers in Colorado and multiple other states. *See* Docket No. 590 at 23 n.49. The fifth and sixth factors are irrelevant because there are no tangible items or contracts. Accordingly, the Court will apply the law of class members' home states to the fraud claims. *See* Restatement § 148, comment j (noting that where "plaintiff acted in reliance upon the defendant's representations in a single state, this

state will usually be the state of the applicable law, with respect to most issues, if (a) the defendant's representations were received by the plaintiff in this state, or (b) this state is the state of the plaintiff's domicil[e] or principal place of business").

Finally, the Court analyzes which state has the most significant relationship to the breach of implied contract claims for the nine Deceptive Practices State Classes.  The Court does not have sufficient information to evaluate the first factor – the place of contracting.  Section 188 states that "the place of contracting is the place where occurred the last act necessary, under the forum's rules of offer and acceptance, to give the contract binding effect."  Restatement § 188, comment e.  Neither side provides any details on the alleged offer, acceptance, or consideration.  The second factor – the place of negotiation – supports applying the home-state law of class members.  At the time of the enrollment calls, the SPs were presumably located in their home states, yet HomeAdvisor conducted the enrollment calls from sales centers in Colorado, Indiana, New York, and Chicago.  *See* Docket No. 590 at 23 n.49.  The third factor – the place of performance – is neutral because HomeAdvisor's state of performance is Colorado, where its headquarters are located, and the SPs' state of performance is their home states, where they purchased the leads.  The fourth factor is irrelevant because there is no physical subject matter.  The fifth factor is neutral because the SPs are domiciled in their home states and defendants are domiciled in Colorado, Delaware, New York, and Illinois.  Accordingly, the Court finds that the class members' home states have the most significant relationship to the breach of implied contract claims.

As a result, the Court will apply the home-state law of the class members to plaintiffs' state common law claims.

### 2. Predominance – Nationwide Deceptive Practices Class

The parties dispute whether common questions of law and common questions of fact predominate for the Nationwide Deceptive Practices Class.  *Compare* Docket No. 557 at 21-27 *with* Docket No. 590 at 4-25.  Because the choice-of-law analysis dictates that the Court must apply the home-state law of the class members, the Court will first address whether common questions of law predominate for the nationwide class.

In their motion, plaintiffs argue that, if the Court disagrees with plaintiffs' position that Colorado law applies to the common law claims, "Plaintiffs can nonetheless demonstrate 'either': (1) 'the similarity of applicable state laws'; or (2) 'the susceptibility of the class to division into manageable subclasses,' such that certification is nonetheless proper."  Docket No. 557 at 21 (quoting *Simon v. Metro. Prop. & Cas. Ins. Co.*, 2012 WL 12931425, at *12-13 (W.D. Okla. Jan. 12, 2012)).  Plaintiffs argue that other courts have certified nationwide common law fraud claims because "all states require proof of misrepresentation, materiality of misrepresentation[,] and reliance."  *Id.* at 19 (quoting *Rodriguez v. It's Just Lunch*, *Int'l*, 300 F.R.D. 125, 136 (S.D.N.Y. 2014)).

Defendants argue that common legal questions do not predominate because there are significant differences among the class members' home-state laws.  Docket No. 590 at 24.  Specifically, defendants argue that there are significant differences regarding claim elements, burden of proof, reliance, and scienter for the common law claims.  *Id.* (citing Docket No. 590-2, Defendants' State-by-State Legal Analysis).  Defendants argue that plaintiffs' failure to address the variations in the laws is fatal to class certification because plaintiffs have the burden of showing the uniformity of state laws or the existence of a small number of applicable standards.  *Id.*  Defendants assert

that plaintiffs should not be permitted to present an analysis of the state laws for the first time in their reply.  *Id*.

In reply, plaintiffs argue that the variations in state law do not defeat predominance, and plaintiffs present a chart analyzing the elements of the common law claims by state.  Docket No. 598 at 23 (citing Docket No. 600-1, Plaintiffs' State-by State Analysis).  For the fraud laws, plaintiffs argue that the laws are similar because all the states require "an affirmative misrepresentation or omission; that is material; and reliance."  *Id*.  For the unjust enrichment laws, plaintiffs claim that the laws are similar because all the states require "conferral of a benefit by the claimant on the defendant."  *Id*. at 24.  For the aiding and abetting fraud laws, plaintiffs state that 38 states, the District of Columbia, and the Virgin Islands recognize this claim and require "a primary violation, substantial assistance[,] and knowledge."  *Id*.  Plaintiffs argue that, if the Court prefers to group states by similar elements, plaintiffs have identified four subclasses for fraud, two subclasses for unjust enrichment, and two subclasses for aiding and abetting.  *Id*. (citing Docket No. 600-1).

Numerous courts of appeals and district courts require that the party seeking class certification must "provide an extensive analysis of state law variations to reveal whether these pose insuperable obstacles."  *Cole v. Gen. Motors Corp*., 484 F.3d 717, 724 (5th Cir. 2007) (internal quotations and citation omitted); *see also Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc*., 601 F.3d 1159, 1180 (11th Cir. 2010) ("Undeniably, it falls to the plaintiff to demonstrate the homogeneity of different states' laws, or at least to show that any variation they contain is manageable."); *Langan v. Johnson & Johnson Consumer Co*., 897 F.3d 88, 97 (2d Cir. 2018) ("district

courts must do more than take the plaintiff's word that no material differences exist . . . [r]ather, district courts themselves must undertake a considered analysis of the differences in state laws."); *Goode*, 2020 WL 4606848, at *5 (plaintiffs must "provide an extensive analysis of state law variations to reveal whether those pose insuperable obstacles, and failure to do so is grounds for decertification" (internal quotations and citations omitted)); *Simon*, 2012 WL 12931425, at *4 ("The burden of showing uniformity of state law or the existence of only a small number of applicable standards among the laws of the fifty states rests squarely with the plaintiffs." (internal quotations and citations omitted)); *see also* 1 McLaughlin on Class Actions § 5:46 (collecting cases holding that "plaintiffs have the burden of showing that variations in state law" will not defeat predominance or superiority).

Here, plaintiffs failed to present any analysis in their motion of the unjust enrichment, fraud, and aiding and abetting fraud laws of all fifty states.  The Court agrees with defendants that plaintiffs cannot present this analysis for the first time in their reply.  *See* Docket No. 590 at 24*; Gutierrez v. Cobos,* 841 F.3d 895, 902 (10th Cir. 2016) ("a party waives issues and arguments raised for the first time in a reply brief." (citation omitted)).  Accordingly, plaintiffs have failed to carry their heavy burden of establishing that "any variations in relevant state laws do not predominate over the similarities."  *See Langan*, 897 F.3d at 97; *see also Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 370 (4th Cir. 2004) ("The plaintiffs have the burden of showing that common questions of law predominate, and they cannot meet this burden when the various laws have not been identified and compared."); *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 184 (3d Cir. 2014) (finding that plaintiffs did not establish predominance

because they "failed to provide a sufficient, or virtually any, analysis describing how the grouped state laws might apply to the facts of this case"); *Gonzalez v. Fam. Dollar Stores, Inc.*, 2005 WL 8163793, at *7 (D.N.M. June 21, 2005) (finding that plaintiffs did not establish predominance because they have "not provided the Court with a detailed, systematic analysis of the various applicable state laws at issue, instead merely stating that the Court could deal with the issues by forming sub-classes").

In the alternative, even if the Court considers plaintiffs' state law analysis in their reply, the Court finds that plaintiffs have not sufficiently shown that the state law "variations can be effectively managed through creation of a small number of subclasses grouping the states that have similar legal doctrines." *See Sacred Heart Health Sys., Inc.*, 601 F.3d at 1180 (quoting *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986)).  The Court will consider both side's analysis of the state laws for unjust enrichment, fraud, and aiding and abetting fraud.[14]

### a)  Unjust Enrichment

Defendants' state-by-state analysis highlights that there are significant differences in state unjust enrichment laws.  *See* Docket No. 590-2 at 63.  Defendants argue that many states do not permit a claim for unjust enrichment where there is an underlying contract or where plaintiff has an "adequate remedy at law."  *Id*.  Defendants contend that some states require that defendant must have "appreciated" the fact that it received a benefit from the plaintiff, while other states have no state-of-mind requirements.  *Id*.  Defendants argue that several states provide varied definitions of

---

[14] The Court will not analyze the differences in state laws for the implied breach of contract claims because those claims are not asserted under the Nationwide Deceptive Practices Class, but rather under the nine state classes.

"unjustness." *Id*. Finally, defendants assert that some states only allow an unjust enrichment claim where the plaintiff directly conferred a benefit to the defendant, while other states permit a plaintiff to recover for an indirect conferral of a benefit. *Id*. at 63, 83-90.

Plaintiffs argue that all states require "conferral of a benefit by the claimant on the defendant" for an unjust enrichment claim. Docket No. 598 at 24. Plaintiffs propose creating two unjust enrichment subclasses. *See* Docket No. 600-1 at 5-6. Plaintiffs contend that the states in Group 1 require the following elements: "(1) a benefit conferred on the defendant; (2) at the plaintiff's expense; (3) under circumstances that would make retention of the benefit unjust." *Id*. Plaintiffs posit that the states in Group 2 require the same elements as Group 1, "with the addition of an appreciation element. Specifically, the defendant must appreciate (or understand) that the defendant was receiving a benefit." *Id*. at 6. Plaintiffs do not respond to defendants' argument that many states do not permit a claim for unjust enrichment where there is an underlying contract or where plaintiff has an adequate remedy at law.

Courts in the Tenth Circuit have noted "that differences among state law definitions of unjust enrichment and its availability as a remedy[,] make federal courts, in general, reluctant to certify a nationwide class on this theory." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig*., 2020 WL 1873989, at *57 (D. Kan. Feb. 27, 2020) (citing *Thompson v. Jiffy Lube Int'l, Inc*., 250 F.R.D. 607, 626 (D. Kan. 2008) ("Because of such variations [among state laws], federal courts have generally refused to certify a nationwide class based upon a theory of unjust enrichment.")); *see also Stitt v. Citibank*, 2015 WL 9177662, at *4 n.4 (N.D. Cal. Dec.

17, 2015) (noting that the "elements necessary to establish a claim for unjust enrichment . . . vary materially from state to state"); 1 McLaughlin on Class Actions § 5:60 (20th ed. Oct. 2023) (collecting cases holding that variations in state unjust enrichment laws have precluded certification of multistate class actions based on unjust enrichment theories).  For example, many "states preclude plaintiffs from maintaining an unjust enrichment claim if they have another available remedy at law," *In re EpiPen*, 2020 WL 1873989 at *58, such as the existence of an enforceable contract.  *Thompson*, 250 F.R.D. at 626; *see also It's Just Lunch*, *Int'l*, 300 F.R.D. at 142.  Some states "do not specify the misconduct necessary to proceed[,] while others require the presence of fraud or dishonesty."  *Thompson*, 250 F.R.D. at 626.  Furthermore, some states permit an equitable defense of "unclean hands."  *Id.*  Finally, states define "unjustness" in a variety of ways.  *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.*, 422 F. Supp. 3d 194, 231-33 (D.D.C. 2019).

Plaintiffs have not addressed how to manage the significant variations in unjust enrichment laws in their briefing or the proposed subclasses.  The Court finds that the differences in state unjust enrichment laws would present significant manageability issues because the differences in state laws would swamp any common legal issues and defeat predominance.  *See In re EpiPen*, 2020 WL 1873989, at *58 (denying certification of a nationwide unjust enrichment claim); *It's Just Lunch*, *Int'l*, 300 F.R.D. at 143 (same).  Because plaintiffs have failed to demonstrate the similarity of the state unjust enrichment laws or that the class can be divided into manageable subclasses, *see Simon*, 2012 WL 12931425, at *4, the Court finds that the predominance element is not satisfied for the unjust enrichment claims in the nationwide class.

### b) Fraud

Defendants' state-by-state analysis highlights that there are differences among state fraud laws with respect to burden of proof, whether reliance must reasonable, and whether a plaintiff must prove defendants' knowledge of the falsity of the statement ("scienter").  Docket No. 590-2 at 4-5.  Plaintiffs argue that all states require a material misrepresentation by defendant and reliance by plaintiff.  Docket No. 598 at 23; *see also* Docket No. 600-1 at 6-39.  Plaintiffs assert that any variation in state fraud laws can be managed through the creation of four subclasses.  Docket No. 598 at 23-24; Docket No. 600-1 at 3-4.  Plaintiffs identify four potential subclasses: Group 1 (states that require preponderance of the evidence and no scienter); Group 2 (states that require clear and convincing evidence and no scienter); Group 3 (states that require preponderance of the evidence and scienter); Group 4 (states that require clear and convincing evidence and scienter).  *See* Docket No. 600-1 at 3-4.

The Court finds that plaintiffs' proposed subgroups do not account for the significant variation in states' fraud laws.  First, states' common law fraud claims "meaningfully differ" in terms of whether reliance must be "affirmatively proved" or whether it can be "presumed."  *Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299, 1304-07 (11th Cir. 2023) (reversing certification of multi-state fraud class action regarding defendant's misrepresentations that its cars were "track-ready" because the district court did not consider state law variations with respect to whether reliance can be presumed); *see also Darisse v. Nest Labs, Inc.*, 2016 WL 4385849, at *13 (N.D. Cal. Aug. 15, 2016) (discussing how some states permit an "inference of reliance" in common law fraud claims while other states require "individual proof").  "Affirmatively

proving reliance is a very individualized inquiry, the kind that would predominate over other common questions in a class action.  By contrast, where the presumption of reliance applies, it does so generally and can therefore be resolved on a class-wide basis."  *Tershakovec*, 79 F.4th at 1307-08.  In *Tershakovec*, the Eleventh Circuit found that Washington, New York, and Tennessee do not permit a presumption of reliance for common law fraud claims, while California permits a presumption of reliance in certain circumstances.  *Id*. at 1313-15.  Plaintiffs' state law analysis does not identify whether each state permits a presumption of reliance or requires affirmative, individualized proof, *see* Docket No. 600-1 at 6-39, and plaintiffs' proposed subclasses do not account for this meaningful difference in state fraud laws.  *See Tershakovec*, 79 F.4th at 1307.

Second, as noted in defendants' state-by-state analysis, some states require a plaintiff to prove that her reliance on the misrepresentation was "reasonable" or "justifiable," while other states do not impose any reasonableness requirement.  Docket No. 590-2 at 4; *see also Castano*, 84 F.3d at 742 n.15.  Third, state fraud laws impose varying standards on whether a plaintiff has a "duty to investigate" if a representation is false.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig*., 299 F. Supp. 3d 430, 576-77 (S.D.N.Y. 2018) (discussing how some states require an absolute duty to investigate, whereas others only require the plaintiff to investigate if plaintiff is aware of facts indicating that the representation may be false).  Plaintiffs have not addressed how to manage these significant variations in fraud laws in their reply or the proposed subclasses.  Although "grouping, in general, may be a permissible approach to nationwide class action litigation," plaintiffs must "provide enough information or analysis to justify the certification of the [sub]classes."  *See Grandalski*, 767 F.3d at 183.

Plaintiffs have failed to account for the significant variations in states' fraud laws and have not met their burden of showing that the "variations can be effectively managed through creation of a small number of subclasses grouping the states that have similar legal doctrines." *See Sacred Heart Health Sys., Inc.*, 601 F.3d at 1180 (citation omitted); *see also Klay v. Humana, Inc.*, 382 F.3d 1241, 1261 (11th Cir. 2004) ("class certification is impossible where the fifty states truly establish a large number of different legal standards governing a particular claim"); 1 McLaughlin on Class Actions § 5:46 ("recent case law is legion holding that variances—and 'even nuances'— in the substantive law of the states precludes certification of nationwide or multi-state litigation classes alleging state law claims").[15]   As a result, the Court finds that plaintiffs have failed to establish the predominance element for the fraud claims in the nationwide class.

### c)  Aiding and Abetting Fraud

Defendants' state-by-state analysis highlights that some states do not recognize "aiding and abetting fraud" as a cause of action and other states simply assume that the

---

[15] The Court finds that plaintiffs' cited case certifying a nationwide fraud class action, *It's Just Lunch*, 300 F.R.D. at 136, is distinguishable.  There, the district court found that, "although states vary on whether they require proof of intent as an element in a fraud action[,] all states require proof of misrepresentation, materiality of misrepresentation and reliance."  *Id.* (internal quotations and citation omitted). However, that court conducted only a brief review of the fraud laws and failed to consider the significant differences regarding a presumption of reliance, whether reliance must be reasonable, and whether a plaintiff has a duty to investigate.  *See Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 466 (D.N.J. 2009) (finding prior cases certifying nationwide fraud claims unpersuasive because those courts "conclude[d] that multiple state laws can apply to fraud claims without any meaningful discussion of the difficulties created by variation among the applicable state laws").

cause of action might exist.  Docket No. 590-2 at 44.  Furthermore, defendants argue that some states require that a defendant must "knowingly and substantially assist" in the fraud, whereas other states require "substantial assistance or encouragement."  *Id*.

Plaintiffs argue that "thirty-eight states, D.C., and [the Virgin Islands] recognize an independent cause of action for aiding and abetting fraud, all of which require a primary violation, substantial assistance[,] and knowledge."  Docket No. 598 at 24.  If needed, plaintiffs propose two subclasses for the aiding and abetting claims.  Docket No. 600-1 at 5.  Group 1 consists of all states that have "adopted Section 876 of the Restatement (Second) of Torts for the elements of aiding and abetting."  *Id*.  Group 2 consists of states that require that "a defendant: (1) must have knowledge of the fraud; and (2) substantially assisted in the fraud."  *Id*.

Analyzing whether a primary violation occurred would require the Court to apply the substantive fraud laws of all fifty states.  The Court already found that plaintiffs failed to show that variations in the fraud laws could be effectively managed through the creation of a small number of subclasses.  Consequently, plaintiffs have not established the predominance element for the aiding and abetting fraud claims in the nationwide class.

In conclusion, the Court finds that the "variations in state law" for the nationwide class "swamp any common issues and defeat predominance."  *See Castano*, 84 F.3d at 741.  The Court therefore declines to evaluate the parties' arguments on whether

common factual issues predominate.  *See* Docket No. 557 at 21-24; Docket No. 590 at 4-22.[16]

### 3. *Predominance – Nine State Deceptive Practices Classes*

Plaintiffs assert the following claims for the nine State Deceptive Practices Classes:

- California State Class
  - Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200
  - False and Misleading Advertising, Cal. Bus. & Prof. Code. §§ 17500
  - Fraud/Fraudulent Concealment
  - Aiding and Abetting Fraud/Fraudulent Concealment
  - Breach of Implied Contract
  - Unjust Enrichment

- Colorado State Class
  - Violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101
  - Fraud/Fraudulent Concealment
  - Breach of Implied Contract
  - Unjust Enrichment

- Florida State Class
  - Violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201
  - Fraud/Fraudulent Concealment
  - Aiding and Abetting Fraud/Fraudulent Concealment

---

[16] However, the Court notes that defendants' argument, that questions of individual damages calculations will overwhelm questions common to the class, *see* Docket No. 590 at 20-22, is unpersuasive.  The Tenth Circuit has consistently held that "the fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification."  *Menocal*, 882 F.3d at 927 (quoting *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc*., 725 F.3d 1213, 1220 (10th Cir. 2013)); *see also Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 798 (10th Cir. 2019); 2 Newberg & Rubenstein on Class Actions § 4:54 (6th ed. 2023) ("courts in every circuit have uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations").  "Instead, material differences in damages determinations will only destroy predominance if those individualized issues will overwhelm . . . questions common to the class."  *Naylor Farms, Inc*., 923 F.3d at 798 (citation and internal quotations omitted).

- o   Breach of Implied Contract
- o   Unjust Enrichment

- Idaho State Class
  - o   Violation of the Idaho Consumer Protection Act, Idaho Civ. Code, § 480
  - o   Fraud/Fraudulent Concealment
  - o   Aiding and Abetting Fraud/Fraudulent Concealment
  - o   Breach of Implied Contract
  - o   Unjust Enrichment

- Illinois State Class
  - o   Violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. §§ 510/1
  - o   Fraud/Fraudulent Concealment
  - o   Aiding and Abetting Fraud/Fraudulent Concealment
  - o   Breach of Implied Contract
  - o   Unjust Enrichment

- Indiana State Class
  - o   Fraud/Fraudulent Concealment
  - o   Aiding and Abetting Fraud/Fraudulent Concealment
  - o   Breach of Implied Contract
  - o   Unjust Enrichment

- New Jersey State Class
  - o   Violation of the New Jersey Consumer Fraud Act, N.S.J.A. §§ 56:8-1
  - o   Fraud/Fraudulent Concealment
  - o   Aiding and Abetting Fraud/Fraudulent Concealment
  - o   Breach of Implied Contract
  - o   Unjust Enrichment

- New York State Class
  - o   Violation of New York Gen. Bus. Law. § 349
  - o   Fraud/Fraudulent Concealment
  - o   Aiding and Abetting Fraud/Fraudulent Concealment
  - o   Breach of Implied Contract
  - o   Unjust Enrichment

- Ohio State Class
  - o   Violation of the Ohio Deceptive Trade Practices Act, O.R.C. 4165.01
  - o   Fraud/Fraudulent Concealment
  - o   Breach of Implied Contract
  - o   Unjust Enrichment

*See* Docket No. 557-2 at 2-6.  As discussed previously, the common law claims are governed by the home-state law of the class members.  Plaintiffs therefore assert forty-three common law and statutory claims under the laws of nine different states.  *See id.*

Plaintiffs broadly argue that common evidence will be used to prove the fraud, unjust enrichment, and breach of implied contract claims, including evidence of HomeAdvisor's inadequate processes for verifying its leads and HomeAdvisor's brand promise statements.  *See* Docket No. 557 at 22-24.[17]  However, plaintiffs fail to identify the elements of their common law and statutory claims under the nine states' laws.  The predominance determination requires a "claim-specific analysis."  *Brayman*, 83 F.4th at 841.  A preliminary step of the predominance analysis is determining "the elements of Plaintiffs' claims."  *Sherman*, 84 F.4th at 1195; *see also Brayman*, 83 F.4th at 838 (discussing the need to "survey the elements" of the claims in order to determine which elements are subject to individualized or class-wide proof).  Plaintiffs' failure to identify the specific elements of the forty-three claims and identify which elements are subject to "class-wide proof" versus "individualized proof", *see Sherman*, 84 F.4th at 1195, is therefore fatal to plaintiffs' request for class certification.  It is not the Court's job to research the elements of forty-three laws when plaintiffs failed to undertake this analysis in their motion.  *See Ensey v. Ozzie's Pipeline Padder, Inc.*, 2010 WL 11523525, at *2 n.3 (D.N.M. Apr. 29, 2010) ("While it is certainly the Court's job to research carefully the legal issues properly presented by the parties, it is not the Court's function to do counsel's work for them"); *Flores v. Astrue*, 246 F. App'x 540, 543 (10th Cir. 2007)

---

[17] Plaintiffs do not discuss what common evidence would be used to prove the statutory claims under the various consumer protection statutes.

(unpublished) (declining to reach the merits of an argument when the party failed to cite any authority and "expect[ed] the court to do its research").

Ultimately, plaintiffs have the burden of proving the predominance element. *See Shook*, 386 F.3d at 968. Because plaintiffs failed to undertake a claim-specific analysis and identify the elements of the forty-three claims, the Court finds that plaintiffs have failed to establish the predominance element for the nine State Deceptive Practices Classes.

### 4. Superiority

The second prong of Rule 23(b)(3) requires a court to determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining superiority, the Court considers the following factors: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

Plaintiffs argue that a class action is superior to other methods for adjudicating the controversy given the large number of class members and the relatively small dollar value of their individual claims, which plaintiffs estimate to be $4,951 per class member. Docket No. 557 at 28 & n.74. Plaintiffs assert that a class action would promote consistency of adjudication and would conserve judicial resources. *Id*. at 28. Plaintiffs contend that this case "poses no particular manageability concerns" because the liability

turns on HomeAdvisor's conduct and plaintiffs already analyzed HomeAdvisor's lead data.  *Id*. at 29.  In their response, defendants appear to assert that variations in state law would also affect superiority.  *See* Docket No. 590 at 22 n.43.[18]

Several of the Rule 23(b)(3) factors weigh in favor of plaintiffs.  For example, the individual recovery of each class member is relatively small, so the class members have only a slight interest in individually controlling the prosecution of separate actions.  *See* Fed. R. Civ. P. 23(b)(3)(A).  Furthermore, neither party has introduced any evidence indicating that any class members have commenced other litigation against defendants. *See* Fed. R. Civ. P. 23(b)(3)(B).

However, the Court finds that a class action is not a superior method for resolving the claims of the Deceptive Practices Classes because plaintiffs have failed to show how the Court could manage a nationwide class, applying the laws of all fifty states, as well as nine state classes.  *See* Fed. R. Civ. P. 23(b)(3)(D).  "It is well settled that the application of multiple state laws can render a case unmanageable."  *In re*

---

[18] On April 27, 2023, plaintiffs filed a notice informing the Court that the FTC entered a final consent order against HomeAdvisor, resolving FTC's administrative complaint against HomeAdvisor.  Docket No. 617.  Defendants filed a letter responding to plaintiffs' notice.  Docket No. 618.  In the letter, defendants argue that the consent agreement between HomeAdvisor and the FTC "underscores why the class action that Plaintiffs seek to certify here is not, and has never been, 'superior to other available methods for fairly and efficiently adjudicating' these issues."  *Id*. at 2.  Defendants argue that other courts have held that administrative adjudications are superior alternatives when denying class certification.  *Id*.  The FTC filed the complaint against HomeAdvisor on March 11, 2022.  *See* Docket No. 557-15 at 18.  Defendants filed their response to the class certification motion on June 27, 2022.  Docket No. 590.  Defendants had the opportunity in their response to raise the FTC action as a viable alternative, but because defendants failed to do so, the Court deems this argument waived.  *See Standing Akimbo, Inc. v. United States*, No. 18-mc-00178-PAB, 2021 WL 3931224, at *9 (D. Colo. Sept. 2, 2021) ("[W]e do not accept a new argument by way of notice of supplemental authority notices, and arguments not raised in duly filed briefs are deemed waived." (quoting *Hooks v. Ward*, 184 F.3d 1206, 1233 n.25 (10th Cir. 1999))).

*Prempro*, 230 F.R.D. 555, 568 (E.D. Ark. 2005).[19]  For example, the Sixth Circuit has emphasized that, "[i]f more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action."  *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 948 (6th Cir. 2011) ("a single nationwide class is not manageable" if the claims "must be adjudicated under the law of so many jurisdictions" (citation omitted)).  Likewise, the Eleventh Circuit has expressed skepticism about a district court's ability to conduct a "single trial for eleven proposed state-law classes." *Tershakovec*, 79 F.4th at 1316 (remanding for the district court to "more clearly articulate a plan" for addressing the significant manageability challenges).

Plaintiffs have "provided no indication as to how the jury could be charged in some coherent manner relative to the[ir] proposed grouping[s]."  *See Grandalski*, 767 F.3d at 183; *see also Adams Pointe I, L.P. v. Tru-Flex Metal Hose Corp.*, 2021 WL 3612155, at *4 (3d Cir. Aug. 16, 2021) (finding that plaintiffs' patterned jury instructions "for the fifty states fail to show how a jury could be charged in some coherent manner" (citation and internal quotations omitted)); *In re Prempro*, 230 F.R.D. at 568 ("The absence of an adequate trial plan and proper jury instructions supports what Defendants have said all along—there is no way that the claims of these multi-state plaintiffs can be adequately addressed in a single class action trial"); *Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, 174 F.R.D. 332, 350 (D.N.J. 1997) ("despite plaintiffs'

---

[19] It appears that "[n]o federal court has ever tried an action that required the application of the law of all the states."  1 McLaughlin on Class Actions, § 5:46.

burden to provide an 'extensive analysis' of state law variations, [plaintiffs] have not explained how their multiple causes of action could be presented to a jury for resolution in a way that fairly represents the law of the fifty states while not overwhelming jurors with hundreds of interrogatories and a verdict form as large as an almanac"). Accordingly, the Court finds that a class action is not superior under Rule 23(b)(3) due to the "manageability problems presented by the [lack] of predominance and the presence of variations in state law."  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d at 579.

As a result, because plaintiffs have failed to establish the predominance and superiority elements, the Court denies plaintiffs' request to certify the Nationwide Deceptive Practices Class and the nine State Deceptive Practices Classes.

**F.  Class Counsel**

Plaintiffs seek to appoint CSKD as class counsel and S&H as local class counsel pursuant to Rule 23(g).  Docket No. 557 at 29.  Defendants argue that CSKD would be inadequate class counsel, but do not contest the adequacy of local counsel S&H.  *See* Docket No. 590 at 30.

When certifying a class, a court "must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).  In appointing class counsel, the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  Furthermore, Rule 23(g)(1)(B) states that the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."

The Court finds that the Rule 23(g)(1)(A) factors weigh in favor of appointing CSKD and S&H.  CSKD has over 30 years of experience litigating complex class actions.  Docket No. 557-11 at 25, ¶ 123.  CSKD and S&H have been involved in this case from the beginning.  *See* Docket No. 1 at 64-65.  CSKD and S&H have engaged in significant work investigating the potential claims in this action, drafting motions, analyzing HomeAdvisor's lead data, and retaining industry experts.  *See* Docket No. 557-11 at 19-24, ¶¶ 101-119.  The Court finds that counsels' knowledge of the applicable law, as exhibited in the case up to this point, weighs in favor of their appointment.  Finally, defendants identify no resource shortage that would compromise CSKD and S&H's vigorous advocacy.

Defendants urge the Court to consider the Special Master's sanctions order in assessing whether CSKD would adequately represent the class, *see* Docket No. 612 at 5-6, which appears to be an argument under Rule 23(g)(1)(B).  Specifically, defendants assert that CSKD would be inadequate because CSKD "violated a court order in secret dozens of times for nearly two years to fuel a separate FTC investigation of HomeAdvisor using its own 'Highly Confidential' discovery, and knowingly misrepresented the truth to the Master and Defendants to cover it up."  *Id*. at 1. Defendants argue that the Special Master's sanctions order demonstrates that CSKD intentionally violated the protective order and engaged in unethical conduct.  *Id*. at 5-6. Defendants assert that unethical conduct is highly relevant to determining the adequacy

of class counsel, even when the unethical conduct is not prejudicial to the class.  *Id*. at 5 (citing *Reliable Money Ord., Inc. v. McKnight Sales Co*., *Inc*., 704 F.3d 489, 495 (7th Cir. 2013); *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 919 (7th Cir. 2011); *In re Santa Fe Nat. Tobacco Co. Litig*., 2018 WL 4200315, at *4). Defendants contend that courts have found other counsel inadequate based on similar misconduct.  *Id*. at 6. (citing *Crissen v. Gupta*, 2014 WL 4129586, at *9 (S.D. Ind. Aug. 19, 2014) (collecting cases)).

Plaintiffs respond that the Special Master's sanctions order "does not compel a finding that CSKD cannot adequately represent the classes" given that CSKD clearly meets the Rule 23(g) factors.  Docket No. 614 at 5-6.  Plaintiffs explain that, while "the Master ultimately concluded that [CSKD's] communications were an improper 'use' of [confidential information] in violation of the [protective order], CSKD believed in good faith that it was not."  *Id*. at 3.  Plaintiffs argue that none of the cases cited by defendants are based on analogous factual situations.  *Id*. at 2-3 n.4, 4-5.  Additionally, plaintiffs contend that the removal of CSKD would be a disproportionate sanction, particularly when the Special Master's order already imposed fees on CSKD for violating the protective order.  *Id*. at 5-6.

The Tenth Circuit has not discussed how an attorney's misconduct impacts the Rule 23(g) analysis.  *See In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. & Prod. Liab. Litig*., 2018 WL 4200315, at *17.  However, other courts have held that ethical violations or other misconduct are highly pertinent to whether the attorney will adequately represent the class.  *See, e.g., id*.; *Reliable Money Ord*., 704 F.3d at 498; *Ashford Gear LLC*, 662 F.3d at 918; *Salinas v. Cornwell Quality Tools Co*., 635 F. Supp.

3d 954, 978 (C.D. Cal. 2022).  In *Reliable Money Ord*., the Seventh Circuit explained

that not all attorney misconduct calls into question the adequacy of class counsel, but

misconduct by class counsel that creates a "serious doubt" that counsel will "represent

the class loyally requires denial of class certification."  704 F.3d at 495 (quoting *Ashford*

*Gear LLC*, 662 F.3d at 919).  "[M]isconduct that prejudices the class or creates a direct

conflict between counsel and the class requires such denial under [the] serious doubt

standard."  *Id*. at 498.  However, the Seventh Circuit explained that, "unethical conduct,

not necessarily prejudicial to the class, nevertheless raises a 'serious doubt' about the

adequacy of class counsel when the misconduct jeopardizes the court's ability to reach

a just and proper outcome in the case."  *Id*. at 499.  The Court agrees with the Seventh

Circuit's serious doubt test and will apply it under Rule 23(g)(1)(B).

  The Court finds that CSKD's discovery violations in this case, while troubling, do

not raise "serious doubt" about the adequacy of CSKD to loyally represent the class or

that the misconduct will jeopardize the Court's ability to reach a just outcome in this

case.  *See Reliable Money Ord.,* 704 F.3d at 498-99.  CSKD's repeated violations of the

protective order and its misleading statements to opposing counsel and the Special

Master regarding the FTC communications are concerning.  Class counsel has a duty to

"fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(4).

Although CSKD was perhaps ostensibly trying to help the class, a willingness to violate

Court orders does not constitute appropriate zealous advocacy and risks harming the

best interests of the class members.  Nevertheless, the Court finds that these particular

discovery violations do not raise "serious doubt" regarding CSKD's ability to vigorously

represent the class because the violations did not "prejudice the class or create a

conflict of interest" with class members.  *See Reliable Money Ord.,* 704 F.3d at 500.

Furthermore, the Court finds that the discovery violations will not jeopardize the Court's

ability to reach a just outcome in this case.  The Special Master specifically found that

"the negative impact of [CSKD's] conduct did not touch on any determination on the

merits in the present matter and has not interfered with the HA Defendants' ability to

prepare a full and fair defense in this case."  Docket No. 608 at 47.  Additionally, in April

2023, the FTC and HomeAdvisor entered into a consent agreement, settling the FTC's

case against HomeAdvisor.  Docket No. 617-1 at 2.  Accordingly, it does not seem likely

that CSKD's past communications with the FTC, which form the basis for the protective

order violations, will recur in the future.  Regarding CSKD's misstatements to opposing

counsel and the Special Master about the FTC communications, the Court notes that

the Special Master did not explicitly find that CSKD's statements were intentionally

misleading or were deliberately false.  *See* Docket No. 608 at 28, ¶ 4 (discussing how

CSKD's statements "were at best confusing and at worst intentionally misleading").

Defendants have not raised any other instances in this case where CSKD deliberately

misled the Court on any facts related to the merits of the case.  *See Reliable Money

Ord.,* 704 F.3d at 500 (noting that presentation of false evidence related to the merits of

the case could compromise the integrity of judicial proceedings).  As a result, the Court

finds that CSKD's discovery violations in this case do not raise "serious doubt" that the

misconduct will jeopardize the Court's ability to reach a just outcome in this case.

Moreover, defendants' cited cases are distinguishable from CSKD's misconduct

in this case.  *See Crissen,* 2014 WL 4129586, at *6-10 (finding that class counsel was

inadequate based on the attorney's inexperience with class actions; the attorney's

financial conflicts of interest with class members; and the attorney's pattern of misconduct in the case, including violating the clawback provision, reviewing defendant's confidential documents, and repeatedly misrepresenting facts to the court); *Viveros v. VPP Grp., LLC*, 2013 WL 3733388, at *9-11 (W.D. Wis. July 15, 2013) (raising concerns about the adequacy of proposed class counsel where counsel repeatedly drafted "low quality" briefs; showed little knowledge of the substantive law; failed to obtain consent forms from several named plaintiffs, which potentially "caus[ed] the named plaintiffs to forfeit a substantial amount of damages;" had a history of not identifying appropriate methods for managing class actions; had a disciplinary history with the state Supreme Court; and failed to show that the firm had sufficient resources to devote to the case); *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 159-60 (S.D.N.Y. 2010) (denying appointment of class counsel because the attorneys knew the plaintiff testified falsely, made "no effort to correct the record during his re-direct examination," and likely encouraged or counseled the false testimony); *Bodner v. Oreck Direct, LLC*, 2007 WL 1223777, at *3 (N.D. Cal. Apr. 25, 2007) (denying class certification where "plaintiff's counsel constructed this lawsuit before it had a plaintiff"); *In re Organogenesis Sec. Litig.*, 241 F.R.D. 397, 408-10 (D. Mass. 2007) (holding that the law firm did not meet its burden of showing adequacy where the two leads partners were indicted by a federal jury for fraud and obstruction of justice for paying millions of dollars in illegal kickbacks to lead plaintiffs).

Aside from the discovery misconduct in this case, defendants raise no other examples of misconduct in CSKD's thirty-year history of representing litigants in class actions.  The Court reiterates that CSKD's discovery violations are troubling.  However,

on balance, the Court finds that the Special Master's sanctions order, imposing substantial attorneys' fees and the Special Master's fees on CSKD,[20] is a sufficient sanction for this misconduct and will deter any future misconduct.  *See* Docket No. 608 at 48 ("the interests of justice will be amply served by imposing what will be a not-insubstantial amount of fees and costs on [CSKD]; the imposition of evidence preclusion would be overkill under the circumstances.").  Precluding CSKD from serving as class counsel would be too severe of a sanction in this case.  *See Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1324 (11th Cir. 2008) ("In the event that class counsel does act improperly, the ordinary remedy is disciplinary action against the lawyer and remedial notice to class members, not denial of class certification." (internal alterations, quotations, and citation omitted)).  Nevertheless, any further attempts by CSKD to be less than forthright with the Court will result in severe sanctions.

In conclusion, the Court finds that plaintiffs have satisfied the requirements of Rule 23(g) and demonstrated that CSKD and S&H will fairly and adequately represent the interests of the class.  The Court, therefore, appoints CSKD as class counsel and S&H as local class counsel.

## IV.    CONCLUSION

It is therefore

**ORDERED** that Plaintiffs' Motion for Class Certification and Appointment of Class Counsel Pursuant to Fed. R. Civ. P. 23 [Docket No. 557] is **GRANTED in part** and **DENIED in part** as reflected in this order.  It is further

---

[20] The Court notes that if the parties reach a settlement in this case, CSKD will not be permitted to request reimbursement for the fees imposed in the Special Master's order.

**ORDERED** that the Court certifies a Nationwide Misappropriation Class, defined in Docket No. 557-2 at 7 as

> All persons and entities who are/were Traditional SPs since July 13, 2015, (a) who were charged for a HomeAdvisor membership (including for HomeAdvisor's Pro ConnectTM, Total ConnectTM, and/or for the predecessor or subsequent HomeAdvisor home service professional membership programs) within the 50 United States or the District of Columbia, Puerto Rico or the U.S. Virgin Islands, (b) who terminate or terminated their home service professional membership with HomeAdvisor, (c) for whom HomeAdvisor does not have express assent to use their names, likeness, or trademark on HomeAdvisor's website or any HomeAdvisor affiliate website.

It is further

**ORDERED** that plaintiffs Kourtney Ervine, Iva Haukenes, Brad McHenry, and Linda McHenry are appointed class representatives for the Nationwide Misappropriation Class.[21]  It is further

**ORDERED** that the Court certifies a Colorado Misappropriation Class, defined in Docket No. 557-2 at 7 as

> All persons and entities who are/were Traditional SPs since July 13, 2015, (a) who were charged for a HomeAdvisor membership (including for HomeAdvisor's Pro ConnectTM, Total ConnectTM, and/or for the predecessor or subsequent HomeAdvisor home service professional membership programs) within the state of Colorado, (b) who terminate or terminated their home service professional membership with HomeAdvisor, (c) for whom HomeAdvisor does not have express assent to use their names, likeness, or trademark on HomeAdvisor's website or any HomeAdvisor affiliate website.

It is further

---

[21] Plaintiffs' exhibit states that "All Named Plaintiffs" seek to be named representatives for the Nationwide Misappropriation Class.  Docket No. 557-2 at 7.  The Court presumes this is a typographical error because the complaint states that the Misappropriation Plaintiffs are "Ervine, Hass, Haukenes, and the McHenry Plaintiffs." *See* Docket No. 449 at 26, ¶ 20.

**ORDERED** that plaintiffs Brad McHenry and Linda McHenry are appointed class representatives for the Colorado Misappropriation Class.  It is further

**ORDERED** that the Court certifies a Florida Misappropriation Class, defined in Docket No. 557-2 at 8 as

> All persons and entities who are/were Traditional SPs since July 13, 2014, (a) who were charged for a HomeAdvisor membership (including for HomeAdvisor's Pro ConnectTM, Total ConnectTM, and/or for the predecessor or subsequent HomeAdvisor home service professional membership programs) within the state of Florida, (b) who terminate or terminated their home service professional membership with HomeAdvisor, (c) for whom HomeAdvisor does not have express assent to use their names, likeness, or trademark on HomeAdvisor's website or any HomeAdvisor affiliate website.

It is further

**ORDERED** that plaintiff Kourtney Ervine is appointed class representative for the Florida Misappropriation Class.  It is further

**ORDERED** that the Court certifies an Idaho Misappropriation Class, defined in Docket No. 557-2 at 8 as

> All persons and entities who are/were Traditional SPs since July 13, 2016, (a) who were charged for a HomeAdvisor membership (including for HomeAdvisor's Pro ConnectTM, Total ConnectTM, and/or for the predecessor or subsequent HomeAdvisor home service professional membership programs) within the state of Idaho, (b) who terminate or terminated their home service professional membership with HomeAdvisor, (c) for whom HomeAdvisor does not have express assent to use their names, likeness, or trademark on HomeAdvisor's website or any HomeAdvisor affiliate website.

It is further

**ORDERED** that plaintiff Iva Haukenes is appointed class representative for the Idaho Misappropriation Class.  It is further

**ORDERED** that the Misappropriation Classes as certified meet the requirements of Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(2).  It is further

**ORDERED** that Chimicles Schwartz Kriner and Donaldson-Smith ("CSKD") and Sherman and Howard ("S&H") are appointed class counsel.  It is further

**ORDERED** that the Court **DENIES** plaintiffs' request to certify a Nationwide Deceptive Practices Class, a California Deceptive Practices Class, a Colorado Deceptive Practices Class, a Florida Deceptive Practices Class, an Idaho Deceptive Practices Class, an Illinois Deceptive Practices Class, an Indiana Deceptive Practices Class, a New Jersey Deceptive Practices Class, a New York Deceptive Practices Class, and an Ohio Deceptive Practices Class.  It is further

**ORDERED** that, within 30 days of the entry of this order, the parties shall confer and submit to the Court a joint status report outlining the parties' positions as to how notice should be directed to class members.  Each side should submit a proposed plan to provide notice and the proposed text of such notice.

DATED January 10, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge