IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 16-cv-01849-PAB-KAS
(Consolidated with Civil Action No. 18-cv-01802-PAB-KAS)

In re HOMEADVISOR, INC. LITIGATION
_____

**ORDER**
_____

This matter is before the Court on HomeAdvisor, Inc.'s Motion for Summary Judgment [Docket No. 650] and The Misappropriation Classes' Motion for Summary Judgment [Docket No. 649]. Plaintiffs Airquip, Inc., Kelly DaSilva, Nicole Gray, Charles Costello, Bruce Filipiak, Josh Seldner, Anthony Baumann, Kourtney Ervine, Hans Hass,[1] Iva Haukenes, Brad and Linda McHenry, and Lisa LaPlaca (collectively, the "plaintiffs") brought this class action suit on behalf of themselves and proposed classes of similarly situated home service providers against defendants HomeAdvisor, Inc. ("HomeAdvisor" or "HA"), IAC/InterActiveCorp ("IAC"), ANGI Homeservices, Inc. ("ANGI"), and CraftJack, Inc. ("CraftJack") (collectively the "defendants"). Docket No. 449 at 13. The Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

I.   **BACKGROUND**

A.   **Procedural History**

On January 10, 2024, the Court granted in part and denied in part plaintiffs' motion for class certification. Docket No. 635. The Court denied plaintiffs' request to certify a nationwide and nine state Deceptive Practices Classes. *Id.* at 58. However,

_____

[1] In a recent filing, plaintiffs state that Mr. Hass passed away in 2023. Docket No. 617 at 1 n.1.

the Court certified a Nationwide Misappropriation Class,[2] a Colorado Misappropriation Class,[3] a Florida Misappropriation Class,[4] and an Idaho Misappropriation Class.[5] *Id*. at 56-57.

---

[2] The certified Nationwide Misappropriation Class is defined as

All persons and entities who are/were Traditional SPs since July 13, 2015, (a) who were charged for a HomeAdvisor membership (including for HomeAdvisor's Pro ConnectTM, Total ConnectTM, and/or for the predecessor or subsequent HomeAdvisor home service professional membership programs) within the 50 United States or the District of Columbia, Puerto Rico or the U.S. Virgin Islands, (b) who terminate or terminated their home service professional membership with HomeAdvisor, (c) for whom HomeAdvisor does not have express assent to use their names, likeness, or trademark on HomeAdvisor's website or any HomeAdvisor affiliate website.

Docket No. 635 at 56.

[3] The certified Colorado Misappropriation Class is defined as

All persons and entities who are/were Traditional SPs since July 13, 2015, (a) who were charged for a HomeAdvisor membership (including for HomeAdvisor's Pro ConnectTM, Total ConnectTM, and/or for the predecessor or subsequent HomeAdvisor home service professional membership programs) within the state of Colorado, (b) who terminate or terminated their home service professional membership with HomeAdvisor, (c) for whom HomeAdvisor does not have express assent to use their names, likeness, or trademark on HomeAdvisor's website or any HomeAdvisor affiliate website.

Docket No. 635 at 56.

[4] The certified Florida Misappropriation Class is defined as

All persons and entities who are/were Traditional SPs since July 13, 2014, (a) who were charged for a HomeAdvisor membership (including for HomeAdvisor's Pro ConnectTM, Total ConnectTM, and/or for the predecessor or subsequent HomeAdvisor home service professional membership programs) within the state of Florida, (b) who terminate or terminated their home service professional membership with HomeAdvisor, (c) for whom HomeAdvisor does not have express assent to use their names, likeness, or trademark on HomeAdvisor's website or any HomeAdvisor affiliate website.

Docket No. 635 at 57.

The Nationwide Misappropriation Class – represented by class representatives Kourtney Ervine, Iva Haukenes, Brad McHenry, and Linda McHenry – asserts the following claims against HomeAdvisor: (1) false association under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) (Count XLIX); and (2) false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Count L).  Docket No. 449 at 282-86, ¶¶ 973-990; *see also* Docket No. 635 at 56.  The Colorado Misappropriation Class – represented by class representatives Brad McHenry and Linda McHenry – asserts the following claims against HomeAdvisor: (1) violation of the Colorado Consumer Protection Act (Count LII); and (2) unfair competition under Colorado common law (Count LIII).  Docket No. 449 at 288-292, ¶¶ 997-1014; *see also* Docket No. 635 at 57.  The Florida Misappropriation Class – represented by class representative Kourtney Ervine – asserts the following claims against HomeAdvisor: (1) violation of the Florida Deceptive and Unfair Trade Practices Act (Count LIV); and (2) unfair competition under Florida common law (Count LV).  Docket No. 449 at 293-95, ¶¶ 1015-1027; *see also* Docket No. 635 at 57.  The Idaho Misappropriation Class – represented by Iva Haukenes – asserts a claim under the Idaho Consumer Protection Act (Count LVI) against

---

[5] The certified Idaho Misappropriation Class is defined as

All persons and entities who are/were Traditional SPs since July 13, 2016, (a) who were charged for a HomeAdvisor membership (including for HomeAdvisor's Pro ConnectTM, Total ConnectTM, and/or for the predecessor or subsequent HomeAdvisor home service professional membership programs) within the state of Idaho, (b) who terminate or terminated their home service professional membership with HomeAdvisor, (c) for whom HomeAdvisor does not have express assent to use their names, likeness, or trademark on HomeAdvisor's website or any HomeAdvisor affiliate website.

Docket No. 635 at 57.

HomeAdvisor.  Docket No. 449 at 295-98, ¶¶ 1028-1036; *see also* Docket No. 635 at 5. Finally, for the both the nationwide and state classes, plaintiffs request a declaratory judgment under 28 U.S.C. § 2201., *et seq*. (Count LI).  Docket No. 449 at 286-288, ¶¶ 991-996.

On February 26, 2024, HomeAdvisor filed a motion seeking summary judgment on the claims of the certified classes.  Docket No. 650.  Plaintiffs filed a response, Docket No. 657, and HomeAdvisor filed a reply.  Docket No. 668.  On February 26, 2024, plaintiffs filed a motion seeking summary judgment on the claims of the certified classes.  Docket No. 649.  HomeAdvisor filed a response, Docket No. 662, and plaintiffs filed a reply.  Docket No. 667.

### B. <u>Factual Background</u>[6]

HomeAdvisor sells annual memberships to home service providers ("SPs"), which include an online member profile and access to a pay-per-lead marketing service. Docket No. 650 at 2, ¶ 1.  SPs pay for the annual membership at the time of enrollment and are charged an additional fee for each lead at the time of receipt.  *Id*., ¶ 3. HomeAdvisor uses its website to generate leads for SPs for either residential or commercial work.  Docket No. 657 at 12, ¶ 1.

#### 1.  *HomeAdvisor's Terms & Conditions and the Enrollment Process*

HomeAdvisor's Terms and Conditions ("T&Cs") state that "[t]his Agreement [ ] governs [the SP's] relationship with" HomeAdvisor.  *Id*. at 15, ¶ 17.[7]  HomeAdvisor

---

[6] The following facts are undisputed unless otherwise indicated.

[7] In the introduction section of their motion, plaintiffs state that the T&Cs, since at least March 2016, have included a licensing provision granting HomeAdvisor "a perpetual, irrevocable, non-exclusive . . . license to use . . . [the SPs'] Content on the

places the T&Cs on the "Legal Center" page of HomeAdvisor.com.  *Id*., ¶ 16.  Before

2024, HomeAdvisor enrolled SPs via a telephonic enrollment process.  Docket No. 649

at 18, ¶ 12; Docket No. 662 at 6, ¶ 12.  HomeAdvisor did not recite the content of the

T&Cs to SPs during the enrollment calls and did not provide a copy of the T&Cs to SPs.

Docket No. 649 at 18, ¶¶ 13-14.[8]  Class representatives Brad and Linda McHenry,

Kourtney Ervine, and Iva Haukenes testified that they never saw HomeAdvisor's T&Cs

before enrolling with HomeAdvisor.  Docket No. 650 at 9, ¶ 48.

     HomeAdvisor conducts background screening of SPs prior to enrollment, but

HomeAdvisor does not screen corporate accounts.  *Id*. at 2, ¶ 2; Docket No. 657 at 5-6,

13, ¶¶ 2, 5; Docket No. 668 at 5, ¶ 5.[9]

---

[HomeAdvisor] Website."  Docket No. 649 at 10-11 (citing Docket No. 649-19).  Plaintiffs did not include this fact in the statement of undisputed facts section of their motion.  For the reasons discussed in Section III.A. of this order, the Court declines to consider this evidence as an undisputed fact.

   [8] HomeAdvisor's response to these proffered facts states, "Denied.  There is no evidence in the record of what was said and disclosed during each enrollment process for hundreds of thousands of SPs over a ten-year period, during which the T&Cs and the enrollment process varied."  Docket No. 662 at 6, ¶ 13 (citing Docket No. 649-15 at 4); *see also id*., ¶ 14 ("Denied, on the same basis as provided in response to ¶ 13"). HomeAdvisor's cited evidence does not support its denial.  *See* Docket No. 649-15 at 4. Accordingly, the Court deems these facts undisputed.

   [9] HomeAdvisor's proffered fact asserts that SPs must "meet certain background pre-screening criteria" prior to enrolling as a member of HomeAdvisor.  Docket No. 650 at 2, ¶ 2.  Plaintiffs respond that HomeAdvisor does not "prescreen all SPs" because it does not screen the "corporate accounts" and does not screen every employee of the SPs.  Docket No. 657 at 5-6, ¶ 2 & n.6.  In its reply, HomeAdvisor admits that it does not prescreen corporate accounts.  Docket No. 668 at 5, ¶ 5.  The Court finds that the parties do not dispute that HomeAdvisor screens SPs as a business entity prior to enrollment, but does not screen the corporate accounts.  In the briefing, the parties do not clearly explain the difference between corporate accounts and other SPs.  However, HomeAdvisor's T&Cs state that corporate accounts are "larger national" entities. Docket No. 657-3 at 5.  The Court therefore assumes, and the parties do not seem to dispute, that corporate accounts are larger national companies, while most other SPs are small businesses.

### 2. Online Member Profiles

When enrolling with HomeAdvisor, the SP creates an online member profile that is placed in HomeAdvisor's directory.  Docket No. 650 at 2, ¶ 5.  The online member profile describes the SP's business, displays ratings and reviews for the SP, and contains a "Get a Quote" button, as illustrated below for SP "Glass Act Window Cleaning:"



*Id*. at 3, ¶¶ 6-7.  If a homeowner clicks "Get a Quote," she is directed to a "Request a Quote" contact form, as illustrated below for SP "Bergen Certified Inspection"



*Id.*, ¶ 7.  When using the "Request a Quote" form, if a homeowner enters a zip code that matches the SP's service area, the information in the form is sent as a service request directly to the SP's email address.  *Id.* at 3-4, ¶ 8.[10]  HomeAdvisor does not charge SPs for service requests sent via the "Request a Quote" form and those requests are sent only to the selected SP.  *Id.* at 4, ¶ 9.[11]

SPs have the option to cancel their receipt of leads, their one-year memberships, or both.  *Id.*, ¶ 10; Docket No. 657 at 6, ¶ 10.[12]  If an SP cancels her lead service before

---

[10] Plaintiffs' response to this fact states, "Deny.  *See* Pltfs Resp. to HA UMF ¶ 4." Docket No. 657 at 6, ¶ 8.  Plaintiffs' denial at paragraph 4 states that HomeAdvisor "enters the service area zip codes from where leads will be sent to the SP and the zip codes can be altered by HA at any time."  *Id.*, ¶ 4 (citing Docket No. 657-1 at 11, ¶ 24; Docket No. 657-9).  Plaintiffs' response does not dispute HomeAdvisor's proffered fact and therefore the Court deems this fact undisputed.

[11] Plaintiffs' response to this fact states, "Deny.  *See* Pltfs Resp. to HA UMF ¶ 4." Docket No. 657 at 6, ¶ 9.  Plaintiffs' response does not dispute HomeAdvisor's proffered fact and therefore the Court deems this fact undisputed.

[12] Plaintiffs admit that SPs have the option to cancel their memberships and receipt of leads, but assert that HomeAdvisor "imposes actual, significant impediments in handling such requests from SPs, and HA does not consistently acknowledge or honor the SPs' cancellation requests."  Docket No. 657 at 6, ¶ 10.

the one-year membership expires, HomeAdvisor maintains the online member profile that the SP paid for through the end of the one-year membership and displays the SP's direct contact information on the profile.  Docket No. 650 at 4, ¶ 11.  When an SP requests cancellation of her membership or leads, HomeAdvisor does not ask the SP if she wants her content removed from HomeAdvisor's website or if she consents to HomeAdvisor using the content.  Docket No. 657 at 14, ¶ 11.  Rather, HomeAdvisor assumes that an SP who paid for an annual membership wants her member profile page to remain online for the full year.  Docket No. 649 at 16, ¶ 5.

After the expiration of an SP's one-year membership, HomeAdvisor's policy is to remove the SP's online member profile, but HomeAdvisor may continue to display a "non-member listing" for that former SP in HomeAdvisor's directory.  Docket No. 650 at 4, ¶ 13.[13]  The non-member listing identifies the former SP as "out of network" and includes the SP's business name, direct contact information, and reviews, as illustrated below for former SP "Advance, Inc."



*Id*., ¶ 14.  The non-member listing also states "Let's find you the best HomeAdvisor screened and approved professionals," and includes a "Find Other Pros" link which

---

[13] Plaintiffs deny this fact in part, arguing that HomeAdvisor continued to display the online member profiles of the McHenrys, Ms. Ervine, and Ms. Haukenes more than a year after their termination dates.  Docket No. 657 at 7, ¶ 13.

directs the homeowner to submit a service request that HomeAdvisor can then sell as a lead to another SP.  Docket No. 649 at 16, ¶ 3.

### 3. *Class Representatives*

Plaintiffs Brad and Linda McHenry operate the business B&B Carpentry, which once offered home remodeling services in the Denver, Colorado area.  Docket No. 650 at 5, ¶ 16.  The McHenrys enrolled twice in HomeAdvisor, on March 31, 2016 and June 26, 2017.  *Id*., ¶ 17.  The McHenrys cancelled their HomeAdvisor membership on July 6, 2017.  *Id*.; Docket No. 657 at 8, ¶ 17.  To date, the McHenrys continue to operate B&B Carpentry.  Docket No. 657 at 12, ¶ 2.

Iva Haukenes and her husband operated the business Bergen Certified Inspections, which performed home inspections in the Coeur d'Alene, Idaho area.  Docket No. 650 at 5, ¶ 18.  Ms. Haukenes enrolled in HomeAdvisor on February 18, 2017 and cancelled her membership on March 14, 2017.  *Id*., ¶ 19; Docket No. 657 at 8, ¶ 19.  In 2019, Ms. Haukenes dissolved Bergen Certified Inspections.  Docket No. 650 at 8, ¶ 44.

Kourtney Ervine and her husband operated the business Glass Act Window Cleaning, which performed window cleaning services in the Palm Beach County, Florida area.  *Id*. at 5, ¶ 20.  Ms. Ervine enrolled in HomeAdvisor in August 2016 and cancelled her membership on August 23, 2017.  *Id*., ¶ 21; Docket No. 657 at 8, ¶ 21.  In 2020, Ms. Ervine sold Glass Act Window Cleaning and started a different business, a Kava bar, in Georgia.  Docket No. 650 at 8, ¶ 45.

### 4.  Class Representatives' Profile Pages

HomeAdvisor continued to display the online member profiles of the McHenrys, Ms. Haukenes, and Ms. Ervine in HomeAdvisor's directory until approximately October 30, 2018.  *Id*. at 6, ¶¶ 23, 25, 28-29.  The McHenrys, Ms. Haukenes, and Ms. Ervine did not request to have their online member profiles removed from HomeAdvisor's directory before filing this lawsuit.  *Id*. at 5, ¶ 22.

From July 6, 2017 to October 30, 2018, if a consumer clicked the "Get a Quote" button on the McHenrys' online member profile page and entered the zip code "80021" in the contact form, the following statement would appear: "B&B Carpentry does not provide service to 80021."  *Id*. at 6, ¶ 24.  From February 2018 to October 30, 2018, HomeAdvisor displayed an incorrect business telephone number on Ms. Haukenes' profile page.  *Id*., ¶ 27.  From February 2018 to October 30, 2018, the following message also appeared on Ms. Haukenes' profile page: "Please Note: This business is not a screened and approved member of HomeAdvisor."  *Id*., ¶ 26.  That same message appeared on the profile pages of other former SPs until October 30, 2018.  Docket No. 649 at 17, ¶ 6.  From approximately August 2017 to October 30, 2018, a search for Ms. Ervine's profile page would resolve to a webpage that displayed the following message: "The page you are looking for is no longer available.  Follow the links below to be matched to top-rated pros for your project."  Docket No. 650 at 6, ¶ 29.

In October 2018, HomeAdvisor investigated the four errors described above and took steps to remediate them.  *Id*. at 7, ¶ 30.[14]  Regarding the McHenrys' complaint,

_____

[14] Plaintiffs' response to this fact states, "Deny.  HA did not remediate Plaintiffs' allegations in its Preliminary Injunction Motion.  HA's purported remediations did not include: (a) removing all former SPs' Content and (b) implementing a process by which

HomeAdvisor recoded the "Get a Quote" pathway system-wide to ensure that zip codes were not inadvertently removed from any SP's profile after cancelling "lead service." *Id*., ¶ 32.  HomeAdvisor rewrote the alert that appears when a homeowner enters a zip code outside an SP's specified geographic region to read: "[SP business name] is not currently accepting service requests from HomeAdvisor in [zip code]." *Id*.  Regarding the "not screened" alert on Ms. Haukenes' page, HomeAdvisor recoded the alert system-wide to read: "Please Note: This business is not a current member of the HomeAdvisor network." *Id*., ¶ 35.[15]  HomeAdvisor investigated the incorrect phone number on Ms. Haukenes' page and confirmed that this error was an anomaly that did not affect other SPs' profile pages. *Id*. at 7-8, ¶ 37.  Furthermore, HomeAdvisor determined that the "no longer available" page on Ms. Ervine's page was not intended to appear in search results on search engines. *Id*. at 8, ¶ 39.  HomeAdvisor recoded all "no longer available" pages system-wide to send a signal to search engines that the pages do not exist and confirmed that these pages now show "404" error signals only. *Id*., ¶ 40.  On October 30, 2018, HomeAdvisor removed the member profiles of the McHenrys, Ms. Haukenes, and Ms. Ervine from HomeAdvisor's directory. *Id*. at 7-8, ¶¶ 33, 38, 41.

---

HA would seek affirmative assent from the SPs to continue to use their Content after termination."  Docket No. 657 at 9, ¶ 30.  This denial is unresponsive to HomeAdvisor's proffered fact and the Court therefore deems the fact admitted.

[15] Plaintiffs' response to this fact states, "Deny, except Admit that such condition existed on November 2, 2018, the date of the Declaration on which HA relies."  Docket No. 657 at 10, ¶ 35.  Plaintiffs cite no evidence to support their denial of HomeAdvisor's proffered fact. *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.iv ("Any denial shall be accompanied by a brief factual explanation of the reason(s) for the denial and a **specific reference** to material in the record supporting the denial.").  Accordingly, the Court deems this fact admitted.

There is no evidence in the record that any consumer saw the alert – "[SP business name] does not provide service to [zip code]" – on the McHenrys' profile page or the profile page of any other former SP.  Docket No. 662 at 7, ¶ 18.[16]  Plaintiffs did not submit any consumer surveys identifying any evidence of actual confusion arising from the display of their information on HomeAdvisor's website.  Docket No. 650 at 10, ¶ 52.

## II.    LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is

---

[16] Plaintiffs' response to this fact states,

> Denied.  HA charges SPs membership fees to create the SPs' profiles that are placed on HA's website to which HA is purportedly driving customer traffic.  DS Decl. Ex. 24 at ¶ 4.  Also, HA admits having observed traffic going to the profile pages.  *Id.* at ¶ 27 (HA noted traffic going to Plaintiffs' pages "after these businesses requested that we cancel their memberships.").  *See* RD ¶¶ 2, 11 (Over 155 million external links direct traffic to HomeAdvisor.com).  *See* Pltfs UMF ¶ 1-5.

Docket No. 667 at 3, ¶ 18.  Plaintiffs' response and cited exhibits do not provide any evidence suggesting that any consumer saw the specific zip code alert on the McHenrys' profile page or the profile pages of other SPs.  *See* Docket No. 649-25 at 3-4, 16, ¶¶ 4, 27; Docket No. 667-1 at 1-2, 8-9, ¶¶ 2, 11.  Accordingly, the Court deems this fact undisputed.

"genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.  "Conversely, if the moving party has the burden of proof [at trial], a more stringent summary judgment standard applies."  *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).  The "moving party must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case."  *Id*.

When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Bausman*, 252 F.3d at 1115.  Cross-motions for summary judgment must be viewed separately, and the denial of one

does not necessitate the granting of the other.  *United States v. Supreme Court of N.M.*, 839 F.3d 888, 906-07 (10th Cir. 2016) (citations omitted).

### III.   ANALYSIS

#### A.  Preliminary Matters

##### 1.  Summary Judgment Practice Standards

As a preliminary matter, both parties have improperly raised facts throughout their summary judgment motions in violation of this Court's Practice Standards.  The Practice Standards on summary judgment motions state that the movant, in a section of the brief entitled "Statement of Undisputed Material Facts," must

> set forth in simple, declarative sentences, **separately numbered and paragraphed**, each material fact which the movant believes is not in dispute and which supports movant's claim that movant is entitled to judgment as a matter of law. . . .  Each separately numbered and paragraphed fact **must** be accompanied by a specific reference to material in the record which establishes that fact.

Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.i-ii.  The Practice Standards provide that, in a section of the brief entitled, "Response to Statement of Undisputed Facts," the nonmovant must "admit or deny" each asserted material fact set forth by the movant and "[a]ny denial shall be accompanied by a brief factual explanation of the reason(s) for the denial and a specific reference to material in the record supporting the denial."  *Id.*, § III.F.3.b.iv. (emphasis omitted).

Plaintiffs' motion for summary judgment includes a 15-page introduction section, citing numerous facts that were not included in their statement of undisputed material facts section.  *See* Docket No. 649 at 1-15.  Likewise, HomeAdvisor's motion cites numerous facts in the analysis section and throughout footnotes that were not included in its statement of undisputed material facts section.  *See* Docket No. 650 at 12-13, 16,

20-23 & nn.5-7, n.11, nn.14-17.  As the Practice Standards emphasize, the "sole purpose of these procedures is to establish facts and determine which of them are in dispute."  Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.vii.  Both parties have significantly compromised the summary judgment process by citing additional evidence in their introduction or argument sections that were not included in their statement of undisputed material facts sections.  Had the parties included the evidence in the proper sections of their motions, the opposing party would have been required to admit or deny those facts and provide a basis for any denials, which would assist the Court in determining what facts are undisputed and what facts are disputed.  *See id.*, § III.F.3.b.iv.  Moreover, the requirement in the Practice Standards that a moving party state its facts in the form of statements is consistent with Fed. R. Civ. P. 56(e), which refers to "assertion[s] of fact."  Rule 56 distinguishes such assertions or statements of fact from the evidence that supports the assertions.  *See, e.g.*, Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support that assertion by: (A) citing to particular parts of materials in the record").  Thus, for the parties to cite to exhibits in their introduction or analysis sections, as opposed to in a fact section following the Practice Standards, frustrates the summary judgment process.  As a result, the Court will not consider such evidence to establish an undisputed fact.

## 2.  *Objections to Evidence*

HomeAdvisor argues that several of plaintiffs' exhibits are inadmissible.  First, HomeAdvisor objects to Docket No. 649-16, an exhibit that contains Google search results, because it is "unauthenticated" and "unreliable hearsay."  Docket No. 662 at 3

n.3.  HomeAdvisor argues that plaintiffs do not state who performed the Google search or identify a "qualified person" who could testify to the reliability of the results under Fed. R. Evid. 902(13).  *Id*.  Plaintiffs respond that Fed. R. Evid. 901(a) applies to the Google search results and that rule only requires "evidence sufficient to support a finding that the item is what the proponent claims it is."  Docket No. 667 at 1 n.1 (quoting *United States v. Isabella*, 918 F.3d 816, 843 (10th Cir. 2019)).  Furthermore, plaintiffs argue that the exhibit was authenticated by the declaration of plaintiffs' attorney Kimberly M. Donaldson-Smith.  *Id*. (citing Docket No. 649-1 at 4-5, 12, ¶¶ 14-17, 42).

The Court overrules HomeAdvisor's first objection.  Rule 901(a) provides that, to satisfy the requirement of authenticating an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  The testimony of a witness with knowledge of the item is sufficient to satisfy the authentication requirement.  Fed. R. Evid. 901(b)(1).  "Although Rule 901 serves an important gatekeeping function, '[t]he bar for authentication of evidence is not particularly high.'"  *Isabella*, 918 F.3d at 843 (quoting *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007)).  In her declaration, Ms. Donaldson-Smith states that, based on her personal knowledge, Docket No. 649-16 is "a true and correct copy of the query ran on Google.com for pages that appear on 'Homeadvisor.com' with the term 'Out of Network' (the search string used and inputted into Google.com search bar was: site:homeadvisor.com 'out of network')."  Docket No. 649-1 at 12, ¶ 42.  Ms. Donaldson-Smith attests that the Google search was conducted on February 24, 2024.  *Id*. at 4-5, ¶¶ 14-15.  The Court finds that Ms. Donaldson-Smith's declaration sufficiently authenticates Docket No. 649-16.  *See Live Face On Web, LLC*

*v. Integrity Sols. Grp., Inc*., 421 F. Supp. 3d 1051, 1069 (D. Colo. 2019) (holding that website printouts were sufficiently authenticated by witness' testimony that the exhibit matched the "webpage he observed").  The Court rejects HomeAdvisor's argument that plaintiffs must demonstrate the reliability of the Google search results.  *See United States v. Quintana*, 2023 WL 4287509, at *6 (10th Cir. June 30, 2023) (noting that the Tenth Circuit has "rejected the proposition that Rule 901 requires a proponent of evidence to establish the accuracy of information as a condition precedent to admissibility").  Accordingly, the Court overrules HomeAdvisor's authentication objection to Docket No. 649-16.[17]

Second, HomeAdvisor objects to Docket No. 657-23, a printout of B&B Carpentry's website, on the grounds that the exhibit is not authenticated and is inadmissible hearsay.  Docket No. 668 at 3 n.2.  HomeAdvisor argues that plaintiffs do not identify who retrieved the website printout.  *Id*.  Moreover, HomeAdvisor contends that the exhibit is "hearsay because Plaintiffs rely on the statements for the truth of the matter asserted – to prove that the McHenrys still perform residential services."  *Id*.

The Court overrules HomeAdvisor's second objection.  Ms. Donaldson-Smith attests that Docket No. 657-23 "is a true and correct copy of B&B Carpentry's website homepage, located at https://bandbcarpentry.com/ (last visited 3/18/24)."  Docket No. 657-1 at 15, ¶ 44.  The Court finds that Ms. Donaldson-Smith's declaration sufficiently authenticates Docket No. 657-23.  *See Live Face On Web*, 421 F. Supp. 3d at 1069.

---

[17] Without any further explanation, HomeAdvisor states that the Google search results are "hearsay."  Docket No. 662 at 3 n.3.  The Court will not consider this undeveloped evidentiary argument.  *See Troudt v. Oracle Corp*., No. 16-cv-00175-REB-SKC, 2019 WL 1006019, at *3 (D. Colo. Mar. 1, 2019) (declining to consider "undeveloped" hearsay objections at the summary judgment stage).

Moreover, "[a]t the summary judgment stage, evidence need not be submitted 'in a form that would be admissible at trial.'" *Argo v. Blue Cross & Blue Shield of Kan., Inc*., 452 F.3d 1193, 1199 (10th Cir. 2006) (citing *Celotex Corp*., 477 U.S. at 324).  Nevertheless, "the content or substance of the evidence must be admissible." *Id*. (quoting *Thomas v. Int'l Bus. Machs*., 48 F.3d 478, 485 (10th Cir. 1995)); *see also* Fed. R. Civ. P. 56(c)(2). For example, a party may "submit affidavits in support of summary judgment, despite the fact that affidavits are often inadmissible at trial as hearsay, on the theory that the evidence may ultimately be presented at trial in an admissible form." *Argo*, 452 F.3d at 1199.  Here, plaintiffs would be able to call the McHenrys at trial to testify to whether their company still performs residential services.  Accordingly, the Court overrules HomeAdvisor's hearsay objection to Docket No. 657-23.

Third, HomeAdvisor objects to Docket Nos. 657-9, 657-11, 657-12, 657-13, 657-14, and 657-15 as "unsworn, hearsay statements."  Docket No. 668 at 1-2 n.1.  Those exhibits contain "narratives" that class counsel received from "thousands of individuals who identified themselves as current and former [HomeAdvisor] SPs, concerning their experiences as SPs" (the "intakes" or "web forms").  Docket No. 657-1 at 11, ¶¶ 23-25. The web forms list each individual's name, email address, phone number, city and state, and contain the individual's responses to several questions.  *See* Docket Nos. 657-9, 657-11, 657-12, 657-13, 657-14, and 657-15.  HomeAdvisor argues that the Court cannot consider the web forms because plaintiffs have identified no hearsay exception.  Docket No. 668 at 1-2 n.1.  HomeAdvisor argues that the web forms contain statements that are "unsworn and not given under the penalty of perjury" and therefore the web forms are "insufficient to create an issue of fact." *Id*. (quoting *United States ex*

*rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 315 (3d Cir. 2019)).  Furthermore, HomeAdvisor asserts that "none of the individuals referenced in the web forms was disclosed, and thus cannot provide evidence at trial."  *Id.* (citing Docket No. 668-2 at 8; Docket No. 668-3 at 6).[18]  HomeAdvisor also objects to Docket No. 657-15 because it "was not produced in discovery."  *Id.* (citing Fed. R. Civ. P. 37(c)(1)).

Plaintiffs respond that the Court can properly consider this evidence because the "SP Intakes were produced to HA throughout the litigation until the June 30, 2021 discovery cut-off date . . . and include SPs who reside within the Court's subpoena power and who can be called at trial."  Docket No. 667 at 2 n.3 (citing *United States v. MyLife.com, Inc.*, 567 F. Supp. 3d 1152, 1163 (C.D. Cal. 2021) ("*MyLife*")).  Plaintiffs assert that, "[i]t is well settled that a party need not produce evidence in a form that would be admissible at trial; instead, only the content or substance of the evidence must be admissible at trial."  *Id.* (quoting *Cousik v. City & Cnty. of Denver*, No. 22-cv-01213-NYW-KAS, 2024 WL 896756, at *2 n.3 (D. Colo. Mar. 1, 2024)).

The Court sustains HomeAdvisor's objection seeking to exclude Docket Nos. 657-9, 657-11, 657-12, 657-13, 657-14, and 657-15.  At the summary judgment stage, if "a proper hearsay objection has been made and preserved, '[i]t is well settled in this circuit that [a court] can consider only admissible evidence.'"  *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1209 (10th Cir. 2010) (quoting *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir. 1998)).  Hearsay is an out of court statement offered into evidence to "prove the truth of the matter asserted."  Fed. R.

---

[18] HomeAdvisor does not cite a federal rule in support of this argument; however, the Court presumes that HomeAdvisor makes this argument under Fed. R. Civ. P. 37(c)(1).

Evid. 801(c)(2).  Hearsay is not admissible unless it falls within a hearsay exception in Rules 803, 804, 805, or 807, or unless a federal statute provides otherwise.  *See* Fed. R. Evid. 802; *see also United States v. Lozado*, 776 F.3d 1119, 1121 (10th Cir. 2015) ("Hearsay is generally inadmissible as evidence because it is considered unreliable"). The "proponent of hearsay evidence bears the burden of establishing the applicability of a hearsay exception."  *United States v. Irvin*, 682 F.3d 1254, 1262 (10th Cir. 2012). Here, the web forms are hearsay because the declarants wrote the information out of court and plaintiffs offer the forms to prove the truth of the matter asserted in the forms. *See* Docket Nos. 657-9, 657-11, 657-12, 657-13, 657-14, and 657-15.  Plaintiffs, however, do not identify any applicable hearsay exception in their response.[19]  Plaintiffs could have submitted declarations or affidavits from some of the individuals identified in the web forms and the Court could have considered that evidence.  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made

---

[19] In support of their argument, plaintiffs cite *MyLife*, a case from the Central District of California.  Docket No. 667 at 2 n.3.  In that case, the court overruled defendants' hearsay objection and admitted a "spreadsheet of 175 alleged consumer complaints offered by the Government" under the residual hearsay exception in Rule 807.  *MyLife.com,* 567 F. Supp. 3d at 1163.  Under Rule 807, a hearsay statement may be admissible if "(1) the statement is supported by sufficient guarantees of trustworthiness – after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement;" and "(2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."  Fed. R. Evid. 807(a).  In *MyLife*, the court found that the government satisfied Rule 807's requirements because the "complainants contacted a federal agency of their own volition to complain about MyLife's practices" and it would be "impractical to force the Government to obtain affidavits from hundreds or thousands of people to demonstrate the scope of Defendants' misconduct."  *MyLife.com,* 567 F. Supp. 3d at 1163.  Here, plaintiffs do not explicitly invoke Rule 807.  However, even if plaintiffs had identified Rule 807 as the applicable hearsay exception, they present no argument or evidence suggesting that the web forms are "supported by sufficient guarantees of trustworthiness."  *See* Fed. R. Evid. 807(a)(1).  The Court therefore finds that *MyLife* is distinguishable.

on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *see also Argo*, 452 F.3d at 1199 (noting that a court may consider "affidavits in support of summary judgment, despite the fact that affidavits are often inadmissible at trial as hearsay").  However, plaintiffs did not file any declarations or affidavits from the individuals identified in the web forms.  Accordingly, the Court finds that Docket Nos. 657-9, 657-11, 657-12, 657-13, 657-14, and 657-15 are inadmissible hearsay and declines to consider those exhibits at the summary judgment stage.  *See Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007) (holding that a court must disregard "hearsay on summary judgment when . . . there is a proper objection to its use and the proponent of the testimony can direct us to no applicable exception to the hearsay rule"); *Johnson*, 594 F.3d at 1210 (declining to consider hearsay statements when the proponent failed to provide "sworn statements" from the declarants); *Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016) (finding that a "letter" was inadmissible hearsay at the summary judgment stage because the proponent did not file an affidavit demonstrating that the declarant "would testify to the letter's competitive injury assertions at trial").[20]

---

[20] Moreover, the Court agrees with HomeAdvisor that Docket No. 657-15 should also be excluded under Fed. R. Civ. P. 37(c)(1).  Rule 26 of the Federal Rules of Civil Procedure requires that a party must, without awaiting a discovery request, provide to the other party "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses."  Fed. R. Civ. P. 26(a)(1)(A)(i).  Rule 37 provides that, if a party fails to provide information or identify a witness as required by Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The discovery deadline in this case was June 30, 2021.  Docket No. 408 at 1.  Docket No.

**B.  HomeAdvisor's Motion for Summary Judgment**

Principally, HomeAdvisor argues that plaintiffs' claims are moot to the extent that the claims are based on allegations that predate HomeAdvisor's system-wide changes implemented in October 2018.  Docket No. 650 at 11-14.  Furthermore, HomeAdvisor argues that it is entitled to summary judgment on all of the certified claims, including the Lanham Act claims and state law claims under Florida, Colorado, and Idaho law.  *Id.* at 14-30.

### 1.  Mootness

"Under Article III of the Constitution [federal courts] may only adjudicate actual, ongoing controversies."  *Honig v. Doe*, 484 U.S. 305, 317 (1988); *see also Wiley v. Nat'l Collegiate Athletic Ass'n*, 612 F.2d 473, 475 (10th Cir. 1979) (noting that mootness "has its constitutional origin in the 'case or controversy' limitation of Article III").  Thus, "[m]ootness is a threshold issue" that implicates the Court's subject-matter jurisdiction. *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005).  In the mootness inquiry, the "crucial question is whether granting a present determination of the issues offered will have some effect in the real world."  *Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000) (internal quotations, citation, and alterations omitted).

---

657-15 contains information that class counsel received from SPs from June 2021 to the present date, "[a]fter discovery closed."  Docket No. 657-1 at 11, ¶ 25; *see also* Docket No. 657-15.  There is no evidence in the record suggesting that plaintiffs disclosed the names of the individuals identified in Docket No. 657-15 to HomeAdvisor any time prior to the summary judgment stage.  Plaintiffs make no argument that the failure to disclose this information was "substantially justified or is harmless."  *See* Fed. R. Civ. P. 37(c)(1); *Lancaster v. Goodman Real Est., Inc.*, 2023 WL 112321, at *2 (D.N.M. Jan. 5, 2023) (noting that the presumption under Rule 37 "is that previously undisclosed evidence is excluded").

However, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citation omitted).  The voluntary cessation exception "exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resume the illegal conduct." *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880-81 (10th Cir. 2019) (internal alterations and citation omitted).  The voluntary cessation exception does not apply, and a case is moot, "if the defendant carries the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  *Id.* at 881 (internal quotations and citation omitted); *see also Equal Emp. Opportunity Comm'n v. CollegeAmerica Denver, Inc.*, 869 F.3d 1171, 1173-74 (10th Cir. 2017); *Vitamins Online, Inc. v. Heartwise, Inc.*, 71 F.4th 1222, 1246 (10th Cir. 2023) (noting that "voluntary cessation does not normally moot a request for injunctive relief").  A defendant has a "heavy" burden of showing that the voluntary cessation exception does not apply.  *Prison Legal News*, 944 F.3d at 881.  "To carry its burden, a defendant must do more than offer a mere informal promise or assurance that the challenged practice will cease or announce an intention to change." *Id.* (internal alterations, quotations, and citation omitted).  Instead, a defendant must undertake "changes that are permanent in nature" and that "foreclose a reasonable chance of recurrence of the challenged conduct."  *Id.* (quoting *Tandy v. City of Wichita*, 380 F.3d 1277, 1291 (10th Cir. 2004)).

HomeAdvisor argues that plaintiffs' claims are moot to the extent the claims are based on the four "errors" that HomeAdvisor rectified in October 2018.  Docket No. 650

at 11-12.  HomeAdvisor contends that the four errors – (1) the zip code error in the McHenrys' profile, (2) the incorrect phone number in Ms. Haukenes' profile, (3) the alerts stating, "this page no longer exists," and (4) the alerts stating that a former member was "not screened" – were "unintentional and immediately rectified by system-wide changes."  *Id.* at 12.  HomeAdvisor argues that it investigated plaintiffs' complaints, determined that the errors were "attributable to unintentional coding errors," and implemented system-wide coding changes.  *Id.*[21]  As a result, HomeAdvisor contends that its voluntary termination of the challenged practice moots the claims for prospective equitable relief because "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  *Id.* at 11 (quoting *Prison Legal News*, 944 F.3d at 884).  Furthermore, HomeAdvisor argues that the pre-October 2018 allegations are also moot because the class representatives "abandoned their home services businesses and therefore face no harm from hypothetical future misstatements."  *Id.* at 13.  HomeAdvisor contends that it is undisputed that the class representatives do not own their businesses or perform home services anymore.  *Id.* at 13-14.  HomeAdvisor asserts that a "closed business with no intent to reopen does not maintain a live controversy."  *Id.* at 13 (quoting *Pitkin Supermarket, Inc. v. United States*, 2016 WL 6879254, at *5-6 (E.D.N.Y. Nov. 21, 2016)).

Plaintiffs respond that the voluntary cessation exception applies to HomeAdvisor's conduct that occurred prior to October 2018 because HomeAdvisor has

---

[21] HomeAdvisor also argues that it "swore in a declaration that it has no intention of repeating the above errors (nor could it plausibly have any reason to repeat them)." Docket No. 650 at 13 (citing Docket No. 650-2 at 14-16, ¶¶ 23-25).  HomeAdvisor did not raise this fact in its statement of undisputed material facts section.  Accordingly, the Court declines to consider this evidence for the reasons discussed previously.

not met its heavy burden of establishing that the wrongful behavior could not reasonably be expected to recur.  Docket No. 657 at 18-19.[22]  Moreover, plaintiffs contend that the McHenrys continue to operate their business, B&B Carpentry, and offer commercial and residential services.  *Id*. at 19.  Even if the class representatives' claims were moot, plaintiffs argue that the class representatives may continue to pursue the misappropriation claims on behalf of the class due to the "flexible character" of the mootness doctrine in the class action context.  *Id*. at 20 & n.14 (quoting *Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1138 (10th Cir. 2009)).

The Court finds that HomeAdvisor has failed to carry its heavy burden of showing that the voluntary cessation exception does not apply to this case.  Although HomeAdvisor argues that the four errors were "attributable to unintentional coding errors," *see* Docket No. 650 at 12, HomeAdvisor's proffered facts do not establish that the statements on HomeAdvisor's website were unintentionally caused by coding errors.[23]  It is undisputed that HomeAdvisor made coding changes and rewrote the

---

[22] Plaintiffs also argue that the Court previously rejected HomeAdvisor's mootness arguments at the class certification stage and that HomeAdvisor is improperly seeking reconsideration of those arguments at the summary judgment stage.  Docket No. 657 at 17.  At the class certification stage, defendants argued that the proposed class representatives lacked standing and that the equitable relief was moot because HomeAdvisor removed the online profiles of Ms. Ervine, Ms. Haukenes, and the McHenrys.  Docket No. 635 at 8.  HomeAdvisor asserts a different mootness theory at the summary judgment stage, namely, that it rectified the four errors on the class representatives' profile pages.  *See* Docket No. 650 at 11-14.  The Court therefore rejects plaintiffs' argument that HomeAdvisor is improperly seeking reconsideration of its prior mootness arguments.

[23] For example, HomeAdvisor asserts that, "[f]rom around February 2018 to October 30, 2018, HA inadvertently displayed an incorrect business phone number on Plaintiff Haukenes's profile page."  Docket No. 650 at 6, ¶ 27 (citing Docket No. 650-5 at 10-11).  The cited exhibit does not establish that HomeAdvisor "inadvertently" displayed the incorrect number.  *See* Docket No. 650-5 at 10-11.  Likewise, HomeAdvisor asserts that it investigated the McHenrys' complaint and determined that "an unintentional

alerts after investigating the complaints from the class representatives.  *See* Docket No. 650 at 7-8, ¶¶ 30, 32, 35, 39-40.  However, HomeAdvisor has presented no evidence establishing that the coding changes are "permanent in nature" and that the changes "foreclose a reasonable chance of recurrence of the challenged conduct."  *See Prison Legal News*, 944 F.3d at 881; *see also Vitamins Online, Inc.*, 71 F.4th at 1247 (holding that defendant did not satisfy its burden of establishing that the voluntary cessation exception does not apply by merely arguing that it has "stopped manipulating reviews").  Because HomeAdvisor has failed to show that "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur," *see Prison Legal News*, 944 F.3d at 881, the Court finds that the voluntary cessation exception applies to the four errors on the class representatives' profile pages.

In addition, the Court rejects HomeAdvisor's argument that the claims arising out of the pre-October 2018 allegations are moot because the class representatives abandoned their home services businesses.  *See* Docket No. 650 at 13.  It is undisputed that Ms. Haukenes dissolved Bergen Certified Inspections in 2019 and Ms. Ervine sold Glass Act Window Cleaning in 2020.  *Id*. at 8, ¶¶ 44-45.  Nevertheless, the McHenrys continue to operate B&B Carpentry.  Docket No. 657 at 12, ¶ 2.  "[T]he Supreme Court has applied the mootness doctrine less strictly in the class action context."  *Clark*, 590 F.3d at 1138.  "[B]ecause a certified class becomes an independent juridical entity capable of satisfying the standing requirements of Article III,

---

coding error had removed zip codes from their profile, causing the zip code error." Docket No. 650 at 7, ¶ 31 (citing Docket No. 650-2 at 11, ¶ 16; Docket No. 650-9 at 8, 64:19-65:7).  The cited exhibits do not establish that "an unintentional coding error" removed the zip codes from the McHenrys' profile.  *See* Docket No. 650-2 at 11, ¶ 16; Docket No. 650-9 at 8, 64:19-65:7.

the mooting of a named plaintiff's claims *after* class certification does not moot the claims of the class." *Id*. (citing *Franks v. Bowman Transp. Co*., 424 U.S. 747, 755-56 (1976); *Sosna v. Iowa*, 419 U.S. 393, 399 (1975)).   Accordingly, the Court finds that equitable relief for the misappropriation classes, stemming from HomeAdvisor's conduct prior to October 2018, is not moot.   The Court therefore denies this portion of HomeAdvisor's motion.

### 2.  *Lanham Act Claims*

The Lanham Act provides, in relevant part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).   The Lanham Act "creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 122 (2014); *see also Crocs, Inc. v. Effervescent, Inc*., No. 06-cv-00605-PAB-KMT, 2021 WL 4170997, at *3 (D. Colo. Sept. 14, 2021).   The Nationwide Misappropriation Class asserts a claim for false advertising under § 1125(a)(1)(B) and a claim for false association under § 1125(a)(1)(A).   Docket

No. 449 at 282-286, ¶¶ 973-990.  HomeAdvisor argues that it is entitled to summary judgment on both claims.  Docket No. 650 at 14.

As an initial matter, the Court notes that plaintiffs do not clearly explain in the briefing how their theory of HomeAdvisor's alleged wrongdoing fits the elements of the Lanham Act's provisions for false advertising and false association.  The gist of plaintiffs' theory appears to be that HomeAdvisor has "wrongly exploit[ed] former SPs" by using former SPs' information to "drive traffic to HA's website."  *See* Docket No. 657 at 2.  Plaintiffs state that HomeAdvisor "maintains former SPs' Content on its website to divert potential legitimate customers who are seeking to connect with the former SPs to HA's website," where HomeAdvisor then directs the customers to submit "a revenue-generating lead" that HomeAdvisor can sell to current SPs.  *Id*. at 3; *see also* Docket No. 649 at 7-8 (arguing that HomeAdvisor uses search engine optimization to redirect customers to HomeAdvisor's "website through the SPs' profile page, where HA uses such content, without authorization, to divert a potential customer to submit a service request that will generate a lead for HA to sell").

### a.  False Advertising Claim

A false advertising claim under the Lanham Act requires proof that: (1) defendant "made a false or misleading description of fact or representation of fact in a commercial advertisement about its own or another's product;" (2) defendant's "misrepresentation was material, in that it was likely to influence the purchasing decision;" (3) defendant's "misrepresentation actually deceived or had the tendency to deceive a substantial segment of its audience;" (4) defendant "placed the false or misleading statement in interstate commerce;" and (5) plaintiff "has been or is likely to be injured as a result of

the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Bimbo Bakeries USA, Inc. v. Sycamore*, 29 F.4th 630, 643-44 (10th Cir. 2022) (internal quotations, alterations, and citations omitted); *see also Warming Trends, LLC v. Stone*, No. 19-cv-03027-PAB-STV, 2023 WL 2713954, at *6 (D. Colo. Mar. 30, 2023).  HomeAdvisor argues that plaintiffs cannot establish the first or fifth elements of their false advertising claim.  Docket No. 650 at 15-17, 26-27.

i.   First Element

The first element of a false advertising claim requires proof that defendant "made a false or misleading description of fact or representation of fact in a commercial advertisement about its own or another's product."  *Sycamore*, 29 F.4th at 643-44.  To constitute "commercial advertising" under the Lanham Act, the factual representation must be: (i) "commercial speech;" (ii) "by a defendant who is in commercial competition with plaintiff;" (iii) "for the purpose of influencing consumers to buy defendant's goods or services;" and (iv) "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry."  *Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1267 (10th Cir. 2020) (citation omitted); *see also Warming Trends, LLC v. Stone*, No. 19-cv-03027-PAB-STV, 2023 WL 2716652, at *14 (D. Colo. Mar. 30, 2023).

To establish the falsity prong of the first element, "a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers."  *Sycamore*, 29 F.4th at 644 (citation omitted); *see also I Dig Texas, LLC v. Creager*, 98 F.4th 998, 1009 (10th Cir. 2024).  However, "the foregoing framework only applies if the statement under

attack is a statement of fact.  Courts have long concluded that only statements of fact are actionable under the Lanham Act." *Sycamore*, 29 F.4th at 644 (collecting cases). "A statement can be literally false only if it is unambiguous." *Creager*, 98 F.4th at 1009.[24]  If the statement is "susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." *Id*. at 1010 (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc*., 497 F.3d 144, 158 (2d Cir. 2007)).  In "assessing whether an advertisement is literally false, a court must analyze the message conveyed within its full context." *Zoller Laboratories, LLC. v. NBTY, Inc*., 111 F. App'x 978, 984 (10th Cir. 2004) (unpublished) (citation omitted).  A plaintiff "bears the burden of proving literal falsity" under the Lanham Act. *BASF Corp. v. Old World Trading Co*., 41 F.3d 1081, 1091 (7th Cir. 1994).

"Where the advertisement is literally false, a violation may be established without evidence of consumer deception." *Zoller*, 111 F. App'x at 982 (citation omitted). However, if "a plaintiff's theory of recovery is premised upon a claim of implied falsehood, a plaintiff must demonstrate, by extrinsic evidence, that the challenged advertisements tend to mislead or confuse consumers." *Id*. (citation and internal alterations omitted); *see also Vincent v. Utah Plastic Surgery Soc*., 621 F. App'x 546, 550 (10th Cir. 2015) (unpublished) (noting that if a statement is not literally false, a plaintiff must show "actual consumer deception").  A plaintiff can make this showing by demonstrating that a "statistically significant part of the commercial audience holds the false belief allegedly communicated by the challenged advertisement." *Vincent*, 621 F.

---

[24] The issue of whether a statement is ambiguous is a question of law.  *Creager*, 98 F.4th at 1010.

App'x at 550.  For example, a plaintiff may submit "consumer survey data."  *Zoller*, 111 F. App'x at 982; *see also In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 507 F. Supp. 3d 1289, 1375 (D. Kan. 2020), *aff'd*, 44 F.4th 959 (10th Cir. 2022) ("Consumer surveys are normally used to satisfy this additional requirement."); *Sycamore*, 29 F.4th at 646 ("Consumer surveys in Lanham Act cases are properly limited to proving that factual claims that are not literally false nonetheless mislead consumers.").

Plaintiffs assert that the following statements constitute false advertising under the Lanham Act: (A) "Let's find you the best HomeAdvisor screened and approved professionals" and "Find Other Pros;" (B) "Please Note: This business is not a screened and approved member of HomeAdvisor;" and (C) "[SP business name] does not provide service to [zip code]."  Docket No. 657 at 21-22.[25]

### (A)   "Let's find you the best HomeAdvisor screened and approved professionals" and "Find Other Pros"

HomeAdvisor argues that the statements appearing on non-member listings, including "Let's find you the best HomeAdvisor screened and approved professionals," and "Find Other Pros," are not actionable statements under the Lanham Act because they are not statements of fact.  Docket No. 668 at 14-15 (citing *Sycamore*, 29 F.4th at 644).  Furthermore, HomeAdvisor argues that these statements are not literally false because the statements do not say anything false about former SPs.  *Id*. at 14.

---

[25] Because the parties discuss these statements at length in both the briefing on HomeAdvisor's motion and the briefing on plaintiffs' motion, *see* Docket No. 650 at 15-17; Docket No. 657 at 21-25; Docket No. 668 at 12-15; Docket No. 649 at 26-27; Docket No. 662 at 15-22; Docket No. 667 at 10-12, the Court will address all arguments raised throughout the cross summary judgment briefing in this section of the order.

Because the statements are not literally false, HomeAdvisor asserts that plaintiffs must show actual consumer deception. *Id*. at 15; *see also* Docket No. 650 at 16-17. HomeAdvisor argues, however, that plaintiffs have no evidence that any consumers were deceived by these statements. Docket No. 668 at 15; *see also* Docket No. 650 at 16-17.

Plaintiffs contend that these statements are literally false because the use of the word "screening" creates "the impression that [HomeAdvisor's] active SPs are all screened in contrast to its former SPs." Docket No. 657 at 22. Plaintiffs argue that HomeAdvisor does not screen all SPs and has no basis to imply that the former SPs are not "screened." *Id*.; *see also* Docket No. 667 at 10-11. In support of their argument that Home Advisor does not screen all SPs, plaintiffs cite a declaration from Matt Zurcher, HomeAdvisor's Senior Vice President of Operations, where Mr. Zurcher states that HomeAdvisor performs a background check on service provider "businesses," which includes the "owner/principal" of the business, but does not perform a background check on all employees of the SP. Docket No. 657 at 5-6, ¶ 2 (quoting Docket No. 657-6 at 3-4, ¶¶ 3, 9). Plaintiffs also cite HomeAdvisor's T&Cs which state that HomeAdvisor's screening criteria does not apply to "Corporate Accounts." *Id*. at 5-6, ¶ 2 & n.6 (citing Docket Nos. 657-3, 657-4, 657-5). Plaintiffs argue that HomeAdvisor is "deceptively seeking to impress upon the customer that the person walking through their door had been the subject of an effective and thorough background check." Docket No.

657 at 22.  Because the statements are "literally false," plaintiffs argue that there is a presumption of consumer confusion.  *Id*. at 24.[26]

The Court finds that the statements "Find Other Pros" and "Let's find you the best HomeAdvisor screened and approved professionals" are not actionable statements under the Lanham Act because they are not statements of fact.  "A factual claim is a statement that (1) admits of being adjudged true or false in a way that (2) admits of empirical verification.  A statement that fails to meet these criteria falls outside the Lanham Act's purview."  *Sycamore*, 29 F.4th at 644 (internal quotations and citations omitted).  It is undisputed that HomeAdvisor displays a "non-member listing" for some former SPs in HomeAdvisor's directory, identifying the former SP as "out of network" and providing the SP's direct contact information.  Docket No. 650 at 4, ¶¶ 13-14.  The non-member listing states "Let's find you the best HomeAdvisor screened and approved professionals" and includes the "Find Other Pros" link, which directs the homeowner to submit a service request that HomeAdvisor can sell as a lead to another SP.  Docket No. 649 at 16, ¶ 3.  Contrary to plaintiffs' suggestion, the statements on the non-

---

[26] Plaintiffs also contend that these "deceptions" were the subject of injunction proceedings in a case brought by the District Attorney of San Francisco against HomeAdvisor.  Docket No. 667 at 10-11 & n.16 (citing *People v. Homeadvisor, Inc*., 2018 Cal. Super. LEXIS 39697, at *3-4 (May 23, 2018)).  Plaintiffs argue that the court in that case entered a preliminary injunction against HomeAdvisor because HomeAdvisor's statements were "likely deceptive."  *Id*. at 11.  To the extent plaintiffs argue that the California case demonstrates that the statements on the non-member listings are literally false under the Lanham Act, the Court rejects that argument.  First, the California case did not address the non-member listings, but rather addressed "television, radio, and Apple App Store advertisements" issued by HomeAdvisor.  *See Homeadvisor, Inc*., 2018 Cal. Super. LEXIS 39697, at *3.  Second, the case did not involve a Lanham Act false advertising claim.  *See id*.  Third, the court issued a preliminary injunction and did not make any findings of fact as to whether the statements in the advertisements were literally false.  *See id*.

member listings do not state that HomeAdvisor conducts "an effective and thorough background check" on every worker "walking through [the homeowner's] door." *See* Docket No. 657 at 22.  Rather, these statements merely invite consumers to search for SPs who are members of HomeAdvisor.  Plaintiffs have submitted no evidence suggesting that the statements "Find Other Pros" or "Let's find you the best HomeAdvisor screened and approved professionals" can be adjudged "true or false" in a way that admits of "empirical verification." *See Sycamore*, 29 F.4th at 644 (concluding that the word "local" is not an actionable statement of fact); *Creager*, 98 F.4th at 1012 (finding that an American flag symbol couldn't "objectively be verified as true or false").

Even if the statement "Find Other Pros" is an actionable statement of fact under the Lanham Act, plaintiffs have not provided any evidence suggesting that this statement is literally false or that it is misleading in any way.  The "Find Other Pros" link directs the homeowner to submit a service request to HomeAdvisor.  Docket No. 649 at 16, ¶ 3.  Plaintiffs make no argument that the link itself contains any false or misleading information about any SPs or HomeAdvisor's services.  Accordingly, the "Find Other Pros" statement is not actionable under the Lanham Act. *See Intermountain Stroke Ctr., Inc. v. Intermountain Health Care, Inc*., 638 F. App'x 778, 793 (10th Cir. 2016) (unpublished) (holding that defendant's "Find a Doctor" tool on its website was not actionable under the Lanham Act because the link merely produced "a list of physicians" and contained no misleading information).

Moreover, the Court finds that the statement "Let's find you the best HomeAdvisor screened and approved professionals" is not literally false under the Lanham Act because the statement is "ambiguous." *See Creager*, 98 F.4th at 1010.  It

is undisputed that the non-member listing states "Let's find you the best HomeAdvisor screened and approved professionals."  Docket No. 649 at 16, ¶ 3.  It is also undisputed that HomeAdvisor conducts background screening on SPs prior to enrollment, but HomeAdvisor does not screen corporate accounts.  Docket No. 650 at 2, ¶ 2; Docket No. 657 at 5-6, 13, ¶¶ 2, 5; Docket No. 668 at 5, ¶ 5.  Plaintiffs cite evidence suggesting that HomeAdvisor performs a background check on service provider "businesses," which includes the "owner/principal" of the business, but does not perform a background check on all employees of the SP.  Docket No. 657 at 5-6, ¶ 2 (quoting Docket No. 657-6 at 3-4, ¶¶ 3, 9).  The Court finds that the term "screened . . . professionals," *see* Docket No. 649 at 16, ¶ 3, is susceptible to more than one reasonable interpretation.  *See Creager*, 98 F.4th at 1010.  A "professional" could refer to any of the SP's employees or contractors that would perform the home services task.  With that interpretation, the statement on the website could mean that HomeAdvisor will connect you with a worker who has been screened by HomeAdvisor.  However, when analyzing the message "conveyed within its full context," *see Zoller*, 111 F. App'x at 984, the term "professional" could also refer to the SP as a business entity.  For example, the non-member listing for Advance, Inc. states that Advance Inc., a company, is a "professional" that is "out of network."



*See* Docket No. 650 at 4, ¶ 14.  "Screened . . . professionals" could therefore refer to other SPs as business entities, rather than the employees of the SPs.  Under that interpretation, the statement on the website could mean that HomeAdvisor will find you a business entity that has been screened and approved by HomeAdvisor.

"Given that ambiguity," the Court finds that the statement cannot be literally false. *See Creager*, 98 F.4th at 1010-11 (holding that an advertisement that products were "made in the United States" could not be literally false because the term "make" could "refer either to the origin of the components or to the assembly of the product itself"); *see also Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 736-37 (6th Cir. 2012) (concluding that a statement could not be literally false because it was ambiguous on whether it referred to one or multiple products); *In re EpiPen*, 507 F. Supp. 3d at 1370 ("The greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion, however, the less likely it is that a finding of literal falsity will be supported." (citation omitted)).[27]

---

[27] Plaintiffs do not clearly explain how the "Let's find you the best HomeAdvisor screened and approved professionals" statement is literally false in light of the undisputed fact that HomeAdvisor does not screen corporate accounts.  *See* Docket No. 657 at 22.  For example, plaintiffs provide no evidence suggesting that the "Find Other Pros" link even connects homeowners to corporate accounts.  Plaintiffs cite no statements of fact in the appropriate fact sections of their briefing identifying what HomeAdvisor's vetting or approval process for corporate accounts consists of.  In one sentence in their argument section, plaintiffs cursorily state that HomeAdvisor has 129 corporate accounts, but "those corporate accounts, which included behemoth national companies such as Sears, employ thousands of service personnel whose backgrounds were not checked by HA."  Docket No. 657 at 22 (citing Docket No. 657-6 at 4, ¶ 7). However, plaintiffs' cited evidence does not support that assertion of fact.  Mr. Zurcher's declaration states,

> All Service Pros are subject to these background check procedures with the exception of a small number of corporate accounts.  Currently, there are only 129 such corporate accounts out of approximately 189,000 Service Pros in the

Because the statements are not literally false, plaintiffs must submit evidence of actual consumer deception.  *See Vincent*, 621 F. App'x at 550.  Plaintiffs have provided no consumer survey data or other evidence demonstrating that a "statistically significant part of the commercial audience holds the false belief allegedly communicated by the challenged advertisement."  *See id*.; *see also Zoller*, 111 F. App'x at 982.  Without any evidence that the challenged statements tend to mislead or confuse consumers, HomeAdvisor is entitled to summary judgment on the portion of the false advertising claim based on the statements "Find Other Pros" and "Let's find you the best HomeAdvisor screened and approved professionals."

### (B)   *"Please Note: This business is not a screened and approved member of HomeAdvisor"*

HomeAdvisor argues that the statement "Please Note: This business is not a screened and approved member of HomeAdvisor," which appeared on Ms. Haukenes' page and other former SPs' pages prior to October 2018, is not literally false.  Docket No. 668 at 13.  HomeAdvisor argues that the statement is not literally false because it is undisputed that, once an SP's membership expires, the SP is no longer a HomeAdvisor member.  *Id*.  Because HomeAdvisor states that plaintiffs have no evidence that any

---

HomeAdvisor network.  As such, only approximately 0.0682% of listed Pros are not background checked.  Even so, HomeAdvisor's contracts with these corporate accounts expressly require the company to certify that it is "free from any (i) bankruptcies, civil legal judgments within the last 3 years, and (ii) felony criminal convictions[.]"

Docket No. 657-6 at 4, ¶ 7.  Accordingly, the Court finds that plaintiffs' "underdeveloped" and "inadequately briefed" arguments on the corporate accounts are waived.  *See Valdez v. Macdonald*, 66 F.4th 796, 834 (10th Cir. 2023).  The Court therefore declines to consider whether the "Let's find you the best HomeAdvisor screened and approved professionals" statement is literally false in connection with the corporate accounts.

consumers were deceived by this statement, HomeAdvisor contends that it is entitled to summary judgment.  *Id*. at 15; *see also* Docket No. 650 at 17; Docket No. 662 at 19-20. Plaintiffs respond that the statement is literally false because HomeAdvisor has no basis to "state or imply that the former SPs are not 'screened.'"  Docket No. 657 at 21-22; *see also* Docket No. 667 at 10.  Because the statement is "literally false," plaintiffs argue that there is a presumption of consumer confusion.  Docket No. 657 at 24.

The Court finds that plaintiffs have failed to establish that this statement is literally false.  It is undisputed that Ms. Haukenes cancelled her HomeAdvisor membership on March 14, 2017.  Docket No. 650 at 5, ¶ 19; Docket No. 657 at 8, ¶ 19. It is also undisputed that, from February 2018 to October 30, 2018, the following message appeared on Ms. Haukenes' profile page: "Please Note: This business is not a screened and approved member of HomeAdvisor."  Docket No. 650 at 6, ¶ 26.  That same message appeared on the profile pages of other former SPs until October 30, 2018.  Docket No. 649 at 17, ¶ 6.  Plaintiffs present no evidence that former members of HomeAdvisor are "screened and approved" after their membership ends.  Regardless of whether HomeAdvisor screened Ms. Haukenes at the time of her enrollment, there is no evidence suggesting that Ms. Haukenes was a "screened and approved member" after she cancelled her HomeAdvisor membership on March 14, 2017.  Contrary to plaintiffs' suggestion, the alert does not overtly state that the former SP has *never* been screened.  As a result, the Court finds that the statement is not literally false.[28]

---

[28] Furthermore, as the Supreme Court has repeatedly emphasized, "[a]djectives modify nouns—they pick out a subset of a category that possesses a certain quality." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv*., 586 U.S. 9, 19-20 (2018) (noting that a "critical habitat" is a subset of "habitat"); *see also Rimini St., Inc. v. Oracle USA, Inc*., 586 U.S. 334, 341 (2019).  In this alert, the words "screened and approved" modify the

Because the statement is not literally false, plaintiffs must submit evidence of actual consumer deception.  *See Vincent*, 621 F. App'x at 550.  Plaintiffs have provided no consumer survey data or other evidence demonstrating that a "statistically significant part of the commercial audience holds the false belief allegedly communicated by the challenged advertisement."  *See id*.; *see also Zoller*, 111 F. App'x at 982.[29]  Without any evidence that the challenged statement tends to mislead or confuse consumers, HomeAdvisor is entitled to summary judgment on the portion of the false advertising claim based on the statement "Please Note: This business is not a screened and approved member of HomeAdvisor."

### (C)   "[SP business name] does not provide service to [zip code]"

HomeAdvisor claims that plaintiffs cannot establish that the zip code alert constitutes "commercial advertising" under the Lanham Act.  Docket No. 662 at 20-22;

---

noun "member of HomeAdvisor."  *See* Docket No. 650 at 6, ¶ 26.  Plaintiffs have failed to show how this statement is literally false when Ms. Haukenes and other former SPs were not members of HomeAdvisor when the alert appeared on their pages.  If Ms. Haukenes was not a "member" of HomeAdvisor at this time, then she could not have been a "screened and approved member."  *See Weyerhaeuser Co.*, 586 U.S. at 21 n.2 (holding that an "area is eligible for designation as critical habitat . . . only if it is habitat").  HomeAdvisor's statement can reasonably be interpreted as simply informing the consumer that the former SP is not a current screened and approved member of HomeAdvisor, which is true.  *See Zoller*, 111 F. App'x at 984 (finding that there was more than one reasonable interpretation of the "Compare to Ingredients" statement on a product because the statement can "reasonably be read as simply informing the consumer that the two products have similar ingredients, which is true").

[29] Plaintiffs do not clearly address the actual consumer deception prong.  Plaintiffs' theory seems to argue that, if a consumer believes that a former SP has never been screened, then the consumer will decide to submit a service request for a different screened member of HomeAdvisor.  *See* Docket No. 657 at 3, 22, 24.  However, plaintiffs present no evidence that a statistically significant part of the commercial audience believes that the alert conveys the message that the former SP has *never* been screened.

Docket No. 668 at 14.  HomeAdvisor argues that there is no evidence that the zip code statement was "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry."  Docket No. 662 at 20 (quoting *Strauss*, 951 F.3d at 1267).  HomeAdvisor states that plaintiffs have identified no evidence suggesting that any consumer actually saw the zip code error on the McHenrys' profile or the profiles of other SPs.  *Id*. at 21.[30]

As noted previously, to establish that a factual representation is "commercial advertising or promotion" under the Lanham Act, the representation must be "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry."  *Strauss*, 951 F.3d at 1267 (citation omitted).  Tenth Circuit precedent makes it clear that "to constitute an actionable advertising or promotional campaign, a dissemination of information must reach some numerically-significant quantity of actual or potential customers of the parties' products."  *Warming Trends,* 2023 WL 2716652, at *14 (quoting *General Steel Domestic Sales, LLC v. Chumley,* 129 F. Supp. 3d 1158, 1175 (D. Colo. 2015) (citing *Sports Unlimited, Inc. v. Lankford Enterprises, Inc*., 275 F.3d 996, 1003-04 (10th Cir. 2002)).

Here, it is undisputed that, from July 6, 2017 to October 30, 2018, if a consumer clicked the "Get a Quote" button on the McHenrys' online member profile page and entered the zip code "80021" in the contact form, the following statement would appear, among others: "B&B Carpentry does not provide service to 80021."  Docket No. 650 at 6, ¶ 24.  However, there is no evidence in the record that any consumer saw the alert

---

[30] Plaintiffs do not directly address this argument in the briefing on the cross-summary judgment motions.

– "[SP business name] does not provide service to [zip code]" – on the McHenrys' profile page or on the profile page of any other former SP.  Docket No. 662 at 7, ¶ 18. The Court therefore finds that plaintiffs have failed to establish that the zip code alert reached a "numerically-significant quantity of actual or potential customers."  *See Warming Trends,* 2023 WL 2716652, at *14 (granting summary judgment because plaintiff presented no evidence that "any potential customer saw the specific pages on the website" that contained the false statement); *see also Chumley*, 129 F. Supp. 3d at 1175 (granting summary judgment where the record was "vague" as to the number of customers who encountered the alleged false statements on a website); *Wilson v. AdvisorLaw LLC*, No. 17-cv-1525-MSK, 2018 WL 4932088, at *4 (D. Colo. Oct. 11, 2018), *aff'd*, 780 F. App'x 649 (10th Cir. 2019) (granting summary judgment where plaintiff failed to provide any evidence that potential customers actually saw the false statement on the "heavily-trafficked" website).  Because plaintiffs have failed to establish an inference that the zip code alert was "advertising," an essential element of the Lanham Act claim, the Court finds that HomeAdvisor is entitled to summary judgment on this statement.[31]

ii.   <u>Fifth Element</u>

Even if plaintiffs had established a dispute of fact on the first element of their false advertising claim, the Court finds that plaintiffs have failed to provide any evidence

---

[31] HomeAdvisor also argues that the zip code alert cannot support a false advertising claim because the statement is not literally false and plaintiffs have submitted no evidence of consumer confusion.  Docket No. 668 at 14-15; Docket No. 662 at 20.  Because the Court found that the zip code alert did not constitute "advertising" under the Lanham Act, the Court declines to reach these additional arguments.

to prove the fifth element.  To establish the fifth element, plaintiffs must show that they have "been or [are] likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with [their] products." *Sycamore*, 29 F.4th at 643-44*; see also Am. Soc'y of Home Inspectors, Inc. v. Int'l Ass'n of Certified Home Inspectors*, 36 F.4th 1238, 1242 (10th Cir. 2022) (noting that a plaintiff must prove "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations").

HomeAdvisor argues that plaintiffs have no evidence that the statements harmed their reputations or diverted business away from them.  Docket No. 650 at 26-27; *see also* Docket No. 668 at 15.  Plaintiffs respond that they have suffered harm from the "literally false statements" because HomeAdvisor's actions have caused "a loss of customers" and "loss of goodwill."  Docket No. 657 at 25-26.  However, plaintiffs did not cite any facts suggesting that class members have experienced a diversion of sales or diminished goodwill from the following statements: "Let's find you the best HomeAdvisor screened and approved professionals;" "Find Other Pros;" "Please Note: This business is not a screened and approved member of HomeAdvisor;" and "[SP business name] does not provide service to [zip code]."[32]

---

[32] In response to one of HomeAdvisor's statements of undisputed fact, plaintiffs broadly argue that their "evidence includes voluntarily submitted narratives from former SPs confirming being uniformly victimized by HA and HA's use of their Content." Docket No. 657 at 11, ¶¶ 52-53 (citing Docket Nos. 657-11, 657-12, 657-13, 657-14, and 657-15).  However, for the reasons discussed previously, the Court declines to consider the web forms at the summary judgment stage because the web forms are inadmissible hearsay.  Nevertheless, even if the Court considered the web forms, none of the cited evidence describes any harm specifically from the four statements on HomeAdvisor's website.  *See* Docket No. 657-1 at 11, ¶¶ 23, 25; Docket No. 657-11 at 2-4, 6-14, 16-20, 22-25, 27-30, 32-35; Docket No. 657-12 at 2-18; Docket No. 657-13 at 2-11, 13-64; Docket No. 657-14 at 2-10, 12-15, 17-28; Docket No. 657-15 at 2-26, 28-

Because plaintiffs have failed to identify any injury from the four statements, the Court finds that HomeAdvisor is entitled to summary judgment on the Lanham Act false advertising claim.  *See Am. Soc'y of Home Inspectors, Inc.*, 36 F.4th at 1244 (affirming grant of summary judgment where non-movant failed to provide any evidence that it was harmed from the movant's tagline, which was on its "website for nearly five years").[33]  The Court grants this portion of HomeAdvisor's motion and dismisses with prejudice the Lanham Act false advertising claim of the Nationwide Misappropriation Class.

---

29.  One individual states that the message "let[']s find you a best home advisor screened and approved" professional on HomeAdvisor's website is "not good for my business" and that it "seem[s] like they are take it [sic] my potential customers."  Docket No. 657-15 at 12.  This statement is too speculative to demonstrate an injury under the Lanham Act.  *See Warming Trends*, 2023 WL 2716652, at *14 (finding that a company manager's testimony that, "I believe that we have lost sales" was too speculative because she could not identify any specific sales that the company lost).

[33] Regarding the harm element, plaintiffs alternatively argue that HomeAdvisor "hinders, refuses to acknowledge, and disregards SPs' requests to terminate and to remove their Content from HA's website."  Docket No. 657 at 26.  Plaintiffs contend that HomeAdvisor "incorrectly asserts a contractual right to use former SPs' Content" through the T&C's licensing provision.  *Id*.  The Court finds that these arguments are irrelevant to whether plaintiffs have suffered any injury from the four allegedly misleading statements on HomeAdvisor's website.  *See Am. Soc'y of Home Inspectors, Inc.*, 36 F.4th at 1242 (noting that a plaintiff must prove "an injury to a commercial interest in sales or business reputation *proximately caused by the defendant's misrepresentations*") (emphasis added).  Whether HomeAdvisor has refused to remove SPs' information from its website does not, standing alone, establish that class members have suffered a decrease in sales or harm to their business reputations from the four statements.  Likewise, whether HomeAdvisor claims to have a contractual right to the SPs' content through the T&Cs does not, standing alone, establish that class members have suffered a decrease in sales or harm to their business reputations from the four statements.

### b. False Association Claim

False association claims under the Lanham Act allege the misuse of a trademark. *Crocs*, 2021 WL 4170997, at *3. A false association claim requires proof "(1) that the plaintiff has a protectable interest in the mark; (2) that the defendant has used an identical or similar mark in commerce; and (3) that the defendant's use is likely to confuse customers." *Underwood v. Bank of Am. Corp.*, 996 F.3d 1038, 1052 (10th Cir. 2021) (quoting 1-*800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013)).

Confusion under the Lanham Act "is not limited to confusion of consumers as to the source of the goods, but also includes confusion as to sponsorship or affiliation." *Alfwear, Inc. v. Mast-Jaegermeister US, Inc.*, 2023 WL 5765891, at *5 (10th Cir. Sept. 7, 2023) (citation omitted). In evaluating whether there is a likelihood of confusion, a court should consider the following non-exhaustive factors (the "*King* factors"):

> (a) the degree of similarity between the marks; (b) the intent of the alleged infringer in adopting its mark; (c) evidence of actual confusion; (d) the relation in use and the manner of marketing between the goods or services marketed by the competing parties; (e) the degree of care likely to be exercised by purchasers; and (f) the strength or weakness of the marks.

*1-800 Contacts*, 722 F.3d at 1239 (quoting *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089-90 (10th Cir. 1999)). "The importance of any particular factor in a specific case can depend on a variety of circumstances, including the force of another factor." *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013). Plaintiffs bear "the burden of proving likelihood of confusion." *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Rsch.*, 527 F.3d 1045, 1055 (10th Cir. 2008).

HomeAdvisor argues that plaintiffs have no evidence that HomeAdvisor's use of the online profiles was likely to cause consumer confusion.  Docket No. 650 at 17-18. HomeAdvisor contends that all six *King* factors weigh in favor of HomeAdvisor.  *Id*. at 18-24.  In their response, plaintiffs do not address HomeAdvisor's arguments or directly discuss their false association claim.  Rather, the response focuses entirely on plaintiffs' false advertising claim.  *See* Docket No. 657 at 21-25.[34]  A plaintiff's failure to address a claim in a response to a motion for summary judgment is proper grounds to grant summary judgment in the defendant's favor.  *See Hinsdale v. City of Liberal, Kan*., 19 F. App'x 749, 768-69 (10th Cir. 2001) (unpublished) (affirming district court's holding that plaintiff abandoned his equal protection claim by failing to address the claim in his response to the summary judgment motion).  Because plaintiffs have abandoned their Lanham Act false association claim, the Court finds that HomeAdvisor is entitled to summary judgment on this claim.[35]

---

[34] With no citation to any authority, plaintiffs state in a footnote that, "[b]ecause HA's statements are literally false and confusion is presumed, Defendants' reliance on the six-factor test" in *King* is "inapplicable."  Docket No. 657 at 24 n.16.  The Court rejects this argument.  The Lanham Act "creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)."  *Lexmark Int'l, Inc*., 572 U.S. at 122.  "The two claims are separate and distinct and have different elements needed to assert a prima facie case."  4 McCarthy on Trademarks and Unfair Competition § 27:9 (5th ed. May 2024).  The Tenth Circuit has identified the six *King* factors as relevant to whether a likelihood of confusion exists for a false association claim.  *See 1-800 Contacts*, 722 F.3d at 1239.

[35] Plaintiffs' own summary judgment motion provides further evidence that they have abandoned their false association claim.  *See* Docket No. 649.  Although plaintiffs state that they move for summary judgment on all claims of the misappropriation classes, *see id*. at 1, plaintiffs only discuss the legal standard for a false advertising claim under the Lanham Act, not a false association claim under the Lanham Act.  *See id*. at 24-25.

Even if plaintiffs had not abandoned the claim, the Court would find that the majority of the *King* factors weigh in HomeAdvisor's favor.  The Court notes that plaintiffs' failure to discuss their false association claim makes it very difficult for the Court to evaluate the six *King* factors.  Nevertheless, the Court will endeavor to consider each factor despite plaintiffs' lack of explanation.[36]

### i.   Similarity of the Marks

Courts analyze similarity of the marks on three levels: "sight, sound, and meaning."  *Alfwear, Inc.*, 2023 WL 5765891, at *6 (quoting *King of the Mountain Sports, Inc.*, 185 F.3d at 1090).  In comparing marks, courts should consider "the marks as a whole as they are encountered by consumers in the marketplace."  *Id.* (quoting *Water Pik, Inc.,* 726 F.3d at 1155).  Courts should not focus "solely on name similarity," but should also "consider the effect of marketplace presentation," including design, lettering styles, logos, and coloring schemes.  *Elevate Fed. Credit Union v. Elevations Credit Union*, 67 F.4th 1058, 1077 (10th Cir. 2023) (citations omitted).  "[E]ven if two marks are identical, if they are encountered in different contexts in the real-world marketplace, then the consumer can often easily distinguish between the two products associated with the marks, and any degree of similarity between the marks amounts to very little in terms of confusion."  *Alfwear, Inc.*, 2023 WL 5765891, at *6 (citing *Nautilus Grp., Inc. v.*

---

[36] HomeAdvisor's motion construes the false association claim as challenging both the online member profiles and the non-member listings.  Docket No. 650 at 23. The amended complaint states that the false association claim challenges HomeAdvisor's use of "Online Profile Pages" and the "Online Directory."  Docket No. 449 at 283, ¶ 974.  The Court agrees that plaintiffs' claim challenges the online member profiles and the non-member listings.  To the extent that this claim challenges any other conduct, plaintiffs have waived those arguments by failing to discuss the false association claim in their response.  *See Hinsdale*, 19 F. App'x at 768-69.

*ICON Health & Fitness, Inc.*, 372 F.3d 1330, 1345 (Fed. Cir. 2004)).  Additionally, the "consistent appearance of a possibly infringing mark alongside a 'house mark' or trade name can itself make confusion less likely."  *Id.* at *7 (collecting cases).

HomeAdvisor argues that the member profiles and non-member listings in HomeAdvisor's directory are not similar to plaintiffs' marks when considering the surrounding context because all the pages appear in HomeAdvisor's directory.  Docket No. 650 at 23-24.  HomeAdvisor argues that both types of online pages "prominently display HA's own marks" and the non-member listings contain explicit disclaimers that former SPs are not members of HomeAdvisor.  *Id.* at 24.

The Court finds that the first factor is neutral.  Assuming that plaintiffs' trademarks are their business names or logos,[37] it is undisputed that the online member profiles and the non-member listings display plaintiffs' business names.  *See id.* at 3-4, ¶¶ 6-7, 14.  However, plaintiffs have presented no evidence suggesting that HomeAdvisor's use of the marks is similar to plaintiffs' use in design, lettering styles, logos, or coloring schemes.  *See Elevate Fed. Credit Union*, 67 F.4th at 1077; *see also Alfwear, Inc.*, 2023 WL 5765891, at *6 (noting that courts cannot focus solely on "name similarity").  As a result, the Court finds that the similarity factor is neutral.

ii.   Intent

The second factor focuses on "whether defendant had the intent to derive benefit from the reputation or goodwill of plaintiff."  *King of the Mountain Sports, Inc.*, 185 F.3d at 1091.  "[M]ere knowledge" of a similar mark is not sufficient to establish intent.  *See*

---

[37] Neither party directly addresses what words or symbols constitute plaintiffs' trademarks.

*Elevate Fed. Credit Union*, 67 F.4th at 1080 (citation omitted).  HomeAdvisor argues that the undisputed evidence establishes that HomeAdvisor had no intent to confuse consumers.  Docket No. 650 at 20.  HomeAdvisor asserts that it maintains the online member profiles after SPs cancel their leads to "honor the one-year memberships that SPs pay for upfront."  *Id*.  HomeAdvisor argues that it removes online member profiles when SPs request the removal of their profiles.  *Id*.  Moreover, HomeAdvisor contends that any service requests generated by online member profiles are sent directly to the SPs at no charge.  *Id*.

The Court finds that the intent factor weighs in favor of plaintiffs.  It is undisputed that HomeAdvisor may continue to display a "non-member listing" for former SPs in HomeAdvisor's directory, which identifies the former SP as "out of network," and includes the SP's business name, direct contact information, and reviews.  *Id*. at 4, ¶¶ 13-14.  It is also undisputed that the non-member listing states "Let's find you the best HomeAdvisor screened and approved professionals," and includes a "Find Other Pros" link which directs the homeowner to submit a service request that HomeAdvisor can sell as a lead to another SP.  Docket No. 649 at 16, ¶ 3.  Viewed in the light most favorable to plaintiffs, this evidence shows that HomeAdvisor intended to capitalize on the class members' reputations or goodwill.  *See Longoria v. Million Dollar Corp*., No. 18-cv-02266-PAB-NYW, 2021 WL 1210314, at *4 (D. Colo. Mar. 31, 2021) (holding that there was an inference that defendant intended to capitalize on plaintiffs' goodwill by using images of plaintiffs on defendant's social media platforms because defendant was aware that "plaintiffs were not dancers at its club").  Accordingly, the second factor weighs in favor of plaintiffs.

iii.    Actual Confusion

"[A]ctual confusion in the marketplace is often considered the best evidence of likelihood of confusion."  *Water Pik, Inc.*, 726 F.3d at 1144 (quoting *King of the Mountain Sports, Inc.*, 185 F.3d at 1092); *see also Utah Lighthouse Ministry*, 527 F.3d at 1055. "Evidence of actual confusion is often introduced through the use of surveys."  *Water Pik, Inc.*, 726 F.3d at 1144 (citation omitted).  The Tenth Circuit has "consistently recognized" that "isolated, anecdotal instances of actual confusion may be *de minimis* and may be disregarded in the confusion analysis."  *Id*. at 1150.  HomeAdvisor states that plaintiffs have produced no evidence of actual confusion.  Docket No. 650 at 18-19.

The Court finds that the third factor weighs heavily in favor of HomeAdvisor.  It is undisputed that plaintiffs did not submit any consumer surveys identifying evidence of actual confusion arising from the display of their information on HomeAdvisor's website. Docket No. 650 at 10, ¶ 52.  Plaintiffs' response to paragraph 52 indicates that the web forms identify "confusion from HA's maintaining SPs' Content on HA's website."  Docket No. 657 at 11, ¶ 52 (citing Docket No. 657-11 at 9, 18-19, 27, 29-30; Docket No. 657-12 at 2-3, 9, 13; Docket No. 657-13 at 8, 18-19, 24, 28, 31, 47, 50; Docket No. 657-14 at 6, 10, 20; Docket No. 657-15 at 21, 24-25, 29).  However, for the reasons discussed previously, the Court declines to consider the web forms at the summary judgment stage because the web forms are inadmissible hearsay.  Nevertheless, even if the Court considered this evidence, the cited web forms only touch on actual consumer confusion three times.  *See* Docket No. 657-11 at 18 (HomeAdvisor "cost me at least $62,500 by redirecting my potential customers to their websites/phone numbers when they were looking directly for my company and clicked on the HomeAdvisor link that claimed to be

my company"); Docket No. 657-12 at 9 ("Many old clients expressed that they tried to reach us to only inadvertently contact home advisor."); Docket No. 657-15 at 21 ("I've had a couple customer's [sic] that stated if I worked for HomeAdvisor when they searched for my company on Google.").[38]  The Court finds that the three instances cited by plaintiffs are "isolated episodes with minimal probative value on whether reasonable consumers as a whole are actually confused by" the non-member listings.  *See Water Pik, Inc.*, 726 F.3d at 1151 (disregarding four anecdotal instances of actual confusion as de minimis); *King of the Mountain Sports, Inc.*, 185 F.3d at 1092 (finding that "seven examples of actual confusion" was "de minimis and does not support a finding of a genuine issue of material fact as to the likelihood of confusion").

Accordingly, because there is de minimis evidence of any actual consumer confusion, the Court finds that the third factor weighs "strongly" in favor of HomeAdvisor.  *See Water Pik, Inc.*, 726 F.3d at 1151; *see also Longoria,* 2021 WL 1210314, at *4 (finding that the third factor weighed in favor of defendant because plaintiffs "failed to provide any evidence of actual confusion").

iv.     <u>Similarity of Products and Marketing</u>

The fourth factor considers the "similarity of products" as well as the "similarity in the manner of marketing the products."  *Elevate Fed. Credit Union*, 67 F.4th at 1081 (citation omitted).  When products are distinct and the parties "use separate marketing channels," confusion is "highly unlikely."  *Alfwear, Inc.*, 2023 WL 5765891, at *11.  In

---

[38] Even if the web forms are admissible, the Court notes that the statements in two of the web forms contain inadmissible double hearsay.  *See* Docket No. 657-12 at 9; Docket No. 657-15 at 21; *see also Argo*, 452 F.3d at 1199 ("at summary judgment[,] courts should disregard inadmissible hearsay statements *contained* in affidavits, as those statements could not be presented at trial in any form").

evaluating the marketing, courts consider whether the parties operate in "distinctly different markets" and whether they contact "very different people in their marketing efforts." *Elevate Fed. Credit Union*, 67 F.4th at 1081 (citation omitted). HomeAdvisor argues that the fourth factor weighs in its favor because the parties perform different services: plaintiffs offer specific home services to consumers, while HomeAdvisor "acts as a conduit between homeowners and service providers." Docket No. 650 at 22.[39]

The Court finds that this factor weighs in favor of HomeAdvisor. It is undisputed that the parties do not sell the same services. The class representatives offer or offered a variety of home services for consumers. *Id*. at 5, ¶¶ 16, 18, 20. In contrast, HomeAdvisor sells annual memberships to SPs, which include an online member profile and access to a pay-per-lead marketing service. *Id*. at 2, ¶ 1. SPs advertise their services through the online member profiles in HomeAdvisor's directory. *Id*. at 2-3, ¶¶ 5-7. Accordingly, the Court finds that the fourth factor weighs in favor of HomeAdvisor. *See M. Welles & Assocs., Inc. v. Edwell, Inc*., 69 F.4th 723, 731 (10th Cir. 2023) (upholding district court's conclusion that there was no likelihood of confusion because the parties have "fundamentally different customers seeking fundamentally different kinds of services").

---

[39] HomeAdvisor also argues that it "markets nationally in almost every media category, while Plaintiffs conducted minimal advertising, and solely in the localities in which they operated." Docket No. 650 at 22-23 & n.16. Moreover, HomeAdvisor argues that "Plaintiffs' undisputed testimony also shows that they relied primarily on word of mouth, not the internet, to advertise their services." *Id*. at 23 & n.17 (citing Docket No. 650-7 at 5, 9, 52:21-53:5, 68:3-15; Docket No. 650-8 at 5, 8-9, 11, 31:6-13, 55:6-10, 61:19-25, 67:25-68:7; Docket No. 650-11 at 4-5, 33:22-35:5). HomeAdvisor did not raise these facts in its statement of undisputed material facts section. Accordingly, the Court declines to consider this evidence for the reasons discussed previously.

v.      Degree of Care Exercised by Purchasers

"If consumers are likely to exercise a high degree of care in deciding whose

product to buy, the likelihood of confusion is reduced."  *Water Pik, Inc.*, 726 F.3d at

1160.  "A consumer's care generally intensifies with the importance of the product."

*Elevate Fed. Credit Union*, 67 F.4th at 1072.  When analyzing the level of care, courts

should focus on "the time of purchase."  *Id.* (citation omitted).  Buyers "typically exercise

little care in the selection of inexpensive items that may be purchased on impulse,"

whereas, they typically choose "expensive items" carefully.  *Sally Beauty Co., Inc. v.*

*Beautyco, Inc.*, 304 F.3d 964, 975 (10th Cir. 2002) (citation omitted).  In analyzing the

degree of care a consumer is likely to exercise in selecting a product, courts may

consider "the time and energy expended researching which product to choose."  *Edwell*,

69 F.4th at 731.

HomeAdvisor's argument on the fifth element is not entirely clear.  HomeAdvisor

appears to argue that the undisputed evidence demonstrates that customers will

exercise a high degree of care while browsing the various profiles on HomeAdvisor's

website.  *See* Docket No. 650 at 21.  With no citation to any evidence in the record,

HomeAdvisor maintains that a "homeowner's decision to provide personal contact

information, and invite a stranger into his or her home to perform work, indisputably is a

high-involvement activity for which a reasonable consumer exercises significant caution

and affords attention."  *Id.*[40]

---

[40] HomeAdvisor also argues that plaintiffs' services are "expensive, ranging from $300-$200,000."  Docket No. 650 at 21 & n.14 (citing Docket No. 650-6 at 9, 17, 106:13-107:17, 364:18-365:3; Docket No. 650-8 at 7, 47:12-20; Docket No. 650-11 at 10, 104:19-23).  HomeAdvisor did not raise this fact in its statement of undisputed

The Court finds that the fifth factor is neutral.  Neither party has presented any evidence regarding the level of care that customers utilize on HomeAdvisor's website.[41] It is undisputed that the non-member listing contains the former SP's business name, direct contact information, and reviews.  *Id*. at 4, ¶ 14.  The non-member listing states "Let's find you the best HomeAdvisor screened and approved professionals," and includes a "Find Other Pros" link which directs the homeowner to submit a service request that HomeAdvisor can then sell as a lead to another SP.  Docket No. 649 at 16, ¶ 3.  However, there is no evidence in the record discussing how much "time and energy" a homeowner expends in deciding whether to contact the former SP or click the "Find Other Pros" link.  *See Edwell*, 69 F.4th at 731.  Therefore, the Court finds that the fifth factor is neutral.  *See Longoria,* 2021 WL 1210314, at *5 (finding that the fifth factor was neutral where there was "no evidence regarding the level of care that defendant's customers exhibit"); *see also King of the Mountain Sports, Inc*., 185 F.3d at 1092 (noting that the "degree of care" factor may have "little impact" on the likelihood of confusion analysis in some factual scenarios).

---

material facts section.  Accordingly, the Court declines to consider this evidence for the reasons discussed previously.

[41] Due to the parties' inadequate discussion of this factor, the Court struggles to grasp how a customer's purported level of care navigating HomeAdvisor's website would be probative to the overall likelihood of confusion element.  Because plaintiffs' theory appears to be that HomeAdvisor's "scheme" diverts consumers from the former SPs' pages to current SPs, *see* Docket No. 657 at 3, the Court assumes that plaintiffs would argue that a consumer will exercise little care in deciding whether to click the "Find Other Pros" link on a former SP's non-member listing.  In contrast, it appears that HomeAdvisor's theory is that the consumer will not be easily diverted to another SP's profile page.  *See* Docket No. 650 at 21.

vi.    Strength of Plaintiffs' Marks

The final factor in determining likelihood of confusion is the strength of the mark because "[t]he stronger the mark, the greater the likelihood that encroachment on the mark will cause confusion." *Utah Lighthouse Ministry*, 527 F.3d at 1056. "Strength has two aspects: conceptual strength, or the mark's place on the spectrum of distinctiveness, and commercial strength, or its level of recognition in the marketplace." *Water Pik, Inc.*, 726 F.3d at 1151. HomeAdvisor argues that plaintiffs have no evidence of the strength of their marks. Docket No. 650 at 21-22. HomeAdvisor contends that there is no evidence that plaintiffs' marks were "recognized in the marketplace" or that plaintiffs' names or information are inherently distinctive. *Id*. at 22.[42]

Plaintiffs have offered no evidence or argument suggesting that their marks were distinctive or had significant recognition value in the marketplace. Accordingly, the Court finds that the final factor weighs in favor of HomeAdvisor. *See Utah Lighthouse Ministry*, 527 F.3d at 1056 (upholding district court's conclusion that the final factor weighed against finding a likelihood of confusion because plaintiff "did not submit any evidence to the district court of conceptual strength" and plaintiff's search engine evidence "did not demonstrate that the mark had significant recognition value in the marketplace").

---

[42] HomeAdvisor also argues that plaintiffs "testified they ran small businesses, conducted little marketing, and generated a relatively low volume of sales." Docket No. 650 at 22 & n.15 (citing Docket No. 650-3 at 12, 74:5-17; Docket No. 650-6 at 7, 59:18-60:3; Docket No. 650-7 at 7, 60:13-17; Docket No. 650-8 at 10, 62:6-22; Docket No. 650-11 at 5, 34:4). HomeAdvisor did not raise this fact in its statement of undisputed material facts section. Accordingly, the Court declines to consider this evidence for the reasons discussed previously.

In summation, the first and fifth factors are neutral; the second factor weighs in favor of plaintiffs; and the third, fourth, and sixth factors weigh in favor of HomeAdvisor. Particularly, there is no evidence of actual confusion, which is the "best evidence of likelihood of confusion." *See Water Pik, Inc.*, 726 F.3d at 1144. As a result, the Court finds that there is no likelihood of confusion and HomeAdvisor is entitled to summary judgment on this claim. *See Longoria*, 2021 WL 1210314, at *6 (granting summary judgment on Lanham Act false association claim where three of the *King* factors weighed in favor of plaintiffs, but the other three factors, including evidence of actual confusion, weighed in favor of defendant).[43] The Court therefore grants this portion of HomeAdvisor's motion and dismisses with prejudice the Lanham Act false association claim of the Nationwide Misappropriation Class.

### 3. Claims under Florida Law

The Florida Misappropriation Class asserts two claims against HomeAdvisor: (a) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*; and (b) unfair competition under Florida common law. Docket No. 449 at 293-95, ¶¶ 1015-1027. The Florida state law claims are based on the same allegations as the Lanham Act claims. *See id.* at 293-94, ¶¶ 1017, 1022.[44] To establish

---

[43] HomeAdvisor alternatively argues that, if the Court finds a dispute of fact on the likelihood of confusion element, it is entitled to summary judgment on plaintiffs' false association claim under the "fair use doctrine." Docket No. 650 at 24-26. HomeAdvisor also argues that the false association claim fails because there is no evidence of proximate harm. *Id.* at 26-27. Because the Court found that there is no dispute on the likelihood of confusion element of the false association claim, the Court declines to reach these alternative arguments.

[44] For example, both claims allege that HomeAdvisor has "unfairly" competed with the Florida class members by "creating the impression" among relevant consumers that "the goods or services offered by [HomeAdvisor] are endorsed by, licensed by, sponsored by, originated with, and/or otherwise affiliated with" the class members.

a claim under FDUTPA, a plaintiff must prove "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (citing *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. App. 2006)). To establish a claim for unfair competition under Florida law, a plaintiff must prove "(1) deceptive or fraudulent conduct of a competitor and (2) likelihood of consumer confusion." *Matonis v. Care Holdings Grp., L.L.C.*, 423 F. Supp. 3d 1304, 1311-12 (S.D. Fla. 2019) (citation omitted).

HomeAdvisor argues that plaintiffs' Florida state law claims "rise and fall with their Lanham Act claims." Docket No. 650 at 27-28 (citing *Crystal Ent. & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1323 (11th Cir. 2011)). HomeAdvisor contends that there is no evidence of a likelihood of confusion and no evidence of harm. *Id.* at 28. Plaintiffs respond that the Court should deny this portion of HomeAdvisor's motion because HomeAdvisor is not entitled to judgment on the Lanham Act claims. Docket No. 657 at 26-27.

Under Florida law, the legal analysis for a FDUTPA claim and an unfair competition claim are the same as the legal analysis for Lanham Act claims. *See, e.g.*, *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012) (affirming district court's conclusion that the "legal analysis is the same for" violations of the "Lanham Act, [FDUTPA], and Florida state common law for infringement and unfair competition"); *Jurado*, 643 F.3d at 1323 (holding that "the legal standards we apply to [a FDUTPA claim] are the same as those we have applied under section 43(a) of the

---

Docket No. 449 at 293-95, ¶¶ 1019(a), 1024. The FDUTPA claim further alleges that HomeAdvisor has made "false and misleading statements" about the class members' businesses. *Id.* at 294, ¶ 1019(c).

Lanham Act"); *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 652 (11th Cir. 2007) ("Plaintiff's failure to establish a likelihood of confusion as to its Lanham Act claim also extinguishes its [FDUTPA] claim under Florida law."); *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) (noting that courts may use an analysis of Lanham Act claims as a "measuring stick in evaluating the merits of state law claims of unfair competition") (internal quotations and citation omitted)); *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1267 (11th Cir. 2016) (noting that Florida unfair competition claims "rise or fall with" federal Lanham Act claims); *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1362 (S.D. Fla. 2017) (finding that FDUTPA claims and unfair competition claims under Florida law "are sufficiently similar to Lanham Act claims such that the legal analysis for Lanham Act claims applies to those state law claims").

Because the Court granted summary judgment on the Lanham Act claims, the Court finds that HomeAdvisor is entitled to summary judgment on the Florida state law claims. *See Casa Dimitri Corp.*, 270 F. Supp. 3d at 1362 (granting summary judgment on Florida unfair competition and FDUTPA claims because the court "already granted summary judgment as to liability on the Lanham Act infringement claims"). The Court therefore grants this portion of the motion and dismisses with prejudice the unfair competition and FDUTPA claims of the Florida Misappropriation Class.

### 4. Claims under Colorado Law

The Colorado Misappropriation Class asserts two claims against HomeAdvisor: (a) unfair competition under Colorado common law; and (b) violation of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-101, *et seq*. Docket No. 449

at 288-292, ¶¶ 997-1014.  The Colorado state law claims are based on the same allegations as the Lanham Act claims.  *See id.* at 288, 291, ¶¶ 998, 1009.[45]

### a.  Colorado Unfair Competition Claim

Under Colorado law, the tort of unfair competition requires proof that (1) "the defendant has copied the plaintiff's products or services or misappropriated plaintiff's name or operations in some regard" and (2) "this conduct is likely to deceive or confuse the public because of the difficulties in distinguishing between the plaintiff's and defendant's products and services."  *Warming Trends*, 2023 WL 2716652, at *17 (quoting *Wells Fargo Insurance Servs. USA, Inc. v. McQuate*, 276 F. Supp. 3d 1089, 1117 (D. Colo. 2016)).

HomeAdvisor argues that plaintiffs cannot establish a likelihood of confusion for the Colorado unfair competition claim for the same reasons as the Lanham Act claims. Docket No. 650 at 28.  Plaintiffs respond that, for the same reasons discussed with respect to the Lanham Act claims, they have provided "proof demonstrating a likelihood of confusion."  Docket No. 657 at 27.  Because the Court previously found that there was no likelihood of confusion from HomeAdvisor's use of plaintiffs' marks on its website, the Court finds that HomeAdvisor is entitled to summary judgment on the unfair competition claim under Colorado law.  *See Mionix, LLC v. ACS Tech.*, No. 16-cv-

---

[45] For example, both claims allege that HomeAdvisor has "unfairly" competed with the Colorado class members by "creating the impression" among relevant consumers that "the goods or services offered by [HomeAdvisor] are endorsed by, licensed by, sponsored by, originated with, and/or otherwise affiliated with the McHenry Plaintiffs and the Colorado Misappropriation Class Members."  Docket No. 449 at 289-290, 292, ¶¶ 1001(b), 1011.  The CCPA claim further alleges that HomeAdvisor has made "false and misleading statements" about the class members' businesses.  *Id.* at 290, ¶ 1001(d).

02154-RBJ, 2018 WL 2196065, at *3 (D. Colo. May 14, 2018) (assessing likelihood of confusion for Colorado unfair competition claim under the Lanham Act's test for likelihood of confusion).  The Court therefore grants this portion of the motion and dismisses with prejudice the unfair competition claim of the Colorado Misappropriation Class.

### b.  Colorado Consumer Protection Act Claim

To prevail on a CCPA claim, a plaintiff must prove the following elements:

(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Warming Trends*, 2023 WL 2713954, at *7 (quoting *Two Moms & a Toy, LLC v. Int'l Playthings, LLC*, 898 F. Supp. 2d 1213, 1219 (D. Colo. 2012) (quoting *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003))). The "CCPA does not specify which injuries it is intended to prevent."  *Crowe v. Tull*, 126 P.3d 196, 209 (Colo. 2006) (citing *Hall v. Walter*, 969 P.2d 224, 236 (Colo. 1998)). However, courts have previously found that the following types of injuries are covered under the CCPA: injury to property; economic loss; harm to reputation; and loss of business.  *See, e.g.*, *Hall*, 969 P.2d at 236; *Crowe*, 126 P.3d at 210; *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1135 (10th Cir. 2003); *Thomas v. Childhelp, Inc.*, 548 P.3d 1152, 1158 (Colo. App. 2024); *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, No. 09-cv-00970-PAB-KMT, 2011 WL 3799030, at *2 (D. Colo. Aug. 26, 2011).

HomeAdvisor argues that plaintiffs cannot establish the CCPA's injury element for the same reasons discussed with respect to the Lanham Act claims.  Docket No. 650

at 28.  Plaintiffs respond that the Court should deny this portion of the motion because HomeAdvisor is not entitled to judgment on the Lanham Act claims and plaintiffs have adequately established that they suffered harm from HomeAdvisor's conduct.  Docket No. 657 at 26-27.  Specifically, plaintiffs argue that HomeAdvisor's actions have harmed former SPs by "causing a loss of customers" and "loss of goodwill."  *Id*. at 26.

The Court finds that plaintiffs have failed to raise a genuine dispute of fact establishing that any members of the Colorado Misappropriation Class suffered an injury in fact.  Plaintiffs offer no undisputed or disputed statements of fact in the appropriate fact section of their brief identifying a Colorado class member who has suffered a loss of customers, a loss of goodwill, or any other economic injury from the four statements on HomeAdvisor's website or from the display of their trademarks on HomeAdvisor's website.[46]  Likewise, plaintiffs present no evidence that the class

---

[46] In response to one of HomeAdvisor's statements of undisputed fact, plaintiffs broadly argue that their "evidence includes voluntarily submitted narratives from former SPs confirming being uniformly victimized by HA and HA's use of their Content." Docket No. 657 at 11, ¶¶ 52-53 (citing Docket Nos. 657-11, 657-12, 657-13, 657-14, and 657-15).  However, for the reasons discussed previously, the Court declines to consider the web forms at the summary judgment stage because the web forms are inadmissible hearsay.  Nevertheless, even if the Court considered the web forms, the cited web forms only contain submissions from seven individuals in the State of Colorado.  *See* Docket No. 657-11 at 34-35; Docket No. 657-12 at 8; Docket No. 657-13 at 12, 32; Docket No. 657-14 at 14; Docket No. 657-15 at 4, 20.  The seven submissions contain no information suggesting that the individuals have suffered any injury from the four allegedly misleading statements on HomeAdvisor's website. Furthermore, the seven submissions do not state that any of the individuals have lost customers or suffered any harm to their reputations from HomeAdvisor's use of their trademarks in its directory.  In fact, in response to a question asking whether HomeAdvisor "continued to use your business's likeness or name to redirect customers" after "you terminated your HomeAdvisor membership," several of the individuals responded: "Not that we are aware of," *see* Docket No. 657-11 at 35; "Not to my knowledge," *see* Docket No. 657-13 at 12; "Not sure," *see* Docket No. 657-13 at 32; "No," *see* Docket No. 657-15 at 20; and "I don't know," *see* Docket No. 657-15 at 4.

representatives, Brad McHenry and Linda McHenry, have suffered any loss of customers, a loss of goodwill, or any other economic injury from the allegedly misleading statements on HomeAdvisor's website or from the display of their trademarks on HomeAdvisor's website.[47]  Because plaintiffs have failed to establish an inference that members of the Colorado Misappropriation Class have suffered an injury in fact to a legally protected interest, HomeAdvisor is entitled to summary judgment on the CCPA claim.  The Court therefore grants this portion of HomeAdvisor's motion and dismisses with prejudice the CCPA claim of the Colorado Misappropriation Class.

### 5.  *Claim under Idaho Law*

The Idaho Misappropriation Class asserts a claim under the Idaho Consumer Protection Act ("ICPA"), Idaho Civ. Code § 48, *et seq*.  Docket No. 449 at 295-98, ¶¶ 1028-1036.  The ICPA claim is based on the same allegations as the Lanham Act

---

One individual responded, "YES," *see* Docket No. 657-14 at 14, but provided no information suggesting that the business suffered any injury.

[47] In response to one of HomeAdvisor's proffered facts, plaintiffs suggest that declarations previously filed in the companion case, *see Costello v. HomeAdvisor, Inc.*, Case No. 18-cv-01802-PAB-KAS, provide evidence of "harm."  Docket No. 657 at 11, ¶ 52 (citing Docket No. 657-40).  That exhibit, consisting of 119 pages of declarations from 2018, contains one declaration from the McHenrys, but contains no other declarations from other individuals who live in Colorado.  *See* Docket No. 657-40 at 31-37.  The McHenrys' declaration states that "HomeAdvisor's conduct of channeling potential customers away from our company to our competitors is harmful to our business.  HomeAdvisor's continued and purposeful misuse of our Online Profile Page is intended to bestow a financial benefit upon HomeAdvisor."  *Id*. at 36, ¶ 12.  The Court finds that the McHenrys' declaration is too speculative to demonstrate an injury under the CCPA.  For example, the declaration does not identify the number or names of any consumers who were diverted from the McHenrys' page to competitors' pages.  *See Warming Trends*, 2023 WL 2716652, at *14 (finding that a company manager's testimony that, "I believe that we have lost sales" was too speculative because she could not identify any specific sales that the company lost).  Accordingly, the McHenrys' declaration is insufficient to raise a genuine dispute of fact regarding the injury element of the CCPA claim.

claims.  *See id*. at 296, ¶ 1029.[48]  To establish a claim under the ICPA, a plaintiff must

prove: "(1) the consumer purchased goods or services from a seller; (2) the seller

engaged in unfair or deceptive act(s) or practice(s) that are declared unlawful under the

ICPA; and (3) the unfair act(s) or practice(s) caused the consumer to suffer an

'ascertainable loss of money or property' (real or personal)."  *Pickering v. Sanchez*, 544

P.3d 135, 142 (Idaho 2024) (quoting *Litster Frost Inj. Laws., PLLC v. Idaho Inj. L. Grp.,*

*PLLC*, 518 P.3d 1, 11 (Idaho 2022)).  An "ascertainable loss of money" under the ICPA

is "[a]ny deprivation" of money that "is capable of being discovered, observed, or

established."  *Litster Frost Inj. Laws.*, 518 P.3d at 13 (citation omitted).

HomeAdvisor argues that the ICPA claim fails for the same reason as the

Lanham Act claims, namely, that there is no proof of harm.  Docket No. 650 at 27-28.

Plaintiffs respond that the Court should deny this portion of the motion because plaintiffs

have adequately established that they suffered harm from HomeAdvisor's conduct.

Docket No. 657 at 26-27.

The Court finds that plaintiffs have failed to raise a genuine dispute of fact

establishing that any members of the Idaho Misappropriation Class suffered an

"ascertainable loss of money or property."  *See Pickering*, 544 P.3d at 142.  Plaintiffs

offer no undisputed or disputed statements of fact in the appropriate fact section of their

brief identifying an Idaho class member who has suffered an ascertainable loss of

---

[48] For example, the claim alleges that HomeAdvisor has made "false and misleading statements" about the class members' businesses and that HomeAdvisor has "unfairly" competed with the Idaho class members by "creating the impression" among relevant consumers that "the goods or services offered by [HomeAdvisor] are endorsed by, licensed by, sponsored by, originated with, and/or otherwise affiliated with" the class members."  Docket No. 449 at 297, ¶¶ 1032(b), (d).

money or property from the four statements on HomeAdvisor's website or from the display of their trademarks on HomeAdvisor's website.[49]  Likewise, plaintiffs present no evidence that Ms. Haukenes, the class representative, suffered an ascertainable loss of money or property from the allegedly misleading statements on HomeAdvisor's website or from the display of her trademarks on HomeAdvisor's website.  Because plaintiffs have failed to establish an inference that members of the Idaho Misappropriation Class suffered an "ascertainable loss of money or property," *see Pickering*, 544 P.3d at 142, HomeAdvisor is entitled to summary judgment on the ICPA claim.  The Court therefore grants this portion of HomeAdvisor's motion and dismisses with prejudice the ICPA claim of the Idaho Misappropriation Class.

### 6.  *Declaratory Relief*

Plaintiffs' complaint asserts a declaratory judgment claim (Count LI) on behalf of the nationwide and state classes.  Docket No. 449 at 286-288, ¶¶ 991-996.  Plaintiffs

---

[49] In response to one of HomeAdvisor's statements of undisputed fact, plaintiffs broadly argue that their "evidence includes voluntarily submitted narratives from former SPs confirming being uniformly victimized by HA and HA's use of their Content."  Docket No. 657 at 11, ¶¶ 52-53 (citing Docket Nos. 657-11, 657-12, 657-13, 657-14, and 657-15).  However, for the reasons discussed previously, the Court declines to consider the web forms at the summary judgment stage because the web forms are inadmissible hearsay.  Nevertheless, even if the Court considered the web forms, the cited web forms only contain one submission from a person in the State of Idaho.  *See* Docket No. 657-13 at 62.  That submission does not contain any evidence suggesting that the individual has suffered an ascertainable loss of money or property in connection with the alleged misappropriation.  *See id.* (discussing the individual's attempts to cancel his HomeAdvisor membership).  Plaintiffs also suggest that declarations previously filed in the companion case, *see Costello v. HomeAdvisor, Inc.*, Case No. 18-cv-01802-PAB-KAS, provide evidence of "harm."  Docket No. 657 at 11, ¶ 52 (citing Docket No. 657-40).  That exhibit, consisting of 119 pages of declarations from 2018, only contains three declarations from individuals who live in Idaho, including the class representative Ms. Haukenes.  *See* Docket No. 657-40 at 5-9, 47-53, 85-90.  The declarations do not identify any ascertainable loss of money or property that the three individuals have suffered from the alleged misappropriation.  *See id.*

request that the Court enter a judgment declaring the following: (a) that HomeAdvisor has "violated and continue[s] to violate section 43(a) of the Lanham Act (15 U.S.C. § 1125);" (b) "HomeAdvisor has violated and continues to violate Colo. Rev. Stat. § 6-1-101;" (c) "HomeAdvisor has violated and continues to violate Fla. Stat. § 501.201;" and (d) "HomeAdvisor has violated and continues to violate Idaho Civ. Code § 480." *Id.*, ¶ 995.

HomeAdvisor argues that the Court is not required to address any "request for forward-looking equitable relief" because plaintiffs' claims fail on the merits. Docket No. 650 at 28. The Court agrees. Because plaintiffs' substantive claims under the Lanham Act and the state consumer protection statutes have failed, their "request for declaratory relief in relation to those claims is not viable." *See Long v. Wells Fargo Bank, N.A.*, 670 F. App'x 670, 671 (10th Cir. 2016) (unpublished) (collecting cases holding that declaratory judgment remedies are not available when the underlying causes of action have been dismissed). Accordingly, the Court grants this portion of HomeAdvisor's motion and dismisses plaintiffs' declaratory judgment claim with prejudice.

### C. Plaintiffs' Motion for Summary Judgment

Plaintiffs move for summary judgment on all claims of the misappropriation classes. Docket No. 649 at 1, 23-27.[50] Because the Court granted summary judgment

---

[50] As a preliminary matter, the Court notes that plaintiffs devote a substantial section of their brief to discussing HomeAdvisor's T&Cs. Docket No. 649 at 3-6, 10-15, 21-23. Plaintiffs request that the Court declare "[a]s a matter of law," that HomeAdvisor "does not hold, nor was it granted, any right or license to former SPs' names, likenesses, or Content." *Id.* at 23. However, plaintiffs do not identify a cause of action that would entitle them to that declaratory judgment. *See Savant Homes, Inc. v. Collins*, No. 13-cv-2049-WJM-MEH, 2015 WL 899302, at *11 (D. Colo. Feb. 27, 2015), *aff'd*, 809 F.3d 1133 (10th Cir. 2016) ("a declaratory judgment is a form of relief rather than an independent cause of action"). As HomeAdvisor points out, the existence of a licensing

to HomeAdvisor on all the claims of the misappropriation classes, the Court denies

plaintiffs' motion for summary judgment on these claims.[51]

## IV.    CONCLUSION

It is therefore

**ORDERED** that HomeAdvisor, Inc.'s Motion for Summary Judgment [Docket No.

650] is **GRANTED**.  It is further

**ORDERED** that Count XLIX, Count L, Count LI, Count LII, Count LIII, Count LIV,

Count LV, Count LVI are **DISMISSED with prejudice**.  It is further

---

provision in the T&Cs "might be a *defense* to Plaintiffs' misappropriation claims," but HomeAdvisor has not asserted that defense at the summary judgment stage.  Docket No. 662 at 25 n.10.

[51] Even if the Court had denied HomeAdvisor's motion for summary judgment on some or all of the claims, the Court would still deny plaintiffs' motion.  In order to obtain summary judgment as the party who bears the burden of proof at trial, plaintiffs must submit evidence to establish each element of their claims.  *See Pelt*, 539 F.3d at 1280 (noting that a moving party who has the burden of proof at trial must "establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case").  The misappropriation classes assert seven distinct claims under federal and state law.  *See* Docket No. 449 at 282-298; *see also supra* (discussing the elements for each claim).  Plaintiffs only include fifteen proffered undisputed facts in the facts section of their brief.  *See* Docket No. 649 at 15-19, ¶¶ 1-15.  Moreover, plaintiffs devote only four pages of their 30-page brief to discussing their federal and state law claims.  *Id*. at 24-27.  Plaintiffs fail to identify all the requisite elements of each claim and fail to provide undisputed facts to support many of those elements.  For example, to prove a Lanham Act false advertising claim, a plaintiff must establish that the false or misleading statement constitutes "commercial advertising," which has a five-part test.  *See Strauss*, 951 F.3d at 1267.  Plaintiffs do not discuss the commercial advertising test or present any evidence to satisfy each of the five prongs.  *See* Docket No. 649 at 24-27.  Moreover, as discussed above, many of plaintiffs' claims, including the Lanham Act false association claim, the CCPA claim, and the FDUTPA claim require proof of likelihood of confusion.  Plaintiffs offer no undisputed facts or argument touching on the likelihood of confusion element.  *See* Docket No. 649 at 15-19, 24-27, ¶¶ 1-15.

**ORDERED** that The Misappropriation Classes' Motion for Summary Judgment [Docket No. 649] is **DENIED**.

DATED September 13, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge